UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KELSEA BAGGETT, On Behalf Of Himself And All Others Similarly Situated,<br><br>    Plaintiff,<br><br>v.<br><br>HEWLETT-PACKARD COMPANY,<br><br>    Defendants.<br>_____ | CASE NO. SACV 07-0667-AG(RNBx)<br><br>ORDER DENYING IN PART AND GRANTING IN PART DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT |

    Before the Court is the Motion of Defendant Hewlett-Packard Company to Dismiss Plaintiff's Class Action Complaint ("Motion"). After considering the moving, opposing, and reply papers, and oral argument by the parties, the Court DENIES in part and GRANTS in part without leave to amend Defendant's Motion.

**BACKGROUND**

    The Complaint sets forth the following facts, which for this Motion, the Court accepts as true.

1   In 2005, Plaintiff purchased an HP LaserJet 2550L color laser printer.  (Complaint ¶ 23.)
2   Defendant ("HP") sells toner cartridges compatible with that printer, and recommends that
3   customers not use non-HP brand toner cartridges.  (*Id.* at 1-2.)  Plaintiff's printer, like other HP
4   color laser printers, notifies users when the toner cartridge is "empty" and needs to be replaced.
5   (*Id.* at 5:8-9.)  When the toner cartridge is "empty," a light on the printer's control panel flashes.
6   (*Id.* at 5:9-11.)  The printer then stops functioning.  (*Id.* at 5:15-16.)  The user's guide informs
7   users that when the control panel light is flashing and the printer stops printing, the "print
8   cartridge is empty."  (*Id.* at 5:11-13.)  It then instructs the user to replace the print cartridges.
9   (*Id.* at 5:14-15.)

10   Plaintiff complains that the representations that the print cartridge is "empty" are false.
11   (*Id.* at 5:24.)  When the printers stop working because of "empty" ink cartridges, a significant
12   amount of toner actually remains in the cartridges.  (*Id.* at 2:22-25.)  Still, users like Plaintiff are
13   unable to use their remaining toner because the printer will not function until the cartridge is
14   replaced.  Additionally, users rely on the "empty" representations and replace cartridges while
15   toner remains (*Id.* at 2:25-28.)  This is because none of the materials put out by HP indicate that
16   there is toner left when the control panel light begins to flash and the printer stops functioning.
17   (*Id.* at 6:6-9; 14-19.)

18   Because of the misrepresentation that his print cartridges were "empty," Plaintiff has
19   replaced his toner cartridges early more than once, unknowingly throwing away his excess toner.
20   (*Id.* at 7:8-13.)  In June of this year, he filed a Complaint against HP alleging: (1) unjust
21   enrichment; (2) fraudulent concealment; (3) violation of California Business and Professions
22   Code §§ 17200, *et seq.*; (4) trespass to chattels; and (5) conversion.  HP has moved to dismiss
23   the Complaint.

**LEGAL STANDARD**

A complaint must be dismissed when a plaintiff's allegations fail to state a claim upon which relief can be granted.  Fed R. Civ. P. 12(b)(6).  Federal Rule of Civil Procedure 8(a)(2)

1 requires only "a short and plain statement of the claim showing that the pleader is entitled to
2 relief." Fed R. Civ. P. 8(a)(2). "Ordinary pleading rules are not meant to impose a great burden
3 upon a plaintiff." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 347 (2005). "Specific facts are
4 not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is
5 and the grounds upon which it rests.'" *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) (per
6 curiam) (quoting *Bell Atl. Corp. v. Twombly,* 127 S. Ct. 1955, 1964 (May 21, 2007)).

7       The Court must accept as true all factual allegations in the complaint and must draw all
8 reasonable inferences from those allegations, construing the complaint in the light most
9 favorable to the plaintiff. *Westland Water Dist. v. Firebaugh Canal*, 10 F.3d 667, 670 (9th Cir.
10 1993). Dismissal without leave to amend is appropriate only when the Court is satisfied that the
11 deficiencies of the complaint could not possibly be cured by amendment. *Jackson v. Carey*, 353
12 F.3d 750, 758 (9th Cir. 2003) (citing *Chang v. Chen*, 80 F.3d 1293, 1296 (9th Cir. 1996)); *Lopez
13 v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000); *Polich v. Burlington N., Inc.,* 942 F.2d 1467,
14 1472 (9th Cir. 1991).

15       Allegations of fraud, however, must meet the heightened pleading standards of Federal
16 Rule of Civil Procedure 9(b). These "require allegations of particular facts going to the
17 circumstances of the fraud, including time, place, persons, statements made and an explanation
18 of how or why such statements are false or misleading." *Falk v. General Motors Co.*, 496 F.
19 Supp. 2d 1088, 1093 (N.D. Cal. 2007).

20

21 **DISCUSSION**

22

23       **1.     CONSUMERS' REASONABLE EXPECTATIONS**

24

25       HP argues that the Complaint as a whole must be dismissed, because Plaintiff received
26 exactly what he was promised when he bought his ink cartridges. Specifically, HP argues that
27 the user guide accompanying Plaintiff's printer specified the expected life of toner cartridges
28 used in the printer. HP notes that Plaintiff does *not* allege that his printer printed less than the

1  specified amount.  Thus, HP argues that Plaintiff was able to use the promised amount of toner
2  and that he cannot complain that HP included extra toner in the cartridges.
3         This Motion turns on one fundamental question, the answer to which the parties dispute
4  fiercely.  Namely, what do people buy when they purchase an HP printer cartridge?  Do they buy
5  the right to print approximately the number of pages that HP represents that the cartridge will
6  print?  Or do they buy the ink itself, and the right to use the cartridge to the last available drop,
7  watching printouts fade until barely legible?
8         The Seventh Circuit has spoken to this very question.  *Schorsh v. Hewlett-Packard Co.*
9  417 F.3d 748 (7th Cir. 2005).  In that case, dealing with a motion to remand, the court stated:
10             [N]o rule of law requires drum kits or toner cartridges or any
11             other consumer product to last for any prescribed period.  If it
12             would be lawful in Illinois for HP to fill cartridges with
13             enough toner to last (on average) 3,000 pages, why would it
14             not be lawful to include more toner (enough to *ensure* 3,000
15             pages of use) and then require replacement at that point,
16             before the streaking and spotty output that marks the end of a
17             cartridge's supply of toner?  Consumers are better off with the
18             second kind of cartridge than with the first. . . .  If HP had
19             promised that its toner cartridges would last for 3,500 pages,
20             then . . . shut them down after 3,000, [the plaintiff] would
21             have a better claim, but this does not appear to be the class's
22             theory.
23 *Id.* at 751.  Still, the court recognized that its statements were dicta, saying, "it is not our job to
24 resolve the case on the merits."  *Id.*  Also, the court did not deal with an issue important here –
25 that HP's printers and printer manuals represented that cartridges were "empty" when they were
26 not.
27         HP argues that Plaintiff's claims are based in fraud.  A fundamental element of a fraud
28 claim is that a person justifiably relied on a misrepresentation or concealment.  *Robinson*

4

1  *Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 990 (2004).  HP argues that there was no
2  justifiable reliance on a misrepresentation or concealment when members of the public bought
3  ink cartridges.  To support its reasoning, HP points to the user manual for Plaintiff's printer.
4      The HP color LaserJet 2550 series manual instructs users that the model's black print
5  cartridge "can print up to 5,000 pages at 5 percent coverage" and its color print cartridges "can
6  print up to 2,000 pages at 5 percent coverage."  (Motion, Exhibit A p. 4.)  The "Printer
7  Specifications" section of the manual states that the "Print-cartridge life (based on 5 percent
8  coverage)" is 5,000 pages for black ink and 2,000 pages for color ink.  (*Id.* at p. 137.)  The
9  "Accessories and ordering information" section says the same thing.  (*Id.* at p. 120.)  The
10 "Maintenance" section states that a black cartridge "lasts an average of 5,000 pages," and a color
11 cartridge "lasts an average of 2,000 pages."  (*Id.* at p. 68.)  HP argues that a consumer who reads
12 these statements "could not have reasonably expected to receive anything more than the page
13 yield that HP represented he would receive."  (Motion 2:17-18.)  HP reasons, then, that there is
14 no justifiable reliance on an alleged misrepresentation when consumers hope to receive
15 something that they could not have reasonably expected.  HP cites *Daugherty v. Am. Honda
16 Motor Co., Inc.*, 144 Cal. Appl. 4th 824, 838 (2006), for the proposition that buyers whose
17 expectations in a product are unreasonable have no legal claim. (Motion 13:1-17.)
18     Plaintiff replies that consumers did have a reasonable expectation that they would be able
19 to use all the ink in their cartridges.  Plaintiff points out that representations in the user manual
20 do not represent an upper limit of printed pages, after which the printer would shut off.  Instead,
21 Plaintiff argues that the language stating the cartridges' "average life" indicates that cartridges
22 can last longer, and that what consumers purchase is their cartridge's "life," not "a service from
23 HP in the form of 5,000 printed monochrome pages or 2,000 printed color pages at 5 percent
24 coverage."  (Plaintiff's Memorandum of Points and Authorities in Opposition to Defendant
25 Hewlett-Packard Company's Motion to Dismiss ("Opposition") 8:3-4.)
26     For the purposes of this Motion, the Court agrees.  Plaintiffs have alleged that consumers
27 have a reasonable expectation, when buying ink cartridges, that they have bought all the ink in
28 the cartridge.  This idea is supported by Plaintiff's allegation that "[t]ypically, a toner cartridge

5

1  dispenses toner until it is empty at which point the cartridge must be replaced." (Complaint
2  ¶ 12.) The idea is also supported by HP's alleged behavior.  HP chose to program its printers to
3  cease printing and display "empty" signals before the cartridges run out of ink.  This is likely
4  because consumers expect to use all of the ink in the cartridge, and will not respond to a simple
5  warning to "change ink cartridges now."  Instead, consumers will print until they can tell by
6  degraded print quality that ink is running out.  This is because they expect full use of their ink
7  cartridge.
8      HP's representations in a printer manual (and not on the ink cartridge packaging) that
9  estimate the average life of a printer cartridge do not automatically make that expectation
10 unreasonable.  Thus, this Court will not wholesale dispose of Plaintiff's Complaint.  The Court
11 will deal with each claim for relief individually, saving unjust enrichment for last.
12
13      **2.      FRAUDULENT CONCEALMENT**
14
15      Plaintiff alleges that HP fraudulently concealed that there was a significant amount of ink
16 left in the cartridges when its printers displayed "empty" signals and ceased functioning.
17 Allegations of fraud must meet the heightened pleading standards of Rule 9(b), which requires
18 "specificity including an account of the time, place, and specific content of the false
19 representations as well as the identities of the parties to the misrepresentations." *Swartz v.*
20 *KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007).  Still, it is clear that a plaintiff in a fraudulent
21 concealment suit will "not be able to specify the time, place, and specific content of an omission
22 as precisely as would a plaintiff in a false representation claim." *Falk v. General Motors*
23 *Corporation*, 496 F. Supp. 2d 1088, 1098-99 (N.D. Cal. 2007).  Because such a plaintiff is
24 alleging a failure to act instead of an affirmative act, he cannot point out the specific moment
25 when the defendant failed to act.  So, a fraud by omission, or fraud by concealment, claim, "can
26 succeed without the same level of specificity required by a normal fraud claim." *Id.* (citing
27 *Washington v. Baenziger*, 673 F. Supp. 1478, 1482 (N.D. Cal. 1987)).  Plaintiff has adequately
28 specified HP's alleged fraudulent behavior under Rule 9(b).  The Court now turns to whether the

alleged behavior constitutes fraud in California.

The elements of fraud in California are: (1) a misrepresentation (false representation, concealment or nondisclosure); (2) knowledge of falsity (or scienter); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage." *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 990 (2004). Under California law, a concealment under the first prong can constitute actionable fraud only when the defendant had a duty to disclose what was concealed. This duty arises in four circumstances: (1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material fact. *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 337 (1997).

Plaintiff claims that he alleges the last three circumstances for a valid concealment claim. All three of those circumstances require that the non-disclosed information be material. To show that information is material, a plaintiff must demonstrate that "had the omitted information been disclosed," the reasonable consumer would have "been aware of it and behaved differently." *Mirkin v. Wasserman*, 5 Cal.4th 1082, 1093 (1993); *Consumer Advocates v. Echostar Satellite Corp.*, 113 Cal. App. 4th 1351, 1360 (2003). Here, Plaintiff has alleged that he replaced his cartridges because of the "empty" representations and that "Plaintiff and the Class were unaware [that there was toner left in the cartridges] and would not have acted as they did if they had known." (Complaint ¶ 49.) Further, he has alleged that the printer shutdown forces users to "prematurely purchase replacement cartridges" and to throw away the expensive toner they purchase that remains in the toner cartridge. (Complaint ¶ 3.) Thus, he has shown that the misrepresentation about whether toner remained in the cartridges is material

Plaintiff then argues that his allegations meet the last three circumstances for concealment because:

> The fact that HP color remains in the toner cartridge was within HP's exclusive knowledge, HP actively conceals that a significant amount of toner remains in the toner cartridge

7

when its color laser printers shut-down and indicate that the toner cartridge is "empty", and HP's partial representations about the toner cartridge being "empty" – without revealing that in fact a significant amount of toner remains in the cartridge – all give rise to a duty to disclose.

(Opposition 14:8-14.)  The Court agrees.  Plaintiff has sufficiently alleged concealment.

Plaintiff has also sufficiently alleged the other factors of fraud under California law. Plaintiff has alleged scienter by alleging that HP "knew at all material times" that its color laser printers indicated that their toner cartridges were "empty" when they were not.  (Complaint ¶ 45.)  Plaintiff has alleged intent to induce reliance by alleging that "HP intentionally concealed and/or suppressed the above facts with the intent to defraud Plaintiff and the Class."  (Complaint ¶ 51.)

Plaintiff has alleged justifiable reliance by alleging that "Plaintiff and the Class were unaware of the above facts and would not have acted as they did if they had known."  Reading in the light most favorable to Plaintiff, this could mean: (1) that Plaintiff would not have bought an HP printer if he knew that he would not get full value from HP ink cartridges; or (2) that Plaintiff would have tried to manually override the printer shutdown, knowing that there was more ink in the cartridges.  Any of these interpretations is enough to satisfy this prong.  *See City Solutions v. Clear Channel Communs., Inc.*, 365 F.3d 835 (9th Cir. 2004.)  Finally, Plaintiff has alleged resulting damage by alleging that he was unable to use a percentage of the toner for which he paid.  (Complaint ¶¶ 53-54.)

Plaintiff has alleged all the factors of fraudulent concealment under California law.  HP's Motion is DENIED as to Plaintiff's fraudulent concealment claim.

**3.    VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE §§ 17200, *ET SEQ.***

California Business and Professions Code §§ 17200, *et seq.*, popularly known as the

8

1   California Unfair Competition Law ("UCL"), prohibits business acts or practices that are (1)
2   fraudulent, (2) unlawful, or (3) unfair."  Cal. Bus. & Prof. Code § 17200.  Plaintiff alleges that
3   HP's programming its printers to shut down without using all of the available toner is all three.
4           HP argues that Plaintiff's claim is not actionable under *Daugherty v. Am. Honda Motor
5   Co., Inc.*, 144 Cal. App. 4th 824 (2006) and *Long v. Hewlett-Packard Company*, 2007 WL
6   2994812 (N.D. Cal. 2007).  In those cases, the courts dealt with allegations that a manufacturer
7   failed to disclose defects.  The cases held that "to be actionable an omission must be contrary to
8   a representation actually made by the defendant."  *Long*, 2007 WL at *8 (quoting *Daugherty*,
9   144 Cal. App. 4th at 835).  This language does not eliminate Plaintiff's claim here.  Here,
10  Plaintiff *has* alleged that HP made a false representation – that the ink cartridges were empty
11  when they were not.  Because of that misrepresentation, Plaintiff argues, HP had a duty to
12  disclose that Plaintiffs were not being allowed to use all of their ink cartridges.
13          The fraud prong of the UCL differs from common law fraud or deception.  *Bardin v.
14  Daimlerchrysler Corp.*, 136 Cal. App. 4th 1255, 1274 (2006).  To satisfy the fraud prong of the
15  UCL, Plaintiffs need only to show that members of the public are "likely to be deceived" by the
16  conduct.  *Id.* (quoting *Schnall v. Hertz Corp.*, 78 Cal. App. 4th 1144, 1167 (2000)).  As
17  discussed, Plaintiff has adequately alleged that members of the public would likely believe
18  representations made by their printer and print manual that their print cartridge is empty, though
19  it is not.  Thus, Plaintiff has alleged fraudulent conduct under the UCL.  Because Plaintiff has
20  alleged a fraud violation under the UCL, the Court need not address Plaintiff's claims for
21  unlawful and unfair practices.  HP's Motion is DENIED as to Plaintiff's claim for violations of
22  the UCL.

24          **4.      TRESPASS TO CHATTELS**

26          HP argues that Plaintiff's claim for trespass to chattels must be dismissed because
27  Plaintiff does not allege that a human actor committed a *physical, affirmative act* that amounted
28  to "trespass."  (Motion 22:5-8.)  HP argues that because Plaintiff "cannot assert that an employee

1  or agent of HP entered his home, opened his printer, and removed or tampered with the cartridge
2  such that it did not dispense the additional toner," Plaintiff has no claim.  This argument
3  misstates California law on trespass to chattels.

4  California law includes trespass to chattel claims based on automated systems.  In other
5  words, trespass to chattel claims survive even when the ultimate trespass is not accomplished by
6  a human act.  For instance, in *eBay, Inc. v. Bidder's Edge*, 100 F. Supp. 2d 1058, 1072 (N.D.
7  Cal. 2000), the court enjoined the defendant from sending its web crawlers to monitor auctions
8  on eBay's website.  The defendant had programmed the web crawlers to "perform searching,
9  copying and retrieving functions."  *Id.* at 1060 n.2.  The effect of the robots over time was to
10 "consume the processing and storage resources" of eBay's system.  *Id.* at 1061.  In granting the
11 injunction, the court determined that eBay had established "a strong likelihood" of prevailing on
12 its trespass claim.  *Id.* at 1070.

13 This case is similar to the *eBay* case.  In *eBay*, defendants programmed the web crawlers
14 to invade eBay's website and consume its storage resources.  Here, HP allegedly programmed
15 the printer to stop printing when the ink cartridges were not empty, and thus to deprive Plaintiff
16 of his remaining ink.  In neither case was the final action taken by a human, but both cases
17 constitute trespass.  Thus, Plaintiff has alleged trespass to chattels and HP's Motion is DENIED
18 as to that claim.

19

20 **5.    CONVERSION**

21

22 HP argues that Plaintiff's conversion claim should be dismissed because "he does not
23 allege that he was deprived of all of the toner in the cartridge."  (Motion 23:1-2.)  HP argues that
24 conversion requires a "'dispossession' of the entirety of the plaintiff's property or a 'substantial
25 interference' such that the defendant should be required to pay the full value of the property."
26 (Reply 12:12-15.)  Even under HP's standard, Plaintiff has adequately stated a claim for
27 conversion.

28 Plaintiff has alleged that he had a possessory right to the ink in the ink cartridge, that he

10

1 used some of it, and that HP stopped him from using the rest.  HP's argument seems to be that
2 because Plaintiff had already used much of the ink, stopping him from using of the rest of the ink
3 was not conversion.  This argument does not make sense.  Indeed, it is like arguing that stealing
4 a person's ten-year-old car is not conversion, because the person already got most of the value
5 out of it.

6      At the time HP's printer allegedly cut Plaintiff off from using his ink, it cut Plaintiff off
7 from "the entirety of his property."  The printer ceasing to print was not a minimal interference
8 with Plaintiff's ink cartridge.  Instead, it suddenly rendered an ink cartridge of value wholly
9 useless to Plaintiff.  Thus, Plaintiff has alleged conversion and HP's Motion is DENIED as to
10 that claim.

11
12     **6.**      **UNJUST ENRICHMENT**
13
14      Under California law, the elements of unjust enrichment are: (1) receipt of a benefit; and
15 (2) unjust retention of the benefit at the expense of another.  *Lectrodryer v. SeoulBank*, 77 Cal.
16 App. 4th 723, 726 (2000); *First Nationwide Savings v. Perry*, 11 Cal. App. 4th 1657, 1662-1663
17 (1992).  Still, California courts "appear to be split on whether unjust enrichment can be an
18 independent claim or merely an equitable remedy."  *Falk*, 496 F. Supp. 2d at 1099.  For
19 example, the court in *Melchior v. New Line Productions, Inc.*, 106 Cal. App. 4th 779, 793
20 (2003), held that the phrase "unjust enrichment" "does not describe a theory of recovery, but an
21 effect: the result of a failure to make restitution under circumstances where it is equitable to do
22 so."  In contrast, the court in *Ghirardo v. Antonioli*, 14 Cal. 4th 39, 50 (1996), held that plaintiffs
23 may state a claim for unjust enrichment particularly where their claim seeks restitution where
24 other remedies are inadequate.
25      In *Falk*, 496 F. Supp. 2d at 1099, the Northern District of California faced a case similar
26 to the one here.  In that case, the plaintiff claimed: (1) violations of California's Consumers
27 Legal Remedies Act; (2) violations of California's Unfair Competition Law; (3) fraud by
28 omission; and (4) unjust enrichment.  The court denied a motion to dismiss as to the first three

1  claims. Then, citing California's conflicting case law about unjust enrichment, the court
2  dismissed the plaintiff's unjust enrichment claim. *Id.* at 1100. The court reasoned that the sole
3  remedies available for the plaintiff would be available under the other three claims. *Id.* at 1099.
4  The court concluded that "there will be no occasion for resort to unjust enrichment." *Id.*

5  This Court finds the reasoning in *Falk* persuasive. This Court has denied the Motion as to
6  multiple claims of Plaintiff. Plaintiff will be able to pursue his remedies through those claims,
7  and the unjust enrichment claim will add nothing to his available relief. The *Falk* court granted
8  the motion to dismiss without leave to amend. Likewise, this Court GRANTS the Motion
9  without leave to amend as to Plaintiff's unjust enrichment claim.

**DISPOSITION**

HP's Motion is DENIED as to Plaintiff's claims of fraudulent concealment, fraudulent
and unfair practices violations of the UCL, trespass to chattels, and conversion. HP's Motion is
GRANTED without leave to amend as to Plaintiff's unjust enrichment claim.

IT IS SO ORDERED.

DATED: October 30, 2007

_____
Andrew J. Guilford
United States District Judge

12