MORGAN, LEWIS & BOCKIUS LLP
NEAL SALISIAN, State Bar No. 240277
nsalisian@morganlewis.com
300 South Grand Avenue
Twenty-Second Floor
Los Angeles, CA  90071-3132
Tel:  213.612.2500
Fax:  213.612.2501

J. GORDON COONEY, JR. (*pro hac vice*)
jgcooney@morganlewis.com
ROBERT A. PARTICELLI (*pro hac vice*)
rparticelli@morganlewis.com
KRISTOFOR T. HENNING (*pro hac vice*)
kenning@morganlewis.com
1701 Market Street
Philadelphia, PA 19103
Telephone: 215.963.5000
Facsimile:  215.963.5001

GIBSON DUNN & CRUTCHER LLP
SAMUEL G. LIVERSIDGE, State Bar No. 180578
sliversidge@gibsondunn.com
333 South Grand Avenue
Los Angeles,  CA 90071
Telephone: 213.229.7000
Facsimile: 213.229.7520

Attorneys for Defendant Hewlett-Packard Company

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION

| | |
|---|---|
| KELSEA BAGGETT, On Behalf Of Himself And All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>HEWLETT-PACKARD COMPANY,<br><br>Defendant. | Case No. SA CV 07-00667 AG (RNB)<br><br>**HEWLETT-PACKARD COMPANY'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT**<br><br>Hearing:<br><br>Date:      April 27, 2009<br>Time:     10:00 am<br>Dept:     10D (Hon. Andrew J. Guilford)<br><br>Complaint Filed:  June 6, 2007<br>Trial:                 December 1, 2009 |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PHILADELPHIA

HEWLETT-PACKARD COMPANY'S
NOTICE OF MOTION AND MOTION FOR
SUMMARY JUDGMENT

**TO PLAINTIFF AND HIS ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on April 27, 2009 at 10:00 a.m., or as soon thereafter as may be heard in Courtroom 10D of the above-entitled Court, Defendant Hewlett-Packard Company ("HP"), pursuant to Rule 56 of the Federal Rules of Civil Procedure will, and hereby does, move this Court for an order granting summary judgment in favor of HP and against Plaintiff Kelsea Baggett ("Plaintiff") as to all claims, including on the following grounds:

1)      Plaintiff cannot sustain his claims for trespass to chattels and/or conversion, not only because his HP Color LaserJet printer operated as designed and HP never interfered with Plaintiff's property interest, but also because these claims are otherwise barred by the economic loss rule;

2)      Plaintiff's claim under California's Unfair Competition Law and his common law fraud claim fail as a matter of law because he can establish neither reliance nor causation; and

3)      HP did not create any expectation that Plaintiff would be able to use every particle of toner in his print cartridges and, consequently, cannot be held liable to Plaintiff for failing to satisfy an expectation it did not create.  HP likewise had no duty to disclose any additional information to Plaintiff and, therefore, cannot be liable on a theory of non-disclosure.

This motion is based on this Notice of Motion and the attached Memorandum of Points & Authorities, the concurrently-filed proposed Statement of Uncontroverted Facts and Conclusions of Law, [Proposed] Order and Declaration of Robert A. Particelli, III, the pleadings and papers on file in this matter, any fact or matter of which the Court may take judicial notice, and any further arguments and evidence as may be presented at the time of the hearing.

//

//

//

Morgan, Lewis &
Bockius LLP
Attorneys At Law
Philadelphia

2

HEWLETT-PACKARD COMPANY'S
NOTICE OF MOTION AND MOTION FOR
SUMMARY JUDGMENT

1     This motion is made following the conference of counsel pursuant to Local

2   Rule 7-3 which took place on March 6, 2009.

3   Dated:     April 3, 2009              MORGAN, LEWIS & BOCKIUS LLP

4

5                                        By _____/s/_____
                                            Neal Salisian
6                                           Attorneys for Defendant
                                            Hewlett-Packard Company

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PHILADELPHIA

3

HEWLETT-PACKARD COMPANY'S
NOTICE OF MOTION AND MOTION FOR
SUMMARY JUDGMENT

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ..................................................................................... 1

II.    FACTS ..................................................................................................... 3

III.   ARGUMENT ........................................................................................... 6

    A.     Plaintiff Cannot Satisfy The Elements Of His Trespass To
          Chattels And Conversion Claims ...................................................... 6

          1.     California Law Does Not Recognize Plaintiff's Novel
                "Trespass/Conversion By Design" Theory .............................. 6

          2.     Plaintiff's Theory, By Definition, Means That HP Never
                Interfered With His Chattel After He Took Possession Of
                It ............................................................................................. 9

          3.     Plaintiff Suffered No Property Injury That Could Support
                His Claims ............................................................................. 10

          4.     Plaintiff's Theory Finds No Support In California Law .......... 10

    B.     The Economic Loss Rule Bars Plaintiff's Trespass/Conversion
          Claims .............................................................................................. 12

    C.     Plaintiff's Fraud Claim Fails Because He Never  Saw HP's
          Alleged "Empty" Representation And Because Any Such
          Representation Did Not Cause Him To Replace His Cartridge ........ 13

          1.     Plaintiff Did Not See HP's Alleged "Empty"
                Misrepresentation ................................................................. 13

          2.     Even If Plaintiff Had Seen The Term "Empty," It Did Not
                Cause Him To Replace His Print Cartridge ........................... 15

    D.     Plaintiff's UCL Claim Fails ........................................................... 16

          1.     Plaintiff's "Unlawful" Claim Fails ....................................... 18

          2.     Plaintiff's "Fraudulent" Claim Fails ...................................... 19

          3.     Plaintiff's "Unfair" Claim Fails ............................................ 20

HP'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT

1

2

**TABLE OF CONTENTS**
**(continued)**

**Page**

3

4

E.     Plaintiff's Non-Disclosure Claims Fail Because HP Is Not

Required To Fulfill An Expectation It Did Not Create ....................... 21

5

IV.     CONCLUSION ........................................................................................ 23

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PHILADELPHIA

ii

HP'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT

# TABLE OF AUTHORITIES

**Page**

## CASES

*Am. Honda Motor Co. v. Daugherty*,

    144 Cal. App. 4th 824 (2d Dist. 2006) ................................................ 2, 18, 22

*Ballard v. United States*,

    2007 U.S. Dist. LEXIS 96124 (C.D. Cal. Aug. 28, 2007) ........................... 10

*Bank of St. Helena v. Lilienthal-Brayton Co.*,

    89 Cal. App. 258 (1928) ......................................................................... 15

*Bardin v. DaimlerChrysler Corp.*,

    136 Cal. App. 4th 1255 (4th Dist. 2006) .................................................... 2, 22

*Barrier Specialty Roofing & Coatings, Inc. v. ICI Paints N. Am., Inc.*,

    2008 U.S. Dist. LEXIS 104963 (E.D. Cal. May 6, 2008) ........................... 12

*Blennis v. Hewlett-Packard Co.*,

    2008 U.S. Dist. LEXIS 106464 (N.D. Cal. Mar. 25, 2008) .................. 2, 7, 9

*Brothers v. Hewlett-Packard Co.*,

    2007 U.S. Dist. LEXIS 13155 (N.D. Cal. Feb. 12, 2007) ........................... 18

*Buller v. Sutter Health*,

    160 Cal. App. 4th 981 (1st Dist. 2008) ..................................................... 20

*Californians for Disability Rights v. Mervyn's, LLC*,

    138 P.3d 207 (Cal. 2006) ......................................................................... 19

*Camacho v. Auto Club of Southern Cal.*,

    142 Cal. App. 4th 1394 (2d Dist. 2006) ................................................ 20, 21

*Chavez v. Blue Sky Natural Beverage Co.*,

    503 F. Supp. 2d 1370 (N.D. Cal. 2007) ..................................................... 17

*Claar v. Burlington Northern Railroad Co.*,

    29 F.3d 499 (9th Cir. 1994) ...................................................................... 10

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PHILADELPHIA

iii

**TABLE OF AUTHORITIES**
(continued)

Page

*Daro v. Superior Court*,
 151 Cal. App. 4th 1079 (1st Dist. 2007) ................................... 16, 17, 19, 20

*East River Steamship Corp. v. Transamerica Delaval, Inc.*,
 476 U.S. 858 (1986) ......................................................................... 12

*eBay, Inc. v. Bidder's Edge, Inc.*,
 100 F. Supp. 2d 1058 (N.D. Cal. 2000) ....................................... 11

*Gawara v. United States Brass Corp.*,
 63 Cal. App. 4th 1341 (4th Dist. 1998) ........................................ 20

*Hall v. Time Inc.*,
 158 Cal. App. 4th 847 (4th Dist. 2008) ................................... 17, 19

*In re: Brocade Comm. Sys. Litig.*,
 2009 U.S. Dist. LEXIS 295 (N.D. Cal. Jan. 6, 2009) ................. 14

*Intel Corp. v. Hamidi*,
 30 Cal. 4th 1342 (2003) .............................7, 8, 9, 10, 11, 12

*Jimenez v. Superior Court*,
 58 P.3d 450 (Cal. 2002) ................................................................ 12

*Laster v. T-Mobile USA, Inc.*,
 407 F. Supp. 2d 1181 (S.D. Cal. 2005) ....................................... 17

*Layton v. Yankee Caithness Joint Venture*,
 774 F. Supp. 576 (D. Nev. 1991) ................................................. 10

*Lincoln Gen. Ins. Co. v. Access Claims Adm'rs, Inc.*,
 2007 U.S. Dist. LEXIS 67172 (E.D. Cal. Aug. 29, 2007) .......... 12

*Long v. Hewlett-Packard Co.*,
 2007 U.S. Dist. LEXIS 79262 (N.D. Cal. July 27, 2007) ........... 22

*McKell v. Washington Mutual, Inc.*,
 49 Cal. Rptr. 3d 227 (2006) ......................................................... 12

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PHILADELPHIA

HP'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT

# TABLE OF AUTHORITIES
## (continued)

Page

*Meinhold v. Sprint Spectrum, L.P.*,
2007 U.S. Dist. LEXIS 35806 (E.D. Cal. May 16, 2007) ............................ 19

*Mirkin v. Wasserman*,
5 Cal. 4th 1082 (1993) ................................................................................ 20

*Oyster Software, Inc. v. Forms Processing, Inc.*,
2001 U.S. Dist. LEXIS 22520 (N.D. Cal. Dec. 6, 2001) ....................... 11, 12

*Peterson v. Cellco Partnership*,
164 Cal. App. 4th 1583 (4th Dist. 2008) ................................................ 17, 18

*Robinson Helicopter Co., Inc. v. Dana Corp.*,
102 P.3d 268 (Cal. 2004) ............................................................................ 12

*Schorsch v. Hewlett-Packard Co.*,
417 F.3d 748 (7th Cir. 2005) ............................................................. 1, 20, 21

*Seely v. White Motor Co.*,
403 P.2d 145 (Cal. 1965) ........................................................................ 12, 22

*Ticketmaster Corp. v. Tickets.com, Inc.*,
2003 U.S. Dist. LEXIS 6483 (C.D. Cal. Mar. 7, 2003) ................................ 9

*Winkler v. DTE, Inc.*,
205 F.R.D. 235 (D. Ariz. 2001) .................................................................. 11

*Zaslow v. Kroenert*,
29 Cal. 2d 541 (1946) .................................................................................. 8

## STATUTES AND RULES

Cal. Bus. & Prof. Code § 17200 ........................................................................ 16

Cal. Bus. & Prof. Code § 17203 ........................................................................ 16

Cal. Bus. & Prof. Code § 17204 ........................................................................ 16

Cal. U.C.C. § 2607(3)(A) ................................................................................. 19

Morgan, Lewis &
Bockius LLP
Attorneys At Law
Philadelphia

v

HP'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT

# TABLE OF AUTHORITIES
### (continued)

**Page**

## OTHER AUTHORITIES

Restatement (Second) of Torts § 217 .............................................................. 7, 9, 11

Restatement (Second) of Torts § 218 ................................................................. 7, 11

Rutter Group Practice Guide:  Federal Civil Trials and Evidence ......................... 10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PHILADELPHIA

HP'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT

1                **MEMORANDUM OF POINTS AND AUTHORITIES**

2 **I.**      <u>**INTRODUCTION**</u>

3        Plaintiff Kelsea Baggett ("Plaintiff") alleges that Hewlett-Packard Company

4 ("HP") committed the torts of trespass to chattels, conversion and fraud and

5 violated California's Unfair Competition Law ("UCL") by designing his HP color

6 LaserJet printing system to include a so-called "hardstop" that prevented him from

7 accessing every particle of toner in his print cartridges. Plaintiff does not, however,

8 allege that HP represented that he could use every particle of toner in his print

9 cartridges for printing. Indeed, the physical limitations of the print cartridge make

10 it impossible to do so; some toner always will remain in the print cartridges after

11 they cease being useable for printing.

12        Consequently, HP makes no representations to Plaintiff or any other

13 customer regarding the weight or volume of toner in the print cartridge. Rather, it

14 is undisputed that HP's disclosures regarding the life of its print cartridges are

15 provided in terms of expected page yield, *i.e.*, that the average cartridge will print

16 an average number of pages at a specified coverage. Not surprisingly, another

17 Court already has suggested that HP could not be held liable for providing its

18 customers what it promised simply because it could have provided something more,

19 and the undisputed facts in this case likewise demonstrate that Plaintiff's claims fail

20 as a matter of law. *Cf. Schorsch v. Hewlett-Packard Co.*, 417 F.3d 748, 751 (7th

21 Cir. 2005).

22        Initially, California law precludes Plaintiff's unprecedented trespass to

23 chattels/conversion claims. HP has not located a single case holding a

24 manufacturer of a product liable to a buyer for trespass/conversion because the

25 product worked exactly as it was designed and sold. In fact, another District Court

26 within this Circuit already rejected substantively identical claims against HP related

27 to its ink jet printers. *See Blennis v. Hewlett-Packard Co.*, No. C 07-333 JF, 2008

28 U.S. Dist. LEXIS 106464, at *1-2, *16-17 (N.D. Cal. Mar. 25, 2008). California

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PHILADELPHIA

1

HP'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT

law requires the same result in this case.  Plaintiff had a property interest only in the printer/print cartridge he received – *i.e.*, one with a "hardstop" – and HP never interfered with that property interest.  Moreover, even if Plaintiff could otherwise satisfy the elements of his trespass/conversion claims, they are barred by California's economic loss rule.

Plaintiff's common law fraud and UCL claims fare no better.  According to Plaintiff's deposition testimony, he did not see the alleged misrepresentation that is the basis for his claim (*i.e.,* the term "empty" in his printer User Guide) and, in any event, Plaintiff's theory of causation fails even if he had.  Plaintiff claims HP's alleged "empty" representation caused him prematurely to purchase replacement print cartridges, but there is no dispute that Plaintiff had to buy replacement print cartridges at the same time because of his printer's design even if that representation did not exist.  Clearly, therefore, no such message caused Plaintiff to suffer the harm that he claims is the basis for his claims.

Nor can Plaintiff state a fraud or UCL claim based upon a theory of non-disclosure.  Under California law, a duty to disclose exists only if the "omission [is] . . . contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose."  *Am. Honda Motor Co. v. Daugherty*, 144 Cal. App. 4th 824, 835 (2d Dist. 2006); *Bardin v. DaimlerChrysler Corp.*, 136 Cal. App. 4th 1255, 1275-76 (4th Dist. 2006).  Here, there is no fiduciary relationship or safety concern that would create an inherent obligation on HP's part to disclose that Plaintiff would be unable to use all of the toner in his print cartridge for printing.  As a result, Plaintiff must demonstrate the existence of an HP representation that would be rendered false or misleading absent further disclosure.  The only representation Plaintiff cites, however, is the "empty" language in his User Guide that: (1) he did not see when he replaced his cartridge; and (2) is only viewable *after* his printer purchase, rendering it inadequate to establish the requisite causal connection between Plaintiff's alleged injury and the alleged non-disclosure.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PHILADELPHIA

2

HP'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT

1      For these reasons and others set forth below, the Court should enter summary

2  judgment for HP on all of Plaintiff's remaining claims.

3  **II.    FACTS**

4      HP sells color LaserJet printers and related print cartridges.  *See* Complaint

5  ("Compl.") at ¶ 13.  HP does not promise its customers use of every particle of

6  toner in their print cartridges – and Plaintiff does not claim otherwise.  *See*

7  *generally* Compl.; *see also* Part. Dec., Ex. 1 (December 18, 2008 Deposition of

8  Plaintiff) at 38:22 – 39:7; 88:4-21; 129:17 – 130:8.[1]  In fact, it is impossible to use

9  every particle of toner from a print cartridge for printing.  *See* Declaration of Robert

10  A. Particelli, III in Support of HP's Opposition to Plaintiff's Motion for Class

11  Certification, Ex. 4 (Deposition of Darius Boockholdt) at 32:23-33:10.  Instead, the

12  User Guide for Plaintiff's printer model indicated that "[t]he life of a print cartridge

13  depends on the amount of toner print jobs require," but that the print cartridges last

14  "an average of 2,000 pages" based on 5% coverage.  *See* Part. Dec., Ex. 2 (User

15  Guide for HP Color LaserJet 2550 Series) at 68.[2]  The outside of Plaintiff's printer

16  box also disclosed a page yield and did not promise access to every particle of

17  toner.  *See* Part. Dec., Ex. 1 at 50:14-19; Part. Dec., Ex. 3 (Plaintiff's Printer Box

18  images) (indicating that box includes "[t]hree up to 2,000 page color print

19  cartridges" and placing figure "2000" next to each color).  Notably, Plaintiff's

20  claims are not based on any allegation that HP did not deliver on that yield.

21      Plaintiff's printer model uses lights on the control panel in combination with

22  the User Guide to indicate the status of its print cartridges.  *See* Part. Dec., Ex. 2 at

23  24; 91-93; Compl. at ¶ 15.  A blinking light combined with the termination of

24  printing activity has several possible meanings - either the cartridge is "empty or

25  missing, or the printer cannot detect the print cartridge correctly."  *See* Part. Dec.,

26

---

27  [1]      Exhibit references herein are to the exhibits attached to the accompanying
Declaration of Robert A. Particelli, III ("Part. Dec.").

28  [2]      *See also id.* at 120; 137 (disclosing page yields).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PHILADELPHIA

3

HP'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT

Ex. 2 at 93; Compl. at ¶ 15.  When a blinking light appears, the User Guide advises the user that he "must replace the print cartridge before the printer can continue printing."  *See* Part. Dec., Ex. 2 at 93; *see also id.* at 24; 91; Compl. at ¶¶ 15-16.  Plaintiff agrees that he had no choice at that point but to replace his cartridge to keep printing.  *See* Part. Dec., Ex. 1 at 100:8-19.[3]

Plaintiff bought his model 2550L HP color LaserJet printer from an OfficeMax store in California on February 19, 2005.  *See* Compl. at ¶ 23; Part. Dec., Ex. 1 at 23:5-9; 47:2-5; Part. Dec., Ex. 4 (Plaintiff's Printer Receipt).  Plaintiff earlier saw an OfficeMax advertisement indicating the printer was on sale.  *See* Part. Dec., Ex. 1 at 47:18-48:6.  When Plaintiff went to OfficeMax, a 2550L printer was set up in the store and a salesperson showed him how the printer operated.  *See id.* at 51:13-22.  Plaintiff reviewed documents printed in the store "[b]ecause [he] wanted to see what kind of quality it printed."  *See id.* at 53:1-6; 51:24-52:4.  Plaintiff also read at least portions of his printer box before deciding on his printer.  *See id.* at 48:15-24.  Beyond that, Plaintiff testified that he saw no additional written materials in OfficeMax that influenced his purchase decision and no one made any representation that he relied on in purchasing his printer.  *See id.* at 52:13-16; 54:11-13.  Thus, the only written materials Plaintiff claims he reviewed in deciding to buy his HP 2550L printer were the OfficeMax ad and the in-store print outs mentioned above (*id.* at 55:4-9), although Plaintiff also saw the outside of his printer box.  *Id.* at 48:15-24.

Plaintiff testified that he expected when he bought his printer that he would be able to use every particle of toner in his print cartridges.  *See id.* 22:23-23:4.  Importantly, though, there is no dispute that nothing HP said created Plaintiff's expectation.  *See id.* at 38:22-39:7; 88:4-21; 129:17-130:8.

---

[3]    Certain customers devised ways to continue printing past this point, but HP has accepted as true for purposes of its summary judgment motion Plaintiff's view that continued printing was impossible.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PHILADELPHIA

HP'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT

1    Plaintiff testified that, after using his printer for some time, he saw a blinking
2    light on his control panel and replaced his yellow print cartridge.  *See id.* at 57:3-5;
3    57:21-58:11; 75:24-25.  Plaintiff interpreted the blinking light as an instruction to
4    replace his print cartridge.  *See id.* at 131:11-14.  He did not, however, rely upon
5    any written materials to conclude that his cartridge was "empty" or needed to be
6    replaced.  *See id.* at 111:5-19.  In addition, Plaintiff has not seen any HP
7    advertisement or marketing materials that he believes misled others into believing
8    that HP print cartridges were "empty."  *See id.* at 142:11-16.  Plaintiff did not
9    contact HP to complain, ask for a refund or free cartridges or make a warranty
10   claim once he allegedly learned there was still toner remaining in his print
11   cartridge.  *See id.* at 70:25-71:6; 176:23-177:1; 73:8-14; 170:12-16.

12   Plaintiff does not know if any of the toner allegedly remaining in his original
13   print cartridge was useable and he has no facts to support the allegation in his
14   Complaint that a "significant amount of useable toner remains."  *See id.* at 136:2-
15   11; 70:22-24; *see also id.* at 133:19-23.  Toner is not acceptable to Plaintiff if it
16   results in streaked or faded printing.  *See id.* at 183:13-22.  Rather, Plaintiff
17   correctly testified that he has no use for toner except to print and, therefore, "[i]f it
18   didn't completely print the page, I don't see how it would be useful to me,
19   personally."  *See id.* at 188:2-6; 188:24-189:7.

20   Plaintiff took his printer "out of service" (*i.e.*, stopped using it) at some point,
21   although he testified that he could not recall when.  *See id.* at 31:22-33:2; 66:1-8.
22   Plaintiff testified that he could not recall even whether he stopped using his printer
23   before or after he filed the instant lawsuit.  *See id.* at 67:9-15.  Still, Plaintiff agreed
24   that it would not be surprising if he used his printer sometime in 2008 – after this
25   lawsuit was filed.  *See id.* at 106:14-20.

26   The inspection of Plaintiff's print cartridges performed during discovery
27   confirms that Plaintiff's printer printed pages in 2008.  Specifically, the inspection
28   of the replacement print cartridges Plaintiff claims to have bought for his printer

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PHILADELPHIA

5

HP'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT

1   revealed that they last printed a page no later than January 2008.  *See* Part. Dec.,

2   Ex. 5 (Supplies Status Screen Shots from Inspection) (indicating "Last used date"

3   to be January 27, 2008).  In that case, it appears that, according to his own

4   testimony, Plaintiff did not become aware of the basis of his lawsuit until after it

5   was filed by his counsel.  Plaintiff testified that he first believed he had a claim

6   against HP when he dropped a box that held his printer and allegedly saw yellow

7   toner fall out, which occurred at or after the time he last used his printer which, in

8   turn, occurred in January 2008 after his lawsuit was filed.  *See* Part. Dec., Ex. 1 at

9   31:22-32:2; 70:1-12; 19-21.

10  **III.  ARGUMENT**

11        **A.     Plaintiff Cannot Satisfy The Elements Of His Trespass To Chattels**

12              **And Conversion Claims.**

13                 1.     California Law Does Not Recognize Plaintiff's Novel

14                     "Trespass/Conversion By Design" Theory.

15        Plaintiff alleges that HP committed the torts of trespass to chattels and

16  conversion by designing his print cartridges to include a "hardstop" that prevented

17  him from accessing every particle of toner in the cartridges.[4]  *See* Compl. at ¶¶ 66-

18  67, 71-72; Memorandum of Points and Authorities for Plaintiff's Motion for Class

19  Certification ("Pl.'s Class. Cert. Br.") at 15.  Plaintiff's "trespass/conversion by

20  design" theory appears unprecedented – HP has not located a single case in which a

21  product manufacturer was held liable to its customers on a tort trespass or

22  conversion theory for designing a product that operates *exactly* as intended, sold,

23  and purchased, and that is not thereafter altered or interfered with in any way.

24  Another District Court in this Circuit acknowledged as much when it rejected

25  substantively identical claims Plaintiff's counsel in this case brought against HP:

26

27  ─────────────────
    [4]     As HP explained in opposing class certification, although California law
28  applies to Plaintiff's claims because he is a California resident, it cannot apply to
    every putative class member's claims.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PHILADELPHIA

6

HP'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT

1    Plaintiffs . . . alleg[e] the following. . . . HP has designed its [ink jet]
2    printers to shut down before they have run out of ink on an undisclosed
3    "expiration date."  This design prevents consumers from using a
4    significant amount of ink left in the cartridge. . . .

5           *  *  *

6    Finally, HP contends that Plaintiffs have failed to state a claim for
7    conversion and trespass to chattels. . . . Plaintiffs cite no authority
8    holding that a design defect constitutes either a wrongful act resulting
9    in a conversion of property or an intentional interference with one's
10   right of possession.  For these reasons, the Court will dismiss
11   Plaintiffs' claims for trespass to chattels and conversion with leave to
12   amend.

13  *Blennis*, 2008 U.S. Dist. LEXIS 106464, at *1-2, *16-17;[5] *compare* Compl. at

14  Counts IV and V *with* Part. Dec., Ex. 6 (Complaint in *Blennis, et al. v. Hewlett-*

15  *Packard Co.*) at Counts VI and VII.  There is no reason for a different result in this

16  case.

17    "Using or intermeddling with the chattel in the possession of another" is

18  actionable only if (i) "the chattel is impaired as to its condition, quality, or value" or

19  (ii) "the possessor is deprived of the use of the chattel for a substantial time."  *See*

20  Restatement (Second) of Torts §§ 217; 218(b)-(c); *Intel Corp. v. Hamidi*, 30 Cal.

21  4th 1342, 1357 (2003) (citing Restatement).  Plaintiff's "conversion/trespass by

22  design" claims are fundamentally flawed because they ignore the nature of his

23  actual chattel (*i.e.*, his printing system made up of his printer and print cartridge)

24  and, therefore, his relevant property interests.  *Cf. Hamidi*, 30 Cal. 4th at 1358

25  (explaining that trespass to chattels protects only property interests).  Plaintiff did

26

27  [5]   Plaintiffs in the *Blennis* case did not amend their conversion or trespass claims.  In addition, Plaintiff's counsel in this case chose not even to assert a trespass or conversion claim in what they claim was a similar case against Epson.  *See* Pl.'s Class Cert. Br. at 13; *see id.* at Ex. 22 at 2.

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PHILADELPHIA

HP'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT

1  not buy a printing system that permitted him to access every particle of toner, only

2  to have HP later prevent him from accessing those toner particles, but rather

3  purchased a printing system that was designed to include – and actually included –

4  a "hardstop."  *See* Pl.'s Class Cert. Br. at 1 (alleging that hardstop "cannot be

5  overridden").  Accordingly, Plaintiff's property interests in his chattels are defined

6  and limited by the pre-sale design of those chattels – *i.e.*, a printing system *with* a

7  "hardstop."  Because Plaintiff purchased a printer/print cartridge with a "hardstop,"

8  the chattels were not "impaired as to [their] condition, quality, value" when his

9  printing system experienced the "hardstop."  To the contrary, the chattels operated

10  precisely according to their "condition, quality [or] value."

11      The analysis is the same for Plaintiff's conversion claim.  "Stated generally,

12  conversion is any act of dominion wrongfully exerted over another's personal

13  property in denial of or inconsistent with his rights therein."  *See Zaslow v.*

14  *Kroenert*, 29 Cal. 2d 541, 549 (1946) (internal quotation omitted).  HP never denied

15  Plaintiff any rights in his chattel.  Quite the opposite – Plaintiff acquired a

16  printer/print cartridge with a "hardstop" and maintained his ownership and

17  possessory interest in that chattel uninterrupted by HP.

18      Once Plaintiff's chattel is identified correctly, it becomes clear that he does

19  not claim that HP interfered with the actual chattel he received (*i.e.*, a printer/print

20  cartridge with a "hardstop"), but rather that HP trespassed upon or converted that

21  printer/print cartridge by not providing him with a different printer/print cartridge

22  (*i.e.*, one without a "hardstop").  Because Plaintiff never acquired any property

23  interest in a different printer/print cartridge, however, that claim fails as a matter of

24  law and logic.

25      Plaintiff's theory also would have drastic consequences.  Under Plaintiff's

26  view, a manufacturer of a product that functioned just as it was designed who

27  complied in all respects with its warranty and made no misrepresentations about the

28  product could nevertheless be liable under a trespass/conversion theory if it could

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PHILADELPHIA

8

HP'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT

1   have provided a "better" product.  That cannot be the law – as the *Blennis* case

2   confirms.

3        *Hamidi* is instructive and demonstrates why Plaintiff's novel theory is

4   inconsistent with California law.  In that case, a former Intel employee sent e-mails

5   to current Intel employees complaining about Intel's employment practices,

6   although the e-mails "caused neither physical damage nor functional disruption to

7   [Intel's] computers."  *See Hamidi*, 30 Cal. 4th at 1346.  The Court rejected Intel's

8   trespass to chattels claim because its computer system continued to operate as it

9   was designed without any impairment to its intended function and, therefore, Intel

10  suffered no actionable injury to its property.  *See id.* at 1347; *see also Ticketmaster*

11  *Corp. v. Tickets.com, Inc.*, No. 99-7654, 2003 U.S. Dist. LEXIS 6483, at *12 (C.D.

12  Cal. Mar. 7, 2003).  Plaintiff's chattel (*i.e.*, his printer/print cartridge with a

13  "hardstop") likewise worked just as it was designed without any impairment to its

14  intended function and, therefore, his claims must similarly fail.  In fact, by

15  prohibiting trespass claims where the product at issue works just as it was designed,

16  *Hamidi* necessarily rejected Plaintiff's "trespass by design" theory.

17          2.     <u>Plaintiff's Theory, By Definition, Means That HP Never</u>

18                <u>Interfered With His Chattel After He Took Possession Of It.</u>

19       Plaintiff's theory also precludes him from showing that HP "intermeddled"

20  or otherwise interfered with his printer/print cartridge *after* he assumed an

21  ownership or possessory interest in the printer/print cartridge, as California law

22  requires.  *See* Restatement (Second) of Torts § 217(b); *Hamidi*, 30 Cal. 4th at 1357.

23  Plaintiff does not allege that HP took any action toward his printer or print cartridge

24  after he bought them – let alone that HP brought about "a physical contact with"

25  either, as the law requires.  *See* Restatement (Second) of Torts § 217 cmt. e

26  (defining "intermeddling").  Nor could he.  After Plaintiff took possession of his

27  printer, there is no allegation that HP made any contact with it or his print cartridge

28  – either by human touch or electronic signal originating from HP.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PHILADELPHIA

HP'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT

1          3.      Plaintiff Suffered No Property Injury That Could Support His

2                  Claims.

3          Plaintiff also cannot show any property injury resulting from the "hardstop"

4    because there is no evidence in the record that useable toner remained in his print

5    cartridge.  Plaintiff concedes that he must prove that *useable* toner remained in his

6    print cartridges.  *See* Pl.'s Class Cert. Br. at 15 (identifying "[t]he last issue [for his

7    instant claims] as "whether ***useable*** toner remains in the cartridge") (emphasis

8    added).  As Plaintiff agreed, toner has no use except for printing and is useful only

9    if it is capable of producing acceptable quality printed pages.  *See* Part. Dec., Ex. 1

10   at 183:13-22; 188:2-6; 188:24-189:7.  Logically, therefore, under *Hamidi*, Plaintiff

11   suffered no property injury if the toner he could not access was not useable.

12   Plaintiff has no idea whether any of the toner that remained in his print cartridge

13   was useable, but perhaps more importantly, no expert has attested to that conclusion

14   for Plaintiff, which is required for such an issue beyond the experience and

15   knowledge of a lay person.  *See id.* at 133:19-23; 136:2-11; 70:22-24.[6]

16   Accordingly, Plaintiff's trespass and conversion claims fail for this reason as well.

17         Even if Plaintiff could show that *useable* toner remained, his claims still fail

18   because, given the nature of his chattel, he never bought the right to use any such

19   toner.  *Cf.* October 30, 2007 Memorandum and Order ("10/30/07 Mem.") at 4.

20   Because Plaintiff only bought a printer/print cartridge with a "hardstop," he

21   logically bought an interest in and the right to use only that toner that he used

22   before the "hardstop."

23         4.      Plaintiff's Theory Finds No Support In California Law.

24         *eBay, Inc. v. Bidder's Edge, Inc.*, 100 F. Supp. 2d 1058 (N.D. Cal. 2000)

25   does not help Plaintiff.  The defendant in that case used eBay's website

---

26   [6]      *See, e.g.*, *Claar v. Burlington Northern Railroad Co.*, 29 F.3d 499, 504 (9th
     Cir. 1994); *see also Ballard v. United States*, Case No. EDCV 06-715-VAP(OPx),
27   2007 U.S. Dist. LEXIS 96124, at *11-*12 (C.D. Cal. Aug. 28, 2007); *Layton v.
     Yankee Caithness Joint Venture*, 774 F. Supp. 576, 580 (D. Nev. 1991); Rutter
28   Group Practice Guide: Federal Civil Trials and Evidence Ch. 8F-C, 8:1651.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PHILADELPHIA

10

HP'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT

approximately 100,000 times a day by sending "web crawlers" to retrieve information and, in doing so, consumed a portion of eBay's computer capacity that eBay could then not use. *See eBay*, 100 F. Supp. 2d at 1071. *eBay* (which pre-dated *Hamidi*) is neither a "trespass by design" case nor even a claim brought by a buyer of a product against its manufacturer and, therefore, provides no support for Plaintiff's claims. The defendant's use of eBay's computer system also occurred during eBay's ownership of that system and actually impaired its quality and value, neither of which is true in this case.[7] Plaintiff does not allege that HP had any contact (by human touch, electronic signal or otherwise) with his printer/print cartridge after he took possession of them. In addition, eBay's computer system did not remain in the same condition as when eBay first acquired it and, therefore, arguably was "impaired as to its condition, quality, or value" as a result of the defendant's conduct. eBay bought and created a computer system of a certain capacity capable of a certain level of use, but because of the defendant's conduct, it received a computer system with less capacity and available use. In this case, on the other hand, the nature of Plaintiff's printer/print cartridge never changed – he always possessed a printer/print cartridge with a "hardstop."[8]

---

[7]     The court's decision was also based on the defendant's *use* of the chattel at issue, not its alleged *intermeddling* (which is at issue in this case). *See eBay*, 100 F. Supp. 2d at 1070; Restatement (Second) of Torts §§ 217; 218(b)-(c) (identifying "use" or "intermeddling" as alternative theories of trespass to chattel).

[8]     None of Plaintiff's other cases is a "trespass/conversion by design" case brought by a buyer of a product against its manufacturer. *Winkler v. DTE, Inc.*, 205 F.R.D. 235 (D. Ariz. 2001) also applied Arizona law and the chattel at issue was money. That is not this case. In *Oyster Software, Inc. v. Forms Processing, Inc.*, No. 00-724, 2001 U.S. Dist. LEXIS 22520 (N.D. Cal. Dec. 6, 2001), which also did not involve a claim by a buyer of a product against the manufacturer based on its design, the defendant copied information from the plaintiff's website. There is no allegation in this case, however, that HP had any contact with Plaintiff's printer/print cartridge after he bought them. Moreover, like *eBay*, the court's decision rested on the defendant's "use" of the plaintiff's property rather than any alleged "intermeddling." *See Oyster Software*, 2001 U.S. Dist. LEXIS 22520, at *39-41. In fact, the plaintiff in that case could not show that the defendant's use of its property impaired its basic function. *See id.* at *39. In light of *Hamidi*, which was decided after *Oyster Software*, such impairment is necessary under California law. *See Hamidi*, 30 Cal. 4th at 1357 n.5 (criticizing *Oyster Software*). In two

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PHILADELPHIA

11

HP'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT

## B. The Economic Loss Rule Bars Plaintiff's Trespass/Conversion Claims.

Even if Plaintiff could overcome the flaws in his trespass/conversion claims set forth above, they would be barred by California's economic loss rule, which precludes recovery in tort for a plaintiff who has suffered only "economic losses" without any accompanying personal injury or damage to a product other than the disputed product at issue. *See, e.g., Robinson Helicopter Co., Inc. v. Dana Corp.*, 102 P.3d 268, 272-73 (Cal. 2004); *Jimenez v. Superior Court*, 58 P.3d 450, 455-57 (Cal. 2002); *Seely v. White Motor Co.*, 403 P.2d 145, 149-52 (Cal. 1965). The economic loss rule ensures that the law of sales contracts, which has been developed to govern the relationship between suppliers and purchasers of goods, is not overrun by tort law. *See Robinson Helicopter Co.*, 58 P.3d at 272-73; *Seely*, 403 P.2d at 150. Thus, where a plaintiff who suffers only economic harm sues in tort (including for conversion) alleging that the defendant failed to provide the product he expected or the defendant warranted, his claims are barred by the economic loss rule.[9]

Plaintiff's claims are premised on a particular characteristic of his printer/print cartridge (*i.e.*, the "hardstop") and his related allegation that he did not

California cases Plaintiff has cited (*Hamidi* and *McKell v. Washington Mutual, Inc.*, 49 Cal. Rptr. 3d 227 (2006)), the plaintiff's claims were actually dismissed. In any event, neither was a "trespass/conversion by design" case brought against a product's manufacturer. *Hamidi* is discussed above and in *McKell*, the plaintiff claimed that the defendant overcharged for certain services and alleged that the amount of the overcharge was the chattel the defendant converted.

[9]   *See Robinson Helicopter*, 58 P.3d at 272 ("[W]here a purchaser's expectations in a sale are frustrated because the product he bought is not working properly, his remedy is said to be in contract alone, for he has suffered only economic losses.") (internal quotations omitted; alteration in original); *Lincoln Gen. Ins. Co. v. Access Claims Adm'rs, Inc.*, No. S-07-1015, 2007 U.S. Dist. LEXIS 67172, at *22-23 (E.D. Cal. Aug. 29, 2007) ("Under California law, purely economic losses due to disappointed expectations do not constitute cognizable injury."); *see also Barrier Specialty Roofing & Coatings, Inc. v. ICI Paints N. Am., Inc.*, No. F 07-1614, 2008 U.S. Dist. LEXIS 104963, at *13-16 (E.D. Cal. May 6, 2008); *East River Steamship Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 871-72 (1986) (applying economic loss rule to conversion claim).

HP'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT

1   receive the product he expected or that HP warranted.  The condition and operation

2   of Plaintiff's printer and print cartridges, however, were defined by HP's warranties

3   and, in fact, Plaintiff expressly alleges that HP breached its warranty.  *See, e.g.,*

4   Part. Dec., Ex. 2 at 129-130; 131 (Plaintiff's printer and print cartridge warranties

5   included in his User Guide); Compl. at ¶ 60.  Thus, Plaintiff's trespass/conversion

6   tort claims complain of nothing more than an alleged failure by HP to deliver a

7   product designed with certain characteristics, allegedly in breach of its warranty.

8   Consequently, Plaintiff's trespass/conversion claims also are barred by California's

9   long-standing economic loss rule.

10  **C.    Plaintiff's Fraud Claim Fails Because He Never Saw HP's Alleged**

11  **"Empty" Representation And Because Any Such Representation**

12  **Did Not Cause Him To Replace His Cartridge.**

13  "The elements of fraud in California are [*inter alia*]: (1) a misrepresentation

14  (false representation, concealment or nondisclosure) . . . (4) justifiable reliance; and

15  (5) resulting damage."  *See* 10/30/07 Mem. at 7.  Plaintiff admitted in his

16  deposition, however, that his complaint is not based on the message communicated

17  by HP, but rather the technical operation of his printer/print cartridges.[10]  It appears,

18  therefore, that Plaintiff has foregone any fraud claim against HP.  Nevertheless,

19  because Plaintiff has not withdrawn his claim, HP has demonstrated below

20  additional reasons why it is entitled to summary judgment.

21  **1.    Plaintiff Did Not See HP's Alleged "Empty" Misrepresentation.**

22  Plaintiff alleges that HP affirmatively misrepresented to him at the time his

23  printer stopped functioning that his print cartridge was "empty."  *See* Pl.'s Class

24  Cert. Br. at 20;[11] Compl. at ¶¶ 2, 26.  The word "empty" does not appear on the

25

26  _____

[10]    *See* Part. Dec., Ex. 1 at 131:6-10 ("Q: Your problem is not so much with the message that is communicated.  It's the fact that the printer cartridge has a hard stop and wouldn't print anymore; is that right?  A: That is correct.").

27

28  [11]    There is no question Plaintiff's fraud claim is based on an alleged "empty" affirmative misrepresentation.  *See* Pl.'s Class Cert. Br. at 20.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PHILADELPHIA

13

HP'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT

1  control panel of Plaintiff's printer, however, and the blinking light on his printer
2  could have meaning only in combination with the User Guide.  But Plaintiff did not
3  see the term "empty" in his User Guide when his printer stopped printing.  Rather,
4  he testified unequivocally that he did not rely upon any written materials to
5  conclude that his cartridge was "empty" or needed to be replaced.  *See* Part. Dec.,
6  Ex. 1 at 111:5-19; *see also id.* at 111:5-15; 86:7-13; 96:21-25; 98:21 – 100:9.
7  Taking Plaintiff's testimony as true, therefore, he did not receive the alleged
8  "empty" representation that is the basis for his claim.

9      In truth, the message Plaintiff claims he received was entirely accurate.
10  Plaintiff interpreted the blinking light on his printer as an instruction to replace his
11  print cartridge.[12]  Such an instruction cannot constitute a misrepresentation because
12  it is not a statement of a past or existing fact.  *See, e.g.*, *In re: Brocade Comm. Sys.*
13  *Litig.*, No. C 05-02233 CRB, 2009 U.S. Dist. LEXIS 295, at *51 (N.D. Cal. Jan. 6,
14  2009).  In any event, there is no dispute that Plaintiff actually had to replace his
15  print cartridge in order to continue printing.  *See* Part. Dec., Ex. 1 at 100:8-19;
16  Compl. at ¶¶ 2, 15.  Accordingly, HP's instruction was an entirely accurate and
17  appropriate statement describing the operation of his printer.  Indeed, in the
18  settlement of the lawsuit against Epson that Plaintiff's counsel has referenced,
19  Plaintiff's current counsel agreed that Epson would cure its alleged misconduct by,
20  *inter alia*, "indicat[ing] that it is time to replace the cartridge" – the same message
21  Plaintiff received in this case.  *See* Part. Dec., Ex. 7 (excerpts from Settlement
22  Agreement in *In re Epson Ink Cartridge Cases*) at 10, ¶ 2.8(iii); Part. Dec., Ex. 8
23  (excerpts from Final Approval Order in *In re Epson Ink Cartridge Cases*) at 12.

24
25
26

27  ------------------------
    [12]    *See* Part. Dec., Ex. 1 at 131:11-14 ("Q: So to you, it wouldn't have mattered
28  if you had received a message that said 'Replace Cartridge,' but with a hard stop?
    A: That's exactly what I got.").

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PHILADELPHIA

14

HP'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT

1      2.    <u>Even If Plaintiff Had Seen The Term "Empty," It Did Not Cause</u>

2      <u>Him To Replace His Print Cartridge.</u>

3      Plaintiff claims that HP's alleged "empty" representation caused him to

4 purchase replacement print cartridges prematurely. *See* Compl. at ¶ 26; 10/30/07

5 Mem. at 7-8; Pl.'s Class Cert. Br. at 19. As Plaintiff admitted at his deposition,

6 however, that allegation is inaccurate because he purchased replacement cartridges

7 *before* any blinking light appeared on his printer control panel. *See* Part. Dec., Ex.

8 1 at 73:22-25; 84:1-85:3; *see also id.* at 81:23-82:3.[13] Obviously, as Plaintiff

9 agrees, if he bought his replacement cartridges *before* any blinking light appeared

10 on his printer, no such blinking light could have caused his replacement purchase.

11 *See id.* at 137:24-138:5; *see Bank of St. Helena v. Lilienthal-Brayton Co.,* 89 Cal.

12 App. 258, 263 (1928) (plaintiff cannot rely on statements received "after he has

13 consummated the transaction").

14      Plaintiff also cannot prove a causal connection between any blinking light on

15 his printer or an "empty" message in his User Guide and the purchase of a

16 replacement print cartridge because his printer would not operate without a

17 replacement cartridge. Thus, even where (as here) (i) a user could not have been

18 deceived because he did not see the term "empty" or (ii) a user knew that additional

19 toner remained in his print cartridge (or if HP personally told him as much), he still

20 must replace his print cartridge at the exact same time in order to continue printing.

21 Logically, therefore, there is no causal relationship between the receipt of any

22 blinking light or "empty" message and the purchase of replacement print cartridges.

23 Plaintiff's own pleadings confirm this point. According to Plaintiff, "[w]hether

24 users actually believed that they had to replace the cartridge and whether users

25 actually believed HP's representations for why their printer stopped printing is

---

26  [13]    At his deposition, Plaintiff testified that he does not know why his Complaint

27 alleges otherwise. *See* Part. Dec., Ex. 1 at 84:23-85:3 ("Q: Do you have any understanding how this paragraph got stuck in this complaint if that's not a correct statement of the truth? A: No. My lawyers had provided this information. I

28 provided them information, and they drafted the documents.").

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PHILADELPHIA

15

HP'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT

1  inconsequential, because users must replace the purportedly empty cartridge even if

2  they want to continue using their printer." *See* Pl.'s Class Cert. Br. at 19.  Plaintiff

3  is correct – HP's *message* does not cause the replacement of any print cartridge.

4      Plaintiff has not argued that any misrepresentation from HP caused him to

5  purchase his HP 2550L printer, presumably because class certification would be

6  impossible under such a theory.  Nor could he for several reasons.  Plaintiff agrees

7  that his alleged expectation that he would use every particle of toner in his print

8  cartridge was not caused by anything HP said to him.  In addition, according to

9  Plaintiff, the only written materials he reviewed in deciding to buy his HP 2550L

10  printer (the OfficeMax ad that indicated the printer was on sale and the documents

11  OfficeMax printed out with the printer in the store (Part. Dec., Ex. 1 at 55:4-9))

12  were not even from HP, let alone misleading.

13      **D.   Plaintiff's UCL Claim Fails.**

14      Plaintiff's final claim is that HP violated the UCL, which generally prohibits

15  unlawful, fraudulent or unfair conduct.  *See* Cal. Bus. & Prof. Code § 17200.  HP

16  has identified below several reasons Plaintiff's claim fails under each prong of the

17  UCL.  For Plaintiff's entire UCL claim, however, HP is entitled to summary

18  judgment because Plaintiff cannot satisfy the causation element of his claim.

19      After Proposition 64, a plaintiff must have "suffered an injury in fact and . . .

20  lost money or property ***as a result of***" the defendant's allegedly improper conduct

21  to have standing to sue under the UCL.  *See* Cal. Bus. & Prof. Code §§ 17203,

22  17204 (emphasis added).  Thus, a UCL plaintiff must show a causal connection

23  between his alleged loss of money and the defendant's allegedly wrongful conduct.

24  *See, e.g., Daro v. Superior Court*, 151 Cal. App. 4th 1079, 1098-99 (1st Dist.

25  2007); *Laster v. T-Mobile USA, Inc.*, 407 F. Supp. 2d 1181, 1194 (S.D. Cal. 2005).

26  Plaintiff made two possibly relevant monetary payments in this case: (1) his printer

27  purchase and (2) his purchase of replacement print cartridges, but neither payment

28  was caused by HP's allegedly wrongful conduct.  As explained above, Plaintiff has

Morgan, Lewis &
Bockius LLP
Attorneys At Law
Philadelphia

16

HP'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT

not even argued that his printer purchase was caused by any allegedly improper conduct by HP.  Nor could he, given his admission that nothing HP said caused his alleged expectation that he would be able to use every particle of toner in his print cartridge.  Not only that, but as HP explained above, the only written materials Plaintiff claims he saw before his printer purchase were neither from HP nor misleading in any way.  *See* Part. Dec., Ex. 1 at 48:15-24; 55:4-9.

Instead, Plaintiff has argued that his payment for replacement print cartridges was caused by HP's allegedly wrongful conduct.  Plaintiff's own deposition testimony precludes that theory, however, whether he relies on the term "empty" in his User Guide or the mere existence of the "hardstop."  HP already demonstrated above (and Plaintiff agrees) that its *message* does not cause the purchase of replacement cartridges.  In addition, Plaintiff did not see the term "empty" in HP's User Guide when the blinking light appeared on his printer.  Finally, because Plaintiff bought his replacement cartridges *before* his printer reached the "hardstop," he could not have made that purchase "as a result of" the "hardstop."  In all cases, Plaintiff lacks standing because he cannot show a causal connection between HP's allegedly wrongful conduct and his payments.  *See, e.g., Daro*, 151 Cal. App. 4th at 1086, 1097; *Hall v. Time Inc.*, 158 Cal. App. 4th 847, 855 (4th Dist. 2008); *Chavez v. Blue Sky Natural Beverage Co.*, 503 F. Supp. 2d 1370, 1373 (N.D. Cal. 2007); *Peterson v. Cellco Partnership*, 164 Cal. App. 4th 1583, 1590 (4th Dist. 2008).

Plaintiff's claims fail on causation grounds in another respect.  There is no allegation that Plaintiff considered purchasing a color printer without a "hardstop" (or that any such printer was even available at the time of Plaintiff's printer purchase) and that he instead chose his HP printer.  Indeed, Plaintiff testified that he does not recall any features on any other printers he considered that were not included in his HP printer.  *See* Part. Dec., Ex. 1 at 53:12-15.  Because Plaintiff cannot show, therefore, that HP caused him to forego an opportunity to purchase a

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PHILADELPHIA

17

HP'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT

1    printer without a "hardstop," his claims fail for this reason as well.  *Cf. Peterson*,

2    164 Cal. App. 4th at 1593 n.5.

3          In addition to his causation failures, Plaintiff cannot show that he actually

4    "lost money" at all.  Plaintiff bought a printer/print cartridge with a "hardstop" and

5    that is exactly what he received.  In other words, Plaintiff received the exact

6    product for which he paid and, therefore, cannot be said to have "lost money" under

7    California law.  *See, e.g.*, *id.* at 1592 (rejecting definition of "lost money" as simply

8    payment of money and explaining that purchaser who receives appropriate product

9    in exchange for payment has not "lost money").

10                       1.    Plaintiff's "Unlawful" Claim Fails.

11          The "unlawful" prong of the UCL borrows violations of other laws.  *See,*

12    *e.g.*, *Daugherty*, 144 Cal. App. 4th at 837.  Plaintiff's "unlawful" claim alleges that

13    HP breached its warranty and committed false advertising under the California

14    False Advertising Law, but neither theory has merit.  *See, e.g.*, Compl. at ¶¶ 58, 60.

15    HP warranted Plaintiff's printer and print cartridges against "defects in materials

16    and workmanship" for one year and agreed, upon notice to it within the warranty

17    period, to repair or replace any defective parts.  *See* Part. Dec., Ex. 2 at 129-130;

18    131.  Plaintiff does not allege that his printer or print cartridge contained alleged

19    defects that caused them to operate in some way other than as intended, however –

20    and he cannot assert a warranty claim based on the design of his product.  *See, e.g.*,

21    Compl. at ¶¶ 2, 27; *Brothers v. Hewlett-Packard Co.*, No. 06-2254, 2007 U.S. Dist.

22    LEXIS 13155, at *14 (N.D. Cal. Feb. 12, 2007) (rejecting warranty claim based on

23    design of product).  In addition, Plaintiff did not submit a warranty claim or ask HP

24    to repair/replace his printer/print cartridges because of the "hardstop" before he

25    sued and, therefore, Plaintiff cannot prove a breach of warranty claim for this

26    reason as well.[14]

27    ────────────────────────
28    [14]    *See, e.g.*, Cal. U.C.C. § 2607(3)(A); Part. Dec., Ex. 2 at 129-130; 131; Part.
         Dec., Ex. 1 at 70:25- 71:6; 73:8-14; 170:12-16; 176:23-177:1.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PHILADELPHIA

18

HP'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT

For his false advertising claim, Plaintiff conceded at his deposition that he never saw any HP advertisement or marketing materials that he believed were false because they misled customers into believing that HP's print cartridges were empty. *See* Part. Dec., Ex. 1 at 142:11-16.  Moreover, the OfficeMax ad described above (the only advertisement Plaintiff claims he saw before he bought his printer) was neither from HP nor misleading in any way.  Consequently, Plaintiff cannot prove a false advertising violation.  *See, e.g.*, *Californians for Disability Rights v. Mervyn's, LLC*, 138 P.3d 207, 209 (Cal. 2006) (explaining that Proposition 64 precludes suits by persons who had not "viewed the defendant's advertising"); *see also Meinhold v. Sprint Spectrum, L.P.*, No. Civ. S-07-00456, 2007 U.S. Dist. LEXIS 35806, at *19 (E.D. Cal. May 16, 2007) (dismissing claims under § 17200 and § 17500 where plaintiff did not identify "what advertisements she [was] referring to, when she saw them, where she saw them, or how the statements made in those specific advertisements were untrue or misleading"); *Hall*, 158 Cal. App. 4th at 855-58 (noting that the "as a result of" language in Proposition 64 requires causation and for a plaintiff to have seen and relied upon the alleged misrepresentation).

### 2.   Plaintiff's "Fraudulent" Claim Fails.

Plaintiff alleges that HP acted fraudulently under the UCL by informing him that his print cartridge was "empty."  *See* Compl. at ¶ 61.  There is an additional causation failure to this prong of Plaintiff's claim, however, beyond those set forth above.  As HP already explained, no allegedly fraudulent statement caused Plaintiff's replacement print cartridge purchase.  *See Daro*, 151 Cal. App. 4th at 1099 ("That causal connection is broken when a complaining party would suffer the same harm whether or not a defendant complied with the law.").[15]  Thus, to show

---

[15]   Moreover, even if HP had disclosed the existence of additional toner in Plaintiff's User Guide, Plaintiff would not have seen such a disclosure at the time his printer stopped functioning because, according to his own testimony, he did not read his User Guide at that point.  Thus, whether as a matter of materiality or causation, Plaintiff's claim fails for this reason as well.  *See Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1093 (1993); *Gawara v. United States Brass Corp.*, 63 Cal. App. 4th 1341, 1348-52 (4th Dist. 1998).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PHILADELPHIA

19

HP'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT

1  any payment caused by allegedly fraudulent statements, Plaintiff must rely on HP

2  statements made at the time of his printer purchase – but he has intentionally

3  avoided such a theory.

4        In addition, the "likely to deceive" test Plaintiff relies on did not survive the

5  Proposition 64 amendments to the UCL.  A plaintiff cannot show that he was

6  *actually* injured (as Proposition 64 requires) by attempting to show that others were

7  likely to have been deceived.  In any event, because Plaintiff never saw an "empty"

8  representation when his printer stopped, he can show neither actual

9  deception/reliance nor that anyone is likely to be deceived by a representation they

10  did not see.

11            3.    Plaintiff's "Unfair" Claim Fails.

12        Plaintiff alleges that HP acted unfairly because the "hardstop" in Plaintiff's

13  print cartridge "offend[s] established public policy" and because HP failed to

14  disclose to him that toner remained in his print cartridge.  *See* Compl. at ¶¶ 59; 61.

15  Where a UCL plaintiff relies on an alleged public policy violation as the basis for

16  his "unfair" claim, he must point to a specific legislative policy that the defendant

17  violated.  *See, e.g.*, *Buller v. Sutter Health*, 160 Cal. App. 4th 981, 990-91 (1st Dist.

18  2008).  Plaintiff's Complaint points to no such legislative policy, however, because

19  it cannot.  *See Schorsch*, 417 F.3d at 751 ("[N]o rule of law requires . . . toner

20  cartridges or any other consumer product to last for any prescribed period.").

21        Plaintiff also incorrectly claims HP acted unfairly because: (1) his alleged

22  injury was substantial; but (2) was not outweighed by any benefits to consumers;

23  and (3) he could not have avoided his allegedly injury.  *See, e.g.*, *Camacho v. Auto*

24  *Club of Southern Cal.*, 142 Cal. App. 4th 1394, 1403 (2d Dist. 2006).  Because

25  HP's message regarding the status of its print cartridges does not cause the purchase

26  of replacement cartridges (particularly in Plaintiff's case), Plaintiff's claims must

27  rest on the existence of the "hardstop."  Plaintiff, however, has not offered any

28  evidence to show that *useable* toner remained in his print cartridge (or that he paid

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PHILADELPHIA

20

HP'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT

1    for the right to use any such toner) and, therefore, he has not suffered any injury as
2    a result of the "hardstop."  The fact that Plaintiff does not rely on any alleged
3    failure from HP to deliver on its page yield also precludes his claim.  It cannot be
4    unfair for a manufacturer to provide the product it promises simply because it could
5    have provided something more – and Plaintiff has not cited a single case for such an
6    odd proposition, particularly under these circumstances where HP's cartridges leave
7    customers "better off."  *See Schorsch*, 417 F.3d at 751 (stating that consumers are
8    "better off" with HP's cartridge than one that includes just enough toner to meet
9    page yield).

10        **E.**     **Plaintiff's Non-Disclosure Claims Fail Because HP Is Not**
11               **Required To Fulfill An Expectation It Did Not Create.**

12        As explained above, Plaintiff has relied on HP's alleged "empty"
13   representation and, despite his earlier allegations, has not pursued a non-disclosure
14   claim – and for good reason.  Any such claim fails as a matter of law.  As the Court
15   previously recognized, Plaintiff's lawsuit rests on his alleged expectation that he
16   would be able to use every particle of toner in his print cartridges.  *See* 10/30/07
17   Mem. at 5.  After the Court's motion to dismiss decision, however, Plaintiff
18   acknowledged that his alleged expectation was not caused by anything HP said.
19   *See* Part. Dec., Ex. 1 at 22:23-23:4; 38:22-39:7; 88:4-21; 129:17-130:8.  As the
20   California Supreme Court explained, HP cannot be liable for failing to satisfy an
21   alleged expectation about its products that its representations did not create:

22        [A manufacturer] cannot be held for the level of performance of his
23        products in the consumer's business unless he agrees that the product
24        was designed to meet the consumer's demands. . . . [A consumer] can .
25        . . be fairly charged with the risk that the product will not match his
26        economic expectations unless the manufacturer agrees that it will.

27
28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PHILADELPHIA

21

HP'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT

1    *See Seely*, 403 P.2d at 151.[16]  Accordingly, because HP's representations did not

2    create Plaintiff's alleged expectation, HP cannot be liable for failing to provide him

3    with the product he claims he expected.[17]

4         Nor did HP have an inherent duty to disclose that Plaintiff's alleged

5    expectations would not be met.  Under California law, a defendant can only be held

6    liable for an omission when it is "contrary to a representation actually made by the

7    defendant, or an omission of a fact the defendant was obliged to disclose."

8    *Daugherty*, 144 Cal. App. 4th at 835.  As the United States District Court for the

9    Northern District of California held in dismissing a non-disclosure claim against

10   HP (which decision was recently affirmed by the Ninth Circuit Court of Appeals),

11   where "HP is not alleged to have made any representation as to the life of its

12   inverter, or even as to the useful life of its Pavilions . . . . [A] consumer's only

13   reasonable expectation was that the Pavilions would function properly for the

14   duration of HP's limited one-year warranty."  *Long v. Hewlett-Packard Co.*, No.

15   06-2816, 2007 U.S. Dist. LEXIS 79262, at *24 (N.D. Cal. July 27, 2007), *aff'd*, No.

16   07-16440, 2009 U.S. App. LEXIS 4492 (9th Cir. Mar. 3, 2009); *see also Bardin*,

17   136 Cal. App. 4th at 1275-76 (holding that defendant made no affirmative

18   representations as to the life of the component beyond the warranty period and,

19   thus, it did not violate CLRA when it failed to disclose that the use of lower quality

20   materials for certain components would cause the components to fail sooner than

21   the industry average).

---

22

23   [16]    Plaintiff claims his expectation arose from his prior use of an HP monochrome printer (*see* Part. Dec., Ex. 1 at 38:11-20), but his prior monochrome

24   use is clearly not an agreement from HP that his color printer would match his alleged expectation and there is no allegation that HP suggested in any way that

25   Plaintiff's color printer would operate in the same way as his prior monochrome printer.

26   [17]    A contrary rule would be illogical.  A manufacturer cannot possibly know every customer's expectation that it did not create and, therefore, it could never

27   provide a product that satisfies every customer's expectation.  Not only that, but if a defendant does not create a plaintiff's mistaken expectation, there can be no causal

28   connection between the plaintiff's alleged injury and the defendant's conduct.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PHILADELPHIA

22

HP'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT

1       Similarly, the only representations at issue here — the "empty" language of

2   the User Guide and the HP's yield representations — do not give rise to a duty to

3   disclose.  Plaintiff never saw the "empty" language of the User Guide, and even if

4   he had, disclosure at that point would be irrelevant; the printer and cartridge already

5   had been purchased.  Moreover, the only expectation HP conceivably could have

6   created regarding the life of its print cartridges by HP's page yield representations

7   was that the cartridges would, on average, provide their expected page yield.

8   Plaintiff does not contest this point nor does he contend that these yield statements

9   required disclosure of the fact that he would be unable to use each toner particle in

10  the cartridge for printing.

11  **IV.**  <u>**CONCLUSION**</u>

12      The Court should enter summary judgment for HP.

13  Dated:    April 3, 2009               MORGAN, LEWIS & BOCKIUS LLP

14

15  By _____/s/_____

16  Neal Salisian
    Attorneys for Defendant
    Hewlett-Packard Company

17

18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PHILADELPHIA

23

HP'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT