MORGAN, LEWIS & BOCKIUS LLP
NEAL SALISIAN, State Bar No. 240277
nsalisian@morganlewis.com
300 South Grand Avenue
Twenty-Second Floor
Los Angeles, CA 90071-3132
Tel: 213.612.2500
Fax: 213.612.2501

J. GORDON COONEY, JR. (*pro hac vice*)
jgcooney@morganlewis.com
ROBERT A. PARTICELLI (*pro hac vice*)
rparticelli@morganlewis.com
KRISTOFOR T. HENNING (*pro hac vice*)
kenning@morganlewis.com
1701 Market Street
Philadelphia, PA 19103
Telephone: 215.963.5000
Facsimile: 215.963.5001

GIBSON DUNN & CRUTCHER LLP
SAMUEL G. LIVERSIDGE, State Bar No. 180578
sliversidge@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071
Telephone: 213.229.7000
Facsimile: 213.229.7520

Attorneys for Defendant Hewlett-Packard Company

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION**

| | |
|---|---|
| KELSEA BAGGETT, On Behalf Of Himself And All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>HEWLETT-PACKARD COMPANY,<br><br>Defendant. | Case No. SA CV 07-00667 AG (RNB)<br><br>**HEWLETT-PACKARD COMPANY'S PROPOSED STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**<br><br><u>Hearing</u>:<br><br>Date: April 27, 2009<br>Time: 10:00 am<br>Dept: 10D (Hon. Andrew J. Guilford)<br><br>Complaint Filed: June 6, 2007<br>Trial: December 1, 2009 |

Pursuant to Local Rule 56-1, Defendant Hewlett-Packard Company ("HP") hereby submits its proposed Statement of Uncontroverted Facts and Conclusions of Law in support of its Motion for Summary Judgment on Plaintiff Kelsea Baggett's ("Plaintiff's") remaining claims.

## STATEMENT OF UNCONTROVERTED FACTS

| Uncontroverted Fact | Supporting Evidence |
| --- | --- |
| 1. HP sells color LaserJet printers and related print cartridges. | Docket No. 1 ("Complaint") at ¶ 13. |
| 2. HP does not promise its customers use of every particle of toner in their print cartridges – and Plaintiff does not claim otherwise. | Complaint; *see also*, Declaration of Robert A. Particelli, III ("Part. Dec."), Ex. 1 (December 18, 2008 Deposition of Plaintiff) at 38:22 – 39:7; 88:4-21; 129:17 – 130:8. |
| 3. It is impossible to use every particle of toner from a print cartridge for printing. | Declaration of Robert A. Particelli, III in Support of HP's Opposition to Plaintiff's Motion for Class Certification, Ex. 4 (Deposition of Darius Boockholdt) at 32:23-33:10. |
| 4. The User Guide for Plaintiff's printer model indicated that "[t]he life of a print cartridge depends on the amount of toner print jobs require," but that the print cartridges last "an average of 2,000 pages" based on 5% coverage. | Part. Dec., Ex. 2 (User Guide for HP Color LaserJet 2550 Series) at 68; 120; 137. |
| 5. The outside of Plaintiff's printer box also disclosed a page yield and did not | Part. Dec., Ex. 1 at 50:14-19; *see also*, Part. Dec., Ex. 3 (printer box art for the |

| Uncontroverted Fact | Supporting Evidence |
|---|---|
| promise access to every particle of toner. | 2550 Model Series). |
| 6. Plaintiff's printer model uses lights on the control panel in combination with the User Guide to indicate the status of its print cartridges. | Part. Dec., Ex. 2 at 24; 91-93. |
| 7. A blinking light combined with the termination of printing activity has several possible meanings – either the cartridge is "empty or missing, or the printer cannot detect the print cartridge correctly." | Part. Dec., Ex. 2 at 93; Complaint at ¶ 15. |
| 8. When a blinking light appears, the User Guide advises the user that he "must replace the print cartridge before the printer can continue printing." | Part. Dec., Ex. 2 at 93; 24; 91; *see also* Complaint at ¶¶ 15-16. |
| 9. Plaintiff agrees that he had no choice at that point but to replace his cartridge to keep printing. | Part. Dec., Ex. 1 at 100:8-19. |
| 10. Plaintiff bought his model 2550L HP color LaserJet printer from an OfficeMax store in California on February 19, 2005. | Complaint at ¶ 23; Part. Dec., Ex. 4 (receipts from Plaintiff's printer purchase). |
| 11. Plaintiff earlier saw an OfficeMax advertisement indicating the printer was on sale. | Part. Dec., Ex. 1 at 47:18-25; 8:1-6. |
| 12. When Plaintiff went to OfficeMax, | Part. Dec., Ex. 1 at 51:13-22. |

Morgan, Lewis &
Bockius LLP
Attorneys At Law
Philadelphia

2

HP'S PROPOSED STATEMENT OF
UNCONTROVERTED FACTS AND
CONCLUSIONS OF LAW

| Uncontroverted Fact | Supporting Evidence |
|---|---|
| a 2550L printer was set up in the store and a salesperson showed him how the printer operated. | |
| 13. Plaintiff reviewed documents printed in the store "[b]ecause [he] wanted to see what kind of quality it printed." Plaintiff also read at least portions of his printer box before deciding on his printer. | Part. Dec., Ex. 1 at 53:1-6; 51:24 – 52:4; 48:15-24. |
| 14. Plaintiff saw no additional written materials in OfficeMax that influenced his purchase decision and no one made any representation that he relied on in purchasing his printer. | Part. Dec., Ex. 1 at 52:13-16; 54:11-13. |
| 15. The only written materials Plaintiff claims he reviewed in deciding to buy his HP 2550L printer were the OfficeMax ad and the in-store print outs mentioned above, although Plaintiff also saw the outside of his printer box. | Part. Dec., Ex. 1 at 55:4-9; 48:15-24. |
| 16. Plaintiff expected when he bought his printer that he would be able to use every particle of toner in his print cartridges. There is no dispute that nothing HP said created Plaintiff's expectation. | Part. Dec., Ex. 1 at 22:23 – 23:4; 38:22 – 39:7; 88:4-21; 129:17 – 130:8. |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PHILADELPHIA

3

HP'S PROPOSED STATEMENT OF
UNCONTROVERTED FACTS AND
CONCLUSIONS OF LAW

| **Uncontroverted Fact** | **Supporting Evidence** |
|---|---|
| 17. After using his printer for some time, Plaintiff saw a blinking light on his control panel and replaced his yellow print cartridge. Plaintiff interpreted the blinking light as an instruction to replace his print cartridge. | Part. Dec., Ex. 1 at 57:3-5; 57:21 – 58:11; 75:24-25; 131:11-14. |
| 18. Plaintiff did not rely upon any written materials to conclude that his cartridge was "empty" or needed to be replaced. Plaintiff purchased replacement cartridges before any blinking light appeared on his printer control panel. | Part. Dec., Ex. 1 at 111:5-19; 73:22-25; 84:1-85:3; *see also id.* at 81:23-82:3. |
| 19. In addition, Plaintiff has not seen any HP advertisement or marketing materials that he believes misled others into believing that HP print cartridges were "empty." Plaintiff does not recall any features on any other printers he considered that were not included in his HP printer. | Part. Dec., Ex. 1 at 142:11-16; 53:12-15. |
| 20. Plaintiff did not contact HP to complain, ask for a refund or free cartridges or make a warranty claim once he allegedly learned there was still toner remaining in his print cartridge. | Part. Dec., Ex. 1 at 70:25 – 71:6; 176:23 – 177:1; 73:8-14; 170:12-16. |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PHILADELPHIA

4

HP'S PROPOSED STATEMENT OF
UNCONTROVERTED FACTS AND
CONCLUSIONS OF LAW

| Uncontroverted Fact | Supporting Evidence |
|---|---|
| 21. Plaintiff does not know if any of the toner allegedly remaining in his original print cartridge was useable and he has no facts to support the allegation in his Complaint that a "significant amount of useable toner remains." | Part. Dec., Ex. 1 at 136:2-11; 70:22-24; 133:19-23. |
| 22. Toner is not acceptable to Plaintiff if it results in streaked or faded printing. | Part. Dec., Ex. 1 at 183:13-22. |
| 23. Plaintiff has no use for toner except to print and agrees that "[i]f it didn't completely print the page, I don't see how it would be useful to me, personally." | Part. Dec., Ex. 1 at 188:2-6; 188:24 – 189:7. |
| 24. Plaintiff took his printer "out of service" (*i.e.*, stopped using it) at some point, although he could not recall when. Plaintiff could not recall even whether he stopped using his printer before or after he filed the instant lawsuit. Plaintiff agreed that it would not be surprising if he used his printer sometime in 2008 – after this lawsuit was filed. | Part. Dec., Ex. 1 at 31:22 – 33:2; 66:1-8; 67:9-15; 106:14-20. |
| 25. The inspection of Plaintiff's print cartridges performed during discovery confirms that Plaintiff's printer printed | Part. Dec., Ex. 5 (Supplies Status Screen Shots from Inspection). |

| Uncontroverted Fact | Supporting Evidence |
|---|---|
| pages in 2008. Specifically, the inspection of the replacement print cartridges Plaintiff claims to have bought for his printer revealed that they last printed a page no later than January 2008. | |
| 26. Plaintiff first believed he had a claim against HP when he dropped a box that held his printer and allegedly saw yellow toner fall out, which occurred at or after the time he last used his printer which, in turn, occurred in January 2008 after his lawsuit was filed. | Part. Dec., Ex. 1 at 31:22 – 32:2; 70:1-12; 19-21. |

## CONCLUSIONS OF LAW

1)   Plaintiff cannot sustain his claims for trespass to chattels and/or conversion.

2)   California law does not recognize Plaintiff's trespass/conversion "by design" theory because, among other reasons, Plaintiff's HP Color LaserJet printer operated as designed.

3)   Plaintiff's trespass/conversion claims likewise fail as a matter of law because HP never interfered with his property interest in his chattel after Plaintiff took possession of the chattel.

4)   Plaintiff has not established that any toner remaining in his print cartridge was "useable," therefore, he suffered no property injury that could support his trespass/conversion claims and, in any event, Plaintiff never purchased the right to use any such remaining toner given the nature of the chattel.

5) The trespass/conversion claims also are barred by the economic loss rule because Plaintiff allegedly has suffered only economic losses without either any personal injury or any damage to a product other than the chattel in dispute.

6) Plaintiff's claim under California's Unfair Competition Law ("UCL") and his common law fraud claim fail as a matter of law both because Plaintiff never saw HP's alleged "empty" representation and, even if he had, because any such representation did not cause Plaintiff to replace his print cartridge.

7) Because Plaintiff cannot satisfy the causation element of his UCL claim, it fails as a matter of law.

8) In any event, Plaintiff cannot satisfy the "unlawful" prong of his UCL claim for several reasons, including because: (i) his printer operated exactly as intended; (ii) he did not submit a warranty claim or ask HP to repair or replace his printer and/or print cartridges; and (iii) Plaintiff never saw any HP advertisement or marketing materials that he believed were false or misleading.

9) Likewise, Plaintiff has not made any payment as a result of any fraudulent statement and, therefore, he cannot satisfy the "fraudulent" prong of his UCL claim. Further, HP has not violated any public policy and Plaintiff himself has not suffered any injury as a result of his printer's design, so Plaintiff cannot satisfy the "unfair" prong of his UCL claim either.

10) HP did not create any expectation that Plaintiff would be able to use every particle of toner in his print cartridges and, consequently, cannot be held liable to Plaintiff for failing to satisfy an expectation it did not create.

Dated: April 3, 2009                    MORGAN, LEWIS & BOCKIUS LLP

By     /s/
       Neal Salisian
       Attorneys for Defendant
       Hewlett-Packard Company