"O"

JS-6

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KELSEA BAGGETT, on behalf of himself and all others similarly situated,<br><br>         Plaintiff,<br><br>     v.<br><br>HEWLETT-PACKARD COMPANY,<br><br>         Defendant.<br>_____ | CASE NO. SACV 07-0667 AG (RNBx)<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING AS MOOT PLAINTIFF'S MOTION FOR CLASS CERTIFICATION |

This case challenges Hewlett-Packard's practice of including a "hardstop" on its color laser jet printers that shuts down all printing operations when a toner cartridge reaches "empty," even though some toner remains in the cartridge. Because the Court finds that Plaintiff cannot show that this practice constitutes trespass to chattels, conversion, an unfair business practice, or an act of fraudulent concealment, Defendant's Motion for Summary Judgment ("Motion") is GRANTED. Accordingly, Plaintiff's Motion for Class Certification is DENIED as moot.

**<u>BACKGROUND</u>**

Defendant Hewlett-Packard Company ("Defendant" or "HP") sells color laser jet printers and related print cartridges. Plaintiff Kelsea Baggett ("Plaintiff") bought an HP 2550L color LaserJet printer in California on February 19, 2005. (Compl. ¶ 23.) All of HP's color LaserJet printers, including the model Plaintiff bought, contain a "hardstop" that shuts down all printing operations when one of the installed toner cartridges reaches a "Crg (cartridge) out condition." (Kellner Decl. Ex. B.) When the 2550L reaches "hardstop," a light on the printer begins to blink, signaling to the user that the cartridge is "empty." (Particelli Decl. Ex. 2 at 62.) HP's eLabel data shows that for the 2550 printer Plaintiff bought, the average amount of "Toner remaining formatter PC" on cartridges returned for recycling after "Crg life out reached" was 9% for Black; 26% for Cyan; 30% for Magenta; and 19% for Yellow. (Kellner Decl. Ex. C; Finkel Decl. ¶ 13.) The User Manual Plaintiff received with his 2550L printer did not disclose that when the cartridges reached "empty," some toner would be remaining in the cartridges. Instead, the toner cartridges promised a page yield of up to 2,000 color pages. (*See* Particelli Decl. Ex. 1 at 50:14-19, Ex. 3 (printer box images stating that box includes "[t]hree up to 2,000 page color print cartridges").)

After using his printer for some time, Plaintiff saw a blinking light on his control panel and replaced his yellow print cartridge. (Baggett Dep. 57:3-5; 57:21-58:11, 75:24-25.) Plaintiff knew the blinking light meant his cartridge was "empty" because he had previously seen another light signaling that the cartridge was "low," and because the printer stopped working. (Baggett Dep. 57:17-22; 57:24-58:1.) Later, Plaintiff stopped using his printer and boxed it up for storage. While carrying the box into his garage, Plaintiff dropped the box and noticed that "a large amount of yellow toner" had leaked out of a cartridge Plaintiff had been forced to discard and replace. (Baggett Dep. 31:15-32:9.)

Based on these facts and others, Plaintiff now brings claims for trespass to chattels, conversion, violation of California's Unfair Competition Law ("UCL"), and fraudulent concealment. Defendant here moves for summary judgment of all four claims.

**PRELIMINARY MATTER**

Both parties have filed numerous evidentiary objections.  The Court did not rely on most of the evidence under objection in making its rulings, and did not rely on inadmissible evidence.

**ANALYSIS**

**1.      TRESPASS TO CHATTELS AND CONVERSION**

Plaintiff alleges that HP committed trespass to chattels and conversion by designing his print cartridges to include a "hardstop" preventing him from accessing all of the toner in the cartridges.  Defendant argues, among other things, that Plaintiff's trespass to chattels and conversion claims are barred by California's economic loss rule.  The Court agrees with Defendant.

The economic loss rule requires a purchaser to recover in contract, and not tort, for "purely economic loss due to disappointed expectations, unless he can demonstrate harm above and beyond a broken contractual promise."  *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979, 988 (2004); *see also Jimenez v. Superior Court*, 29 Cal. 4th 473, 480-84 (2002); *Seely v. White Motor Co.*, 63 Cal. 2d 9, 14-19 (1965).  The economic loss rule ensures that the law of sales contracts, which has been developed to govern the relationship between suppliers and purchasers of goods, is not overrun by tort law.  *See Robinson Helicopter Co.*, 34 Cal. 4th at 988; *Seely*, 63 Cal. 2d at 16-17.  Where a plaintiff who suffers only economic harm sues in tort alleging that a defendant failed to provide the product he expected or the product the defendant warranted, his claims are barred by the economic loss rule.  *Robinson Helicopter*, 34 Cal. 4th at 988 ("[W]here a purchaser's expectations in a sale are frustrated because the product he bought is not working properly, his remedy is said to be in contract alone, for he has suffered only economic losses.") (internal quotations omitted); *Lincoln Gen. Ins. Co. v. Access Claims Adm'rs, Inc.*, No. CIV. S-07-1015 LKK/EFB, 2007 WL 2492436, at *8 (E.D. Cal. Aug. 30, 2007)

1  ("Under California law, purely economic losses due to disappointed expectations do not

2  constitute cognizable injury."); *see also East River Steamship Corp. v. Transamerica Delaval,*

3  *Inc.*, 476 U.S. 858, 871-72 (1986) (applying economic loss rule). Here, Plaintiff alleges that HP

4  has committed trespass to chattels and conversion by preventing him from getting the product he

5  expected: a toner cartridge that would allow him to use all of the toner in the cartridge. Plaintiff

6  does not allege that he suffered any personal injury or damage to a product other than the toner

7  cartridge itself.

8    Plaintiff asserts that the economic loss rule does not apply here, arguing first that the rule

9  does not apply to intentional torts, such as trespass to chattels or conversion. But Plaintiff's

10  Opposition cites no authority for that proposition, and indeed many cases have applied the

11  economic loss rule to bar claims of trespass to chattels and conversion. *See, e.g.*, *McGehee v.*

12  *Coe Newnes/McGehee ULC*, No. C 03-5145 MJJ, 2004 WL 2452855, at *2-3 (N.D. Cal. Feb.

13  10, 2004) (rejecting a conversion counterclaim where "the duty Plaintiffs owed Defendant was

14  only a contractual one"); *Cusano v. Klein*, 280 F. Supp. 2d 1035, 1043 (C.D. Cal. 2003) (internal

15  citations omitted) (holding that the plaintiff's claim for conversion could not be maintained if it

16  was "predicated on a mere breach of contract"); *Phoenix Four Grantor Trust #1 v. 642 N. Broad*

17  *St. Assocs.*, No. CIV. A. 00-597, 2000 WL 876728, at *9 (E.D. Pa. June 29, 2000) ("[I]f a

18  plaintiff's rights to property are defined by a contract with a defendant, then that plaintiff may

19  not sue that defendant in tort for conversion of that property."); *see also East River*, 476 U.S. at

20  871-72. Plaintiff recently provided the Court with a very recent case, *Shein v. Canon U.S.A.,*

21  *Inc.*, No. CV 08-07323 CAS (Ex), 2009 WL 1774287 (C.D. Cal. June 22, 2009). That case

22  found that dismissal under Rule 12(b)(6) based on the economic loss doctrine was

23  "inappropriate" "at this juncture," *Shein*, 2009 WL 1774287, at *14, and here, the Court does

24  not find that *Shein* requires a denial of this summary judgment motion.

25    Next, Plaintiff argues that the economic loss rule does not apply because "Plaintiff's

26  intentional tort claims arise apart from, and are independent of, any contract claims," and

27  Plaintiff has not brought any contract claims against HP. (Opp'n 16:14-15.) But as Defendant

28  points out, Plaintiff's relationship with HP "arises solely out of their contract and commercial

4

1  transaction." (Reply 11:18.)

2      The Court finds that the economic loss rule applies to bar Plaintiff's tort claims for

3  conversion and trespass to chattels. The Motion for Summary Judgment is GRANTED as to

4  Plaintiff's claims for trespass to chattels and conversion.

5

6  **2.    CALIFORNIA UNFAIR COMPETITION LAW**

7

8      Plaintiff also alleges that HP violated California's UCL, which generally prohibits unfair,

9  unlawful, or fraudulent conduct. Defendant argues that Plaintiff's UCL claim fails because,

10  among other reasons, Plaintiff does not have standing under the statute. The Court agrees.

11      The UCL prohibits "any unlawful, unfair or fraudulent business act or practice." Cal.

12  Bus. & Prof. Code § 17200. To have standing under the UCL, Plaintiff must establish that he

13  "suffered an injury in fact and . . . lost money or property as a result of" the defendant's

14  allegedly improper conduct. Cal. Bus. & Prof. Code §§ 17203, 17204. In *Hall v. Time, Inc.*, 158

15  Cal. App. 4th 847 (2008), the California Court of Appeal identified three general ways in which

16  a plaintiff may suffer an injury in fact: (1) where the plaintiff "expended money due to the

17  defendant's acts of unfair competition"; (2) where the plaintiff "lost money or property"; or (3)

18  where the plaintiff has "been denied money to which he or she has a cognizable claim." *Id.* at

19  854-55 (internal citations omitted). Plaintiff argues that his loss "clearly fits within the second

20  of these areas," as Plaintiff "lost money or property because the shutdown of the HP printer

21  prevented Plaintiff from using the toner remaining in the toner cartridge at the time of

22  shutdown." (Opp'n 20:19-21.) Plaintiff explains that he "was not injured when he purchased

23  the replacement cartridges, but when he was forced to prematurely replace a toner cartridge."

24  (Opp'n 21:16-17.)

25      The Court finds that Plaintiff has failed to create a genuine issue of material fact as to

26  whether he "lost money or property" resulting from HP's allegedly unfair business practice.

27  Plaintiff purchased a toner cartridge that promised 2,000 color pages. Notably, Plaintiff does not

28  argue that the toner cartridge failed to produce 2,000 color pages, but argues instead that he was

1  forced to replace his cartridge prematurely and could possibly have printed more pages with his

2  original cartridge.  Plaintiff received exactly what he paid for, and his "loss" of toner beyond that

3  which he was promised cannot confer standing under the UCL.  *See Peterson v. Cellco*

4  *Partnership*, 164 Cal. App. 4th 1583, 1591 (2008) (finding that UCL plaintiffs lacked standing

5  where they had "received the benefit of their bargain, having obtained the bargained for

6  insurance at the bargained for price").  The *Peterson* court also explained that a "loss" of money

7  or property, for purposes of the UCL, requires "an undesirable outcome of a risk; the

8  disappearance or diminution of value, [usually] in an unexpected or relatively unpredictable

9  way." *Id.* at 1592 (citing *Hall*, 158 Cal. App. 4th at 853).  Here, while Plaintiff may have "lost"

10 the use of some toner remaining in his original cartridge, Plaintiff cannot establish that such a

11 loss was "unexpected" or "relatively unpredictable."  Plaintiff was never assured that he would

12 have the use of any toner beyond that required to print 2,000 color pages.  HP did not commit an

13 unfair business practice by providing Plaintiff with exactly what he bargained for: a toner

14 cartridge that would print 2,000 color pages.

15     The Motion for Summary Judgment is GRANTED as to Plaintiff's claim for UCL

16 violations.

17

18 **3.     FRAUDULENT CONCEALMENT**

19

20     Finally, Plaintiff alleges that HP engaged in fraudulent concealment by "providing pre-

21 programmed messages which erroneously indicate that toner cartridges must be replaced when

22 in fact they need not" and by failing to disclose "that a significant amount of toner remains in a

23 HP toner cartridge at the point when the HP color laser printers cease all printing cartridges and

24 indicate that a toner cartridge is 'empty.'"  (Compl. ¶ 52.)  To prevail on a fraud claim under

25 California law, Plaintiff must prove, among other things, that he relied on the misstatement or

26 omission at issue to his detriment.  *See Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996);

27 *Engalla v. Permanente Medical Group, Inc.*, 15 Cal. 4th 951, 974 (1997); Cal. Civ. Code §§

28 1709, 1710.  Defendant argues that Plaintiff's fraudulent concealment claim fails because

1  Plaintiff did not rely on any misleading "empty" message and because Plaintiff cannot establish

2  that HP had a duty to disclose the fact that toner remains in the cartridges after "hardstop." The

3  Court agrees with Defendant.

4        Plaintiff first argues that he relied on HP's "pre-programmed message" that the toner

5  cartridge was empty when he replaced it. But Plaintiff acknowledges that he did not consult the

6  User Manual and find a statement that the blinking light signaled an "empty" toner cartridge.

7  (Baggett Dep. 111:5-19.) Plaintiff alleges merely that he understood the blinking light to mean

8  the toner cartridge needed to be replaced. (*See* Baggett Dep. 131:11-14.) The Court cannot find

9  that Plaintiff relied on any misstatement regarding the toner cartridge. Plaintiff responded only

10  to a message, conveyed by a blinking light on the printer, that the cartridge needed to be

11  replaced. At no point did HP represent to Plaintiff that no toner remained in the cartridge, and

12  Plaintiff could not have taken any action in reliance on such a representation. Plaintiff's claim

13  that HP committed fraud by conveying an "empty" message fails.

14        Plaintiff next argues that HP engaged in fraud by failing to disclose to Plaintiff that a

15  significant amount of toner remained in the toner cartridge at "hardstop." Under California law,

16  a defendant can only be held liable for an omission where it is "contrary to a representation

17  actually made by the defendant, or an omission of fact the defendant was obligated to disclose."

18  *Daugherty v. American Honda Motor Co.*, 144 Cal. App. 4th 824, 835 (2006); *Long v. Hewlett-*

19  *Packard Co.*, No. C 06-02816 JW, 2007 WL 2994812, at *8 (N.D. Cal. July 27, 2007), *aff'd*,

20  No. 07-16440, 2009 WL 530082 (9th Cir. Mar. 3, 2009); *see also Bardin v. DaimlerChrysler*

21  *Corp.*, 136 Cal. App. 4th 1255, 1275-76 (2006). Here, the Court has already found that HP

22  made no representation to Plaintiff that no toner remained in the cartridge after "hardstop," and

23  HP's alleged omission is thus not contrary to any representations it actually made. The Court

24  further finds that Plaintiff has failed to raise a genuine issue of material fact as to whether HP

25  had a duty to disclose to Plaintiff that any toner remained in the cartridge after "hardstop."

26  Plaintiff cannot prevail on his fraudulent concealment claim.

27        The Motion for Summary Judgment is GRANTED as to Plaintiff's claim for fraudulent

28  concealment.

**DISPOSITION**

Defendant's Motion for Summary Judgment is GRANTED.  Defendant may submit a brief, concise proposed judgment to the Court within 14 days of this Order.

Plaintiff's Motion for Class Certification is DENIED as moot.

IT IS SO ORDERED.

DATED: September 29, 2009

_____
Andrew J. Guilford
United States District Judge