KABATECK BROWN KELLNER LLP
BRIAN S. KABATECK, SBN 152054
(bsk@kbklawyers.com)
RICHARD L. KELLNER, SBN 1714146
(rlk@kbklawyers.com)
ALFREDO TORRIJOS, SBN 222458
(at@kbklawyers.com)
644 South Figueroa Street
Los Angeles, CA 90017
Tel:  (213) 217-5000
Fax: (213) 217-5010

CHITWOOD HARLEY HARNES LLP
GREGORY E. KELLER (admitted *Pro Hac Vice*)
(gkeller@chitwoodlaw.com)
DARREN T. KAPLAN (admitted *Pro Hac Vice*)
(dtkaplan@chitwoodlaw.com)
2300 Promenade II
1230 Peachtree Street, N.E.
Atlanta, GA 30309
Tel:  (404) 873-3900
Fax: (404) 876-4476

Attorneys for Plaintiffs and
the Preliminarily Certified Class

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: HP LASER PRINTER LITIGATION | **CASE NO. SA CV 07-0667**<br><br>HON. ANDREW J. GUILFORD<br><br>**CLASS COUNSEL'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES**<br><br>Hearing<br>Date:  January 31, 2011<br>Time:  10:00 a.m.<br>Courtroom:  10D |

# NOTICE OF MOTION

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that pursuant to Fed. R. Civ. P. 23(e) and (h) and the Court's Order Preliminarily Approving Settlement, Providing for Notice and Scheduling Settlement Hearing ("Preliminary Approval Order," Docket No. 219), on January 31, 2011, at 10:00 a.m., before the Honorable Andrew J. Guilford of the United States District Court for the Central District of California, Santa Anna, California, Lead Counsel Kabateck Brown Kellner and Chitwood Harley Harnes LLP ("Lead Counsel") will and hereby do move for entry of an order awarding attorneys' fees and reimbursement of litigation expenses relating to its prosecution of the claims by Kelsea Baggett and James Young acting on behalf of themselves and all Class Members in the above-titled action, against Defendant Hewlett-Packard Company ("HP").

This Motion is based on this Notice of Motion, the Memorandum of Points and Authorities in Support Thereof, the Joint Declaration of Richard L. Kellner and Darren T. Kaplan, the Stipulation of Settlement dated August 25, 2010 (Doc. No. 213), all pleadings and papers filed herein, arguments of counsel, and any other matters properly before the Court.

As provided in the Preliminary Approval Order, this motion is being filed prior to the motion to approve the Settlement to provide class members with ample opportunity to review the basis for the requested award of fees and costs.  The motion to approve the settlement will be filed on January 14, 2011, as provided in the Preliminary Approval Order.

Dated:  November 29, 2010                KABATECK BROWN KELLNER, LLP


By:  _____/s/_____
         Richard L. Kellner

1    Dated:  November 29, 2010              CHITWOOD HARLEY HARNES LLP

2

3                                          By:  _____/s/_____

4                                                Darren T. Kaplan

5                                          *Attorneys for Plaintiffs the*
                                           *Preliminarily Certified Class*

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MOTION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES**
**(CASE NO. SA CV-07-0667 AG)**

1   KABATECK BROWN KELLNER LLP
    BRIAN S. KABATECK, SBN 152054
2   (bsk@kbklawyers.com)
    RICHARD L. KELLNER, SBN 1714146
3   (rlk@kbklawyers.com)
    ALFREDO TORRIJOS, SBN 222458
4   (at@kbklawyers.com)
    644 South Figueroa Street
5   Los Angeles, CA 90017
    Tel:  (213) 217-5000
6   Fax: (213) 217-5010

7   CHITWOOD HARLEY HARNES LLP
    GREGORY E. KELLER (admitted *Pro Hac Vice*)
8   (gkeller@chitwoodlaw.com)
    DARREN T. KAPLAN (admitted *Pro Hac Vice*)
9   (dtkaplan@chitwoodlaw.com)
    2300 Promenade II
10  1230 Peachtree Street, N.E.
    Atlanta, GA 30309
11  Tel:  (404) 873-3900
    Fax: (404) 876-4476
12
    Attorneys for Plaintiffs and
13  the Preliminarily Certified Class

14

15

16                       UNITED STATES DISTRICT COURT

17                      CENTRAL DISTRICT OF CALIFORNIA

18  In re: HP LASER PRINTER          CASE NO. SA CV 07-0667
    LITIGATION
19                                   HON. ANDREW J. GUILFORD

20
                                     **CLASS COUNSEL'S**
21                                   **MEMORANDUM OF POINTS AND**
                                     **AUTHORITIES IN SUPPORT**
22                                   **MOTION FOR ATTORNEYS' FEES**
                                     **AND REIMBURSEMENT OF**
23                                   **LITIGATION EXPENSES**

24
                                     Hearing
25                                   Date:  January 31, 2011
                                     Time:  10:00 a.m.
26                                   Courtroom:  10D

27

28

---

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND
REIMBURSEMENT OF LITIGATION EXPENSES (CASE NO. SA CV-07-0667 AG)**

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................I

TABLE OF AUTHORITIES......................................................................................II

I.      INTRODUCTION ............................................................................ 1

II.     HISTORY OF THE LITIGATION ................................................. 3

III.    THE PROPOSED SETTLEMENT .................................................. 6

IV.     THE REQUESTED ATTORNEYS' FEES ARE FAIR AND REASONABLE ............... 8

        A.      Attorneys' Fees May Be Awarded When a Party Confers a Common Benefit On a Class............................................................. 8

        B.      Class Counsel Is Entitled to Attorneys' Fees Calculated by the Lodestar Method............................................................ 10

        C.      Class Counsel's Application Is Supported by the Relevant Factors Used by the Ninth Circuit in Calculating an Attorneys' Fee Award Based on Lodestar .................................................... 11

                1.      The Time and Labor Required. ........................................... 13

                2.      The Novelty and Difficulty of the Questions Involved. ....................... 13

                3.      The Skill Required and Quality of the Work Performed..................... 14

                4.      The Preclusion of Other Employment.................................. 15

                5.      The Customary Fee. ................................................. 15

                6.      The Contingent Nature of the Fee and the Financial Burden Carried by Counsel. ............................................. 16

                7.      The Result Obtained.................................................. 18

V.      CLASS COUNSEL'S EXPENSES ARE REASONABLE AND WERE NECESSARILY INCURRED TO ACHIEVE THE BENEFITS OBTAINED ............... 19

VI.     PAYMENTS TO THE REPRESENTATIVE PLAINTIFFS SHOULD BE ALLOWED ................................................................. 21

VII.    CONCLUSION ......................................................................... 22

i

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES (CASE NO. SA CV-07-0667 AG)

# TABLE OF AUTHORITIES

**Cases**

*Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*
421 U.S. 240 (1975).................................................................................10

*Boeing Co. v. Van Gemert*
444 US 472 (1980)....................................................................................8

*City of Burlington v. Dague*
505 U.S. 557 (1992)................................................................................12

*Cook v. Niedert*
142 F.3d 1004 (7th Cir. 1998)..............................................................22

*Dynamic Random Access Memory (DRAM) Antitrust Litig.*
2007 WL 2416513 (N.D. Cal. Aug. 16, 2007) ....................................16

*Edmonds v. United States*
658 F.Supp. 1126 (D.S.C. 1987) ..........................................................14

*Fischel v. Equitable Life Assur. Society of U.S.*
307 F.3d 997 (9th Cir. 2002) ..........................................................16, 17

*Gottlieb v. Wiles*
150 F.R.D. 174 (D. Colo. 1993) ............................................................20

*Hall v. Cole*
412 U.S. 1 (1973).............................................................................8, 9, 10

*Hanlon v. Chrysler Corp.*
150 F.3d 1011 (9th Cir. 1998) ..............................................................11

*Harris v. Marhoefer*
24 F.3d 16 (9th Cir. 1994) .....................................................................19

*Hensley v. Eckerhart*
461 U.S. 424 (1983)................................................................................11

*In re Cont'l Ill. Sec. Litig.*
962 F.2d 566 (7th Cir. 1992) ...........................................................20, 22

*In re Equity Funding Corp. Sec. Litig.*
438 F. Supp. 1303 (C.D. Cal. 1977).....................................................15

*In re Heritage Bond Litig.*
2005 WL 1594389 (C.D. Cal. June 10, 2005)......................................14

*In re JDS Uniphase Corp. Sec. Litig.*
2007 WL 4788556 (N.D. Cal. Nov. 27, 2007) .....................................17

*In re Media Vision Tech. Sec. Litig.*
913 F. Supp. 1362 (N.D. Cal. 1996).................................................19, 20

*In re Omnivision Technologies, Inc.*
  559 F. Supp. 2d 1036 (N.D. Cal. 2008)......................................................16, 19, 21

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*
  19 F.3d 1291 (9th Cir. 1994) ...................................................................12, 16, 17

*Kerr v. Screen Extras Guild, Inc.*
  526 F.2d 67 (9th Cir. 1975) ...........................................................................11, 12

*Knight v. Red Door Salons, Inc.*
  2009 WL 248367 (N.D. Cal. Feb. 2, 2009) ...........................................................21

*Loring v. City of Scottsdale, Ariz.*
  721 F.2d 274 (9th Cir. 1983) ....................................................................8, 9, 13

*Mills v. Electric Auto-Lite Co.*
  396 US 375 (1970)........................................................................................8, 9, 10

*O'Connor v. Boeing North American, Inc.*
  184 F.R.D. 311 (C.D. Cal. 1998)................................................................................9

*Schwartz v. Upper Deck Co.*
  183 F.R.D. 672 (S.D. Cal. 1999) ...............................................................................9

*Smith v. GTE Corp.*
  236 F.3d 1292 (11th Cir. 2001) ..............................................................................10

*Staton v. Boeing Co.*
  327 F.3d 938 (9th Cir. 2003) ...................................................................................22

*Thornberry v. Delta Air Lines, Inc.*
  676 F.2d 1240 (9th Cir. 1982) ................................................................................21

*Tutor-Saliba Corp. v. City of Hailey*
  452 F.3d 1055 (9th Cir. 2006) ................................................................................12

*Vizcaino v. Microsoft Corp.*
  290 F.3d 1043 (9th Cir. 2002).................................................................9, 12, 15, 18

*Yeagley v. Wells Fargo & Co.*
  365 Fed.Appx. 886 (9th Cir. 2010) ........................................................................10

*Zucker v. Occidental Petroleum Corp.*
  192 F.3d 1323 (9th Cir. 1999)................................................................................10

– iii –

## I.      INTRODUCTION

On July 6, 2007, Plaintiffs commenced *Baggett v. Hewlett-Packard Company* (the "*Baggett* action"), seeking injunctive and monetary relief for defendant Hewlett-Packard Company's ("HP") practice of designing its printers in a manner that causes consumers to falsely believe that HP color laser printer cartridges are out of toner when, in reality, a substantial amount of toner still remains.  Thereafter, Plaintiffs commenced *Young v. Hewlett-Packard Company* (the "*Young* action") seeking the same relief for HP's practice of designing other lines of color laser printers that fail to adequately disclose to users the fact that those printers have an "override" mechanism that allows user to circumvent the technology that shuts down use of HP color laser printer cartridges when a substantial amount of toner still remains.  The litigation was hard fought, and extremely time consuming.  The proposed settlement provides the class with virtually all of the injunctive relief that had been sought in this action.

For over two years, Plaintiffs engaged in comprehensive discovery of the development, production and marketing of HP color laser printers.  Plaintiffs obtained evidence regarding the amount of toner that is designed to remain in HP color laser printer cartridges at the time of "shutdown."   Plaintiffs survived motions to dismiss, and had a full motion for class certification filed for the court's consideration. [Joint Decl., ¶¶ 17-19.]  Unfortunately, on September 29, 2009, the district court granted HP's motion for summary judgment, essentially agreeing with HP that its technology did not constitute an unfair business practice and denying the motion for class certification as moot. [*Baggett* Doc. No. 194.]  The *Young* action was dismissed by the district court on essentially the same grounds. [*Young* Doc. No. 46.]  Plaintiffs disagreed with the district court's decisions, and appealed the district court's orders to the Ninth Circuit.

While the matter was on appeal, Plaintiffs and HP continued their settlement discussions that had been ongoing through the course of this litigation.  Through the auspices of Ret. Judge James Warren, Plaintiffs successfully negotiated a class settlement that fulfilled many of the goals of the litigation.  First, HP agreed to provide class

members with real notice regarding the HP technology, including instructions on how the class members in the *Young* action can override the "hardstop." As a result, class members will be able to gain access to a substantial amount of the toner in the cartridges that they would otherwise not be able to use. Second, HP agreed to provide class members with the opportunity to receive $5 million in e-credits to purchase items on HP's website.

However, the most substantial result of this litigation is the fact that HP has stopped using the technology that Plaintiffs contend is an unfair business practice in the production of future color laser printer lines. In all of these printers, users will have the ability to use all of the toner that remains in their printer cartridges, providing them with the ability to use hundreds of millions of dollars of toner that they would otherwise unwittingly discard. This represents a fundamental shift in HP's business practices. As a result, the litigation successfully achieved virtually all of the injunctive relief objectives that Plaintiffs sought to obtain at the commencement of the action.

This benefit is all the more remarkable because the district court maintains that HP was not engaging in an unfair business practice, and the fact that the case is presently on appeal from judgments dismissing the actions.

To achieve these substantial results for the class, Class Counsel had to expend tremendous resources in the prosecution of this case. As detailed in the accompanying Joint Declaration of Lead Counsel,[1] Class Counsel cumulatively spent over $4,776,464 in professional time (representing over 11,366 hours) and $195,579.77 in costs. This was all done with the risk that Class Counsel would not receive any compensation for their efforts.

In the end, Class Counsel obtained virtually all of the injunctive relief sought but, candidly, obtained very little meaningful monetary benefit for the class. The best reason

---

[1] *See* Joint Declaration of Richard L. Kellner and Darren T .Kaplan in Support Motion for An Award of Attorneys' Fees and Reimbursement of Expenses ("Joint Decl."), submitted herewith.

1  Class Counsel can give for the minimal monetary benefit is that the case had been

2  dismissed and Plaintiffs faced the formidable obstacle of obtaining a reversal on appeal.

3      Class Counsel negotiated their fees after they had completed negotiations on the

4  injunctive and other relief for the class, providing them with very little leverage.  The

5  proposed $2.75 million fee (inclusive of costs) represents about 50% of the lodestar of

6  time expended in the litigation of this matter.  Given the long term results achieved by

7  this litigation and the virtual complete achievement of the injunctive relief sought, Class

8  Counsel submits that the requested fee of $2.75 million (inclusive of $195,579.77 in out-

9  of-pocket litigation expenses) is fair and reasonable.

10     Class Counsel requests that the Court grant their motion for attorneys' fees and

11 costs.

12

13 **II.    HISTORY OF THE LITIGATION**

14     A detailed description of the procedural history of the litigation, the investigation

15 and discovery undertaken, the negotiation and substance of the Settlement, and the

16 substantial risks and uncertainties of the litigation is contained in the accompanying Joint

17 Declaration.  A summary description is provided below.

18     The *Baggett* action (*Kelsea Baggett v. Hewlett-Packard Company*, Case No. SA

19 CV 07-00667) was commenced in the United States District Court for the Central District

20 of California (Guilford, J.) on July 6, 2007.  The complaint alleged that HP employed a

21 "hardstop" mechanism that stopped all printing operations long before toner cartridges

22 were actually empty.  The complaint asserted claims for unjust enrichment, fraudulent

23 concealment, violation of California Business & Professions Code Sections 17200 *et seq.*,

24 trespass to chattels and conversion, and sought damages, restitution and injunctive relief.

25 [*Baggett* Doc. No 1. (Complaint).]

26     HP filed a motion to dismiss, attacking all of the causes of action set forth in the

27 complaint.  By order dated October 30, 2007, this Court largely denied HP's motion, only

28 dismissing the claim for unjust enrichment. [*Baggett* Doc. No. 20.]

– 3 –

1    For the next eighteen months, the parties engaged in extensive discovery in

2  anticipation of a motion for class certification and HP's motion for summary judgment.

3  The discovery included the deposition of nine witnesses located across the country

4  including eight depositions of current and former HP employees, many of which involved

5  the arcane technical aspects of color laser printers, the review of more than 300,000 pages

6  of technical and other documents, the subpoena of third-party witnesses, the retention and

7  consultation of leading experts, the inspection of several HP printers, and extensive legal

8  research regarding the sufficiency of the claims.  A protective order was negotiated and

9  executed.  Plaintiff and proposed class representative Kelsea Baggett was deposed for a

10  full seven hours, and extensive document and interrogatory requests were propounded

11  and answered.  As a result of the foregoing, Class Counsel obtained comprehensive

12  knowledge of HP's printer technology which extended to not only the *Baggett* action, but

13  also the *Young* action. [Joint Decl., ¶ 18.]

14    Class Counsel prepared a motion for class certification, which was thoroughly and

15  completely briefed.  At the same time, HP filed a motion for summary judgment based

16  upon claims that, among other things, Baggett could not prove justifiable reliance on

17  HP's alleged misrepresentations.  On September 29, 2009, the Court granted HP's motion

18  for summary judgment against the named plaintiff in the *Baggett* action on all claims and

19  denied as moot the fully briefed motion for class certification.  On November 17, 2009,

20  Plaintiff Baggett appealed the Court's order granting judgment in favor of HP to the

21  United States Court of Appeals for the Ninth Circuit. [Joint Decl., ¶ 19.]

22    The *Young* action (*James Young v. Hewlett-Packard Company*, Case No. Case No.

23  CV 09-00315) was commenced in the United States District Court for the Central District

24  of California (Guilford, J.) on January 14, 2009. [Joint Decl., ¶ 20.]  However, on largely

25  the same grounds on which HP prevailed in the summary judgment motion in the *Baggett*

26  action (as well as others), HP moved to dismiss the *Young* action.  By order dated March

27  16, 2010, the Court granted HP's motion to dismiss the *Young* action with prejudice.  On

28

– 4 –

1   April 9, 2010, Plaintiff Young appealed the Court's order granting judgment in favor of

2   HP to the United States Court of Appeals for the Ninth Circuit. [Joint Decl., ¶ 21.]

3         Notwithstanding HP's success in the district court in winning the *Baggett* and the

4   *Young* actions, the actions contributed to HP's changing the technology in its future

5   printer lines to remove the "hardstop" in its color laser printers – which will allow users

6   to have the opportunity to get all of the toner in the print cartridges that they have

7   purchased. [Joint Decl., ¶¶ 6, 90.]

8         Class Counsel engaged in comprehensive discovery that exposed HP to

9   tremendous potential future liability if it continued to employ the technology that

10  prevented users from having full access to all of the toner purchased.  Estimates that

11  Plaintiffs obtained through discovery show that the cartridges were designed to terminate

12  printing while upwards of 9 percent of the toner remained in the cartridges. [Joint Decl., ¶

13  11.]  With toner cartridges costing between $87.14 and $325.99 for the printers in the

14  class, the financial exposure for HP for future printer lines ran into the hundreds of

15  millions – if not greater.

16        At the same time, HP had to seriously consider its financial exposure based upon

17  the following.  First, it lost a critical motion to dismiss at the outset of this litigation

18  based upon its claim that the claimed practices did not constitute an unfair business

19  practice.  Second, Class Counsel obtained potentially damaging information regarding the

20  design, production and marketing of the subject HP color laser printers and cartridges –

21  which increased the likelihood that it could be exposed to substantial financial liability if

22  HP continued to use the "hardstop" technology in its future printer models.  Finally, and

23  no less significant, Class Counsel had significant credibility in its ability to prevail in

24  these actions because of its prior success in another printer action.  Approximately one

25  year prior to the commencement of the *Baggett* action, Class Counsel reached a

26  settlement against Epson for comparable claims involving its inkjet printers valued at

27  over $300 million – following the certification of a national class of users.

28

Based upon the foregoing, HP's decision to curtail the "hardstop" and comparable technology, and provide users with the full opportunity to exhaust all of the toner in their HP color laser printer cartridges, constitutes a material benefit that Class Counsel achieved as a result of this litigation.

## III.   THE PROPOSED SETTLEMENT

HP's concession that this litigation was one of the motivators for its change in behavior animated the parties attempts reach a settlement of the actions. [Joint Decl., ¶ 90.]  Through extended settlement negotiations before Ret. Judge James Warren, Plaintiffs successfully negotiated a class settlement that provides virtually all of the injunctive relief that could have been achieved if the action were to have proceeded to trial.

First, with respect to future printer lines, HP acknowledged that virtually all of its future printers would not prevent users from exhausting all of the toner in their HP color laser printer cartridges. [Joint Decl., ¶ 6.]

Second, with respect to the *Young* class, where Plaintiffs allege that HP failed to fully disclose the existence and use of technology that allows user to "override" the hardstop that prevents user access to all of the toner in the HP color laser toner cartridges, HP agreed to provide that notice directly to users through the comprehensive notice program.  With respect to the *Baggett* class, HP did not have the ability to change the technology on those machines, and the most that could be done was to give full disclosure of the claims through the comprehensive notice program.  All of this has been provided through the notice program, with live links established prior to final approval. [Joint Decl., ¶ 5.]

With respect to providing monetary relief for Class Members of both the *Baggett* and *Young* classes, Class Counsel wanted to provide some opportunity for benefit but was fully cognizant of the fact that they were negotiating from a position of weakness.  Both the *Baggett* and *Young* cases had been dismissed, and the only opportunity to obtain relief

– 6 –

at trial would be to convince the Ninth Circuit to reverse the trial court's orders. Thereafter, Plaintiffs would have to convince the trial court to grant class certification and then convince a jury to provide monetary damages.

Plaintiffs aggressively tried to get something of substance for the Class. HP ultimately agreed to provide a total of $5 million in e-credits to class members which could be used to purchase HP products. While the e-credits are relatively small (amounting to $7 or $13 for each *Young* or *Baggett* printer, respectively), they could be used for some products that cost less than $13.00. [Joint Decl., ¶ 7.] This was an extra benefit that Class Counsel negotiated for the class – but, the primary benefit remained the virtually full injunctive relief.

HP also agreed to pay up to $750,000 for the comprehensive notice program that included direct e-mail notice (furnished by HP at no cost), publication notice in Parade magazine, USA Weekend, and CIO magazine; and banner advertisements on Yahoo.com and other websites through 24/7 Real Media Network as well as a dedicated website. [Joint Decl., ¶¶ 100-101.]

HP has agreed, subject to Court approval, to pay $2,500 to Mr. Baggett and $1,000 to Mr. Young. HP has also agreed, subject to the Court's approval, to separately pay to Class counsel an amount of $2,750,000 for attorneys' fees, costs and disbursements. The payment will be in lieu of statutory fees that Plaintiffs and/or their attorneys might otherwise be entitled to recover on their claims, including claims for injunctive relief, and this amount is inclusive of all fees and costs of Class Counsel in the *Baggett* and *Young* actions. Class counsel negotiated attorneys' fees after the class benefit was negotiated, and agreed to a fee that represents a fraction of the lodestar hours actually worked on the *Baggett* and *Young* actions. Further, Plaintiffs and Class Counsel believe that the relief to the *Baggett* and *Young* classes as a result of this litigation, particularly when the litigation served as a catalyst for a change in corporate behavior by HP, would entitle Class Counsel – based upon their lodestar alone – to an amount substantially more than $2,750,000.00. [Joint Decl., ¶ 10.]

## IV.     THE REQUESTED ATTORNEYS' FEES ARE FAIR AND REASONABLE

### A.     Attorneys' Fees May Be Awarded When a Party Confers a Common Benefit On a Class

Class Counsel seek attorneys' fees primarily based on their obtaining a common benefit for the Class.  This includes: (a) HP's curtailment of the use of the hardstop in future color laser printers which will benefit all future purchasers of HP color laser printers; and (b) the injunctive relief which will provide members of the class with sufficient information regarding the HP technology to understand the function of the hardstop in both the *Baggett* and *Young* printers and to locate in the manual instructions for overriding the hardstop in the *Young* printers.  In particular, the cessation of the hardstop function in HP's newest models of color laser printers will provide purchasers of these printers with millions of pages in extra prints and allow users complete and unrestricted access to the expensive toner they purchased.

"[A] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 US 472, 478 (1980).  The common fund doctrine, however, is not limited to monetary benefits.  Attorneys' fees are proper whenever a class action has conferred a "substantial benefit" on the class members – even if that benefit is non-monetary. *Mills v. Electric Auto-Lite Co.*, 396 US 375, 395-397 (1970); *Hall v. Cole*, 412 U.S. 1, 5 (1973) ("the rationale of ... [the common fund doctrine] must logically extend, not only to litigation that confers a monetary benefit on others, but also to litigation 'which corrects or prevents an abuse which would be prejudicial to the rights and interests' of those others.") (citations omitted); *Loring v. City of Scottsdale, Ariz.*, 721 F.2d 274, 275 (9th Cir. 1983) ("Modernly this exception (to the general American rule that attorney's fees are not recoverable) extends to situations where a 'substantial benefit' has been conferred upon the members of an ascertainable class, despite the fact the benefit is not monetary").  An award of attorneys' fees under

– 8 –

1   the common benefit theory is appropriate in this case, as Class Counsel has created a

2   substantial benefit for an ascertainable class in a number of ways.

3        In order to recover fees under the "common benefit" doctrine, the fees may be

4   shifted where the party seeking fees confers a substantial benefit on a class. *Hall*, 412 U.S

5   at 5 (*citing Mills*, 396 U.S. at 393-94); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1052

6   (9th Cir. 2002); *Loring*, 721 F.2d 275.  Here, there can be no reasonable dispute that the

7   elimination of the hardstop in HP color laser printers represents a substantial benefit to

8   purchasers of those printers.  Color toner cartridges are incredibly expensive and even if

9   the elimination of the hardstop allows users as few as 100 additional pages from each

10  cartridge, the savings over the lifespan of a color laser printer will likely equal several

11  hundred dollars for each and every purchaser.  Moreover, the injunctive relief providing

12  disclosure to owners of the *Baggett* printers of a heretofore completely hidden feature

13  that prevented them from utilizing all the toner in their cartridges and providing the

14  owners of the *Young* printers with the location where the previously "buried" instructions

15  for overriding the hardstop are contained in the user manual also qualify as a substantial

16  benefit.  In addition, providing the class with the opportunity to obtain $5,000,000 in

17  monetary e-credits that can be used for the purchase of printers or printer supplies online

18  at HP's online store at www.shopping.hp.com is a benefit, even if the precise value of the

19  credits may be difficult to ascertain.

20       The second requirement for recovering fees under the common benefit doctrine is

21  that the benefit must be conferred on members of an ascertainable class. *Hall*, 412 U.S. at

22  5 (*citing Mills*, 396 U.S. 393-94).   A class of future owners of HP color laser printers and

23  a class of current owners of the identified *Baggett* and *Young* printers is ascertainable

24  insofar it "is administratively feasible for the court to ascertain whether an individual is a

25  member." *O'Connor v. Boeing North American, Inc.*, 184 F.R.D. 311, 319 (C.D. Cal.

26  1998); see also, *Schwartz v. Upper Deck Co.*, 183 F.R.D. 672, 679 (S.D. Cal. 1999) ("An

27  identifiable class exists if its members can be ascertained by reference to objective

28  criteria.").

Finally, fees must be capable of being "shifted with some exactitude to those benefitting." *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 264 n. 39 (1975); *see also Hall*, 412 U.S. at 5 (stating that, under the common benefit doctrine, "'the court's jurisdiction over the subject matter of the suit makes possible an award that will operate to spread the costs proportionately among [members of the benefitting class]'") (*quoting Mills*, 296 U.S. at 393-94).  Importantly, "if the relationship [between the defendant and class members] is such that the costs can be spread indirectly to the beneficiaries by imposing them on the defendant, then the relationship permits application of the doctrine." *Smith v. GTE Corp.*, 236 F.3d 1292, 1307 (11th Cir. 2001); *see, also*, *Hall*, 412 U.S. at 4-9 (Supreme Court permits an award of attorney's fees against a union defendant where the suit had resulted in non-monetary benefits to the union members); *Zucker v. Occidental Petroleum Corp.*, 192 F.3d 1323, 1326 (9th Cir. 1999) (district court awards $1 million in attorneys' fees even though "the class did not get a dime in cash").

Here, Plaintiffs' attorneys have conferred a substantial benefit on an ascertainable class and fees can be shifted with some exactitude to those benefitting.  Accordingly, the Court may award Class Counsel the fees sought.

## B. Class Counsel Is Entitled to Attorneys' Fees Calculated by the Lodestar Method

The lodestar method is the only appropriate method of calculating an award of attorneys' fees where – as here – it is difficult to assign a monetary value to the settlement either because the settlement does not provide any monetary relief to the class or because the settlement includes a significant non-monetary component in addition to monetary relief. *Yeagley v. Wells Fargo & Co.*, 365 Fed.Appx. 886 (9th Cir. 2010).

As held by the Ninth Circuit:

> In employment, civil rights and other injunctive relief class actions, courts often use a lodestar calculation because there is no way to gauge the net value of the settlement or any percentage thereof. The lodestar calculation begins with the multiplication of the number of hours reasonably expended

– 10 –

by a reasonable hourly rate. *Blum v. Stenson*, 465 U.S. 886, 897, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). The hours expended and the rate should be supported by adequate documentation and other evidence; thus, attorneys working on cases where a lodestar may be employed should keep records and time sheets documenting their work and time spent. The resulting figure may be adjusted upward or downward to account for several factors including the quality of the representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment. *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975).

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998).

Under the lodestar method, it is not necessarily significant that a prevailing plaintiff did not receive all the relief requested. "For example, a plaintiff who failed to recover damages but obtained injunctive relief . . . may recover a fee award based on all hours reasonably expended if the relief obtained justified that expenditure of attorney time." *Hensley v. Eckerhart*, 461 U.S. 424, 435 n. 11 (1983).

Here, Class Counsel's combined total lodestar for both the *Baggett* and *Young* actions is $4,776,464.25 – an amount that is 1.74 times *greater* than the $2,750,000 in attorneys' fees *and* costs for which Class Counsel are applying.  Stated differently, the $2,554,420.23 ($2,750,000 less the $195,579.77 in litigation costs) in attorneys' fees sought by Class Counsel represents a negative multiplier of 0.535 to the combined lodestar ($4,776,464.25) expended by Class Counsel in this litigation. [Joint Decl., ¶ 110.]  Thus, even assuming *arguendo* that this Court were to find that the amount of hours expended was "unreasonable" or that the hourly rates of the Plaintiffs' attorneys were likewise unreasonable, a substantial downward adjustment has already been factored into the award sought.

## C.   Class Counsel's Application Is Supported by the Relevant Factors Used by the Ninth Circuit in Calculating an Attorneys' Fee Award Based on Lodestar

While Class Counsel are seeking a fee calculated utilizing their lodestar, it is important to note that this case is not a statutory fee shifting case, thus the prohibition on

– 11 –

awarding a contingency enhancement to the lodestar amount as set forth in *City of Burlington v. Dague*, 505 U.S. 557 (1992) has no application here.  As held by the Ninth Circuit, "*Dauge*'s rationale for barring risk multipliers in statutory fee cases does not bar risk multipliers in common fund [or common benefit] cases." *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994) ("*WPPSS*").  In *Vizcaino,* the Ninth Circuit noted that

> "courts have routinely enhanced the lodestar to reflect the risk of non-payment in common fund cases. . . .  This mirrors the established practice in the private legal market of rewarding attorneys for taking the risk of nonpayment by paying them a premium over their normal hourly rates for winning contingency cases." . . .  In common fund cases, "attorneys whose compensation depends on their winning the case [] must make up in compensation in the cases they win for the lack of compensation in the cases they lose.'"

290 F.3d at 1051 (quoting *WPPSS,* 19 F.3d at 1300-01).

In *Vizanio*, the Ninth Circuit affirmed a fee that equaled a multiplier of 3.65.

Because this is not a statutory fee case, the Ninth Circuit requires consideration of the 12-factor test set forth in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d at 70 in determining the appropriate upward or downward adjustment of the lodestar in order to calculate the reasonable attorneys' fee. *Tutor-Saliba Corp. v. City of Hailey*, 452 F.3d 1055, 1065 (9th Cir. 2006);  *see also, Vizcaino*, 290 F.3d at 1051 (affirming district court's finding that attorney's fee request was reasonable under a lodestar "cross-check" by considering the *Kerr* factors.)  The *Kerr* factors are: (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. *Kerr*, 526 F.2d at 70.  While the court need not consider all twelve *Kerr* factors, it should identify the factors that it does

– 12 –

consider relevant in determining the appropriateness of a fee award. *Loring,* 721 f.2d at 275.  The most salient factors are discussed below.

### 1.   *The Time and Labor Required.*

Class Counsel have provided the Court with declarations describing the work performed on this case broken down into nine categories:  (1) investigation and drafting of complaint(s); (2) briefing and oral argument on defendant's motion to dismiss; (3) discovery and analysis of documentary evidence; (4) consultation with experts and development of expert opinions and declarations; (5) preparation for and attendance at depositions; (6) class certification motion and briefing; (7) summary judgment motions, briefing and oral arguments; (8) mediation and settlement discussions; and (9) preparation of settlement documents and papers in support of settlement.  *See* Kellner and Kaplan Joint Declaration and exhibits attached thereto.  In total, the 11,366.25 hours Class Counsel collectively expended on this case were reasonably spent. [Joint Decl., ¶ 103.]

Further, Class Counsels' lodestar does not account for the additional time that will be required of to participate in the final approval process and to oversee the claims administration process and the distribution of the net settlement funds to eligible claimants.

### 2.   *The Novelty and Difficulty of the Questions Involved.*

This litigation involved extremely novel and difficult questions.  Factually, the litigation involved over thirty different models of laser printers and required testing and investigation of HP's laser printer technology.  Legally, the litigation involved novel questions of the application of old common law tort claims to modern technology as well as the similarities of common law causes of action under the laws of all fifty states.  The settlement itself involved difficult questions in devising meaningful relief for the class that could be provided given the cases current procedural posture.

Indeed, the formidable legal obstacles that Class Counsel had to confront in this case is best exemplified by the fact that the District Court agreed with HP that the subject

business practices were not unfair. [*Baggett* Doc. No. 194.]  While Class Counsel has appealed this ruling, the novelty and difficulty in the cases cannot be seriously disputed.

### 3.    *The Skill Required and Quality of the Work Performed.*

The third *Kerr* factor to consider in determining what fee to award is the skill required and quality of work performed. *In re Heritage Bond Litig.*, 2005 WL 1594389, at *12 (C.D. Cal. June 10, 2005) ("The experience of counsel is also a factor in determining the appropriate fee award.").

The "prosecution and management of a complex national class action requires unique legal skills and abilities." *Edmonds v. United States*, 658 F.Supp. 1126, 1137 (D.S.C. 1987).  Here, Class Counsel are among the most experienced and skilled practitioners in the consumer class action field, and the firms have long and successful track records in such cases.[2]  From the outset, Class Counsel engaged in a concerted effort to obtain the maximum recovery for the Classes.  As detailed in the Joint Declaration, through Class Counsel's persistent and skillful work, HP's motion to dismiss was largely defeated and a comprehensive class certification motion was fully briefed and submitted.  Class Counsel were ultimately able to obtain significant relief for the Classes despite having suffered summary judgment in the trial court.  [Joint Decl., ¶¶ 17-19.]

Class Counsel also successfully obtained and reviewed voluminous documents from HP during discovery, prepared for and participated in nine depositions, and filed a motion for class certification and supporting documents.  Class Counsel's skill and experience was also put into play in their work with the experts retained in this complicated class action. [Joint Decl. ¶¶ 29-31, 40-49.]

The fact that Class Counsel have demonstrated a willingness and ability to prosecute complex cases such as this throughout trial and appeals was undoubtedly a factor that encouraged HP to engage in settlement discussions, and added valuable

---

[2]    *See* Firm Biographies of all Class Counsel firms. [Joint Decl., ¶ 106.]

– 14 –

1  leverage in the negotiations, ultimately resulting in the recovery for the Class. [Joint
2  Decl. ¶ 106.]

3          Lead Counsel engaged in hard-fought and protracted settlement negotiations.  With
4  the help of Ret. Judge James Warren and through skilled negotiation, Lead Counsel
5  eventually achieved the settlement. [Joint Decl. ¶ 89.]  Lead Counsel's extensive efforts
6  and skill leading to the settlement strongly support the requested fee.

7          The quality and vigor of opposing counsel is also important in evaluating the
8  services rendered by Lead Counsel.  *See, e.g.*, *In re Equity Funding Corp. Sec. Litig.*, 438
9  F. Supp. 1303, 1337 (C.D. Cal. 1977).  HP was represented by experienced counsel from
10 two prominent law firms, Morgan, Lewis & Bockius LLP and Gibson, Dunn & Crutcher,
11 firms with substantial experience in this type of litigation.  The representation of HP was
12 no less rigorous than Class Counsel's representation of the Classes.  The fact that Class
13 Counsel achieved this Settlement for the Class in the face of formidable legal opposition
14 further evidences the quality of their work.

15                  *4.      The Preclusion of Other Employment.*

16         As discussed above, this action has been both demanding and contentious.  In
17 addition to the time and labor expended on factual analysis and expert work, Class
18 Counsel expended significant amounts of time on discovery and in dispositive motion
19 practice.  During the past four years, the present litigation precluded Class Counsel from
20 accepting other potentially profitable work. *See, e.g., Vizcaino*, 290 F.3d at 1050.

21                  *5.      The Customary Fee.*

22         The negative multiplier requested by Class Counsel is well below the range of
23 multipliers approved by courts within the Ninth Circuit.  In *Vizcaino*, the court examined
24 a survey of multipliers in common fund cases, and found that they ranged from "0.6-19.6,
25 with most (20 of 24, or 83%) from 1.0-4.0 and a bare majority (13 of 24, or 54%) in the
26 1.5-3.0 range." 290 F.3d at 1051.

27

28

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES (CASE NO. SA CV-07-0667 AG)**

### 6. *The Contingent Nature of the Fee and the Financial Burden Carried by Counsel.*

The Ninth Circuit has confirmed that a determination of a fair and reasonable fee must include consideration of the contingent nature of the fee and the obstacles surmounted in obtaining the settlement.

> It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases. *See* Richard Posner, *Economic Analysis of Law* § 21.9, at 534-35 (3d ed. 1986). Contingent fees that may far exceed the market value of the services if rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis regardless whether they win or lose.

*WPPSS*, 19 F.3d at 1299.[3]

The Ninth Circuit has explained that "[c]ontingent fees that may far exceed the market value of the services if rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis regardless whether they win or lose." *WPPSS*, 19 F.3d at 1299; see also *Fischel v. Equitable Life Assur. Society of U.S.*, 307 F.3d 997, 1008 (9th Cir. 2002) ("This provides the 'necessary incentive' for attorneys to bring actions to protect individual rights and to enforce public policies."). Thus, "courts have routinely enhanced the lodestar to reflect the risk of non-payment in common fund cases." *WPPSS*, 19 F.3d at 1300.

---

[3] S*ee In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 2007 WL 2416513, at *1 (N.D. Cal. Aug. 16, 2007) ("Plaintiffs' counsel risked time and effort and advanced costs and expenses with no ultimate guarantee of compensation."); see also *In re Omnivision Technologies, Inc.,* 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2008) ("The importance of assuring adequate representation for plaintiffs who could not otherwise afford competent attorneys justifies providing those attorneys who do accept matters on a contingent-fee basis a larger fee than if they were billing by the hour or on a flat fee.") (citations omitted).

Indeed, it is error to deny a risk multiplier where a case is fraught with risk and there is no guarantee of payment. *WPPSS*, 19 F.3d at 1301-1302 (abuse of discretion for district court to deny a risk multiplier after acknowledging risk in pursuing action on contingent basis).  Thus in *Fischel*, the Ninth Circuit explained that "[i]t is an abuse of discretion to fail to apply a risk multiplier . . . when (1) attorneys take a case with the expectation that they will receive a risk enhancement if they prevail, (2) their hourly rate does not reflect that risk, and (3) there is evidence that the case was risky." *Fischel*, 307 F.3d at 1008. The Court also noted that it is an abuse of discretion to fail "to apply a risk multiplier when the fee applicant establishes that the prevailing party would have faced 'substantial difficulties' in finding counsel without an adjustment for risk and that it is difficult to find counsel for this class of contingency fee cases." *Fischel*, 307 F.3d at 1008 n.8.  Likewise, in reversing the denial of a risk multiplier in *WPPSS*, the Ninth Circuit found that the record did not support the conclusion that class counsel "was not driven, at least in part, by expectancy that their fee would be enhanced if they were successful" or "that law firms showed no reluctance to take the case and that the firms' high hourly rates already reflected some of the risk in the case . . . ." 19 F.3d at 1301.

Here, Class Counsel received no compensation during the course of this action and invested $4,776,464.25 in time, and incurred expenses (totaling $195,579.77) in obtaining the Settlement for the benefit of the Classes. [Joint Decl. ¶¶ 103, 111.] Additional work in connection with the Settlement and claims administration will also be required.  Any fee award has always been at risk, and completely contingent on the result achieved and on this Court's discretion in awarding fees and expenses.

Indeed, the risk of no recovery in complex cases is very real.  Lead Counsel knows from personal experience that, despite the most vigorous and competent efforts, their success in contingent litigation such as this is never guaranteed.  The commencement of a class action is no guarantee of success.  These cases are not always settled, nor are plaintiffs' lawyers always successful.  *See, e.g., In re JDS Uniphase Corp. Sec. Litig*., 2007 WL 4788556 (N.D. Cal. Nov. 27, 2007).  Hard, diligent work by skilled counsel is

required to develop facts and theories to prosecute a case or persuade defendants to settle
on terms favorable to the Class.

### 7.    *The Result Obtained.*

The benefit achieved from the litigation is an important factor to be considered in
awarding attorneys' fees. See *Vizcaino*, 290 F.3d at 1048.  Here, the Settlement provides
the Class with virtually all of the injunctive relief sought.  The Settlement requires HP to
prominently disclose the existence and effect of the hardstop for both the *Baggett* and
*Young* printers as well more fully advising owners of the Young printer about the
override functionality.  These are significant, concrete benefits that directly address the
gravamen of the complaints in the *Baggett* and *Young* actions.  Significantly, to make
sure that such information was provided to the class, a comprehensive notice programs
was formulated (all at HP's expense) that gave this information **before** final approval to
class members.[4]  However, these are not the only – or even the most significant – benefit
achieved from the Litigation.

Second, as a result of this litigation, HP will not employ the hardstop mechanisms
in its future color laser printers lines.  It bears repeating, virtually all (if not all) HP color
Laser printers presently slated for future production or in development will not employ
the technology challenged in the Litigation.  Therefore, as a result of the *Baggett* and
*Young* actions, HP's future color Laser printers will allow users to "print to fade" – just
like HP's monochrome printers.  As a result, Class Counsel effectively obtained all of the
injunctive relief that it could have obtained with respect to future HP printer lines.
This benefit alone, potentially worth millions of dollars to HP's future customers, more
than justifies the efforts Class Counsel expended in the litigation.  See *Vizcaino*, 290 F.3d

---

[4]   Pursuant to the Settlement, HP will add to its website a disclosure explaining the
operation of the printer models included in the Settlement.  Notice of the proposed
settlement – which included, in addition to publication notice, an email by HP to all
registered owners of the printer models in the Settlement – featured a live link to this
disclosure website.

– 18 –

at 1048 (proper to consider in a fee application benefits conveyed by litigation beyond the settlement).

Finally, while not sufficient on its own to justify Class Counsel's fees, Class Counsel was able to make available some monetary benefit to class members through the settlement by HP's agreement to issue up to $5,000,000 in e-credits at HP's online store to the Class.  It is absolutely true that this is not a significant benefit to the class, since it represents a small portion of the price of many of the HP products – including replacement color laser printer cartridges.  However, there are some products that class members could fully purchase for less than the $13 e-credits. [Doc. No. 218 (Kellner Supp. Decl. re Preliminary Approval), ¶¶ 11-12.]

In sum, the settlement provides class members with substantial benefits.

## V.   CLASS COUNSEL'S EXPENSES ARE REASONABLE AND WERE NECESSARILY INCURRED TO ACHIEVE THE BENEFITS OBTAINED

Class Counsel also request that the Court grant their application for $195,579.77 to reimburse costs in connection with the prosecution of this litigation. [Joint Decl. ¶ 111.] Attorneys who create a common fund are entitled to the reimbursement of expenses they advanced for the benefit of the class. *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996) ("Reasonable costs and expenses incurred by an attorney who creates or preserves a common fund are reimbursed proportionally by those class members who benefit from the settlement.").

Expenses that are of the type normally charged to hourly paying clients are reimbursable. *See, e.g., Omnivision*, 559 F. Supp. 2d at 1048 ("Attorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters."); *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (recovery of "those out-of-pocket expenses that 'would normally be charged to a fee paying client'" are reimbursable) (citations omitted).

1  The expenses which Class Counsel seek are the type of expenses routinely charged
2  to hourly paying clients.  For example, a large portion of the litigation expenses for which
3  reimbursement is sought were incurred for professional expert and consultant fees.  Of
4  the total amount of expenses, $46,332.38, or nearly 24%, was expended on experts.  The
5  expertise and assistance provided by these experts was critical to the prosecution and
6  resolution of this action. [Joint Decl., ¶ 114.]

7  The expenses also include the costs of on-line legal and factual research in the total
8  amount of $10,010.31. [Joint Decl., ¶ 115.]   These are the charges for computerized
9  factual and legal research services such as *Lexis-Nexis* and *Westlaw*.  It is standard
10  practice for attorneys to use *Lexis-Nexis* and *Westlaw* to assist them in researching legal
11  and factual issues.  *See In re Media Vision Tech.,* 913 F. Supp. at 1371.  Indeed, courts
12  recognize that these tools create efficiencies in litigation and, ultimately, save clients and
13  the class money. *See, e.g., In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 570 (7th Cir. 1992).
14  In approving expenses for computerized research, the court in *Gottlieb v. Wiles*
15  underscored the time-saving attributes of computerized research as a reason
16  reimbursement should be encouraged. *Gottlieb v. Wiles,*. 150 F.R.D. 174, 186 (D. Colo.
17  1993), *rev'd and remanded on other grounds sub nom. Gottlieb v. Barry*, 43 F.3d 474
18  (10th Cir. 1994).

19  Further, Class Counsel were required to travel in connection with prosecuting and
20  mediating this matter and nine depositions and, thus, incurred the related costs of travel
21  tickets, meals, and lodging.  Included in the expense request is $40,945.99 for out-of-
22  town travel expenses necessarily incurred for the prosecution of this Litigation. [Joint
23  Decl., ¶ 116.]  The expenses in this category are reasonable in amount, and are properly
24  charged against the fund created.  The other expenses for which reimbursement is sought
25  are the types of expenses that are necessarily incurred in litigation and routinely charged
26  to clients billed by the hour.  These expenses include, among others, long distance

27
28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES (CASE NO. SA CV-07-0667 AG)

1  telephone and facsimile charges, postage and delivery expenses, filing fees,

2  photocopying, and document/litigation support.[5]

3       From the beginning of the case, Class Counsel were aware that they might not

4  recover any of their expenses, and, at the very least, would not recover anything until the

5  action was successfully resolved.  Class Counsel also understood that, even assuming that

6  the case was ultimately successful, an award of expenses would not compensate them for

7  the lost use of the funds advanced to prosecute this action.  Thus, Class Counsel was

8  motivated to, and did, take significant steps to minimize expenses whenever practicable

9  without jeopardizing the vigorous and efficient prosecution of the action. [Joint Decl., ¶

10  112.]

11

12  **VI.   PAYMENTS TO THE REPRESENTATIVE PLAINTIFFS SHOULD BE**

13         **ALLOWED**

14       Class Representatives, who participated actively in the litigation, responded to

15  discovery, and had their depositions taken should be awarded the nominal sums HP

16  agreed to pay to them.  Such incentive payments are appropriate here. *See Razilov v.*

17  *Nationwide Mut. Ins. Co.*, 2006 WL 3312024 at *2 (D. Or. 2006) (Ninth Circuit trial

18  courts have discretion to reward class representatives with incentive awards for the risk

19  incurred in filing the class action and the services they provided on behalf of the class);

20  *Manual for Compl. Litig.* at § 21.62 fn. 971 (2004) (enhancement payments may be

21

22  ───────────────

23     [5]   See *Thornberry v. Delta Air Lines, Inc.*, 676 F.2d 1240, 1244 (9th Cir. 1982), *vacated and remanded on other grounds*, 461 U.S. 952 (1983); see also *Knight v. Red Door Salons, Inc.*, 2009 WL 248367, at *7  (N.D. Cal. Feb. 2, 2009) (approving of expenses relating to "online legal research, travel, postage and messenger services, phone and fax charges, copying, court costs, and the costs of travel"); *Omnivision*, 559 F. Supp. 2d at 1048 (approving of expenses relating to "photocopying, printing, postage and messenger services, court costs, legal research on Lexis and Westlaw, experts and consultants, and the costs of travel for various attorneys and their staff throughout the case").

– 21 –

"warranted for time spent meeting with class members, monitoring cases, or responding to discovery").

Unlike unnamed class members, who are passive beneficiaries of the representatives' efforts on their behalf, named class representatives agree to be the subject of discovery, including making themselves available as witnesses at deposition and trial, and subject themselves to other obligations of named parties.  "Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit." *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998).  "Since without a named plaintiff there can be no class action, such compensation as may be necessary to induce him to participate in the suit could be thought the equivalent of the lawyers' non-legal but essential case-specific expenses, such as long-distance phone calls, which are reimbursable." *In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 571 (7th Cir.1992); *Staton v. Boeing Co.*, 327 F.3d 938, 966 (9th Cir. 2003).

Here, the efforts of the named Plaintiffs on behalf of the Class underscore the appropriateness of the requested incentive awards.  Throughout the litigation, Plaintiffs performed the following tasks, among others:  (1) assisted counsel with the preparation of the complaint and amended complaints; (2) produced relevant documents and responded to other written discovery; (3) provided their furnaces for inspection; (4) stayed abreast of the settlement negotiations; and (5) provided deposition, summary judgment, and class certification testimony.  The efforts of each Plaintiff were instrumental in achieving the Settlement on behalf of the Class.

## VII.  CONCLUSION

Class Counsel obtained virtually all of the injunctive relief that they originally sought in this action, resulting in substantial changes in the way that HP designs and manufactures its color laser printers.  With no assurance of success, Lead Plaintiffs and Lead Counsel expended substantial resources in the prosecution of this action.

Admittedly, the direct monetary relief to class members was relatively minimal – but, that should not detract from the other substantial successes and benefits obtained for the class as a result of this litigation.  Class Counsel is not seeking a positive multiplier, and its $2,554,420.23 fee request (which represents a discount of a **_negative_** multiplier of 0.535) is fair and reasonable.

In sum, Class Counsel requests that the Court should approve the fee and expense application and award Class Counsel the sum of $2,554,420.23 in fees, and $195,579.77 in expenses, and award Representative Plaintiff Baggett $2,500 and Representative Plaintiff Young $1,000 in incentive fees relating to their representation of the Class.

Dated:  November 29, 2010                    KABATECK BROWN KELLNER, LLP


By:  _____/s/_____
              Richard L. Kellner


Dated:  November 29, 2010                    CHITWOOD HARLEY HARNES LLP


By:  _____/s/_____
              Darren T. Kaplan

*Attorneys for Plaintiffs the*
*Preliminarily Certified Class*