1 | KABATECK BROWN KELLNER LLP
BRIAN S. KABATECK, SBN 152054
2 | (bsk@kbklawyers.com)
RICHARD L. KELLNER, SBN 1714146
3 | (rlk@kbklawyers.com)
644 South Figueroa Street
4 | Los Angeles, CA 90017
Tel: (213) 217-5000
5 | Fax: (213) 217-5010

6 | CHITWOOD HARLEY HARNES LLP
GREGORY E. KELLER (admitted *Pro Hac Vice*)
7 | (gkeller@chitwoodlaw.com)
DARREN T. KAPLAN (admitted *Pro Hac Vice*)
8 | (dtkaplan@chitwoodlaw.com)
2300 Promenade II
9 | 1230 Peachtree Street, N.E.
Atlanta, GA 30309
10 | Tel: (404) 873-3900
Fax: (404) 876-4476

11 |
Attorneys for Plaintiff and
12 | the Preliminarily Certified Class

13 |

14 |

15 | **UNITED STATES DISTRICT COURT**

16 | **CENTRAL DISTRICT OF CALIFORNIA**

17 | In re: HP LASER PRINTER LITIGATION

**CASE NO. SA CV 07-0667**

18 | HON. ANDREW J. GUILFORD

19 | **PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

20 |

21 |

22 | Hearing
Date: January 31, 2011
23 | Time: 10:00 a.m.
Courtroom: 10D
24 |

25 |

26 |

27 |

28 |

**NOTICE OF MOTION**

PLEASE TAKE NOTICE that pursuant to Fed. R. Civ. P. 23(e) and the Court's Order Preliminarily Approving Settlement, Providing for Notice and Scheduling Settlement Hearing ("Preliminary Approval Order," Docket No. 219), on January 31, 2011, at 10:00 a.m., before the Honorable Andrew J. Guilford of the United States District Court for the Central District of California, Santa Anna, California, Plaintiff Kelsea Baggett will and hereby does move for entry of an Order: (1) granting final approval of the proposed Settlement which was preliminarily approved on October 12, 2010, (2) providing for the orderly performance and enforcement of the terms and conditions of the Settlement as set forth in the Agreement, (3) entering judgment as to Plaintiff and the Class, and (4) dismissing of the instant Lawsuit with prejudice.

This Motion is based on this Notice of Motion, the Memorandum of Points and Authorities in Support Thereof, the Joint Declaration of Richard E. Kellner and Darren T. Kaplan, the Declaration of Cameron R. Azari, the Declaration of the Honorable James L. Warren, the Stipulation of Settlement dated August 25, 2010 (Doc. No. 213), all pleadings and papers filed herein, arguments of counsel, and any other matters properly before the Court.

Dated: January 14, 2011          KABATECK BROWN KELLNER, LLP


                                 By: _____/s/_____
                                        Richard L. Kellner


Dated: January 14, 2011          CHITWOOD HARLEY HARNES LLP


                                 By: _____/s/_____
                                        Darren T. Kaplan

                                 *Attorneys for Plaintiffs the*
                                 *Preliminarily Certified Class*

– 2 –

KABATECK BROWN KELLNER LLP
BRIAN S. KABATECK, SBN 152054
(bsk@kbklawyers.com)
RICHARD L. KELLNER, SBN 1714146
(rlk@kbklawyers.com)
644 South Figueroa Street
Los Angeles, CA 90017
Tel: (213) 217-5000
Fax: (213) 217-5010

CHITWOOD HARLEY HARNES LLP
GREGORY E. KELLER (admitted *Pro Hac Vice*)
(gkeller@chitwoodlaw.com)
DARREN T. KAPLAN (admitted *Pro Hac Vice*)
(dtkaplan@chitwoodlaw.com)
2300 Promenade II
1230 Peachtree Street, N.E.
Atlanta, GA 30309
Tel: (404) 873-3900
Fax: (404) 876-4476

Attorneys for Plaintiffs and
the Preliminarily Certified Class

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: HP LASER PRINTER LITIGATION | **CASE NO. SA CV 07-0667**<br><br>HON. ANDREW J. GUILFORD<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Hearing<br>Date:  January 31, 2011<br>Time:  10:00 a.m.<br>Courtroom:  10D |

# TABLE OF CONTENTS

TABLE OF CONTENTS ....................................................................................................... I

TABLE OF AUTHORITIES ................................................................................................ II

I.   INTRODUCTION ....................................................................................................... 1

II.   PROCEDURAL AND FACTUAL BACKGROUND .............................................. 4

    A.   The Litigation ....................................................................................................... 4

    B.   Overview of the Settlement ................................................................................. 6

    C.   Notice and Claims Administration ..................................................................... 9

III.   THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE ...................... 10

    A.   The Settlement is the Result of Arms-Length Negotiations ......................... 12

    B.   The Risk, Expense, Complexity and Likely Duration of Further
        Litigation .............................................................................................................. 13

    C.   The Class Received Benefits Through Prospective Relief, Injunctive
        Relief and E-Credits .......................................................................................... 14

    D.   The Extent of Discovery Completed and the State of the Proceedings ........ 16

    E.   The Experience and Views of Counsel ............................................................ 18

    F.   The Reaction of Class Members to the Proposed Settlement ....................... 19

        1.   *Objections Arguing That the Relief Provided to the Class by the*
            *Settlement Is Insufficient Simply Ignore The Realities of This*
            *Litigation.* ................................................................................................... 20

IV.   THE SETTLEMENT PROVIDED ADEQUATE NOTICE TO THE CLASS ............... 29

V.   THE SETTLEMENT CLASS SHOULD BE FINALLY CERTIFIED ........................... 31

    A.   The Settlement Class Satisfies the Prerequisites of Rule 23(a). ................... 31

    B.   The Settlement Class Satisfies the Requirements of Rule 23(b)(3) ............... 34

VI.   CONCLUSION ........................................................................................................... 35

i

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT (CASE NO. CV-07-0667 AG)

1

# TABLE OF AUTHORITIES

2

## CASES

3

*Amchem Prod., Inc. v. Windsor,*
    521 U.S. 591, 625 (1997)..................................................................32, 35

4

*Arcand v. Brother Intern. Corp.,*
    2010 WL 390733 (D.N.J. Sep. 29, 2010) .............................................1

5

6

*Arcand v. Brother Intern. Corp.,*
    673 F.Supp.2d 282 (D.N.J. 2009)...................................................2, 21

7

*Baby Neal for and by Kanter v. Casey ,*
    43 F.3d 48, 58 (3rd Cir. 1994).............................................................33

8

9

*Blackie v. Barrack,*
    524 F.2d 891, 902-03 (9th Cir. 1975)..................................................32

10

*Boeing Co. v. Van Gemert,*
    444 US 472, 478 (1980)........................................................................27

11

12

*Boyd v. Bechtel Corp.,*
    485 F.Supp. 610, 622 (N.D. Cal.1979)..........................................18, 19

13

*Brown v. Ticor Title Ins.,*
    982 F.2d 386, 390 (9th Cir.1992) .......................................................33

14

15

*Churchill Village, L.L.C. v. General Electric,*
    361 F.3d 566, 575-576 (9th Cir. 2004) ..............................................11

16

*Class Plaintiffs v. City of Seattle,*
    955 F.2d 1268, 1276 (9th Cir. 1992) .............................................10, 12

17

18

*County of Suffolk v. Long Island Lighting Co.,*
    907 F.2d 1295, 1323 (2d Cir. 1990) ...................................................13

19

*Dunleavy v. Nadler,*
    213 F.3d 454, 458 (9th Cir. 2000)...............................................13, 17

20

21

*Ellis v. Naval Air Rework Facility,*
    87 F.R.D. 15, 18 (N.D. Cal. 1980)......................................................18

22

*Farinella v. PayPal, Inc.,*
    611 F. Supp. 2d 250, 256-57 (E.D.N.Y. 2009)...................................30

23

24

*Fleury v. Richemont North America, Inc.,*
    2008 WL 3287154  (N.D. Cal. Aug.6, 2008)......................................20

25

*Gartin v. S & M NuTec LLC,*
    245 F.R.D. 429, 436 (C.D. Cal. 2007).................................................23

26

27

*Grand Theft Auto Video Game Consumer Litig.,*
    251 F.R.D. 139, 145 (S.D.N.Y. 2008)................................................30

28

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT (CASE NO. CV-07-0667 AG)**

*Hall v. Cole,*
  412 U.S. 1, 5 (1973)................................................................................27

*Hanlon v. Chrysler Corp.,*
  150 F.3d 1011, 1026 (9th Cir.1998) ...............................................10, 19, 31

*Heritage Bond Litig.,*
  No. MDL 02-ML-1475, 2005 WL 1594403 (C.D. Cal. June 10, 2005) ...........11

*Holocaust Victim Assets Litigation,*
  105 F. Supp. 2d at 145 ........................................................................13

*Holocaust Victim Assets Litigation,*
  105 F.Supp.2d 139 ..............................................................................12

*Initial Pub. Offering Sec. Litig.,*
  721 F. Supp. 2d 210, 218 (S.D.N.Y. 2010) ...............................................26

*Itel Sec. Litig.,*
  89 F.R.D. 104, 111 (N.D. Cal. 1981) .......................................................31

*James v. City of Dallas, Tex.,*
  254 F.3d 551, 571 (5th Cir. 2001) ..........................................................34

*Kandel v. Brother Intern. Corp.,*
  264 F.R.D. 630 (C.D. Cal. 2010)..........................................................2, 21

*Kirkorian v. Borelli,*
  695 F. Supp. 446, 451 (N.D. Cal. 1988) ...................................................18

*Lorazepam,*
  205 F.R.D. 369, 375-76 (D.D.C. 2002) ...............................................12, 17

*Loring v. City of Scottsdale, Ariz.,*
  721 F.2d 274, 275 (9th Cir. 1983) ..........................................................27

*Lubin v. Sybedon Corp.,*
  688 F. Supp. 1425, 1461 (S.D. Cal. 1988) ................................................34

*Luevano v. Campbell,*
  93 F.R.D. 68, 86 (D.D.C. 1981) .............................................................17

*Marshall v. Holiday Magic, Inc.,*
  550 F.2d 1173, 1178 (9th Cir. 1977) .......................................................19

*Mego Fin. Corp. Sec. Litig.,*
  213 F.3d 454, 459 (9th Cir. 2000) ..........................................................16

*Mills v. Electric Auto-Lite Co.,*
  396 US 375, 395-397 (1970) ..................................................................27

*Mortimore v. Fed. Deposit Ins. Corp.,*
  197 F.R.D. 432, 438 (W.D. Wash. 2000) ..................................................35

– iii –

*NASDAQ Market-Makers Antitrust Litigation*,
   176 F.R.D. 99, 102 (S.D.N.Y. 1997) ..................................................................... 13

*Nat'l Rural Telecomm. Cooperative. v. DirecTV, Inc.*,
   221 F.R.D. 523, 526 (C.D. Cal. 2004) ........................................... 14, 18, 19

*O'Connor v. Boeing N. Am., Inc.*,
   180 F.R.D. 359, 381 (C.D. Cal. 1997) ................................................................. 23

*Officers for Justice v. Civil Serv. Comm'n*,
   688 F.2d 615, 625 (9th Cir. 1982) .................................................................. 11, 17

*O'Keefe v. Mercedes-Benz USA, LLC*,
   214 F.R.D. 266, 295 (E.D. Pa. 2003) ................................................................. 26

*Olson v. Tesoro Refining and Mktg. Co.*,
   2007 WL 2703053, at *6 (W.D. Wash. Sept. 12, 2007) .................................. 35

*Omnivision Techs., Inc.*,
   559 F.Supp.2d 1036, 1041 (N.D. Cal. 2007) ..................................................... 10

*Omnivision Techs., Inc.*,
   559 F.Supp.2d 1036, 1043 (N.D. Cal. 2008) ..................................................... 19

*Pigford v. Glickman*,
   185 F.R.D. 82, 101 (D.D.C. 1999) ..................................................................... 13

*Quarterdeck Office Sys., Inc. Sec. Litig.*,
   CV 92-3970-DWW(GHKX), 1993 WL 623310 (C.D. Cal. Sept. 30, 1993) ............ 34

*Rodriguez v. W. Publ'g Corp.*,
   563 F.3d 948, 961 (9th Cir. 2009) ..................................................................... 11

*Schlesinger v. Reservists Comm. to Stop the War*,
   418 U.S. 208, 216, 94 S.Ct. 2925, 41 L.Ed.2d 706 (1974) .............................. 33

*Schorsch v. Hewlett-Packard Co.*,
   417 F.3d 748 (7th Cir. 2005) ........................................................................ 1, 21

*Shaw v. Toshiba Am. Info. Sys., Inc.*,
   91 F. Supp. 2d 942, 973 (E.D. Tex. 2000) ......................................................... 26

*Staton v. Boeing Co.*,
   327 F.3d 938, 959 (9th Cir. 2003) ..................................................................... 10

*Tex. Motor Freight Sys., Inc., v. Rodriguez*,
   431 U.S. 395, 403, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977) .............................. 33

*Todd v. Retail Concepts, Inc.*,
   No. 07-0788, 2008 WL 3981593, at *2 (M.D. Tenn. Aug. 22, 2008) ................ 31

*United Energy Corp. Solar Power Modules Tax Shelter Inv. Sec. Litig.*,
   122 F.R.D. 251, 253 (C.D. Cal. 1988) .......................................................... 31, 33

– iv –

*Van Bronkhorst v. Safeco Corp.,*
    529 F.2d 943, 950 (9th Cir. 1976) ................................................................. 10, 14

*Vizcaino v. Microsoft Corp.,*
    290 F.3d 1043,1048 (9th Cir. 2002)............................................................16

*Warfarin Sodium Antitrust Litig.,*
    212 F.R.D. 231, 254 (D. Del. 2002) ..............................................................14

*Warma Witter Kreisler, Inc. v. Samsung Electronics America, Inc.,*
    2010 WL 1424014 (D.N.J. April 8, 2010)..................................................1, 21

*Weinberger v. Jackson,*
    102 F.R.D. 839, 844-45 (N.D. Cal. 1984) ......................................................34

*Weinberger v. Kendrick,*
    698 F.2d 61, 74 (2d Cir. 1982) ......................................................................12

*Yeagley v. Wells Fargo & Co.,*
    No. C 05-03403 CRB, 2008 WL 171083 (N.D. Cal. Jan. 18, 2008)................20

*Yokoyama v. Midland Nat. Life Ins. Co.,*
    594 F.3d 1087, 1093 (9th Cir. 2010) ..............................................................35

*Young v. Polo Retail, LLC,*
    No. C-02-4546 VRW, 2007 WL 951821 (N.D. Cal. Mar. 28, 2007)................20

**Statutes**

California Business & Professions Code Section 17200 ....................................... 4

Fed. R. Civ. P. 23 .............................................................................................passim

Fed. R. Civ. P. 23(c) (2)(B) ................................................................................. 30

Fed. R. Civ. P. 23(e)(1)(B) .................................................................................. 30

Fed.R.Civ.P. 23(e)..............................................................................................11

Newberg, § 11.41................................................................................................13

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT (CASE NO. CV-07-0667 AG)

1  **I.    INTRODUCTION**

2         The settlement of this action cannot be evaluated in a vacuum.  This Court has

3  dismissed the complaint in the *Young* action, with prejudice, and granted summary

4  judgment in HP's favor in the *Baggett* action.  In light of the alternatives presented to the

5  class in continuing the litigation on appeal, the settlement should be finally approved

6  because it provides virtually all of the injunctive relief that Plaintiffs could reasonably

7  obtain in this class action.  From the standpoint of the class, the settlement is a vastly

8  superior alternative to continued litigation, which would likely result in the class

9  receiving nothing at all.

10        For approximately three years, class counsel aggressively litigated two class

11 actions against defendant Hewlett-Packard Company ("HP"), which have been

12 consolidated for purposes of settlement.  Class counsel chose to aggressively litigate

13 these actions following this Court's ruling in the Motion to Dismiss that "consumers did

14 have a reasonable expectation that they would be able to use all the [toner] in their

15 cartridges." [Order on Motion to Dismiss pp-5-6 Filed October 30, 2007 (Document No.

16 20)].  The three major class action law firms that represent the class used all of their

17 formidable resources to prosecute this case against HP – a multibillion corporation and

18 the largest manufacturer of laser printers in the United States.  Class counsel devoted

19 over 11,000 hours in this litigation, aggressively pursuing all claims that had a realistic

20 chance of resulting in the certification of the class.

21        Unfortunately, in the end, Plaintiffs did not prevail before this Court, and their

22 theory that consumers own and have a reasonable expectation that they will be able to use

23 all of the toner contained in the cartridges they purchase was ultimately rejected by this

24 Court as well as numerous other courts across the United States in cases brought by class

25 counsel as well as other experienced class action law firms. *See, Schorsch v. Hewlett-*

26 *Packard Co.*, 417 F.3d 748 (7th Cir. 2005); *Arcand v. Brother Intern. Corp.*, 2010 WL

27 390733 (D.N.J. Sep. 29, 2010); *Warma Witter Kreisler, Inc. v. Samsung Electronics*

28 *America, Inc.*, 2010 WL 1424014 (D.N.J. April 8, 2010); *Kandel v. Brother Intern.*

– 1 –

1 | *Corp.*, 264 F.R.D. 630 (C.D. Cal. 2010); *Arcand v. Brother Intern. Corp.*, 673 F.Supp.2d

2 | 282 (D.N.J. 2009).

3 | At this point, reality must be recognized – the judicial system simply does not

4 | agree with class counsel that a legally cognizable claim exists for consumers being

5 | prevented from using all of the toner in a cartridge regardless of how that claim is

6 | presented or evidenced.

7 | As Plaintiffs argued in support of preliminary approval, the settlement must be

8 | evaluated in light of the dire litigation posture of the case. Given that posture, the

9 | settlement still provides real benefits to the class. Pursuant to the settlement, HP agreed

10 | to provide class members with real notice regarding the HP technology, including

11 | instructions on how the class members in the *Young* action can override the "hardstop,"

12 | delivered to the class through a costly and comprehensive publication program.

13 | Consequently, with respect to the claim that class members have not been given sufficient

14 | information to take advantage of the override, class members will now be able to gain

15 | access to a substantial amount of the toner in the cartridges that they would otherwise not

16 | be able to use.

17 | Further, as a result of this litigation, HP has stopped using the technology that

18 | Plaintiffs contend is an unfair business practice in the production of future color laser

19 | printer lines. In all of these printers, users will obtain access to all of the toner that

20 | remains in their printer cartridges, providing them with the ability to use hundreds of

21 | millions of dollars of toner that they would otherwise unwittingly discard. Thus, the

22 | litigation successfully achieved substantially all of the injunctive relief objectives that

23 | Plaintiffs sought to obtain at the commencement of the action. Absolutely no one has

24 | suggested any other feasible injunctive relief that could have been negotiated or obtained

25 | in this class action.

26 | While it is impossible to quantify the precise dollar value of the injunctive relief to

27 | the class, it is not an overstatement to value the relief in the tens of millions of dollars.

28 | There are approximately 2,300,000 printers in the *Young* class that have the override

1    technology that Plaintiffs claim were not adequately disclosed. [Joint Decl., ¶17.] Now

2    that class members have been advised of the override technology, they have knowledge

3    on how they can gain access to the toner following the moment it initially curtails usage.

4    Through discovery, Plaintiffs have determined that the HP color laserjet cartridges were

5    designed to terminate printing while upwards of 9 percent of the toner remained in the

6    cartridges. [Joint Decl., ¶6.] With toner cartridges costing between $87.14 and $325.99

7    for the printers in the class, it is not difficult to extrapolate that the toner now functionally

8    available to the class amounts to tens of millions of dollars.

9         Admittedly, the electronic credit portion of the settlement does not provide the

10   class with substantial relief; it is truly ancillary to the primary relief provided by the

11   settlement – the injunctive relief. Needless to say, the minimal monetary (or e-credit)

12   relief is reflective of the litigation posture of this case. As this Court noted at the motion

13   for preliminary approval, it does not believe that HP has done anything wrong.

14        At this juncture, there has been relatively little opposition to this settlement –

15   especially given the class size and the volume of email and other notice provided to the

16   class. There are only 31 individuals who have opted out of the settlement, and no more

17   than six objectors to the settlement.[1] Indeed, of the six potential objections made to the

18   settlement, three come from parties aligned with a pending San Francisco Superior Court

19   action entitled *Sutherland v. Hewlett-Packard*. Unlike anything class counsel has seen in

20   years of class action litigation, the consultant in the *Sutherland* action (objector Michael

21   Vlastone ["Vlastone"]) has gone to absolutely bizarre lengths to attack this settlement in

22   favor of the action with which he is aligned. After being unsuccessful in his attempts to

23   convince class counsel to abandon this action in lieu of the *Sutherland* case, Vlastone

24

25   [1]      For purposes of the motion, Plaintiff wishes to note that Sutherland, Vladstone,
26   Frank and Young have not properly filed their objections with the Court. However, in
     order to provide this Court with full information regarding these "objections," Plaintiff
27   will set forth all the arguments in opposition to their objections as if they were properly
28   filed.

– 3 –

1  actually searched out and contacted class representative James Young in this case.

2  Vlastone convinced Young to withdraw his support for the settlement and, incredibly, to

3  not communicate with class counsel, thereby preventing class counsel from addressing

4  the false and specious arguments underlying his objections—arguments which Young

5  then parroted back in his own objection despite the fact that they were untrue.

6      However, in the end, the Vlastone objection and those of the others related to the

7  *Sutherland* case must fail because their underlying premise is that the copycat *Sutherland*

8  action will have a different end result than this case—dismissal.  As demonstrated in this

9  motion, the *Sutherland* case is fundamentally no different than the *Young* action.

10      Plaintiffs and class counsel share all the other objectors' frustrations with the fact

11  that HP's technology effectively deprives them of some of the toner that they have

12  purchased.  Unfortunately, given the track record of these claims in five separate courts in

13  California, Illinois and New Jersey, it is highly unlikely that such claims can be remedied

14  by the justice system.  This settlement represents the best alternative – injunctive relief

15  that will maximize the opportunity that class members will have to obtain all the toner

16  that they have purchased, and at least provide all other purchasers of HP color lasers with

17  full knowledge that they may not be able to use all of the toner that is in the HP color

18  laserjet cartridges that they purchase.  The settlement should be finally approved as fair,

19  reasonable and adequate.

20  **II.     PROCEDURAL AND FACTUAL BACKGROUND**

21      **A.     The Litigation**

22      The *Baggett* action (*Kelsea Baggett v. Hewlett-Packard Company*, Case No. SA

23  CV 07-00667) was commenced in the United States District Court for the Central District

24  of California (Guilford, J.) on July 6, 2007.  The complaint alleged that HP employed a

25  "hardstop" mechanism that stopped all printing operations long before toner cartridges

26  were actually empty.  The complaint asserted claims for unjust enrichment, fraudulent

27  concealment, violation of California Business & Professions Code Sections 17200 *et seq.*,

28  trespass to chattels and conversion, and sought damages, restitution and injunctive relief.

---

– 4 –

1    [*Baggett* Doc. No 1. (Complaint).]

2        HP filed a motion to dismiss, attacking all of the causes of action set forth in the

3    complaint.  By order dated October 30, 2007, this Court largely denied HP's motion, only

4    dismissing the claim for unjust enrichment. [*Baggett* Doc. No. 20.]

5        For the next eighteen months, the parties engaged in extensive discovery in

6    anticipation of a motion for class certification and HP's motion for summary judgment.

7    The discovery included the deposition of nine witnesses located across the country

8    including eight depositions of current and former HP employees, many of which involved

9    the arcane technical aspects of color laser printers, the review of more than 300,000 pages

10   of technical and other documents, the subpoena of third-party witnesses, the retention and

11   consultation of leading experts, the inspection of several HP printers, and extensive legal

12   research regarding the sufficiency of the claims.  A protective order was negotiated and

13   executed.  Plaintiff and proposed class representative Kelsea Baggett was deposed for a

14   full seven hours, and extensive document and interrogatory requests were propounded

15   and answered.  As a result of the foregoing, class counsel obtained comprehensive

16   knowledge of HP's printer technology which extended to not only the *Baggett* action, but

17   also the *Young* action. [Joint Decl., ¶ 5.]

18       Class counsel prepared a voluminous motion for class certification, which was

19   thoroughly and completely briefed.  Following the completion of briefing on class

20   certification, HP filed a motion for summary judgment based upon claims that, among

21   other things, Baggett could not prove justifiable reliance on HP's alleged

22   misrepresentations.  On September 29, 2009, the Court granted HP's motion for summary

23   judgment against the named plaintiff in the *Baggett* action on all claims and denied as

24   moot the fully briefed motion for class certification.  On November 17, 2009, Plaintiff

25   Baggett appealed the Court's order granting judgment in favor of HP to the United States

26   Court of Appeals for the Ninth Circuit. [Joint Decl., ¶ 7.]

27       The *Young* action (*James Young v. Hewlett-Packard Company*, Case No. Case No.

28   CV 09-00315) was commenced in the United States District Court for the Central District

1  of California (Guilford, J.) on January 14, 2009. [Joint Decl., ¶ 8.]  However, on largely

2  the same grounds on which HP prevailed in the summary judgment motion in the *Baggett*

3  action (as well as others), HP moved to dismiss the *Young* action.  By order dated March

4  16, 2010, the Court granted HP's motion to dismiss the *Young* action with prejudice.  On

5  April 9, 2010, Plaintiff Young appealed the Court's order granting judgment in favor of

6  HP to the United States Court of Appeals for the Ninth Circuit. [Joint Decl., ¶ 9.]

7         Notwithstanding HP's success in the district court in winning the *Baggett* and the

8  *Young* actions, the actions contributed to HP's changing the technology in its future

9  printer lines to remove the "hardstop" in its color laser printers – which will allow users

10  to have the opportunity to get all of the toner in the print cartridges that they have

11  purchased. [Joint Decl., ¶ 12.]

12         Class counsel engaged in comprehensive discovery that exposed HP to substantial

13  potential negative publicity if it continued to employ the technology that prevented users

14  from having full access to all of the toner purchased.  Estimates that Plaintiffs obtained

15  through discovery show that the cartridges were designed to terminate printing while

16  upwards of 9 percent of the toner remained in the cartridges. [Joint Decl., ¶ 17.]

17         Based upon the foregoing, HP's decision to curtail the "hardstop" and comparable

18  technology, and provide users with the full opportunity to exhaust all of the toner in their

19  HP color laser printer cartridges, constitutes a material benefit that class counsel achieved

20  as a result of this litigation.

21  **B.     Overview of the Settlement**

22         Throughout the *Baggett* and *Young* actions, the counsel for the parties engaged in

23  informal settlement discussions.  However, it was HP's concession that this litigation was

24  one of the motivators for its change in behavior – despite the fact that HP had secured

25  judgments in the District Court – that animated the parties' attempts reach a settlement of

26  the actions. [Joint Decl., ¶ 11.]

27         In multiple in-person and telephonic mediations presided over by retired Judge

28  James Warren, the parties engaged in comprehensive settlement discussions.  The parties

–6–

1  gave due consideration to the parties' respective positions – including HP's arguments

2  upon which the Court based the orders granting HP summary judgment in the *Baggett*

3  action and the motion to dismiss in the *Young* action.  HP had full knowledge of the

4  potential strengths of Plaintiffs' cases, which would expose it to potential financial risks

5  if Plaintiffs were successful in obtaining reversals in the Ninth Circuit of the District

6  Court's grants of summary judgment and dismissal.  Indeed, Plaintiffs' theories were

7  fully revealed in their comprehensive motion for class certification that was filed in the

8  *Baggett* action.

9        Through extended settlement negotiations before Ret. Judge James Warren,

10  Plaintiffs successfully negotiated a class settlement that provides virtually all of the

11  injunctive relief that could have been achieved if the action were to have proceeded to

12  trial.

13        First, with respect to future printer lines, HP acknowledged that virtually all of its

14  future printers would not prevent users from exhausting all of the toner in their HP color

15  laser printer cartridges. [Joint Decl., ¶ 12.]

16        Second, with respect to the *Young* class, where Plaintiffs allege that HP failed to

17  fully disclose the existence and use of technology that allows user to "override" the

18  hardstop that prevents user access to all of the toner in the HP color laser toner cartridges,

19  HP agreed to provide that notice directly to users through the comprehensive notice

20  program.  With respect to the *Baggett* class, HP did not have the ability to change the

21  technology on those machines, and the most that could be done was to give full

22  disclosure of the claims through the comprehensive notice program.  All of this has been

23  provided through the notice program, with live links established prior to final approval.

24  [Joint Decl., ¶ 13.]

25        With respect to providing monetary relief for Class Members of both the *Baggett*

26  and *Young* classes, class counsel wanted to provide some opportunity for benefit but was

27  fully cognizant of the fact that they were negotiating from a position of weakness.  Both

28  the *Baggett* and *Young* cases had been lost in the District Court, and the only opportunity

– 7 –

1   to obtain relief at trial would be to convince the Ninth Circuit to reverse the trial court's

2   orders.  Thereafter, Plaintiffs would have to convince the trial court to grant class

3   certification and then convince a jury to provide monetary damages.

4        Plaintiffs nevertheless tried to get something of substance for the Class.  HP

5   ultimately agreed to provide a total of $5 million in e-credits to class members which

6   could be used to purchase HP products.  While the e-credits are relatively small

7   (amounting to $7 or $13 for each *Young* or *Baggett* printer, respectively), they could be

8   used for some products that cost less than $13.00. [Joint Decl., ¶ 27.]  This was an extra

9   benefit that class counsel negotiated for the class – but, the primary benefit remained the

10   virtually full injunctive relief.

11        HP also agreed to pay up to $750,000 for the comprehensive notice program that

12   included direct e-mail notice (furnished by HP at no cost), publication notice in Parade

13   magazine, USA Weekend, and CIO magazine; and banner advertisements on Yahoo.com

14   and other websites through 24/7 Real Media Network as well as a dedicated website.

15   [Joint Decl., ¶ 15.]

16        HP has agreed, subject to Court approval, to pay $2,500 to Mr. Baggett and $1,000

17   to Mr. Young.[2]  HP has also agreed, subject to the Court's approval, to separately pay to

18   Class counsel an amount of $2,750,000 for attorneys' fees, costs and disbursements.  The

19   payment will be in lieu of statutory fees that Plaintiff and/or their attorneys might

20   otherwise be entitled to recover on their claims, including claims for injunctive relief, and

21   this amount is inclusive of all fees and costs of class counsel in the *Baggett* and *Young*

22   actions.  As demonstrated by the declaration from Ret. Judge Warren, class counsel

23   negotiated attorneys' fees after the class benefit was negotiated (Warren Decl., ¶5.), and

24   agreed to a fee that represents a fraction of the lodestar hours actually worked on the

25

_____

26   [2]    At this juncture, because Mr. Young apparently does not wish to support the
settlement, his request to be a class representative must be deemed to have been

27   withdrawn.  Class counsel has submitted a separate pleading that directly addresses the

28   spurious allegations set forth in the Young objection.

1   *Baggett* and *Young* actions.  Further, Plaintiff and class counsel believe that the relief to

2   the *Baggett* and *Young* classes as a result of this litigation, particularly when the litigation

3   served as a catalyst for a change in corporate behavior by HP, would entitle class counsel

4   – based upon their lodestar alone – to an amount substantially more than $2,750,000.00.

5   [Joint Decl., ¶ 19.]

6       **C.   Notice and Claims Administration**

7       In its order of preliminary approval, the Court found that the notice plan provided

8   in the Settlement Agreement "complies with Rule 23(e) of the Federal Rules of Civil

9   Procedure as it is a reasonable manner of providing notice to those Settlement Class

10   Members who would be bound by the settlement." [Doc. No. 219, ¶ 10.]  Notice was

11   disseminated pursuant to the Court's order of preliminary approval as follows: (i) the

12   Long Form Notice was emailed to members of the Settlement Class who have a valid

13   email address in HP's registration database; (ii) Summary Notice was published in USA

14   Weekend, Parade, People and CIO Magazine; (iii) banner advertisement regarding the

15   settlement were placed on Yahoo.com and other websites; and (iv) a settlement website

16   was created and links to this website were provided in the email notice, publication notice

17   and banner advertisements. [Doc. No. 219, ¶ 9; (Azari Decl.), ¶¶ 10,12, 13.]

18       As delineated in the declaration of Cameron R. Azari, the Director of Epiq Legal

19   Noticing and class action notice expert, the above notice plan reached "approximately

20   72.5% of its target audience based on conservative calculations." (Azari Decl., ¶ 5.)

21   Approximately 233,684 email notices were sent; approximately 189,098 of those emails

22   were successfully delivered.  (Azari Decl., ¶ 10.)  Furthermore, more than 435,000 hits

23   were made on the settlement website (www.HPLaserJetPrinterSettlement.com). (Azari

24   Decl., ¶ 20.)

25

26

27

28

–9–

1  **III.   THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE**

2       Virtually everyone who has opposed this settlement has myopically criticized the

3  settlement as providing inadequate relief to the class, without considering the fact that HP

4  prevailed at the trial level in both actions.  When this settlement is viewed in its proper

5  context, it must be deemed fair, reasonable and adequate.

6       Plaintiffs' case has been dismissed at the district court level, and other courts

7  around the country have rejected arguments comparable to those made by Plaintiffs in

8  this action as described above.  Nonetheless, this settlement provides virtually all of the

9  injunctive relief that the Class could reasonable obtain.  Strikingly, all of the detractors of

10 the settlement fail to appreciate (or even consider) the benefits conveyed through the

11 injunctive relief.  When ALL of the benefits provided by this settlement are fully

12 considered, the settlement should be finally approved as fair, reasonable and adequate.

13      At the outset, public policy strongly favors the resolution of litigation through

14 settlement.   This is "particularly true in class action suits." *Van Bronkhorst v. Safeco*

15 *Corp.*, 529 F.2d 943, 950 (9th Cir. 1976) (footnote omitted); see also *Class Plaintiffs v.*

16 *City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (Ninth Circuit has a "strong judicial

17 policy that favors settlement, particularly where complex class action litigation is

18 concerned"); *In re Omnivision Techs., Inc.*, 559 F.Supp.2d 1036, 1041 (N.D. Cal. 2007)

19 ("the court must also be mindful of the Ninth Circuit's policy favoring settlement,

20 particularly in class action law suits.").  Indeed, "[i]n most situations, unless the

21 settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and

22 expensive litigation with uncertain results." 4 A. Conte & H. Newberg, Newberg on

23 Class Actions, § 11:50 (4th ed. West 2008).

24      Settlement of a class action lawsuit requires approval of the court. *See*

25 Fed.R.Civ.P. 23(e).  Under Rule 23(e), a court should approve the settlement of a class

26 action if it is fundamentally fair, adequate and reasonable. *Staton v. Boeing Co.*, 327 F.3d

27 938, 959 (9th Cir. 2003) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th

28 Cir.1998)).  The Ninth Circuit has prescribed a non-exhaustive list of relevant factors that

– 10 –

1   a trial court may consider when evaluating the fairness of a class action settlement,

2   including: (1) the strength of the plaintiffs' case; (2) the risk, expense, and complexity

3   and likely duration of further litigation; (3) the risk of maintaining class action status

4   throughout the trial; (4) the presence of any governmental participant; (5) the amount

5   offered in settlement; (6) the extent of discovery completed and the stage of the

6   proceedings; (7) the experience and views of counsel; and (8) the reaction of the class

7   members to the proposed settlement. *Churchill Village, L.L.C. v. General Electric*, 361

8   F.3d 566, 575-576 (9th Cir. 2004); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d

9   615, 625 (9th Cir. 1982).

10      In addition to the above factors, a court should also consider the absence of

11   collusion in the settlement process when evaluating whether a class action settlement is

12   fair, adequate and reasonable. *Churchill Village*, at 576.  Indeed, a settlement that was

13   negotiated at arm's length by experienced counsel after significant discovery is entitled to

14   a presumption of fairness. *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 961 (9th Cir.

15   2009); *In Re Heritage Bond Litig.*, No. MDL 02-ML-1475, 2005 WL 1594403, at *2

16   (C.D. Cal. June 10, 2005).

17      While the district court exercises discretion in approving a settlement, the court's

18   evaluation of a proposed class settlement "must be limited to the extent necessary to

19   reach a reasoned judgment that the agreement is not the product of fraud or overreaching

20   by, or collusion between, the negotiating parties, and that the settlement, taken as a

21   whole, is fair, reasonable and adequate to all concerned." *Officers for Justice*, 688 F.2d at

22   625.  A proposed settlement should not "be judged against a hypothetical or speculative

23   measure of what might have been achieved by the negotiators." *Id.*   In *Officers for*

24   *Justice*, the Ninth Circuit explained:

25          [T]he settlement or fairness hearing is not to be turned into a trial or

26          rehearsal for trial on the merits.  Neither the trial court nor this court is

27          to reach any ultimate conclusions on the contested issues of fact and

28          law which underlie the merits of the dispute, for it is the very

– 11 –

1   uncertainty of outcome in litigation and avoidance of wasteful and

2   expensive litigation that induce consensual settlements. The proposed

3   settlement is not to be judged against a hypothetical or speculative

4   measure of what might have been achieved by the negotiators.

5   *Id.* (citations omitted); see also *Weinberger v. Kendrick*, 698 F.2d 61, 74 (2d Cir. 1982)

6   ("in order to avoid a trial, the judge must [not] in effect conduct one").

7       Here, the parties reached a settlement only after conducting extensive discovery

8   and motion practice, including: eight depositions of current and former HP employees,

9   many of which involved the arcane technical aspects of color laser printers, the review of

10   more than 300,000 pages of technical and other documents, the subpoena of third-party

11   witnesses, the retention and consultation of leading experts, the inspection of several HP

12   printers, and extensive legal research regarding the sufficiency of the claims, fully

13   briefing two motions to dismiss, a motion for class certification and a motion for

14   summary judgment. Settlement negotiations occurred at arm's length before Ret. Judge

15   James Warren. Significantly, the settlement agreement was not reached until HP

16   acknowledged that virtually all of its future printers would not prevent users from

17   exhausting all of the toner in their HP color laser printer cartridges. Additionally, class

18   counsel are experienced in large complex class action negotiations, settlements and trials.

19   [Joint Decl., ¶ 20.) In short, an examination of all of the relevant factors shows that this

20   Settlement is fair, adequate and reasonable.

21   **A.**    **The Settlement is the Result of Arms-Length Negotiations**

22       A proposed settlement is presumed to be fair and reasonable when it is the result of

23   arm's length negotiations. See Newberg, § 11.41; see also, *Class Plaintiffs v. City of*

24   *Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *In re Lorazepam*, 205 F.R.D. 369, 375-76

25   (D.D.C. 2002) ("A 'presumption of fairness, adequacy, and reasonableness may attach to

26   a class settlement reached in arm's-length negotiations'") (quoting Manual Third, §

27   30.42); *In re Holocaust Victim Assets Litig.*, 105 F.Supp.2d 139, 145-146 (E.D.N.Y.

28

1  2000) (stating that in determining fairness, the "consideration focuses on the negotiating

2  process by which the settlement was reached").

3       When settlement negotiations are conducted at arms length by experienced

4  counsel, a "strong initial presumption of fairness attaches to the proposed settlement." *In*

5  *re Holocaust Victim Assets Litig.*, 105 F. Supp. 2d at 145-46 (internal citations and

6  quotations omitted); *In re NASDAQ Market-Makers Antitrust Litigation*, 176 F.R.D. 99,

7  102 (S.D.N.Y. 1997) ("Where the proposed settlement appears to be the product of

8  serious, informed, non-collusive negotiations, has no obvious deficiencies, does not

9  improperly grant preferential treatment to class representatives or segments of the class

10  and falls within the range of possible approval, preliminary approval should be

11  granted.").

12       Here, the Settlement Agreement is the result of arm's length negotiations between

13  experienced class counsel and counsel for HP.

14       Further, Settlement negotiations were conducted under the supervision of Judge

15  James Warren (Ret.). Such extensive involvement of skilled professionals in settlement

16  discussions supports the conclusion that the settlement does not result from collusion.

17  *County of Suffolk v. Long Island Lighting Co.*, 907 F.2d 1295, 1323 (2d Cir. 1990);

18  *Pigford v. Glickman*, 185 F.R.D. 82, 101 (D.D.C. 1999) (finding no evidence of collusion

19  between counsel due to presence of a neutral and detached mediator at all settlement

20  negotiations). Appropriately, the parties did not discuss attorneys' fees until after the

21  substantive terms of the class relief were negotiated. (Warren Decl., ¶5.)

22       In short, nothing in the negotiations or the substance of the Settlement Agreement

23  gives reason to doubt its fairness.

24

25  **B.**    **The Risk, Expense, Complexity and Likely Duration of Further**

26         **Litigation**

27       The risk, expense, complexity and duration of continued litigation also favors

28  settlement. *See Dunleavy v. Nadler*, 213 F.3d 454, 458 (9th Cir. 2000). The Court should

– 13 –

1  consider "the probable costs, in both time and money, of continued litigation." *In Re*

2  *Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 254 (D. Del. 2002).  In most cases,

3  "unless the settlement is clearly inadequate, its acceptance and approval are preferable to

4  lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecomm.*

5  *Cooperative. v. DirecTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004).  Indeed, the Ninth

6  Circuit has made clear that settlement is encouraged in class actions where possible:

7  "there is an overriding public interest in settling and quieting litigation … particularly…

8  in class action suits which are now an ever increasing burden to so many federal courts

9  and which frequently present serious problems of management and expense." *Van*

10  *Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976).

11       This Court has already dismissed the *Young* action, with prejudice, and granted

12  summary judgment in HP's favor in the *Baggett* action.  Thus, it is difficult to envision a

13  situation in which the risks of litigation and weakness in a Plaintiff's case could not be

14  more clearly delineated.  Additionally, there is no question that defense counsel was

15  prepared to mount a vigorous and thorough defense to Plaintiffs' appeals.   Even if

16  Plaintiffs were successful in their appeals, the litigation against HP would be protracted

17  and risky.  These risks would include a hotly-contested motion for class certification,

18  expensive and protracted discovery, competing motions for summary judgment and a

19  lengthy trial.  Further appeals could follow any verdict obtained, thereby causing further

20  expense, delays, and the uncertainties inherent in litigating an appeal.

21       Thus, at this juncture, any tangible relief to the class – especially the prospective

22  relief provided through the injunctive relief – would have to be deemed fair, reasonable

23  and adequate.

24

25  **C.    The Class Received Real Benefits Through Prospective Relief,**

26  **       Injunctive Relief**

27       Here, the Settlement provides the Class with virtually all of the injunctive relief

28  sought.  The Settlement requires HP to prominently disclose the existence and effect of

– 14 –

1    the hardstop for both the *Baggett* and *Young* printers as well more fully advising owners

2    of the Young printer about the override functionality.  These are significant, concrete

3    benefits that directly address the gravamen of the complaints in the *Baggett* and *Young*

4    actions.  Significantly, to make sure that such information was provided to the class, a

5    comprehensive notice programs was formulated (all at HP's expense) that gave this

6    information **before** final approval to class members.[3]  On its own, this injunctive relief

7    will provide real and concrete benefits to the class – providing them with access to toner

8    that the Court, at the hearing on the motion for preliminary approval, candidly opined HP

9    was not required to provide.

10        For example, with respect to the *Young* action, there are approximately 2,300,000

11    printers that have been sold. [Joint Decl., ¶ 17.]  Further, through discovery, Plaintiffs

12    have determined that HP color laserjet printers are designed to have approximately 9% of

13    the toner remaining at the time that printing functions are terminated.  [Joint Decl., ¶ 17.]

14    Replacement toner cartridges for the printers in the *Young* class range in prices from

15    $87.14 and $325.99.  [Joint Decl., ¶17.]  Accordingly, if only a small portion of the class

16    were provided with information regarding the "override" that they did not previously

17    have, and they were able to use the 9% of the toner from just three replacement

18    cartridges, the cumulative value of toner that would be now available to the class would

19    truly exceed millions of dollars. [Joint Decl., ¶18.]

20        Second, as a result of this litigation, HP will not employ the hardstop mechanisms

21    in its future color laser printers lines.  It bears repeating, virtually all (if not all) HP color

22    Laser printers presently slated for future production or in development will not employ

23    the technology challenged in the Litigation.  Therefore, as a result of the *Baggett* and

24

25    _____
         [3]   Pursuant to the Settlement, HP will add to its website a disclosure explaining the

26    operation of the printer models included in the Settlement.  Notice of the proposed
         settlement – which included, in addition to publication notice, an email by HP to all

27    registered owners of the printer models in the Settlement – featured a live link to this

28    disclosure website.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT (CASE NO. CV-07-0667 AG)

1 | *Young* actions, HP's future color Laser printers will allow users to "print to fade" – just

2 | like HP's monochrome printers.  As a result, class counsel effectively obtained all of the

3 | injunctive relief that it could have obtained with respect to future HP printer lines.

4 | This benefit alone, potentially worth millions of dollars to HP's future customers, more

5 | than justifies the efforts class Counsel expended in the litigation.  *See Vizcaino v.*

6 | *Microsoft Corp.*, 290 F.3d 1043,1048 (9th Cir. 2002) (proper to consider in a fee

7 | application benefits conveyed by litigation beyond the settlement).

8 | Third, while not sufficient on its own to justify class counsel's fees or the final

9 | approval of the settlement, the settlement did give class members the opportunity to

10 | receive some nominal relief in the form of up to $5,000,000 in e-credits that could be

11 | used at HP's online store.  Plaintiff does not dispute the fact that the e-credits are a

12 | modest benefit to the class, since there are a limited number of items that can be

13 | purchased solely with the e-credits. [Doc. No. 218 (Kellner Supp. Decl. re Preliminary

14 | Approval), ¶¶ 11-12.]  However, the e-credits are something tangible that was provided

15 | to the class as a result of hard, aggressive bargaining by class counsel which was

16 | inevitably colored by the fact that the theories underlying both cases had been rejected by

17 | the trial court.

18 | Nonetheless, in the end, it is the injunctive relief and not the e-credits which

19 | constitutes the core benefit provided to the class.

20 | In this case, the question must be asked whether the alternative of continued

21 | litigation is superior to the settlement that was negotiated and preliminarily approved?

22 | Again, Plaintiff respectfully submits that the Court must evaluate the settlement based

23 | upon the difficulties Plaintiffs would face if litigation proceeds. *In Re Mego Fin. Corp.*

24 | *Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000).

25 | Considered in its proper context, the settlement is fair, reasonable and adequate.

26 | **D.**      **The Extent of Discovery Completed and the State of the Proceedings**

27 | The stage of the proceedings and the amount of discovery completed is another

28 | factor which courts are to consider in determining the fairness, reasonableness, and

– 16 –

1   adequacy of a settlement. *Officers for Justice*, 688 F.2d at 625.  The extent of the

2   discovery conducted to date and the stage of the litigation are both indicators of class

3   counsel's familiarity with the case and of Plaintiffs having enough information to make

4   informed decisions regarding settlement. *Dunleavy*, 213 F.3d at 459.  Here, both the

5   knowledge of class counsel and the proceedings themselves have reached a stage where

6   they could make an intelligent evaluation of the litigation risks and propriety of

7   settlement.

8          Indeed, Plaintiff Baggett and class counsel, at this stage, are extremely

9   knowledgeable about the claims, defenses, facts and law applicable to this case and

10  therefore they have sufficient information to properly evaluate the value and mutual

11  benefit of the settlement agreement.  Class counsel have provided the Court with

12  declarations describing the work performed on this case broken down into nine

13  categories:  (1) investigation and drafting of complaint(s); (2) briefing and oral argument

14  on defendant's motion to dismiss; (3) discovery and analysis of documentary evidence;

15  (4) consultation with experts and development of expert opinions and declarations; (5)

16  preparation for and attendance at depositions; (6) class certification motion and briefing;

17  (7) summary judgment motions, briefing and oral arguments; (8) mediation and

18  settlement discussions; and (9) preparation of settlement documents and papers in support

19  of settlement.  (See Kellner and Kaplan Joint Declaration in support of award of attorneys

20  fees and reimbursement of expenses and exhibits attached thereto. [Doc. No. 222])   In

21  total, the 11,366.25 hours class counsel collectively expended on this case were

22  reasonably spent. [Joint Decl., ¶ 21.]

23         Class counsel have managed to settle this litigation on terms favorable to the Class

24  without the substantial risk, expense, uncertainty and delay of continued litigation, trial

25  and appeal.  Based upon the foregoing, class counsel has concluded that a settlement

26  according to the terms and conditions set forth in the Agreement is fair, reasonable,

27  adequate, and in the best interest of the Class. [Joint Decl., ¶ 22.]  See *In re Lorazepam*,

28  *supra*, 205 F.R.D. at 377 (*citing Luevano v. Campbell*, 93 F.R.D. 68, 86 (D.D.C. 1981)

1   ("In evaluating the fairness and adequacy of a settlement, it is important to consider

2   whether the settlement was reached after extensive factual development, so that counsel

3   on both sides would have had information sufficient to make a reasonable assessment of

4   their risks of litigation")).

5        **E.    The Experience and Views of Counsel**

6       "The recommendations of plaintiffs' counsel should be given a presumption of

7   reasonableness." *Boyd v. Bechtel Corp.*, 485 F.Supp. 610, 622 (N.D.Cal.1979). In

8   addition to being familiar with the present dispute, Lead Counsel has significant expertise

9   in class action litigation.

10       Class counsel and counsel for HP entered into the Settlement Agreement after

11   extensive, arduous, arm's length negotiations following substantial litigation, discovery

12   and factual investigation and legal analyses of the claims and defenses of the parties.

13   [Joint Decl., ¶ 23.]   Class counsel endorses the Settlement as fair, reasonable and

14   adequate. [*Id.* at ¶ 24.]

15       "Great weight is accorded to the recommendation of counsel, who are closely

16   acquainted with the facts of the underlying litigation." *Nat'l Rural Telecoms. Coop. v.*

17   *DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) (citation and internal quotations

18   omitted).   When a settlement is the product of serious, informed and non-collusive

19   negotiations, a court "should be hesitant to substitute its own judgment for that of

20   counsel." *Id.*, 221 F.R.D. at 528; *see also Kirkorian v. Borelli*, 695 F. Supp. 446, 451

21   (N.D. Cal. 1988) ("The recommendation of experienced counsel carries significant

22   weight in the court's determination of the reasonableness of the settlement."); *Ellis v.*

23   *Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980) ("the fact that experienced

24   counsel involved in the case approved the settlement after hard-fought negotiations is

25   entitled to considerable weight.")

26       Here, experienced and capable class counsel who are actively involved in complex

27   federal civil litigation have weighed all of the above factors and have concluded that the

28   settlement is a favorable result which is in the best interests of the Class. [Joint Decl., ¶

– 18 –

1   22.]   This conclusion is significant because "[t]he recommendations of plaintiffs' counsel

2   should be given a presumption of reasonableness." *In re Omnivision Techs., Inc.*, 559

3   F.Supp.2d 1036, 1043 (N.D. Cal. 2008) (quoting *Boyd v. Bechtel Corp.*, 485 F.Supp. 610,

4   622 (N.D. Cal.1979)).   Moreover, prior to reaching a settlement, class counsel and

5   counsel for Defendant engaged in extensive negotiation, including an exchange of

6   substantial information. [Joint, Decl., ¶ 25.]

7   "'Great weight" should be accorded to the recommendations of class counsel, who

8   are most closely acquainted with the facts of the underlying litigation and arrived at the

9   Settlement only after years of litigation, discovery and settlement negotiations.

10   **F.     The Reaction of Class Members to the Proposed Settlement**

11   "It is established that the absence of a large number of objections to a proposed

12   class action settlement raises a strong presumption that the terms of a proposed class

13   settlement action are favorable to the class members." *Nat'l Rural Telecomms. Coop. v.*

14   *DIRECTV, Inc.*, 221 F.R.D. 523, 528-29 (C.D.Cal.2004).

15   Only two timely objections were properly filed (there are four others that are

16   nonetheless addressed in this motion), and approximately 43 class members have sent

17   letters to the class administrator expressing some dissatisfaction with the settlement.

18   Three of the objections (all of which were not filed with the clerk of the court) are by

19   parties now aligned with the flawed *Sutherland* case.  Even if all objections are

20   considered, the number of objections is vanishingly small in a case involving millions of

21   class members (especially given the fact that over 200,000 class members received direct

22   emails regarding the settlement).  The foregoing provides some evidence that this

23   Settlement is fair, reasonable, and adequate. *Hanlon*, *supra*, 150 F.3d at 1027 ("the fact

24   that the overwhelming majority of the class willingly approved the offer and stayed in the

25   class presents at least some objective positive commentary as to its fairness"); *Marshall*

26   *v. Holiday Magic, Inc.*, 550 F.2d 1173, 1178 (9th Cir. 1977) ("the small number of class

27   members indicating their disapproval of the settlement, here only one percent, also

28   indicates its acceptability.").

– 19 –

1    In fact, it must be pointed out that three of the individuals who initially expressed

2    dissatisfaction with the settlement, thereafter retracted their opposition when they were

3    informed that the settlement provides injunctive relief and that the district court had

4    entered judgments in HP's favor at the trial court level. [Joint Decl., ¶ 26 (Exhibits A, B,

5    and C).]

6    Thus, it is undoubtedly true that a great number of the objections reflect the

7    consuming public's belief that HP should have paid more for the damages that they

8    caused, without any consideration of the fact that the district court had disposed the cases

9    in HP's favor at the trial court level.

10   1.   *Objections Arguing That the Relief Provided to the Class by the*

11       *Settlement Is Insufficient Simply Ignore The Realities of This*

12       *Litigation.*

13   The objection of Gary W. Sibley (and the vast majority of individual complaints

14   that were apparently not perfected as objections) is founded on his assertion that this is a

15   coupon settlement and as such is insufficient.  Sibley's objection is fundamentally flawed

16   because he looks solely at the e-credits portion of the settlement, ***and not the injunctive***

17   ***relief that has been provided as part of this settlement.***  Sibley's objection also gives no

18   indication that he has any understanding as to the result of litigation in the trial court and

19   that the claims of the class have already been rejected by numerous courts.

20   Moreover, to the extent pertinent, the settlement is not technically a "coupon

21   settlement" because the e-credits do provide class members with the opportunity to

22   purchase an entire product with the e-credit.  *Fleury v. Richemont North America, Inc.*,

23   No. C-05-4525 EMC, 2008 WL 3287154, at *2 (N.D. Cal. Aug.6, 2008)); *Young v. Polo*

24   *Retail, LLC*, No. C-02-4546 VRW, 2007 WL 951821 (N.D. Cal. Mar. 28, 2007) [not

25   coupon in part because credit could be used against a "broad array of merchandise"];

26   *Yeagley v. Wells Fargo & Co.*, No. C 05-03403 CRB, 2008 WL 171083 (N.D. Cal. Jan.

27   18, 2008), rev'd on other grounds by 365 Fed. Appx. 886 (9th Cir. Feb. 22, 2010) (credit

28

– 20 –

1    was not held to be a coupon in part because the credit entitled class members to a whole

2    product, rather than merely a discount).

3          The electronic credits provide through the Settlement can be used for a full range

4    of products offered by HP – including many products that cost *less* than the credits

5    individually available under the Settlement.  [Joint Decl., ¶27.]  Because the e-credits can

6    be used to fully pay for products without any outlay by class members, the e-credits are –

7    by definition – not coupons.

8                    2.    *The Objections Predicated Upon the Sutherland Action*

9          The objections filed by Michael Valstone, James Young and Martha Sutherland are

10   predicated upon their contention that the release is too broad because it will encompass

11   the California state court action of *Sutherland v. Hewlett-Packard* (Superior Court of the

12   State of California, County of San Francisco, Case No. CGC 08-478150).  In this motion,

13   Plaintiff will not delve into the acts of impropriety by Vlastone, or his corruption of

14   Young.  Those issues are dealt with in a separate pleading that deals with those specious

15   accusations.

16         Nonetheless, when stripped of its vituperative accusations, the Vlastone, Young

17   and Sutherland objections all are predicated upon the misguided belief that the

18   *Sutherland* case has valid claims that will somehow meet with a different fate than the

19   *Baggett* and *Young* actions.  Accordingly, these objectors claim that the release is too

20   broad because it encompasses a "yield" claim that has a real possibility of success.  Quite

21   frankly, this position flies in the face of this Court's rulings in the *Baggett* and *Young*

22   actions as well as the decisions in, *Schorsch v. Hewlett-Packard Co.*, 417 F.3d 748 (7th

23   Cir. 2005); *Warma Witter Kreisler, Inc. v. Samsung Electronics America, Inc.*, 2010 WL

24   1424014 (D.N.J. April 8, 2010); *Kandel v. Brother Intern. Corp.*, 264 F.R.D. 630 (C.D.

25   Cal. 2010) and *Arcand v. Brother Intern. Corp.*, 673 F.Supp.2d 282 (D.N.J. 2009).

26         As originally pled, the *Sutherland* action was substantively no different than the

27   *Young* or *Baggett* actions, in that it claimed that HP employed technology that prevented

28   users from having access to all of the toner that remained in the cartridge at the time of

– 21 –

1  shutdown. [Joint Decl., ¶ 28 (Exhibit D).]   Since January 2009, upon information and

2  belief, the case languished in the San Francisco Superior Court without any meaningful

3  litigation activity. [Joint Decl., ¶ 29.]

4         In or around June 2010, after the settlement in this action had been agreed to and

5  long after substantive adverse rulings had been entered in the *Baggett* and *Young* actions,

6  the complaint in the *Sutherland* action was amended – ostensibly to plead around the

7  rulings in the *Baggett* and *Young* actions.  There is presently pending a demurrer to have

8  the *Sutherland* case dismissed with prejudice.  [Joint Decl., ¶ 30 (Exhibit E).]

9         The fundamental flaw in the *Sutherland* group's objection founded on the

10 supposed strength of the *Sutherland* case is that the only representation that HP makes

11 about yield is that a certain number of pages will be printed "based on 5% average

12 coverage for color and/or black cartridges."  As even Vlastone admits, HP delivers on the

13 page yield if it is based upon the "5% average for color and/or black cartridges." [Joint

14 Decl., ¶ 32.]

15        Thus, under the same rationale as expressed by this Court and others, the

16 *Sutherland* plaintiffs will not be able to make out a claim that will survive demurer or

17 summary judgment motions.  Pursuant to present law as interpreted by this Court and

18 others, the pivotal factor (unless reversed by the Ninth Circuit) will be whether HP

19 actually delivers on its promise of the stated number of pages based upon "5% average

20 coverage." [*Baggett* Doc. No 194 (Order Granting Defendants' Motion for Summary

21 Judgment), p. 5).]  While *Sutherland* may point to other representations, the fact that HP

22 delivers on its promised representation of yield will dispose of the *Sutherland* case, as it

23 unfortunately did in the *Baggett* and *Young* actions.

24        Further, because the printer in the *Sutherland* case has an "override," there is a

25 severe risk that individual issues of fact will preclude class certification – since

26 undoubtedly there are class members who used the override to get all of the toner in the

27 cartridge.  More fundamentally, even assuming that a court were prepared to credit the

28 suspect proposition that a representation of yield at 5% coverage amounts to a legally

– 22 –

1  actionable representation of more yield at lesser coverage, a class asserting those claims

2  could not be certified because individual issues of the yield each class member received

3  based on the types of pages printed with each individual cartridge would clearly swamp

4  common issues.  *See, e.g.*, *Gartin v. S & M NuTec LLC*, 245 F.R.D. 429, 436 (C.D. Cal.

5  2007) ("individual issues will likely dominate the damages analysis of the fraud claim.");

6  *O'Connor v. Boeing N. Am., Inc.*, 180 F.R.D. 359, 381 (C.D. Cal. 1997) ("While issues

7  surrounding Defendants' activities at the Rocketdyne Facilities are common to the Class,

8  individual issues surrounding Plaintiffs' ability to establish entitlement to medical

9  monitoring outweigh those common questions.")

10          The *Sutherland* case is being prosecuted by a non-lawyer and an attorney who

11  appears to have little, if any class action, experience.   Their evaluation of their likelihood

12  of success of their action is reflective of this, as is their failure to present any alternative

13  method of certifying their class.  Indeed, in a writing that Vlastone sent to class counsel,

14  he acknowledged that conventional means for getting the class certified would not be

15  successful.  Instead, Vlastone admitted that he and the *Sutherland* team intend to

16  circumvent the legal process entirely and coerce the HP Board of Directors to agree to a

17  settlement:

18                  Now, you are absolutely correct, that under the traditional model

19          of class action litigation, variability in the experiences of the defrauded

20          class would present a problem – IF class certification were to be

21          vigorously contested by the defense counsel.

22                  However, this potential difficulty with class certification is real

23          only if you don't take advantage of the innovation proposed by the

24          *Integrity Capitalism Network* and assume that HP Board Of Directors

25          would not be motivated to cooperate in the settlement and mitigation

26          process once the other smoking gun was found during discovery – i.e.

27          the identity of the fraud perpetrators (the smoking gun we already have

28          is our study that proves that the yield fraud exists and exposes its

– 23 –

1   primary mechanism).

2         As attorneys for the injured consumers, you do not have any way

3   of reaching out to HP board or HP management, because professional

4   rules of conduct restrict you to communicating with the defendant's

5   counsel – who have no interest in recommending to the Board that your

6   evidence should be evaluated.  In fact, part of their job is to provide a

7   shield of plausible deniability to the board and the management.

8         On the other hand, the Integrity Capitalism Network (ICN) and

9   its advisors and supporters in the Silicon Valley, being neither the

10  plaintiffs nor the attorneys for the plaintiff, are not bound by such

11  limitations.  Having access to a complete set of well documented

12  evidence, ICN would be free to reach out directly to the individuals on

13  the HP board, as well as individual members of the executive team,

14  such as the new CEO.  These key decision makers to this day remain in

15  the dark about any details of the LaserJet litigation, the yield fraud

16  charges or the conduct of a relatively small group of managers and

17  employees who developed this fraud to benefit themselves while

18  jeopardizing the reputation and the long term financial health and

19  competitiveness of their employer - HP corporation.  While HP

20  pocketed tons of money unlawfully through this fraud, the corporation

21  could have earned even more profits by developing super-efficient

22  toner delivery technologies and business models, making laser printing

23  affordable for every family and small business.  Further below, I will

24  lay out the evidence of how and why reaching out to HP BOD will help

25  settle this fraud.

26  [Joint Decl., ¶ 31 (Exhibit F).]

27       The foregoing is the "strategy" of the *Sutherland* group--to hijack the judicial

28  process to extract a settlement.   Their tactics know no bounds, but the ultimate

–24–

1  proposition upon which their objection lies is entirely specious.  The *Sutherland* case is

2  fundamentally no different than the *Baggett* and *Young* actions, and the ultimate result of

3  the *Sutherland* case will be no different.

4      Accordingly, the objections (if they are even recognized as objections by this

5  Court[4]) by the *Sutherland* group should be rejected in their entirety.

6      3.    *James Young*

7      In a separate submission filed with the Court, class counsel address the

8  misstatements made by James Young regarding his communications with counsel (the

9  attorney-client privilege having been waived by Mr. Young) and provides documented

10  proof that Mr. Young was kept advised of the motion to dismiss and the settlement which

11  he ultimately signed off on.  Suffice to say, Young's abandonment of this class, his

12  failure to recall the fact that he was provided with all material pleadings, the fact that he

13  was fully apprised of the terms of the settlement agreement and signed the settlement

14  agreement, and the fact that he was able to be connived by Vlastone to abandon the class,

15  all demonstrate that he is not suitable to be a class representative.

16      Fortunately, as explained below, Kelsea Baggett is more than sufficiently qualified

17  to act as the sole class representative for this settlement.

18      4.    *The Miller Objection*

19      Steve A. Miller filed an objection to the settlement, apparently based upon his

20  opposition to class counsel's fees.   The entirety of Miller's objection is devoted to the

21  reasons why class objectors are important, and why coupon settlements are not good.

22  (Miller Objection, pp. 1-12).  Miller offers nothing in the way of objection to a specific

23  term of the settlement and fails to cite any authority from this district or even the Ninth

24  Circuit in support of his objection.  As such, Mr. Miller's objection is clearly a "canned

25

26  [4] The inability of the *Sutherland* objectors to comply with the simple instructions in the
    Class Notice for proper filing of objections to this settlement should not pass without
27  notice given their implied argument that they could do a better job litigating these claims
    than did class counsel.
28

1   objection" and should be disregarded by this Court.   *O'Keefe v. Mercedes-Benz USA,*

2   *LLC*, 214 F.R.D. 266, 295 (E.D. Pa. 2003) ("Federal courts are increasingly weary of

3   professional objectors: some of the objections were obviously canned objections filed by

4   professional objectors who seek out class actions to simply extract a fee by lodging

5   generic, unhelpful protests.") (citation omitted).   *See, also*, *In re Initial Pub. Offering*

6   *Sec. Litig.*, 721 F. Supp. 2d 210, 218 (S.D.N.Y. 2010) (requiring appeal bond after

7   finding that objectors were professional objectors who had filed a canned objection and

8   citing *O'Keefe v. Mercedes-Benz USA, LLC*); *Shaw v. Toshiba Am. Info. Sys., Inc.*, 91 F.

9   Supp. 2d 942, 973 (E.D. Tex. 2000) ("some of the objections were obviously 'canned'

10  objections filed by professional objectors who seek out class actions to simply extract a

11  fee by lodging generic, unhelpful protests . .."")

12      In any event, Miller's canned objection to the attorneys' fees sought entirely

13  misses the point of the settlement and the expressed grounds upon which class counsel is

14  seeking their fee.   As set forth in class counsel's motion for attorneys fees filed on

15  November 30, 2010 (DE #221) (and not even referenced in any objection lodged in this

16  case):

17              Class Counsel seek attorneys' fees primarily based on

18          their obtaining a common benefit for the Class, namely HP's

19          ceasing use of the hardstop in future color laser printers which

20          will benefit all future purchasers of HP color laser printers as

21          well as the injunctive relief which will provide members of the

22          class with sufficient information regarding the HP technology

23          to understand the function of the hardstop in both the Baggett

24          and Young printers and to locate in the manual instructions for

25          overriding the hardstop in the   in the Young printers.   In

26          particular, the cessation of the hardstop function in HP's newest

27          models of color laser printers will provide purchasers of these

28          printers with millions of pages in extra prints and allow users

– 26 –

complete and unrestricted access to the expensive toner they purchased.

"[A] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 US 472, 478 (1980). The common fund doctrine, however, is not limited to monetary benefits. Attorneys' fees are proper whenever a class action has conferred a "substantial benefit" on the class members – even if that benefit is non-monetary. *Mills v. Electric Auto-Lite Co.*, 396 US 375, 395-397 (1970); *Hall v. Cole*, 412 U.S. 1, 5 (1973) ("the rationale of ... [the common fund doctrine] must logically extend, not only to litigation that confers a monetary benefit on others, but also to litigation 'which corrects or prevents an abuse which would be prejudicial to the rights and interests' of those others.") (citations omitted); *Loring v. City of Scottsdale, Ariz.*, 721 F.2d 274, 275 (9th Cir. 1983) ("Modernly this exception (to the general American rule that attorney's fees are not recoverable) extends to situations where a 'substantial benefit' has been conferred upon the members of an ascertainable class, despite the fact the benefit is not monetary"). An award of attorneys' fees under the common benefit theory is appropriate in this case, as Class Counsel has created a substantial benefit for an ascertainable class in a number of ways.

Notice of Motion and Motion for Attorney Fees and Reimbursement of Litigation Expenses filed by plaintiff Kelsea Baggett (Document No. 221, p. 15).

1    Insofar as the words "common benefit" do not even appear in Miller's objection,

2    let alone purport to explain why class counsel are not entitled to attorneys' fees under the

3    common benefit theory, Mr. Miller's objection should be disregarded by this Court.

4       5.    *Ted Frank*

5       On the subject of canned objections, Ted Frank, a self-described crusader against

6    class action settlements, has seemingly reached a new low—attaching an objection filed

7    in another action and notifying class counsel by email that he has some objections to the

8    settlement here, without setting forth in any detail what the objection is about.  On its

9    face, this is really not an objection.

10      Moreover, while Frank contends that the settlements are sufficiently similar that he

11   can incorporate the arguments by reference, there is no authority whatsoever that would

12   support this Court's consideration of an objection filed in an entirely different case

13   merely because an objector attempts to bring that objection to the attention of the Court.

14      Substantively, it is impossible to address Frank's HP Inkjet objection because it

15   relates to a different case.  Frank contends that the e-credits are coupons, and thus the

16   settlement has no value.  These arguments have been refuted throughout this motion – the

17   core relief provided by this settlement relates to HP's changes in practice and the

18   injunctive relief to be provided to the class.  Significantly, Frank claims that no class

19   member will benefit from the injunctive relief (Frank Objection, p. 10-11).  However, at

20   least in this case, members of the *Young* class will be specifically advised about the

21   override, which will provide them with the opportunity to use 9% more of the toner that

22   they have purchased.   Similarly, members of both classes will be able to make a more

23   meaningful decision when they purchase HP replacement cartridges for their printers,

24   because they will now know that the cartridges are designed to have excess toner

25   remaining at the time they are told the cartridges are out of toner.

26      Frank's attack on the fees is driven by his solitary examination of the e-credit

27   portion of the settlement – while the fee motion makes entirely clear that the fees are

28   predicated upon the injunctive relief and HP's changes of practices that have been caused

– 28 –

1  by this litigation.

2      In sum, Frank's objection misses virtually every significant point and is irrelevant

3  to this particular settlement.

4  **IV.    THE SETTLEMENT PROVIDED ADEQUATE NOTICE TO THE CLASS**

5      In its Order granting preliminary approval, the Court directed that notice be

6  provided to the Settlement Class by: (i) e-mailing the Long Form Notice to the last

7  known e-mail address of those members of the Settlement Class who have a valid email

8  address in HP's registration database and have not withheld their consent to be contacted

9  via email; (ii) publishing the Summary Notice in USA Weekend, Parade, People and CIO

10  Magazine as well as placing banner advertisement Yahoo.com and other websites; and

11  (iii) by providing a link of the Long Form Notice and Summary Notice to a settlement

12  website. [Doc. No. 219, ¶ 9.]

13      Notice of the proposed Settlement was disseminated in the form and method

14  ordered by the Court:

15  - On November 5, 2010, the settlement website
16    (www.HPLaserJetPrinterSettlement.com) went live;

17  - Beginning on November 8, 2010, the Long Form Notice was
18    emailed to every Settlement Class member who had a valid
     email address in HP's registration database;

19
20  - Notice was published in USA Weekend on November 28, 2010;

21
22  - Notice was published in Parade on November 28, 2010;

     - Notice was published in People on November 26, 2010;

23  - Notice was published in CIO Magazine on December 1, 2010;
24    and

25  - Banner advertisements regarding the proposed Settlement were
     placed on Yahoo! and other popular websites.

26

27  [Azari Decl., ¶¶ 10, 13, 20.]

28

– 29 –

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT (CASE NO. CV-07-0667 AG)

1    The federal rules require the "best notice that is practicable under the

2  circumstances" and it is to be directed "in a reasonable manner to all members who

3  would be bound." Fed. R. Civ. P. 23(c) (2)(B); Fed. R. Civ. P. 23(e)(1)(B).  As the Court

4  noted in its order of preliminary approval, the notice program implemented here fully

5  meets this standard:

6        The Court finds that the Long Form Notice and Summary Notice are

7        reasonable, that they constitute due, adequate, and sufficient notice to

8        all persons entitled to receive notice, and that they meet the

9        requirements of due process and Rule 23 of the Federal Rules of Civil

10       Procedure. Specifically, the Court finds that the manner of

11       dissemination of the Long Form Notice and Summary Notice described

12       in Paragraph 9 complies with Rule 23(e) of the Federal Rules of Civil

13       Procedure as it is a reasonable manner of providing notice to those

14       Settlement Class Members who would be bound by the settlement. The

15       Court also finds that the manner of dissemination of the Long Form

16       Notice and Summary Notice described in Paragraph 9 complies with

17       Rule 23(c)(2), as it is also the best practicable notice under the

18       circumstances, provides individual notice to all Settlement Class

19       Members who can be identified through a reasonable effort, and is

20       reasonably calculated, under all the circumstances, to apprise the

21       members of the Settlement Class of the pendency of this Action, the

22       terms of the settlement, and their right to object to the settlement or

23       exclude themselves from the Settlement Class. See, e.g., *Farinella v.*

24       *PayPal, Inc.*, 611 F. Supp. 2d 250, 256-57 (E.D.N.Y. 2009) (court

25       approved plan disseminating notice by e-mail, internet posting, and

26       publication); *In re Grand Theft Auto Video Game Consumer Litig.*, 251

27       F.R.D. 139, 145 (S.D.N.Y. 2008) (same); see also *Todd v. Retail*

28       *Concepts, Inc.*, No. 07-0788, 2008 WL 3981593, at *2 (M.D. Tenn.

– 30 –

1     Aug. 22, 2008) (court approved plan disseminating notice by e-mail, in-

2     store posting, and website posting).

3  [Doc. No. 219, ¶ 10.]

4

5  **V.      THE SETTLEMENT CLASS SHOULD BE FINALLY CERTIFIED**

6         In order to grant final certification of a settlement class, the requirements of Rule

7  23 must generally be satisfied. *See* Fed. R. Civ. P. 23; *Hanlon*, 150 F.3d at 1019.  In its

8  Order of preliminary approval, the Court conditionally certified the following Settlement

9  Class: "all individual or entity end-users who purchased, leased, received as a gift or

10 otherwise acquired in the United States an Affected Model (as defined in the Stipulation

11 of Settlement)." [Doc. No. 219, ¶ 4.]  As part of that conditional certification, the Court

12 found that the prerequisites for a class action under Rules 23(a) and (b)(3) of the Federal

13 Rules of Civil Procedure are satisfied in this action.  [Doc. No. 219, ¶ 5.]

14     **A.      The Settlement Class Satisfies the Prerequisites of Rule 23(a).**

15         As set forth in Plaintiffs' motion for preliminary approval, the proposed Settlement

16 Class wholly satisfies each of the requirements of Rule 23(a) – numerosity, commonality,

17 typicality and adequacy of representation for the purposes of settlement. *See In re United*

18 *Energy Corp. Solar Power Modules Tax Shelter Inv. Sec. Litig.*, 122 F.R.D. 251, 253

19 (C.D. Cal. 1988).

20         The Class easily satisfies the numerosity requirement, since it is comprised of over

21 one million members. Fed. R. Civ. P. 23(a)(1).  *In re Itel Sec. Litig.*, 89 F.R.D. 104, 111

22 (N.D. Cal. 1981) (where the number of class members "exceeds forty, and particularly

23 where class members number in excess of one hundred, the numerosity requirement will

24 generally be found to be met")

25         The Class also meets the commonality requirement for the purposes of settlement.

26 Fed. R. Civ. P. 23(a)(2).  Commonality exists when there is either a common legal issue

27 stemming from divergent factual predicates or a common nucleus of facts resulting in

28 disparate legal remedies within the class. *Hanlon*, 150 F.3d at 1019-20; see also *Amchem*

– 31 –

1   *Prod., Inc. v. Windsor*, 521 U.S. 591, 625 (1997) ("[p]redominance is a test readily met in

2   certain cases alleging consumer . . . fraud").  Where a complaint alleges a "common

3   course of conduct" that affects members of the class in the same manner, common

4   questions predominate.  *Blackie v. Barrack*, 524 F.2d 891, 902-03 (9th Cir. 1975).  Here,

5   the questions of fact and law which are common include: (a) whether HP had an

6   obligation to disclose to users that its color LaserJet printers stop printing at a time when

7   toner remained in the cartridge; (b) whether a significant amount of toner actually

8   remains in the color laser print cartridges at the time the color laser printers terminate

9   usage; (c) whether the disclosures made by HP were deceptive and constituted a

10   fraudulent omission; (d) whether users had an ownership interest in the toner that

11   remained in the printer cartridges when usage was terminated; (e) whether HP's alleged

12   concealment and/or failure to disclose would have been material to any reasonable person

13   who purchased the color laser print cartridges; and (f) whether class members are entitled

14   to injunctive relief to require HP to make full and complete disclosures of its technology

15   that results in toner remaining in color laser print cartridges when usage is terminated.

16       Plaintiff Baggett's claims are also typical of those of the Class because, like all

17   members of the Class, they arise from a single course of conduct and are based on the

18   same legal theories. Fed. R. Civ. P. 23(a)(3).  In *Hanlon*, the Ninth Circuit explained that

19   "[u]nder [Rule 23's] permissive standards, representative claims are 'typical' if they are

20   reasonably co-extensive with those of absent class members; they need not be

21   substantially identical." *Hanlon*, 150 F.3d at 1020.  Here, the same course of conduct

22   gave rise to the proposed Class representative's and proposed Class members' claims

23   since Plaintiff Baggett owned a class printer and  was subject to the same conduct as

24   every other member of the Settlement Class—shutdown of the printer and the display of

25   an "empty" signal while useable toner remained in the toner cartridge.   Wrongful

26   conduct that aggrieves both the named plaintiffs and the putative class members is

27   sufficient to satisfy the typicality requirement despite varying fact patterns underlying the

28   individual claims.  *See Baby Neal for and by Kanter v. Casey* , 43 F.3d 48, 58 (3rd Cir.

– 32 –

1   1994) ("[F]actual differences will not render a claim atypical if the claim arises from the

2   same event or practice or course of conduct that gives rise to the claims of the class

3   members, and if it is based on the same legal theory.")   Mr. Baggett unquestionably

4   possesses the same interest as other class members in obtaining the full use of his HP

5   laserjet printer's toner cartridges and suffered the same injury as other class members as a

6   result of the shutdown of the printer with toner remaining.  Baggett is "typical" within the

7   meaning of Rule 23,   *See* E. *Tex. Motor Freight Sys., Inc., v. Rodriguez*, 431 U.S. 395,

8   403, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977) (noting that it is essential to establish that the

9   class representative "possess the same interest and suffer the same injury" as class

10  members in order to satisfy typicality) (*quoting Schlesinger v. Reservists Comm. to Stop*

11  *the War*, 418 U.S. 208, 216, 94 S.Ct. 2925, 41 L.Ed.2d 706 (1974)).

12        Finally, plaintiff representative Baggett has "fairly and adequately protect[ed] the

13  interests of the class." Fed. R. Civ. P. 23(a)(4).  To resolve the question of legal

14  adequacy, the court must answer two questions: (1) do the named plaintiff and her

15  counsel have any conflicts of interest with other class members and (2) has the named

16  plaintiff and her counsel vigorously prosecuted the action on behalf of the class? *Hanlon*,

17  150 F.3d at 1020. This adequacy inquiry considers a number of factors, including "the

18  qualifications of counsel for the representatives, an absence of antagonism, a sharing of

19  interests between representatives and absentees, and the unlikelihood that the suit is

20  collusive." *Brown v. Ticor Title Ins.*, 982 F.2d 386, 390 (9th Cir.1992).  The adequacy

21  prong is satisfied where a "suit [is not] collusive and plaintiff's interests [are not]

22  antagonistic to those of the remainder of the class." *In re United Energy Corp. So/lar*

23  *Power Modules Tax Shelter Inv. Sec. Litig*, 122 F.R.D. at 257.  Here, the proposed

24  settlement does not present any antagonism or disabling conflict between the proposed

25  representative Plaintiff and the absent Settlement Class members. *Lubin v. Sybedon*

26  *Corp.*, 688 F. Supp. 1425, 1461 (S.D. Cal. 1988); *Weinberger v. Jackson*, 102 F.R.D.

27  839, 844-45 (N.D. Cal. 1984).

28

– 33 –

1    At this point, it is clear that Mr. Young is no longer willing or able to serve as class

2    representative. *In re Quarterdeck Office Sys., Inc. Sec. Litig.*, CV 92-3970-

3    DWW(GHKX), 1993 WL 623310 (C.D. Cal. Sept. 30, 1993) (named plaintiffs' lack of

4    knowledge and failure to actively pursue case rendered plaintiff inadequate.)  In stark

5    contrast, Mr. Baggett is entirely qualified to be the solitary class representative for this

6    settlement – especially to shepherd the case through the final settlement stage.   Quite

7    clearly, there is no reason why Mr. Baggett (about whom there is no question as to his

8    adequacy) cannot represent both classes for final approval in that both classes are

9    comprised of owners of HP color laserjet printers and the existence of the hidden override

10   does not alter the fact that both classes of printers will shutdown and initially signal

11   "empty" while useable toner remains in the printer.  Indeed, "[d]ifferences between

12   named plaintiffs and class members render the named plaintiffs inadequate

13   representatives only if those differences create conflicts between the named plaintiffs'

14   interests and the class members' interests. *James v. City of Dallas, Tex.*, 254 F.3d 551,

15   571 (5th Cir. 2001).

16       Finally, Plaintiff and the Settlement Class are represented by experienced counsel

17   who have handled numerous class action matters through settlement and trial and have no

18   interests antagonistic to the Settlement Class.

19       **B.     The Settlement Class Satisfies the Requirements of Rule 23(b)(3).**

20       Rule 23(b)(3) states that a class may be certified when "questions of law or fact

21   common to the members of the class predominate over any questions affecting only

22   individual members, and [...] a class action is superior to other available methods for the

23   fair and efficient adjudication of the controversy."  Because of the nature of Plaintiffs'

24   claim and the uniformity of HP's conduct, this case satisfies the requirements of Rule

25   23(b)(3).

26       Predominance does not demand that the common issues be identical so long as

27   there is an essential common factual link between all Class members and the Defendant

28   for which the law provides a remedy. *Yokoyama v. Midland Nat. Life Ins. Co.*, 594 F.3d

– 34 –

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT (CASE NO. CV-07-0667 AG)**

1087, 1093 (9th Cir. 2010). A single common issue often may override multiple individual issues in a given case. As one court explained:

> [T]he predominance requirement is not a numerical test that identifies every issue in the suit as suitable for either common or individual treatment and determines whether common questions predominate by examining the resulting balance on the scale. A single common issue may be the overriding one in the litigation, despite the fact that the suit also entails numerous remaining individual questions.

*Olson v. Tesoro Refining and Mktg. Co.*, 2007 WL 2703053, at *6 (W.D. Wash. Sept. 12, 2007) (citing treatise).

A case like the present one – where the liability is determined by a common and uniform practice – is particularly appropriate for certification. *Mortimore v. Fed. Deposit Ins. Corp.*, 197 F.R.D. 432, 438 (W.D. Wash. 2000). Moreover, upon settlement of a class action, many of the concerns articulated in Rule 23(b)(3) do not apply because the negotiated resolution makes them inapplicable. *Amchem*, 521 U.S. at 620-621 (where a district court is confronted with a settlement-only class certification, the court need not inquire whether the case, if tried, would present manageability problems because the point is that there will be no trial).

In short, the Settlement Class is suitable for certification, and the Court should certify the Settlement Class pursuant to Rule 23(b)(3), for purposes of granting final approval to the settlement.

## VI.   CONCLUSION

Based upon the foregoing, this Settlement merits final approval. Plaintiff Keslea Baggett respectfully requests that this Court enter an Order finally approving the Class Settlement and grant such other and further relief as this Court deems just and proper.

– 35 –

1    Dated:  January 14, 2011              KABATECK BROWN KELLNER, LLP

2

3                                          By:  _____/s/_____
                                                Richard L. Kellner
4

5

6    Dated:  January 14, 2011              CHITWOOD HARLEY HARNES LLP

7

8                                          By:  _____/s/_____
                                                Darren T. Kaplan
9

10                                         *Attorneys for Plaintiffs the*
                                           *Preliminarily Certified Class*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT (CASE NO. CV-07-0667 AG)