KABATECK BROWN KELLNER LLP
BRIAN S. KABATECK, SBN 152054
(bsk@kbklawyers.com)
RICHARD L. KELLNER, SBN 1714146
(rlk@kbklawyers.com)
644 South Figueroa Street
Los Angeles, CA 90017
Tel:  (213) 217-5000
Fax: (213) 217-5010

CHITWOOD HARLEY HARNES LLP
GREGORY E. KELLER (admitted *Pro Hac Vice*)
(gkeller@chitwoodlaw.com)
DARREN T. KAPLAN (admitted *Pro Hac Vice*)
(dtkaplan@chitwoodlaw.com)
2300 Promenade II
1230 Peachtree Street, N.E.
Atlanta, GA 30309
Tel:  (404) 873-3900
Fax: (404) 876-4476

Attorneys for Plaintiffs and
the Preliminarily Certified Class

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: HP LASER PRINTER LITIGATION | **CASE NO. SA CV 07-0667**<br><br>HON. ANDREW J. GUILFORD<br><br>**PLAINTIFF AND CLASS REPRESENTATIVE KELSEA BAGGETT'S SEPARATE RESPONSE TO THE YOUNG AND VALSTONE OBJECTIONS TO THE CLASS ACTION SETTLEMENT**<br><br>Hearing<br>Date:  January 31, 2011<br>Time:  10:00 a.m.<br>Courtroom:  10D |

## A.   Introduction

The objection by James Young is a fabrication, apparently prepared by someone on his behalf (most likely Michael Vlastone) which is entirely false and without any merit. Indeed, the objection is largely a mirror image of the Vlastone objection, in both form and format.

Mr. Young has been kept painfully aware of all material aspects of this case – from the filing through settlement.  As documented in the declaration from Alfredo Torrijos, Mr. Young was contemporaneously emailed pleadings (including the complaint and motion to dismiss [to which he professes no knowledge in the declaration]), and the settlement agreement which explicitly sets forth the history of the case.  (Torrijos Decl., ¶¶ 3,6.)

In addition, attorney Alfredo Torrijos individually went through all of the terms of the settlement with Mr. Young, prior to his signature on the document.  (Torrijos Decl., ¶7.)  During the conversation, he explained that the settlement was a good one based upon the fact that the case had been lost at the district court level, and was presently on appeal. (*Id.* at ¶ 8.)

It is now clear that Mr. Young fell victim to the connivance of Michael Vlastone, who has set out on a campaign to torpedo this settlement in favor of a California state court action entitled *Martha Sutherland v. Hewlett-Packard* (Superior Court of the State of California, County of San Francisco, Case No. CGC 08-478150).  In his personal crusade against HP, Valstone has run amuck and engaged in nefarious conduct – including lies about class counsel and direct misrepresentations about the *Sutherland* case.  He convinced Mr. Young not only to withdraw his objection, but also not to speak with his attorneys who could clarify and explain Vlastone's misrepresentations.

At this juncture, plaintiff and class representative Kelsea Baggett remains in support of the settlement and the settlement can be approved notwithstanding Mr. Young's objection.  By this pleading, plaintiff and class counsel will provide this Court with the complete facts surrounding Vlastone and the resulting Young objection.

**B.    Background Facts**

       1.    <u>James Young Was Kept Apprised of All Material Events</u>

In January 2009, class counsel filed an action on behalf of James Young entitled *Young v. Hewlett-Packard* in the United States District Court for the Central District of California.   This was all pursuant to a written retainer agreement that Mr. Young had entered with class counsel.

Not only was Mr. Young told about the complaint – he was sent a copy of the complaint as well.  Strikingly, Mr. Young cannot feign any ignorance that he was the plaintiff and class representative in this action because on the same day that the complaint was filed, Mr. Young signed a pleading in which he acknowledged that he was a party in the action – which caption also stated that the case was on his behalf and on behalf of others similarly situated. (Torrijos Decl., ¶ 4[Exhibit 8].)

The *Young* case was a class action that was being prosecuted on a parallel track with a previously filed class action entitled *Baggett v. Hewlett-Packard* in the United States District Court for the Central District of California (Case No. CV 07-0667 AG [RNBx]).  The *Young* case involves virtually identical allegations to the *Baggett* action, but pertained to a different class of printers that had a hidden function that allowed users to override the printer shutdown and continue using the cartridge until all useable toner was exhausted.  Class counsel represented the plaintiff in both the *Baggett* and *Young* actions.

As is the custom and practice of Kabateck Brown Kellner LLP, Mr. Young was contemporaneously provided with the pleadings that were filed in this action.  (Torrijos Decl., ¶3.)  A sampling of such emails are attached as Exhibits 1 through 6 to the Torrijos Declaration.   These include minor items such as stipulations to continue the deadline for the filing of the motion for class certification, to the motions to dismiss.  Mr. Young was kept fully apprised of all material developments in this case.

1   There was no discovery in the *Young* action, because immediately HP filed a

2   motion to dismiss the complaint.  The motion to dismiss was filed on March 5, 2009 –

3   and Mr. Young was provided a copy of the motion to dismiss – as well as the other

4   pleadings in connection with the motion.  (Torrijos Decl., ¶ 3.)

5   The motion itself was continued, and finally argued in June 15, 2009.  Thereafter,

6   there was no real activity with which to update the client as the parties waited for the

7   Court's decision on the motion to dismiss and there was no further litigation of the case.

8   On March 16, 2010, the Court granted HP's motion to dismiss and an appeal was timely

9   filed by Plaintiff with the Ninth Circuit on April 9, 2010.

10  Perhaps the most striking allegation that Mr. Young makes is that he was not made

11  aware of the settlement or the fact that it was entered as a result of a compromise based

12  upon the fact that the district court had granted HP's motion to dismiss.  Mr. Torrijos

13  provided Mr. Young with a copy of the settlement agreement (Torrijos Decl., ¶ 6 [Exhibit

14  7.]), and he also went through the terms of the settlement with him in detail.  (Torrijos

15  Decl., ¶ 7.)  In fact, the settlement states in no uncertain terms that the *Young* action was

16  dismissed, the matter was on appeal and that the settlement represents a compromise.

17  (Torrijos Decl., ¶ 6 [Exhibit 7.].)   Not only did Mr. Torrijos explain these terms and

18  present Mr. Young with the settlement document, but Mr. Young signed the document.

19  (*Id.*)

20  2.   Vlastone's Involvement in the Case

21  In September 2008, while the *Baggett* case was pending, Michael Vlastone

22  approached class counsel and asked to be a consultant in the *Baggett* action. Vlastone

23  then met with class counsel in Los Angeles, at which he claimed to have uncovered

24  damaging evidence that could be useful in support of the *Baggett* case.

25  At the meeting, Vlastone also made a rather unbelievable request of what he

26  wanted in exchange for his assistance in the *Baggett* case.  Vlastone asked class counsel

27  to purchase a building in San Francisco, which would be used for the operation of his

28  business.  Vlastone even brought a prospectus for the multimillion dollar building.  Class

– 4 –

PLAINTIFF AND CLASS REPRESENTATIVE KELSEA BAGGETT'S SEPARATE RESPONSE TO THE YOUNG
AND VALSTONE OBJECTIONS TO THE CLASS ACTION SETTLEMENT (CASE NO. CV-07-0667 AG)

1  counsel dismissed Vlastone as being an eccentric, and politely told him that they had no

2  interest in agreeing to his proposition.  (Kellner Decl., ¶3.)

3      Class counsel did not hear from Vlastone again until December 2010, at which

4  time Vlastone contacted class counsel to tell them that he was disappointed with the

5  settlement and thought that class counsel should withdraw from the settlement and

6  instead assert claims in the action entitled *Sutherland v. Hewlett-Packard* (Superior Court

7  of the State of California, County of San Francisco, Case No. CGC 08-478150).  During

8  multiple telephone conferences, class counsel patiently listened to Vlastone's contentions

9  – following which, class counsel told him about all of the problems they identified in the

10  *Sutherland* case.  Among other things, Vlastone acknowledged that HP's representation

11  that users get a specified yield at 5% average coverage for color and/or black cartridges

12  was accurate – it was just his position that people did not use their printers in such a way.

13  Class counsel explained that the problem with his theory, which was identical to the

14  problem that confronted the *Baggett* and *Young* actions, was that the Court would

15  ultimately dismiss the case because HP's actual yield representations were accurate.

16  Further, and even more problematic with respect to the *Sutherland* action, because

17  Vlastone acknowledged that there are some users who actually receive the stated yields, it

18  would be impossible to have an ascertainable class. (Kellner Decl., ¶4.)

19      Strikingly, Vlastone ultimately acknowledged that conventional litigation

20  techniques would not work against HP, and that the problems that beset the *Sutherland*

21  case could be circumvented by what he called the *Sutherland* strategy – described as

22  follows:

23      Sutherland strategy has always been and continues to be based

24      on a novel approach:  first conducting a thorough and unbiased

25      investigation, including discovery, followed by giving ICN a chance to

26      establish dialog and cooperation with HP BOD towards reaching an

27      agreement for mitigation of toner fraud – including the class

28      certification, and only applying media campaign pressure if necessary.

– 5 –

1   HP BOD repeatedly pledged in a public SBC contract that, if shown

2   evidence of any misconduct by HP or its employees, they would never

3   try to deny it through legal loopholes or cover it up, but would

4   immediately take steps to stop and mitigate such misconduct, as they

5   have decisively demonstrated in the 2006 pretexting and the 2010 Mark

6   Hurd scandals – regardless of the short term embarrassment or costs.

7          With regards to the toner yield fraud, the pressure on the HP

8   BOD would be even greater than in the previous two instances,

9   because, upon full exposure of this misconduct in the media, consumers

10  would have a clear and cost-free pathway to liberate themselves from

11  further fraud and to walk away from HP products, thus damaging HP's

12  revenue streams.  One full set of HP replacement cartridges costs the

13  equivalent, for example, of one "same or better quality" Brother color

14  laser printer with cartridges included, that will not defraud consumers

15  of full yield delivery.  HP BOD, if presented with credible proof of

16  fraud (that the Sutherland litigation had already mostly achieved, short

17  of the names of HP employees who implemented it), would be under

18  the pressure of not only avoiding the long term damage to HP's

19  reputation, but of also protecting its immediate revenues.  Furthermore,

20  they would be exposed to personal liability for failure to enforce the HP

21  SBC and as a result getting sued by HP stockholders when the stock

22  might fluctuate downwards following the exposure of the scandal.

23         Based on their track record over the past 5 years, having seen a

24  well documented body of evidence provided by ICN, the HP BOD

25  would then likely instruct HP Legal and HP's outside counsel to

26  investigate further and hold the responsible employees accountable,

27  have their PR firms structure a public apology for the mistakes made,

28  and then move forward with, rather than oppose, the class certification

1    process in order to establish a fair and comprehensive process for

2    compensating the victims of this fraud, followed by releasing the

3    software and firmware updates that remove fraudulent software from

4    HP printers.

5         It is understandable that not having seen ICN achieve such an

6    outcome, you might think that it is not realistic, however, you have not

7    even given it a chance, and such pessimism is contradicted by the only

8    known facts, which are that HP BOD followed the guidelines of HP

9    SBC even when it was costly and embarrassing to do so.  And it is

10   logical that they did – their personal interests are not at all the same as

11   those of HP Legal department or HP's upper management team,

12   including the executives in charge of the Printing and Imaging Group.

13   (Kellner Decl., ¶ 5[Exhibit A].)

14       Vlastone went on to argue that even though the class certification strategy might

15   fail, his extra-litigation strategy would succeed:

16        Now, you are absolutely correct, that under the traditional model

17   of class action litigation, variability in the experiences of the defrauded

18   class would present a problem – IF class certification were to be

19   vigorously contested by the defense counsel.

20        However, this potential difficulty with class certification is real

21   only if you don't take advantage of the innovation proposed by the

22   *Integrity Capitalism Network* and assume that HP Board Of Directors

23   would not be motivated to cooperate in the settlement and mitigation

24   process once the other smoking gun was found during discovery – i.e.

25   the identity of the fraud perpetrators (the smoking gun we already have

26   is our study that proves that the yield fraud exists and exposes its

27   primary mechanism).

28

1   As attorneys for the injured consumers, you do not have any

2   way of reaching out to HP board or HP management, because

3   professional rules of conduct restrict you to communicating with the

4   defendant's counsel – who have no interest in recommending to the

5   Board that your evidence should be evaluated.  In fact, part of their job

6   is to provide a shield of plausible deniability to the board and the

7   management.

8   On the other hand, the Integrity Capitalism Network (ICN) and

9   its advisors and supporters in the Silicon Valley, being neither the

10  plaintiffs nor the attorneys for the plaintiff, are not bound by such

11  limitations.  Having access to a complete set of well documented

12  evidence, ICN would be free to reach out directly to the individuals on

13  the HP board, as well as individual members of the executive team,

14  such as the new CEO.  These key decision makers to this day remain in

15  the dark about any details of the LaserJet litigation, the yield fraud

16  charges or the conduct of a relatively small group of managers and

17  employees who developed this fraud to benefit themselves while

18  jeopardizing the reputation and the long term financial health and

19  competitiveness of their employer - HP corporation.  While HP

20  pocketed tons of money unlawfully through this fraud, the corporation

21  could have earned even more profits by developing super-efficient

22  toner delivery technologies and business models, making laser printing

23  affordable for every family and small business.  Further below, I will

24  lay out the evidence of how and why reaching out to HP BOD will help

25  settle this fraud.

26  (Kellner Decl., ¶ 5 [Exhibit A].)

27  Class counsel politely told Vlastone that they could never be part of such an

28  artifice – especially when someone on their team would be talking with the corporate

1  board of a represented party. (Kellner Decl., ¶ 6.)   Class counsel left the meetings with

2  the impression that Vlastone and the *Sutherland* team understood their position, disagreed

3  with it, and probably would be filing an objection in this action to convince the Court that

4  it was correct regarding their assessment of the *Sutherland* action.  (Kellner Decl., ¶7.)

5  At worst, class counsel believed that Vlastone was an eccentric crusader who had an

6  entirely warped impression of how things should be handled in the judicial system.

7       Meanwhile, unbeknownst to class counsel, Vlastone surreptitiously obtained the

8  telephone numbers of the class representatives in this action and contacted them.  Class

9  counsel has discovered that Vlastone told both class representatives that they had been

10  lied to by class counsel, and that the settlement should be abandoned in favor of another

11  case with which he was involved.  (Kellner Decl., ¶ 10 [Exhibit 3 (Young Decl., ¶17)];

12  Declaration of Kelsea Baggett ("Baggett Decl."), ¶¶ 3,4.)  Particularly, Vlastone stated

13  that class counsel did not inform the class representatives of the *Sutherland* case, which

14  Vlastone represented as a winning case that would provide full relief that was not

15  attainable in the *Baggett* and *Young* actions.  Remarkably, Vlastone was somehow able to

16  convince James Young to abandon the settlement, and not talk with his attorneys ever

17  again. (Kellner Decl. ¶¶ 8, 10 [Exhibit 3].)  Kelsea Baggett refused Vlastone's overtures

18  and fully supports the settlement (Baggett Decl., ¶ 7.)

19       Class counsel has repeatedly tried to contact Young, and to address all of the

20  factual misstatements in his objection and the Vlastone pleading.  However, to date,

21  Young refuses to respond to class counsel.  (Kellner Decl., ¶8.)

22       3.    The Young Objection Was Apparently Prepared By Vlastone

23       Class counsel has requested that they be permitted to take the deposition of

24  Vlastone, because there is a great deal of evidence that he has engaged in chicanery to

25  torpedo this settlement.  In addition to the conduct described above, as well as his

26  unethical and half-baked schemes to coerce HP to settle the *Sutherland* action, Vlastone

27  apparently prepared the Young objection for him.

28

**PLAINTIFF AND CLASS REPRESENTATIVE KELSEA BAGGETT'S SEPARATE RESPONSE TO THE YOUNG
AND VALSTONE OBJECTIONS TO THE CLASS ACTION SETTLEMENT (CASE NO. CV-07-0667 AG)**

1      A comparison of the two documents demonstrates Vlastone's authorship of the

2  Young objection.

3      First, the font used in both objections is identical and, strangely enough, is slightly

4  different than the format used in the *Sutherland* objection prepared by Timothy

5  Rumberger.

6      Second, the headings for both pleadings are exactly the same.

7      Third, both objections use the same strange opening paragraph heading entitled

8  "Statement of Integrity."   This is clearly a term that has been invented by Vlastone.

9      Fourth, paragraphs 2 and 3 are essentially identical in both objections.

10      Fifth, paragraph 5 and 6 are essentially identical in both objections.

11      Sixth, paragraph 7 in the Vlastone objection is identical to paragraph 8 in the

12  Young Objection.

13      Seventh, and no less significant, the entire tone and tenor of the objection is

14  entirely based upon a contention that class counsel failed to inform Young about the

15  *Sutherland* action (which ironically could not include Young because it is a California

16  only based class action), and that the *Sutherland* case should be pursued in favor of the

17  settlement of this action.

18      Substantively, Young's claim that he was not told that the case had resulted in

19  dismissal is untrue, and refuted by not only the truth that he was specifically advised of

20  this fact by Mr. Torrijos, but also based upon the fact that the settlement agreement

21  expressly states the same. (Torrijos Decl., ¶8.)   Mr. Young was told that the settlement

22  would prospectively address some of the problems in his case – which it does by the

23  injunctive relief which tells consumers about the existence of the override. (*Id.*)

24      Young's contention that he was just an observer in the case is untrue – he was

25  given the critical pleadings, received phone calls from class counsel and was fully and

26  completely told about the settlement. (Torrijos Decl., ¶7.)   Young's comment about yield

27  on paragraph 15 is completely false.  The connivance of Vlastone is best revealed in

28  paragraph 21 of the Young objection, which provides:

– 10 –

1    . . . Therefore, having also learned about the viable *Sutherland v.*

2    *HP* litigation and the results of the scientific HP Yield Study conducted

3    for that case (that empirically proves HP yield fraud), I declare my

4    conclusion that Timothy Rumberger appears best positioned to protect

5    the interests of the class of injured consumers buy diligently

6    prosecuting the *Sutherland v. HP* case, even though Mr. Rumberger

7    had declined my request for representation due to a potential conflict of

8    interest. . .

9    As documented in the motion for final approval, pp. 21-25, the *Sutherland* case is

10   one that will not have any different result than the present class actions and, in any event,

11   does not even affect Mr. Young because it is a California-only class.  Indeed, it is striking

12   that Valstone never told Young about the problems that would beset the *Sutherland* case,

13   that a demurrer is pending against that case, that the case involves only California

14   plaintiffs, and that the case is part of Vlastone's overall "strategy" of co-opting the HP

15   board of directors to pressure HP to settle this case.

16   This *Sutherland* strategy, as well as the theories underlying the *Sutherland* case are

17   half-baked and will not end in any different result than befell the *Young* and *Baggett*

18   actions.

19   **II.    CONCLUSION**

20   Young has been fully informed of the motion to dismiss, his role in this action and

21   the terms of the settlement agreement.  It is abundantly clear that Vlastone has

22   manipulated Young for his own devices, and deceived him into believing his nonsense.

23   Moreover, class counsel has extended every courtesy to Vlastone, and gave due

24   consideration to Vlastone's "*Sutherland* strategy" of hijacking the HP board into a

25   settlement of the case – rather than using the judicial system in the manner required by

26   the norms of proper professional conduct.

27   The class settlement of this case stands on its own, as does Mr. Baggett's ability to

28   act as class representative for purposes of effectuating the settlement.  However, class

**PLAINTIFF AND CLASS REPRESENTATIVE KELSEA BAGGETT'S SEPARATE RESPONSE TO THE YOUNG AND VALSTONE OBJECTIONS TO THE CLASS ACTION SETTLEMENT (CASE NO. CV-07-0667 AG)**

counsel believes it is important to have a full and complete record of Young's accusations, and the wholly unseemly actions of Vlastone.


Dated:  January 14, 2011                KABATECK BROWN KELLNER, LLP


                                        By: _____/s/_____
                                              Richard L. Kellner



Dated:  January 14, 2011                CHITWOOD HARLEY HARNES LLP


                                        By: _____/s/_____
                                              Darren T. Kaplan

                                        *Attorneys for Plaintiffs the*
                                        *Preliminarily Certified Class*

**PLAINTIFF AND CLASS REPRESENTATIVE KELSEA BAGGETT'S SEPARATE RESPONSE TO THE YOUNG AND VALSTONE OBJECTIONS TO THE CLASS ACTION SETTLEMENT (CASE NO. CV-07-0667 AG)**