1  KABATECK BROWN KELLNER LLP
   BRIAN S. KABATECK, SBN 152054
2  (bsk@kbklawyers.com)
   RICHARD L. KELLNER, SBN 1714146
3  (rlk@kbklawyers.com)
   644 South Figueroa Street
4  Los Angeles, CA 90017
   Tel:  (213) 217-5000
5  Fax: (213) 217-5010

6  CHITWOOD HARLEY HARNES LLP
   GREGORY E. KELLER (admitted *Pro Hac Vice*)
7  (gkeller@chitwoodlaw.com)
   DARREN T. KAPLAN (admitted *Pro Hac Vice*)
8  (dtkaplan@chitwoodlaw.com)
   2300 Promenade II
9  1230 Peachtree Street, N.E.
   Atlanta, GA 30309
10 Tel:  (404) 873-3900
   Fax: (404) 876-4476
11
   Attorneys for Plaintiffs and
12 the Preliminarily Certified Class

13

14                    UNITED STATES DISTRICT COURT

15                   CENTRAL DISTRICT OF CALIFORNIA

16

17 In re: HP LASER PRINTER        CASE NO. SA CV 07-0667
   LITIGATION
18                                HON. ANDREW J. GUILFORD

19
                                  DECLARATION OF RICHARD L.
20                                KELLNER IN SUPPORT OF
                                  KELSEA BAGGETT'S SEPARATE
21                                RESPONSE TO THE YOUNG AND
                                  VLASTONE OBJECTIONS TO THE
22                                CLASS ACTION SETTLEMENT

23

24

25

26

27

28

──────────────────────────────────────────────
       DECLARATION OF RICHARD L. KELLNER (CASE NO. CV-07-0667 AG)

# DECLARATION OF RICHARD L. KELLNER

I, Richard L. Kellner, declare as follows:

1.     I am a partner at Kabateck Brown Kellner LLP ("KBK") and one of the attorneys of record for plaintiffs and the preliminarily certified class in *re HP Laser Printer Litigation*.   I have personal knowledge of the matters set forth below and submit this declaration in support of Plaintiff and Class Representative Kelsea Baggett's Separate Response to the Young and Vlastone Objections to the Class Action Settlement.

2.     In September 2008, while the *Baggett* case was pending, Michael Vlastone approached my firm and asked to be a consultant or participant in the *Baggett* action.  Mr. Vlastone brought a PowerPoint presentation to a meeting that was held with my firm in Los Angeles, at which he claimed to have uncovered damaging evidence that could be useful in support of the Baggett case.

3.     At that meeting, Mr. Vlastone made a rather unbelievable request of what he wanted in exchange for his assistance in the Baggett case.  Mr. Vlastone asked class counsel to buy a building in San Francisco to be used for the operation of his business.  Mr. Vlastone even brought prospectus for the multimillion dollar building.  We dismissed Mr. Vlastone as being an eccentric, and politely told him that we had no interest in agreeing to his proposition.

4.     Class counsel did not hear from Mr. Vlastone again until December 2010, at which time Vlastone contacted class counsel to tell them that he was disappointed with the settlement and thought that class counsel should withdraw from the settlement and instead assert new claims that Mr. Vlastone had developed in the action entitled *Sutherland v. Hewlett-Packard* (Superior Court of the State of California, County of San Francisco, Case No. CGC 08-478150).  During multiple telephone conferences, we patiently listened to Mr. Vlastone's pleas – and told him about all of the problems in the *Sutherland* case.  Among other things, Mr. Vlastone acknowledged that HP's representation that users get a specified yield at 5% average coverage for color and/or

black cartridges was accurate – it was just his position that people did not use their printers in such a way.  We explained that the problem with his theory, which was identical to the problem that confronted the *Baggett* and *Young* actions, was that the Court would ultimately dismiss the case because HP's actual yield representations were accurate.  Further, and even more problematic with respect to the *Sutherland* action, because Mr. Vlastone acknowledged that there are some users who actually receive the stated yields, it would be impossible to have an ascertainable class.

5.      Mr. Vlastone ultimately acknowledged that conventional litigation techniques would not work against HP, and that the problems that beset the *Sutherland* case could be circumvented by what he called the *Sutherland* strategy.  Attached as Exhibit 1 is a true and correct copy of a document prepared by Mr. Vlastone which discusses the *Sutherland* strategy.

6.      Class counsel politely told Mr. Vlastone that they could never be part of such an artifice – especially when someone on their team would be talking with the board of a represented party.

7.      We left the meetings with the impression that Mr. Vlastone and the *Sutherland* team understood their position, disagreed with it, and probably would be filing an objection in this action to convince the Court that it was correct regarding their assessment of the *Sutherland* action.

8.      We have repeatedly tried to contact Mr. Young, and to address all of the factual misstatements in his objection and the Mr. Vlastone pleading, both in writing and on the phone.  However, to date, Mr. Young refuses to respond to class counsel.

9.      Attached as Exhibit 2 is a copy of the document that Mr. Vlastone sent to my firm as an objection, which was not filed with the court.

10.      Attached as Exhibit 3 is a copy of the document that Mr. Young sent to my firm as an objection, which was not filed with the court.

**DECLARATION OF RICHARD L. KELLNER (CASE NO. CV-07-0667 AG)**

1  I declare under penalty of perjury under the laws of the United States that the

2  foregoing is true and correct and that this declaration was executed on this 14th day of

3  January 2011 in Los Angeles, California.

4

5                    */s/Richard L. Kellner*
                    RICHARD L. KELLNER

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DECLARATION OF RICHARD L. KELLNER (CASE NO. CV-07-0667 AG)**

**Exhibit 1**

### ESCAPING THE TRAP OF A WORTHLESS HP LASERJET SETTLEMENT

**1)   YIELD-FRAUD BASED STRATEGIES COMPARED TO "BLOCKED AVAILABLE TONER" LITIGATION**

Richard described our yield-based strategy in Sutherland as "myopic" (which just added a new word to my vocabulary)…

Unfortunately, it was the KBK strategy that proved shortsighted, while the predictions I made in September 2008 proved to be insightful, far reaching and correct. You might not recall these details, but the thoughts I left your team with at the end of that meeting were:

a) While blocking leftover toner might be wasteful, not focusing on yield fraud, your cases will likely run into trouble, because full delivery of advertised yields is the only legally binding promise made by HP;

b) Lacking a professional technology consultant who has substantial experience with actual consumers of HP products, a comprehensive understanding of a broad range of underlying technologies and skills to communicate complex technical issues in a language that judges and news reporters can understand will substantially weaken your cases;

c) When Darren boasted of also going after Brother laser printers, I warned that my experiences with numerous clients indicated that Brother monochrome printers are completely honest, while Brother color laser printers are either substantially honest, or are far less aggregious than HP printers when it comes to delivering full advertised yields.

While outcomes speak for themselves, it is also important to consider the causes, which leads to this question:

**2)   HAVE JUDGES REALLY BEEN UNREASONABLE IN EVALUATING "BLOCKED AVAILABLE TONER" CLAIMS?**

Another part of our recent call left me with a concern: your team continues to feel strongly that all the judges simply made bad calls.  It was difficult to discern any openness to hearing my message that your frustration with the judges and their rulings – i.e. suspecting them of conservative, pro-corporate bias – appears to be substantially misplaced.

Over the past two years I have meticulously read, studied and annotated every motion, pleading and opinion related to every HP, Brother and Samsung case (including Arcand) as they became available online.  Having a solid understanding of the "average projected yield based on 5% coverage" from the technology, business and consumer perspective I saw a very different problem – litigation based on hard-stopping of usable leftover toner is only legitimate to the extent that advertised yield had not been fully delivered.  Yield is indeed the only truly useful measure of printer performance - as long as it is not being gamed by a dishonest manufacturer.

In reading the judges' rulings and opinions, I was actually surprised with the patience they demonstrated, providing your team every opportunity and encouragement to plead causes of action that might be legally viable - i.e. violations of actual promises made by the manufacturers that are based on a clearly defined international standard (that only needed to be properly explained to the judges because it is quite technical).

While I am 100% on the side of stopping HP yield fraud, if I were a judge, I would have no other choice but to rule exactly the same way, because alleging fraud based strictly on the blockage of available toner is plain WRONG, not only from a legal but also a practical perspective.  As I tried to explain in our call, preloading extra toner, beyond that required to deliver full advertised yields, is a valid design strategy that serves consumers by lowering the cost of cartridges and improving the reliability and quality of printing.  Hard-stopping (as long as it can be disabled without too much difficulty) is also a valid and useful feature, particularly for the networked, shared printers in the office or the home.  Most consumers prefer not to waste time and paper on gradually faded-out printouts – as used to happen with the laser printers back in the 1990s.

Not having a technology consultant aboard to help your team fully understand and appreciate the implications of these technical issues led you into dead ends in the case of real HP fraud, and also lead to a lawsuit against a manufacturer, Brother, innocent of any fraud (if anything, Brother should have simply provided additional information in their manuals to alleviate consumer concerns about wasted toner).

It is essential that your team come to terms with this reality, because continuing to be in denial will lead to more self-defeating, costly mistakes down the line.  If you operate from the perspective that all the judges are bad, you then lose all your power to overcome the obstacles, because you can't just get rid of these judges.  Then you give up and cave into a bad settlement that hurts rather than helps consumers, because there is no injunctive relief and they might use e-credits to purchase cartridges that will further defraud them.  On the other hand, re-evaluating your own cognitive perceptions and recognizing the blind spota allows you to regain power and look for and find an innovative approach for overcoming challenges you expected to face with the class certification based on yield fraud claims.

*One of the best lessons I learned in life is to never feel mad or disappointed in myself for making a mistake based on a blind spot, and to also reward rather than reject or punish the messenger who helps you become aware of it...   :)*

## 3)      LONG TERM VIABILITY OF YIELD-FRAUD BASED STRATEGIES

Now, you are absolutely correct, that under the traditional model of class action litigation, variability in the experiences of the defrauded class would present a problem – IF class certification were to be vigorously contested by the defense counsel.

However, this potential difficulty with class certification is real only if you don't take advantage of the innovation proposed by the *Integrity Capitalism Network* and assume that HP Board Of Directors would not be motivated to cooperate in the settlement and mitigation process once the other smoking gun was found during discovery – i.e. the identity of the fraud perpetrators (the smoking gun we already have is our study that proves that the yield fraud exists and exposes its primary mechanism).

As attorneys for the injured consumers, you do not have any way of reaching out to HP board or HP management, because professional rules of conduct restrict you to communicating with the defendant's counsel – who have no interest in recommending to the Board that your evidence should be evaluated.  In fact, part of their job is to provide a shield of plausible deniability to the board and the management.

On the other hand, the Integrity Capitalism Network (ICN) and its advisors and supporters in the Silicon Valley, being neither the plaintiffs nor the attorneys for the plaintiff, are not bound by such limitations.  Having access to a complete set of well documented evidence, ICN would be free to reach out directly to the individuals on the HP board, as well as individual members of the executive team, such as the new CEO.  These key decision makers to this day remain in the dark about any details of the LaserJet litigation, the yield fraud charges or the conduct of a relatively small group of managers and employees who developed this fraud to benefit themselves while jeopardizing the reputation and the long term financial health and competitiveness of their employer - HP corporation.  While HP pocketed tons of money unlawfully through this fraud, the corporation could have earned even more profits by developing super-efficient toner delivery technologies and business models, making laser printing affordable for every family and small business.  Further below, I will lay out the evidence of how and why reaching out to HP BOD will help settle this fraud.

As a side note, you might doubt that Sutherland team would have obtained any additional evidence of yield fraud beyond the scientific yield delivery study.  Being focused on the leftover toner, it is inevitable that your team's discovery did not quite look for the right evidence or ask the right questions during the depositions to follow the tracks of the yield fraud.  This is not for lack of intelligence or diligence, rather it is a completely normal outcome that, for example, leads astray many police investigations that pre-judge the guilt or innocence of certain parties and then focus on looking for the wrong evidence, failing to notice or recognize the significance of many facts as they become visible.  Just because you did not find evidence of "who, how, and when" the yield fraud was developed, does not mean that our team will miss it.  For example, if you had conducted a study that empirically proved yield fraud, it would have lead you to learn that it is accomplished by tweaking firmware in order to over-estimate the percent coverage for each color that's not used heavily.  In turn, you could have inquired who wrote the software that evaluates average per page toner coverage, etc, etc....

Setting aside doubts about uncovering additional evidence of fraud, how can we formulate a viable strategy towards settlement and mitigation?  Is our focus on yield-fraud "myopic" or does it have a viable endgoal?

Sutherland strategy has always been and continues to be based on a novel approach:  first conducting a thorough and unbiased investigation, including discovery, followed by giving ICN a chance to establish dialog and cooperation with HP BOD towards reaching an agreement for mitigation of toner fraud – including the class certification, and only applying media campaign pressure if necessary.  HP BOD repeatedly pledged in a public SBC contract that, if shown evidence of any misconduct by HP or its employees, they would never try to deny it through legal loopholes or cover it up, but would immediately take steps to stop and mitigate such misconduct, as they have decisively demonstrated in the 2006 pretexting and the 2010 Mark Hurd scandals – regardless of the short term embarrassment or costs.

With regards to the toner yield fraud, the pressure on the HP BOD would be even greater than in the previous two instances, because, upon full exposure of this misconduct in the media, consumers would have a clear and cost-free pathway to liberate themselves from further fraud and to walk away from HP products, thus damaging HP's revenue streams.  One full set of HP replacement cartridges costs the equivalent, for example, of one "same or better quality" Brother color laser printer with cartridges included, that will not defraud consumers of full yield delivery.  HP BOD, if presented with credible proof of fraud (that the Sutherland litigation had already mostly achieved, short of the names of HP employees who implemented it), would be under the pressure of not only avoiding the long term damage to HP's reputation, but of also protecting its immediate revenues.  Furthermore, they would be exposed to personal liability for failure to enforce the HP SBC and as a result getting sued by HP stockholders when the stock might fluctuate downwards following the exposure of the scandal.

Based on their track record over the past 5 years, having seen a well documented body of evidence provided by ICN, the HP BOD would then likely instruct HP Legal and HP's outside counsel to investigate further and hold the responsible employees accountable, have their PR firms structure a public apology for the mistakes made, and then move forward with, rather than oppose, the class certification process in order to establish a fair and comprehensive process for compensating the victims of this fraud, followed by releasing the software and firmware updates that remove fraudulent software from HP printers.

It is understandable that not having seen ICN achieve such an outcome, you might think that it is not realistic, however, you have not even given it a chance, and such pessimism is contradicted by the only known facts, which are that HP BOD followed the guidelines of HP SBC even when it was costly and embarrassing to do so. And it is logical that they did – their personal interests are not at all the same as those of HP Legal department or HP's upper management team, including the executives in charge of the Printing and Imaging Group.

I hope that in hindsight, you can recognize that perhaps you should given ICN a chance, as both your litigation team and US consumers would have certainly not been worse off than they are right now.  On the up-side, you would have achieved a great victory for yourselves and the consumers and also built a long term relationship with a competent, resourceful and relentless ally.  The body of work I've shared with you might not have achieved the ultimate result yet, but it should give you a hint of what I was able to develop with virtually no resources or access to outstanding and highly experienced legal minds of your team.  Our actions should also have demonstrated to you the discipline and professional courtesy we've exhibited – in 2008 Darren asked me to make sure we don't get the Sutherland case into the hands of an attorney who will negotiate and accept a "bullshit coupon settlement" – and we did not, even though HP offered us a pathway to doing so in May 2009.  You can imagine how shocked we were to learn about the stipulated settlement, having expected you to stick with the appeal process, while we would pursue Sutherland case.  We still very much hope that you will re-evaluate your position and work with us to look for a real solution to stop this fraud.

However, lets also consider the pessimistic side - what do we do if Sutherland

proceeds with discovery, but then HP BOD fails to fulfill the obligations spelled out in the SBC, and Sutherland is then faced with vigorous opposition to class certification based on the variability of individual losses to yield fraud?

## 4)      ADDRESSING THE CLASS ACTION CERTIFICATION DILEMMA

Having taken your admonitions to heart re. "class certification hurdle," I've been doing some research on out-of-the-box ideas that might overcome this potential difficulty.

Enclosed in the email, please find a paper by a very bright student of law that might be applicable to our circumstances: **"Aggregate Reliance And Overcharges: Removing Hurdles To Class Certification For Victims Of Mass Fraud"** by Shawn S. Ledingham, Jr.  I tracked Shawn down and spoke with him late on Tuesday night, and he thinks the HP case would be a most appropriate test scenario for his theory.

Please skim through his note to get a general feel for how the ideas might be applicable.

In short, after getting past the motion to dismiss and conducting discovery, *Sutherland* could amend the complaint based on the findings of that discovery (i.e. individuals who colluded in designing the technology of toner yield fraud, rather than the actual technology that implemented it, which is what we have so far).  Alternately, we have a number of ready-to-go 2600n plaintiffs, as good as Martha, who can file a fresh Federal case based on the 2008-2010 starting dates for the statute of limitations, while Martha would remain a very helpful witness.  The new causes of action could be based on yield fraud as evidence of the actual fraud, and civil RICO statutes, while the uniform damages to all the members of the injured class would be the price differential of HP printers and cartridges, in the context of fraudulent advertisement vs. accurate disclosure of performance characteristics.  In other words, had HP honestly advertised its wasteful printers based on how they were actually programmed to perform (including their true operating costs over a 4-year lifetime), HP would have had to reduce their prices on these printers and cartridges by perhaps as much as 75% for consumers to still want to buy them compared to other printer brands that don't steal toner or require you to give up warranties and toner-out notifications by having to use the override mode. This price differential, or "fraudulent overcharge" can be claimed by every single member of the class, even if they never opened or used their HP 2600n "toner thief printer."

What are your thoughts? Could this be the "class-cert" solution we've been looking for to bring both a reasonable recovery and the injunctive relief to consumers?

Lastly I would like to take this opportunity to discuss the use of media to move proven fraud cases towards settlement and mitigation…

**5)   CREATING INCENTIVES FOR MITIGATION OF DAMAGES IN MASS CONSUMER FRAUD CASES AT THE INTERSECTION OF LITIGATION AND MEDIA CAMPAIGNS**

This is just a very brief comment, and if time permits, we really should have a much longer discussion about ICN integrated media campaigns methodology.

Per his request, I've read up on Darren's work on the Dell case and the recent coverage it was able to get in the mainstream media.  While he deserves much credit for pushing the Dell story as far and wide as he did, getting initial coverage in a multitude of national publications and news reports is just one small part of what I was looking to create with ICN.

While Dell management hates this kind of bad publicity, it is not what they actually fear.  Their actions are primarily driven by vectors that have an actual impact on their private economic interests - as exposed by the internal Dell documents you've been able to uncover.  Dell management took preventive mitigating action only in those cases where it stood to lose important high-volume customers who would switch to other brands.  **Tangible incentives are key**.

A great result in that case would be to get Michael Dell to hold a press conference to apologize to all Dell customers and announce a full recall of the potentially defective computers and make a promise that from now on Dell will immediately recall any future equipment found to have systemic problems.  ***To gain the kind of leverage that would result in such an unlikely outcome, a news blast is entirely insufficient...***

Rather, it requires a pervasive, ongoing *"action and communication"* campaign that creates ever escalating news events, beyond the mostly boring court activity, until Dell management begins to see measurable damage to their sales and their brand that potentially far exceeds the cost of a fair and reasonable settlement and full mitigation of the original fraud they are now trying so hard to avoid.

To accomplish that level of media coverage and public participation you must build up a powerful media brand.  A lawyer or a law firm can never own or manage that type of compelling brand because, rightly or wrongly, most people dislike and distrust lawyers, and at best are bored by the complexity of their work.  An average American has never heard of Tom Girardi, but everyone knows Erin Brockovich.  If Erin was not there to build trust and community cohesion around common goals in Hinckley, that case would have never come together through brilliant litigation alone.

In the most simplistic terms, the long term goal of the Integrity Capitalism Network has been and remains to become an entertaining, passionate and irreverent media brand that ordinary Americans would relate to, trust, and follow when called on to act in support of protecting their own interests.  As the numbers show, the public follows both Michael Moore's and Paris Hilton's antics and they love to follow and participate in competitions, like Celebrity Apprentice.  Litigation, on the other hand is BORING most of the time.

That is why you need an outside organization working on many simultaneous cases to enable weekly episodic content in video and print, that coordinates its activities

with the litigation process, allowing attorneys to do what they do best in the court rooms, while they allow the ICN brand and its media celebrities to entertain and engage the public using the formula we call:

**• IRRESISTIBLE FUN • IMPOSSIBLE CHALLENGES • NOBLE CAUSES ™**

Right now we still have a golden opportunity to do this with the HP case without much risk, as you've already lost both the battles and the war, and HP is settling only because they need to kill the Sutherland case.  We can also spend our time cooperating on a launch of a number of additional worthy class action cases which have been lingering on the shelf for some time, for lack of visionary attorneys who are willing to at least try fixing a broken system, rather that make compromises with it, as unfortunately you appear to have done with the present settlement, which we have no choice but to vigorously oppose.

Sincerely,


Michael Vlastone

Founder, Program Director
Integrity Capitalism Network,  a project of the iShine Foundation

767 Bryant Street, Suite 410
San Francisco, CA 94107

O: 415-957-8703  [ preferred ]   M: 415-794-5112

E: VLASTONE@MAC.COM



Developing scalable solutions that hold accountable
business, government and independent professionals
using the tools of journalism, litigation, new-media and the social-web

**Exhibit 2**

1

2

**MICHAEL A. VLASTONE, IN PRO PER**
*Director of the Integrity Capitalism Network*

3

4

767 Bryant Street, #410
San Francisco, CA 94107

Telephone:      (415) 957-8703
Facsimile:      (415) 957-8703  (requires manual activation via voice call)

5

6

7

8

9

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SANTA ANA DIVISION**

10

11

12

13

14

15

16

17

18

19

In re:          **HP LASERJET PRINTER
                LITIGATION**;

**KELSEA BAGGETT** and **JAMES YOUNG**,
individually and on behalf of all those similarly
situated,
          *Plaintiffs*,

                v.

**HEWLETT-PACKARD COMPANY**, and
Does 1 through 50,
          *Defendants*,

**MICHAEL A. VLASTONE**,
          *Objector*

**CASE No. CV 07-0667 AG (RNBx)**

**CLASS ACTION LITIGATION**

1) **DECLARATIONS BY CLASS
   MEMBER  Michael A. Vlastone**

2) **OBJECTION TO SETTLEMENT**

3) **APPEARANCE AT HEARING**

Judge:     ANDREW J. GUILFORD
Date:      January 31, 2011
Time:      10:00 a.m.

20

21

22

23

I, Michael A. Vlastone, hereby declare and state as follows:

**I.          STATEMENT OF INTEGRITY**

24

25

26

27

28

        1.          I,  Michael A. Vlastone, a resident of San Francisco, CA, am over the age of 18.

I am the owner of an HP Color LaserJet 2600n and CP1518ni printers, giving me standing as a

member of the class, and I am the founder and director of the Integrity Capitalism Network (ICN),

an organization dedicated to developing systemic solutions to ending fraud.

2.      I have not been threatened, coerced or manipulated in any way to come forward with the revelations contained in this declaration;  I have not been offered any incentives, payments, rewards or bonuses of any kind for exposing the misconduct and frauds that I've become aware of during the course of investigating the conduct of current designated counsel's class action litigation, as well as the deliberately fraudulent design of HP color LaserJet printers and cartridges.

3.      I have not been contacted or recruited by counsel for any party to the present litigation, but have independently determined that I must address this court directly in order to prevent the miscarriage of justice, having learned about the unethical conduct by the designated class counsel, a determination I made based on my own investigations, direct discussions with class counsel and other information known to me directly.

4.      I am making this declaration to this court in order to fulfill my responsibilities as a citizen of the United States and a 29-year resident of the State of California.  Having learned of the extensive wrongdoings, costing millions not only to the US and California consumers but also the tax-payer-funded institutions including but not limited to public schools, universities, hospitals and the various offices of the State and Federal Governments, as well as the US military and national Guard, that all own and operate HP color LaserJet printers and cartridges,  I am taking a stand to protect the wealth of all citizens and the integrity of American business and government institutions from the systemic corruption that undermines our freedoms, our economy and our legal system.

5.      I hereby swear under the penalty of perjury under the laws of the state of California that all the facts contained in this declaration are based on my personal knowledge (unless otherwise specified), to the best of my understanding and recollections, and if called upon to do so, I could and would testify competently hereto, and I am further willing and able to provide testimony and full cooperation with any related inquiries and investigations that might be undertaken by the appropriate agencies of government to end and prosecute the alleged misconduct and frauds by the various parties that have taken part in, or colluded in such conduct.

**DECLARATION & OBJECTION OF MICHAEL A. VLASTONE,** Case No. CV 07-0667 AG (RNBx)

2

**II.     DECLARATION OF FACTS & ARGUMENTS IN SUPPORT OF OBJECTION**

6.       **Designated Class Counsel and attorneys of record through January 3, 2011**: I understand that the plaintiff's attorneys who were involved in litigating *Young v HP*, some of whom I had met in person (names of these individuals bolded below), and some others I spoke with on the phone or communicated with via e-mail, are partners and/or associates inside four (4) law firms, of which only the first two law firms were actively involved in negotiating the August 25, 2010 stipulated settlement:

    a)   KABATECK BROWN KELLNER LLP (KBK Law)

        **Brian Kabateck**, **Richard Kellner**, **Alfredo Torrijos**

    b)   CHITWOOD HARLEY HARNES LLP

        **Darren T. Kaplan**, Gregory E. Kelner

    c)   LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP

        Jonathan D. Selbin, **Kristen E. Law**

    d)   LAW OFFICES OF CALTON & CALTON

        **Jim S. Calton, Jr.**

7.       In this declaration, unless identified by name, I will refer to any one or all of the above listed law firms and attorneys as "the Designated Counsel," or as "the attorneys."

8.       ***Sutherland v. HP* – a viable and valuable case on behalf of the injured classes**: A class action case is currently pending against HP in California court, described in great detail in the ***objection of Martha Sutherland, by attorney Tim Rumberger***.  Unlike the Baggett and Young dismissed by summary judgment for failure to state viable legal theories, at this time, *Sutherland v. HP* is a strong, viable class action case, based on the ***scientific proof of HP's deliberate programming of its products to grossly under-deliver advertised yields***, as can be seen in the attached *Sutherland v. HP* second amended complaint, the extensive evidence exhibits,

---

**DECLARATION & OBJECTION OF MICHAEL A. VLASTONE,** Case No. CV 07-0667 AG (RNBx)

3

the "HP - SureSupply or Sure Fraud?" video documentary and the HP Yield Study Report, endorsed by a world-renowned Stanford University professor Dr. Phil Zimbardo, that provides empirical proof of the alleged HP yield fraud.  Sutherland's yield-based causes of action are further bolstered by HP's own arguments in this court that stated: ***"Having made the disclosure it did regarding page yield, HP is bound to that promise, and HP's conduct must be judged against that disclosure…"*** In addition, publicly available HP documents, as well as HP statements made to Sutherland, ***fully admit that HP printers are known to cause premature replacement of printing supplies*** (i.e. hard-stopping cartridges prior to delivering their full advertised yields) in violation of CLRA statutes. Finally, Sutherland uncovered scientifically derived evidence and stated a legal theory that the so-called "override mode," if activated prior to the full delivery of advertised yields, ***renders HP laser printers crippled and defective*** from both the practical and legal perspectives, thus making a distinction between non-override and override printer models moot and irrelevant and enabling Sutherland litigation to encompass all HP laser printers that under-deliver advertised yields.  Based on its extensive and indisputable body of evidence, including the above mentioned scientific yield delivery study, and based on HP's own written admissions, the Sutherland case is very likely to prevail and to achieve a substantial recovery for consumers, estimated at orders of magnitude greater that the Baggett and Young stipulated settlement (based on each individual incident of deliberate failure to deliver stated yields for color cartridges causing up to $280 of losses for each consumer).  Most importantly, Sutherland case is on track to obtain comprehensive injunctive relief that will fully protect consumers from continued yield fraud that will otherwise continue to take advantage of HP printer owners for many years to come – for the life of the installed base of HP Color LaserJet printers and HP's upcoming printer models.

9.      Therefore, evaluations of the present settlement (that would extinguish Sutherland v HP), should be made in the context of knowing that consumers still have a viable tool for substantial recovery and meaningful injunctive relief, as compared to the present settlement that

only gives $2.75MM cash to the Designated Counsel, while providing "up to $5MM" of nearly worthless coupons to the injured class and no injunctive relief from the ongoing fraud.

10.     **Misconduct of the Designated Counsel**:   On December 31, 2010, I had tracked down via Google and via the name and phone number contained on the settlement signature page, Mr. James C. Young, and a fellow member of the class and a lead plaintiff for the injured class of consumers who own HP 2600n and other LaserJet printers containing hard-stopping and override mechanisms.  I shared with Mr. Young the results of my broad investigations related to the HP color LaserJet yield fraud and I asked him to share his relevant experiences.  In the course of our conversation I heard very disturbing information from Mr. Young related to the conduct of the Designated Counsel, including the fact that even despite my extensive conversations with and documentary disclosures made to the attorneys over the past few weeks, they still had failed to notify Mr. Young about *Sutherland v HP* case, of which they had known for at least two years through our personal meetings, calls and correspondence, or the HP yield study conducted by the Integrity Capitalism Network.

11.     I understand that Mr. Young is providing a declaration for this court that will fully reveal the disturbing truth about his experiences as a lead plaintiff, therefore, I shall not engage in hearsay within my declaration and instead urge this court to first inspect Mr. Young's declaration, before evaluating mine.

12.     Having learned of attorney conduct that I knew to be unlawful and unethical, I expressed my opinion that Mr. Young had an opportunity to prevent a miscarriage of justice and I also expressed an opinion that he might want to obtain independent counsel.  On Mr. Young's request I had tried to introduce him to three different attorneys, two of whom declined, stating conflict of interest (Tim Rumberger and Ted Frank), while the third attorney (Reece Halpern) agreed to provide limited representation for Mr. Young's declarations to this court.

**DECLARATION & OBJECTION OF MICHAEL A. VLASTONE,** Case No. CV 07-0667 AG (RNBx)

5

13.     In sum, Mr. Young's testimony to this court shows that he was prevented and disabled by the Designated Counsel from properly engaging in his role as the lead plaintiff, and had neither read nor evaluated the merits of the stipulated settlement before providing the attorneys with the coveted signature page, having done so relying on their vague statements that they won a settlement and that HP would fix the problems, pay him $1,000 and give meaningful discounts to the other consumers.

14.     These findings elevated my concerns about what appeared more and more to be an entirely sham, collusive settlement.  On the same day, I then proceeded to contact Mr. Kelsea Baggett, the lead plaintiff in *Baggett v HP* by means of a phone number found using the Bing search engine.  His wife answered the phone and then put him on.  I introduced myself and shared my related findings with Mr. Baggett.  He had told me that he too was never informed in any way about the *Sutherland v. HP* case or the HP yield study, to which I provided e-mailed download links.  Mr. Baggett appeared to have read the stipulated settlement document, but did not share with me if he had scrutinized it to make sure the settlement served the best interests of the injured class.  He expressed concerns about my findings, but then stated that he had suffered a number of heart attacks in 2010, and that his condition and prognosis were grave: he was presently attached to medical devices keeping him alive and did not expect to live very much longer.  Mr. Baggett expressed his regrets that he would not be able to executed his role as a lead plaintiff and scrutinize my revelations in order to determine if he is required by his duty as a lead plaintiff to take any appropriate actions on behalf of the class.  He explained that he wishes to spend the last few months of his life with his family rather than fighting on behalf of defrauded consumers.  Having learned of this heartbreaking situation, I immediately wished him well and promised Mr. Baggett that he will not be disturbed with regards to this matter in the future.

15.     While Mr. Baggett certainly appeared better informed about the case than Mr. Young (who was not informed or engaged in it at all until December 31, 2010), based on Mr. Baggett's

**DECLARATION & OBJECTION OF MICHAEL A. VLASTONE,** Case No. CV 07-0667 AG (RNBx)

6

revelations about his state of health, which I urge this court to verify independently of my present statements, he has not been a fully willing or able lead plaintiff working on behalf of the class for some time, and he is certainly in no position to provide this service moving forward, including during the fairness hearings or appeals.  While I am not an attorney, I must declare my concern that this consolidated action appears to not have been fully and rigorously scrutinized by either lead plaintiff, particularly at the time of settlement negotiations and prior to the preliminary approval, as required by the class action litigation process.  Further, Mr. Young, has today dismissed the designated counsel and is now vigorously objecting to this settlement, while Mr. Baggett admits that he is fully and permanently incapacitated from effectively serving as a lead plaintiff.

16.     All together, we have direct testimony from one of the two lead plaintiffs that the stipulated settlement appears to have been a sham driven by the designated counsel for their private gain and against the interests of the class, combined with the inability of another lead plaintiff to make a rigorous examination of the disturbing allegations in this case, or to speak with a strong voice on behalf of injured consumers.  Both lead plaintiffs state that they were prevented by designated counsel from learning about the still viable *Sutherland v HP* case (and the empirical yield study that supports its claims), that appears on track to bring meaningful relief to the same injured classes.  Either separately or jointly these revelations should urge this court to reject the settlement in its entirety.  For both the protection of the class and out of compassion for Mr. Baggett, I urge this court to immediately relieve him of his responsibilities and obligations as a lead plaintiff, and order that another eligible lead plaintiff, who is willing and able to serve in that capacity fully and without conflicts of interest, be appointed.

17.     Based on the extensive misconduct of the designated counsel, it is clear that the present stipulated settlement they got past the ineffective lead plaintiffs can not possibly be trusted as a fair and reasonable settlement for the consumers.  Taking into the account the still viable and valuable claims of the *Sutherland v HP* case, that this worthless settlement will extinguish, it should

be rejected in its entirety by this court.

18.    **<u>Ignoring and Mishandling of Crucial Evidence</u>**.  There was a disturbing trend in the Young case to ignore or mishandle evidence by the designated counsel.  In addition to the revelations made by Mr. Young, I have personally been in contact with attorney Jim Colton Jr., who had complained that attorney Kristen Law had not collected all of his samples and appears to not have investigated the one set of hard-stopped but entirely full of unspent "full-yield-toner-weight" cartridges in her possession in San Francisco.  Upon my request to furnish this evidence for the *Sutherland* case, just after *Young* was dismissed by summary judgment, attorney Kirsten Law revealed that she had misplaced and lost these cartridges during office relocation, never having inspected, measured, or "dissected" them.  Such consistent disregard for evidence appears to demonstrate that designated counsel had been substantially unprepared for and lacking the focus to uncover, fully understand and competently litigate this case.  I also have reasons to believe, as suggested by their stubborn but failed strategies that they might have attempted to cover up evidence in order to avoid having to admit substantial variability in the damages suffered by individual class members due to the variability of full yield delivery, proven by the HP yield study conducted by ICN.  Admission of such variability would require complex and expensive research in order to successfully develop viable class certification strategies, compatible with the true facts of the HP yield fraud.  Designated counsel appears to have been determined to avoid these costly investments on behalf of the class, which they failed to adequately represent.  Therefore, having lost these cases through negligence and incompetence, designated counsel have driven the case into highly compromised settlement to benefit themselves and without engaging the lead plaintiffs in evaluating the fairness of the settlement or its true impact on consumers, as described below. Taking into the account the still viable and valuable claims of the *Sutherland v HP* case, that this

worthless settlement will extinguish, it should be rejected in its entirety by this court.

19.     **Designated Counsel knows that the HP toner fraud is ongoing and pervasive, yet they are willing to accept $2.75MM payoff in exchange for a gag order and recommend that consumers continue buying products that counsel knows will defraud them for years to come** :  I have personally engaged in exhaustive conversations and exchanges of email with the designated counsel over the past two weeks, during the course of which they have expressed their passionate belief that HP is getting away with a huge crime.  However, instead of taking responsibility for their failed litigation strategy, against which I had explicitly warned them in September 2008, based on my research and expert knowledge, they persist in blaming a supposedly conservative, pro-corporate judge who is indifferent to the plight of defrauded consumers – an excuse that appears to me as utterly baseless.  Despite being an injured plaintiff in this case, I must still completely agree with Judge Guilford's rulings in both *Baggett* and *Young*, because the failed and unreasonable legal theory promoted by the designated counsel had enabled enterprising class action attorneys (some among the current group), to sue a completely innocent manufacturer, Brother, based on the leftover toner claims – that have no legal or practical meaning outside of the advertised yield delivery by the printer/cartridge mechanism.

20.     The only measure of honest performance of a laser printer and/or cartridge is the delivery of advertized projected yields based on coverage – a formula that allows consumers to accurately estimate how many actual pages they might get based on their average coverage per page.  Thus a stated yield promise provides a variable actual page yield: fewer pages for heavy toner users, more pages for the light toner users.  HP has programmed its printers to falsely accelerate the appearance of actual yield utilization – as described in much detail in the enclosed HP Yield Study, which furnishes an empirical proof of the yield fraud alleged in the *Sutherland v. HP* case.  Designated counsel is fully aware of this fact, and they admitted to me personally that

**DECLARATION & OBJECTION OF MICHAEL A. VLASTONE,** Case No. CV 07-0667 AG (RNBx)

9

consumers will be shortchanged by HP LaserJet printers and cartridges of their advertized yields, thus costing typical consumers as much as $200 per incident.  However, designated counsel are presently advising these same consumers to accept a worthless $7 coupon to purchase these same HP replacement supplies that, absent injunctive relief that designated counsel failed to litigate or negotiate into the settlement, will most likely cause the already injured consumers to lose more money, multiple times per year.

21.     To make matters worse, designated counsel have agreed to a gag order (page 30 of the stipulated settlement), willing to be silent about the facts they fully know, and making it virtually certain that many consumers will lose $200 to the ongoing fraud by continuing to purchase replacement supplies for their HP printers – when they could spend exactly the same amount of money on alternate printer brands that do not block the full use of advertised yields.  Having lost their cases, designated counsel could have simply walked away from the worthless settlement and publicized the facts fully known to them, in order to protect the consumers from the fraud they believe to be ongoing, yet they choose to accept an undeserved $2.75MM payoff for themselves and remain silent about HP fraud in exchange.  This stipulated settlement is a second fraud against consumers that will injure them even further – this time by the unethical actions of their own designated counsel – and it should be rejected in its entirety by this court.

22.     **Judicial Efficiency in the context of pending investigations and likely action by the California Attorney General:**  Having learned of the substantial misconduct by the designated counsel aimed at collusion with HP to extinguish the *Sutherland v HP* case in exchange for what amounts to a pay-off, over the last two days I have made efforts to establish contact with the office of the California Attorney General, to urge the AG to either object, or opt out of the settlement on behalf of all the tax-payer funded institutions of the State of California that have lost vast amounts of money as a result of the HP yield fraud.  Despite the great difficulty presented by the January 3,

2011 inauguration of the new AG, Kamala Harris, and the internal reshuffling at the AG's office, at about 4:45 pm today, on January 4, 2011, I was finally able to track down and establish a working relationship with a head of Consumer Fraud Investigations, Frances Grunder, operating out of the San Francisco office of CA AG.  I made a full disclosure of the summary of ICN investigations and Ms. Grunder assured me that there was no rush for the AG to file an opt-out, as the CA AG is able to override any and all state and federal civil class action settlements, if the AG investigation were to determine that California consumers and/or State Government institutions are being deliberately defrauded and the relief provided by a settlement fails to end the fraud or fails to fully pay for the damages caused.  She expressed great interest in the ICN findings and their endorsements, and we agreed to effectuate a transfer of the ICN digital archive dedicated to the HP yield fraud to the AG office as early as tomorrow, as a first step towards the launch of the AG investigation.  I understand that based on a scientific proof of fraud, rather than just the ad-hock reports of frustrated consumers, CA AG action would be imminent, should HP fail to voluntarily initiate mitigation of the fraud.

23.     While AG's office might take some time to confirm the results of ICN investigation and proceed with its independent action, out of consideration of judicial efficiency, it is yet another reason for this court to presently reject the sham settlement (rejected even by the lead plaintiff James Young after learning of its true costs to consumers).  Such outcome would forgo the costly and time consuming appeals of the settlement approval and allow the *Sutherland* litigation to proceed on track and in full cooperation with the CA AG.  This process will likely lead to a rapid, country wide, uniform mitigation of the HP yield fraud, serving the best interests of HP and the injured consumers.  If, on the other hand this settlement were to be approved, the defendant HP would still likely face the actions of the State AGs, in California as well as the other states, clogging up the courts for years. The rejection of this sham settlement at this time would only hurt one party – the unethical designated counsel who created it in the first place by betraying their class.

### III.     SUMMARY OF ARGUMENTS IN SUPPORT OF OBJECTION

24.     Not having representation of counsel required to develop and state a more comprehensive objection to stipulated settlement, I rely on the wisdom of this court to reflect on the truthful testimony in my declarations stated above under the penalty of perjury, in order to prevent the miscarriage of justice and the corruption and misuse of the class action litigation process.

25.     In addition to relying on my own declarations stated above, I have learned about the intent and the substance of the Objection to Proposed Settlement filed in this case by Theodore H. Frank of the Center for Class Action Fairness; as well as the Objection to Proposed Settlement filed in this case by Timothy Rumberger, attorney for objectors Martha Sutherland, and the class of injured consumers she represents; as well as the Objection to Proposed Settlement and Declarations filed in this case by James C. Young, the lead plaintiff of Young v. HP, representing himself, and I would like to join their objections as well.

26.     Finally, in addition to summarizing my own declarations, I would like to highlight a number of key facts that might be well known to this court already:

a)   Designated counsel pursued this litigation based on their own selfish agendas rather than stating a legal theory based on the true facts and the real evidence in this case;

b)   The terms of stipulated settlement are unjust, insufficient, unreasonable and entirely worthless to myself or any typical consumer, because we can achieve greater savings than by using $7 HP e-coupons, requiring a waste of much valuable time, by simply purchasing HP replacement cartridges on sale from web-based retailers, or better yet, switching to any number of honest brands of laser printers that can be purchased for less than a full set of HP replacement cartridges from the HP website;

c)   The terms of the stipulated settlement are actually likely to cause substantial additional losses through purchases of replacement cartridges from HP that fail to deliver stated yields, rather than recover value previously lost by the members of the

**DECLARATION & OBJECTION OF MICHAEL A. VLASTONE,** Case No. CV 07-0667 AG (RNBx)

12

class, because settlement terms do not require HP to either fix the problem or to stop selling fraudulent replacement supplies that fail to deliver stated yields;

d) A viable *Sutherland v. HP* case is being litigated to address the same HP yield fraud, based on alternative legal theories and claims (i.e. proven failure to deliver advertised yields), which this and other courts have already indicated in their rulings and opinions as preferable to those dismissed in both the *Baggett* and *Young* cases;

e) *Sutherland v HP* is supported by a scientific yield delivery study by ICN, endorsed by a world-renowned Stanford University professor Dr. Phil Zimbardo, that provides empirical proof of the alleged HP yield frauds.  *Sutherland* yield fraud claims also appear to be validated by HP's own testimony in this court, as well as HP's published and stated admissions already placed into evidence.  While I am not an attorney, even from the layman's perspective, *Sutherland v. HP* litigation appears to be based on sound legal theories and strategies that will likely achieve both a substantially greater recovery for the injured consumers and, most importantly, might obtain comprehensive injunctive relief to end the yield fraud, which will otherwise be allowed to continue injuring consumers indefinitely;

f) Both the designated counsel and HP failed to disclose, and deliberately concealed the *Sutherland v HP* case from this court and from lead plaintiffs Kelsea Baggett and James Young, thus leading them to unknowingly sign off on an inadequate settlement, which creates a very strong appearance of collusion and betrayal of the interests of the class by its attorneys;

g) If *Sutherland v HP* case were to prevail, *Young v HP* designated counsel would receive no compensation for their entirely failed litigation efforts, while HP might have to pay out very substantial damages and, at the very least, HP's misconduct will be fully exposed to the public by the hearings related to the scientific yield study. Therefore, there are very good reasons to believe that, and there is a very strong appearance of, designated counsel and HP in fact colluding to extinguish *Sutherland v HP* litigation in order to maximize each other's economic outcomes, while

completely and totally sacrificing the interests of the injured consumers;

h) Rejection of the stipulated settlement would serve the purpose of judicial efficiency by rendering it unnecessary for HP to face actions by multiple AGs in the different states, clogging up courts for years, and most likely lead to a streamlined investigation and mitigation process.

27.     Based on the facts revealed and arguments made in this brief, final approval to the stipulated settlement should be rejected entirely.

## IV.    NOTICE OF INTENT TO APPEAR AND TESTIFY AT HEARING

28.     These objections also serve as notice that settlement objector *Michael Vlastone* intends to appear, in person, or via electronic video conferencing, or through his counsel (to be designated at a later date), at the January 31, 2011 fairness hearing on behalf of himself and the injured class and he reserves the right to cross-examine any witnesses presented in support of the settlement.

Respectfully submitted,

DATED:  January 4, 2011

BY:_____
          Michael A. Vlastone,
          Founder and Director of the Integrity Capitalism Network
          Class member and objector

## PROOF OF SERVICE

I declare that:

I reside and work in the state of California.  I am over the age of 18 years and my office address is  767 Bryant Street #410, San Francisco, CA 94107, and my email address is:  vlastone@aol.com.

On January 4, 2010, I served the attached:  OBJECTION TO PROPOSED SETTLEMENT

_X_   By electronic mail in that I e-mailed a PDF of this brief to the following parties, bolded below.

_X_   By First-Class Registered Mail in that I caused such envelope(s) to be delivered via First-Class Mail to the addressee(s) bolded below.

| | |
|---|---|
| Settlement Administrator<br>In re: HP LaserJet Printer Litigation<br>Settlement Administrator<br>P.O. Box 5270<br>Portland, OR 97208-5270<br>Facsimile: (877) 341-4607<br>**Email:info@HPLaserJetPrinterSettlement.com** | Counsel for Class<br>Richard L. Kellner<br>KABATECK BROWN<br>KELLNER, LLP<br>644 S. Figueroa Street<br>Los Angeles, CA 90017<br>**E-mail:rlk@kbklawyers.com** |
| Counsel for HP<br>Kristofor T. Henning<br>Franco A. Corrado<br>MORGAN LEWIS & BOCKIUS, LLP<br>1701 Market Street<br>Philadelphia, PA 19103<br>**E-mail:Khenning@morganlewis.com**<br>**Fcorrado@morganlewis.com** | **Clerk of Court U.S. District Court,**<br>**Central District of California**<br>**411 West Fourth Street, Room 1053**<br>**Santa Ana, CA 92701-4516** |

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 4, 2011

BY:_____
           Michael A. Vlastone,
           Founder and Director of the Integrity Capitalism Network
           Class member and objector

**DECLARATION & OBJECTION OF MICHAEL A. VLASTONE,** Case No. CV 07-0667 AG (RNBx)

15

**Exhibit 3**

1

**JAMES C. YOUNG** IN PRO PER
83 North 64th Street

2

Harrisburg, Pennsylvania 17111

3

Telephone:    (717) 561-9742

4

Facsimile:    (717) 561-9742

5

6

7

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

8

**SANTA ANA DIVISION**

9

10

In re:        **HP LASERJET PRINTER**          |        **CASE No. CV 07-0667 AG (RNBx)**

11

**LITIGATION**;                                |

                                               |        **CLASS ACTION LITIGATION**

12

**KELSEA BAGGETT** and **JAMES YOUNG**,        |

individually and on behalf of all those similarly |

13

situated,                                      |        **1) DECLARATIONS BY LEAD**

         *Plaintiffs*,                         |           **PLAINTIFF  JAMES C. YOUNG**

14

                                               |        **2) REQUEST TO DISMISS CURRENT**

15

         v.                                    |           **DESIGNATED COUNSEL**

16

**HEWLETT-PACKARD COMPANY**, and               |        **3) OBJECTION TO SETTLEMENT**

Does 1 through 50,                             |

17

         *Defendants*,                         |        **4) APPEARANCE AT HEARING**

_____               |

18

**JAMES C. YOUNG**,                            |        Judge:      ANDREW J. GUILFORD

         *Lead Plaintiff*                      |        Date:       January 31, 2011

19

                                               |        Time:       10:00 a.m.

20

21

22

23

         I, James C. Young, hereby declare and state as follows:

24

25

                **I.        STATEMENT OF INTEGRITY**

26

         1.        I,  James C. Young, a resident of Harrisburg, Pennsylvania, am over the age of 18.

27

I am the owner of an HP Color LaserJet 2600n printer, and I presently serve as lead plaintiff in

28

*Young v. HP*, one of the two cases consolidated for purposes of settlement into the present action.

**DECLARATION & OBJECTION OF JAMES C. YOUNG,** Case No. CV 07-0667 AG (RNBx)

1

2.    I have not been threatened, coerced, or manipulated in any way to come forward with the revelations contained in this declaration;  I have not been offered, nor would I accept any incentives, payments, rewards or bonuses of any kind for exposing the misconduct and frauds that I've become aware of in the past four days with regards to the conduct of the current designated counsel for the class of plaintiffs in the course of the present class action litigation, and previously with regards to HP's design of it color laser printers and cartridges.

3.    I have not been contacted or recruited by counsel for any party to the present litigation, but have independently determined that I must dismiss my present counsel (the designated class counsel) and address this court directly in order to prevent the miscarriage of justice, having learned about and understood the consequences of the unethical conduct by the designated class counsel, a determination I made based on my own experiences and the information known to me directly.

4.    Having now learned about my role and my responsibilities as the lead plaintiff for the relevant classes of injured consumers (this information and proper instruction previously withheld from me by the designated counsel), I am now providing this declaration to the court in order to fulfill my responsibilities as lead plaintiff on behalf of my class, as well as a citizen of the United States.  Having learned of the extensive wrongdoings, I am taking a stand to protect the wellbeing of all citizens and the integrity of American business and government institutions from the systemic corruption that undermines our freedoms, our economy and our legal system.

5.    I hereby swear under the penalty of perjury under the laws of the state of California and the state of Pennsylvania that all the facts contained in this declaration are based on my personal knowledge, to the best of my understanding and recollections, and if called upon to do so, I could and would testify competently hereto, and I am further willing and able to provide testimony and full cooperation with any related inquiries and investigations that might be undertaken by the appropriate agencies of government to end and prosecute the alleged misconduct and frauds by the

various parties that have taken part in, or colluded in such conduct.

## II.    DECLARATION OF FACTS

6.    <u>Designated Class Counsel and my attorneys of record through January 3, 2011</u>:

Based on the documents I reviewed, I understand that the plaintiff's attorneys who were involved in

litigating *Young v HP*, none of whom I had ever met in person, but only spoke with on the phone,

were partners and/or associates inside four (4) law firms, of which only the first two law firms were

actively involved in negotiating the August 25, 2010 stipulated settlement:

    a)  KABATECK BROWN KELLNER LLP (KBK Law)

        Brian Kabateck,  Richard Kellner,  Alfredo Torrijos

    b)  CHITWOOD HARLEY HARNES LLP

        Darren T. Kaplan, Gregory E. Kelner

    c)  LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP

        Jonathan D. Selbin, Kristen E. Law

    d)  LAW OFFICES OF CALTON & CALTON

        Jim S. Calton, Jr.

7.    I no longer recall which specific attorneys I have spoken with on the rare occasions we talked over the past two years, because, having never met any of them in person, their names did not associate with actual individuals in my memory, other than Alfredo Torrijos of KBK law.

8.    In this declaration I will refer to any one or all of the above listed law firms and attorneys, including all current Designated Class Counsel, as "my attorneys."

9.    <u>How I learned about the misconduct of my attorneys</u>:    On December 31, 2010, I received a phone call from Michael Vlastone, a founder and director of the Integrity Capitalism Network, and a member of the class of injured consumers who owns HP 2600n and CP1518ni Color

LaserJet printers.  Mr. Vlastone shared with me the results of his broad investigations related to the HP color LaserJet yield fraud and he asked me about my experiences during litigation.  In the course of our conversation I was shocked and dismayed to learn that the *Young v HP* case was not in fact won, as I was told by my attorneys in August 2010, but it was actually dismissed, appealed, and the appeal abandoned by my counsel in favor of a compromise settlement with HP.

10.     In August 2010, I was lead to believe by my attorneys that the stipulated settlement resulted from a litigation victory and would lead to the correction of alleged HP laser printer toner frauds, when in fact it turns out to be a compromise based on a total loss and, most importantly, HP would in no way have to correct the yield delivery problems of its LaserJet printers or cartridges.

11.     When my attorneys requested my signature on the stipulated settlement agreement for HP Laser Jet Printer Litigation, they did not inform me that it was my duty to carefully review the settlement terms to make sure that they were adequate and fair to the injured class, but they simply asked me to sign and fax back the signature pages as quickly as possible, having told me that they won a settlement in the case, that HP would fix the problems and consumers would get a discount on their next set of cartridges from HP.  My attorneys also told me that I might receive $1,000 compensation, but they did not tell me that these funds would serve as compensation for my services to the injured class as a lead plaintiff and that I had an important responsibility to carefully review the settlement terms and that I had the power to question these terms or demand their renegotiation, or even fully reject them, if that was in the best interests of the class.  Therefore, I did not print out or read, or carefully review the full text of the stipulated settlement, but simply faxed back my signature page as I was instructed to do by my attorneys.

12.     I was shocked and dismayed the moment Mr. Vlastone told me that both my case and the Baggett case were lost via dismissal by summary judgment for failure to state viable legal theories, and I immediately realized that I had been lied to and manipulated by my attorneys.

13.    **Lack of preparation for my role as lead plaintiff**:  My attorneys never educated me about, or prepared me for, my role, my responsibilities and my powers as lead plaintiff in a class action case.  In fact, having contacted my attorneys, I did not realize that I was becoming a lead plaintiff, but instead I thought that I was joining the on-going class action litigation to make sure I would receive compensation for HP cartridges that did not deliver their stated yields.  I was never explained by my attorneys that I had a duty to carefully read all the documents submitted on behalf of the class, and they had never asked me if I had read and reviewed all the documents, which I did not.  My attorneys only called to obtain required signatures, and/or had asked me whether I wished to keep going, whenever the case ran into difficulties along the way, while the substance of these difficulties they never explained to me in any detail, nor tried to ascertain if I had understood.

14.    **Ignoring and Mishandling of Crucial Evidence**.  I had informed my attorneys that I deliberately saved a set of a total of ten used hard-stopped cartridges from my HP 2600n, which failed to deliver their advertized yields.  These cartridges clearly constitute the most crucial evidence in this case, and should have been carefully examined as the basis for any claims and causes of action.  I offered to ship these cartridges to my attorneys for inspection and admission into evidence, however, there was no follow-up and the cartridges were never requested.  I am disappointed that my attorneys did not even bother to study the evidence I collected and preserved at some expense, as the local stores offered $10 credits for each cartridge turned in for recycling, which I had, therefore, never taken advantage of.

15.    **Misleading complaints filed in contradiction of statements provided to my attorneys**:  On December 31, 2010, Mr. Vlastone read to me the allegations as stated in the First Amended Complaint in *Young v HP*, filed in this court by my attorneys on my behalf.  I was shocked and dismayed to learn that these allegations did not match the testimony I provided to my

attorneys over the phone.  I had told them that I noticed that my cartridges were being consistently hard-stopped and new cartridges demanded by my HP 2600n printer, prior to delivering a substantial portion of their stated yields – i.e. I was getting far fewer pages than promised on the product packaging and in the owners manuals.  I had owned HP monochrome laser printers previously, and they had always delivered, or exceeded, their promised page yields, while the 2600n was shortchanging me, time after time.  I did not make any complaints, what so ever, about ample toner being left over in cartridges and blocked from use, as I had no way of observing it though the black plastic cartridges.  I did not have any specific theory about why the problem was occurring, nor did I ever express one to my attorneys.  I never made any statements or complaints about the blockage of available toner, but had always, and exclusively, complained about the non-delivery of stated yields.  In fact I had sent my attorneys an email message showing the HP advertised yields and my notes as to what had actually been delivered to me by the various cartridges.  I knew that the only promise HP made to me was to receive the stated yields, and I fully expected that my attorneys would have made claims based on HP's failure to deliver these yields as advertised.

16.    My attorneys never engaged me in the process of developing the complaint and had not asked for my input or approval before it was filed, nor did they inform me that it was in fact my duty to actively engage and participate in this work, but instead they only asked me to send or fax back signed documents.  Having read the complaint, I now see that it misrepresents my allegations, and that I had been manipulated into trusting my attorneys to do their job competently and honestly.

17.    **Misrepresentations regarding the Stipulated Settlement**:  My attorneys had never informed me that my case was dismissed by summary judgment due to their failure to allege viable legal theories.  Instead, I was told that they had won a settlement benefitting the injured consumers, that I might receive $1,000, and that consumers would get their problem solved and get a discount on the next set of cartridges.  I was never told that in fact HP had won, that HP would not be

obligated to fix anything, and that the e-credits offered by HP are in fact worthless because anyone could save $3 more by simply trading in used cartridges at the local stores.  Neither was I told by my attorneys about the *Sutherland v HP* case, an ongoing and viable litigation, accusing HP of yield fraud at the time when *Young v HP* was dismissed;  or the scientific yield study conducted by the Integrity Capitalism Network that empirically proves the HP fraud.  I was not told, and had no idea, that my signature on the sham settlement would allow HP to continue defrauding consumers, businesses and government agencies that use color LaserJets, by automatically extinguishing the *Sutherland v HP* litigation that alleges and provides empirical proofs of HP yield fraud and HP's own admissions of failing to deliver stated yields.  Furthermore, I did not know that my attorneys are fully informed about every detail of the ongoing fraud and that they still believe that HP is guilty of this fraud, yet they are willing to settle in order to collect $2.75 million for allowing HP to permanently escape responsibility, and they also agree to never disclose the truth to anyone, while knowingly exposing the class to purchasing more fraudulent products and losing more money as a result.

### III.   REQUEST TO DISMISS CURRENT DESIGNATED COUNSEL

18.   **Request to dismiss Current Designated Class Counsel and allocate time and assistance to secure Alternate Designated Counsel for the Injured Class**:  Based on the information that I had uncovered in the past four days, as well as my recollections about my previous interactions and experiences with my attorneys, I must declare that as a lead plaintiff for the class of injured consumers who were defrauded by HP color laser printers, I have made a determination that my attorneys in fact:

   a)  did not conduct themselves professionally or ethically on behalf of the class throughout their work on *Young v HP* litigation;

   b)  had conspired to use me as a pawn of their own agendas, instead of educating and

enabling me to independently and actively perform most of my duties as a lead plaintiff, from the filing of the complaint through the settlement negotiations;

c) had betrayed the interests of the injured class in favor of own interests;

d) had jeopardized and damaged not only the ability to recover for damages, but had subjected the injured class of consumers to the very real danger of further losses through the use of settlement e-coupons;

e) are attempting to pocket $2.75MM cash for their failed litigation efforts, in exchange for releasing claims against HP, they know with certainty to be valid and provable, and for class benefits they fully know to be worthless and/or injurious to the class;

f) can not be trusted to represent the interests of the class moving forward, but would likely act to serve the interests of HP, because

g) they would be paid $2.75MM by HP, only if HP succeeds with its settlement ploy aimed at covering up the toner frauds, dismissing other viable and valuable cases and using the settlement terms to silence the plaintiffs, including myself, thus preventing those of us most knowledgeable about the alleged fraud from exposing it and educating the public via the internet video, blogs and emails.

19.     Based on the above findings, I also declare my determination that the interests of the injured class of plaintiffs would be best served by immediately dismissing my attorneys, including all of the current designated counsel listed in paragraph 6 above, from further representation of the relevant injured classes in this case.

20.     At the present time, due to these "last-minute" revelations and pending a tight deadline, as well as my being located in Pennsylvania and having very limited resources, I have only been able to secure limited representation counsel for the purpose of completing this declaration and objection, reviewed on my behalf by a California attorney, Reece Halpern, who has not agreed to represent me or the class at the pending fairness hearing.  I am presently seeking to

secure appropriate full representation for myself and the injured class, as required to best protect its interests, and I request this court to allocate time and assistance in accomplishing this goal.

21.     Meanwhile, based on all the information known to me at this time about the *Young v HP* litigation history and its pending appeal, it appears to be hopeless due to the past conduct and a failed litigation strategy undertaken by my attorneys, without my knowledge or understanding, as well as the dismissal rulings of multiple other courts in related cases.  Therefore, having also learned about the viable *Sutherland v HP* litigation and the results of the scientific HP Yield Study conducted for that case (that empirically proves HP yield fraud), I declare my conclusion that attorney Timothy P. Rumberger appears best positioned to protect the interests of the class of injured consumers by diligently prosecuting the *Sutherland v HP* case, even though Mr. Rumberger had declined my request for representation due to a potential conflict of interest.  Importantly, *Sutherland v HP* complaint states causes of action based on HP's proven and admitted ***failure to deliver stated yields*** – exactly the allegations of fraud that I had originally made to my attorneys, but they had failed to accurately and competently present in this court.  I am willing and able to act as one of the witnesses and/or plaintiffs in *Sutherland v HP*, and consider it to be the best available vehicle for fully alerting, educating, recovering for and protecting the defrauded consumers.

### IV.     OBJECTION TO STIPULATED SETTLEMENT

22.     **Rescinding a signature obtained by fraud and misrepresentation**:  I hereby declare that effective immediately I rescind my signature recorded on the stipulated settlement agreement of August 25, 2010 for reasons that my consent to settlement and my signature were obtained through misrepresentation and manipulation, as amply described above.

23.     **Objection to settlement:** I further declare my vehement objection to the stipulated settlement in its entirety, as further stated below.  Although I am quite late in learning about the

pervasive corruption of this class action litigation process, I will not sell out the injured consumers for $1,000, or any other price.


### V.    NOTICE OF INTENT TO APPEAR AND TESTIFY AT HEARING

24.    These objections also serve as notice that lead plaintiff and settlement objector *James C. Young* intends to appear, in person, or via electronic video conferencing, or through his counsel (to be designated at a later date), at the January 31, 2011 fairness hearing on behalf of himself and the injured class and he reserves the right to cross-examine any witnesses presented in support of the settlement.


### VI.    SUMMARY OF ARGUMENTS IN SUPPORT OF OBJECTION

25.    Not having full representation of counsel required to develop and state a comprehensive objection to stipulated settlement, I rely on the wisdom of this court to reflect on the truthful testimony in my declarations stated above under the penalty of perjury, in order to prevent the miscarriage of justice and the corruption and misuse of the class action litigation process.

26.    In addition to relying on my own declarations stated above, I have learned about the intent and the substance of the Objection to Proposed Settlement filed in this case by Theodore H. Frank of the Center for Class Action Fairness, attorney for objectors Theodore H. Frank; as well as the Objection to Proposed Settlement filed in this case by Timothy Rumberger, attorney for objectors Martha Sutherland, and numerous others; as well as the Objection to Proposed Settlement filed in this case by Michael Vlastone of the Integrity Capitalism Network, representing himself, and I would like to join their objections as well.

27.    Finally, in addition to summarizing my own declarations, I would like to highlight a number of key facts that might be well known to this court already:

**DECLARATION & OBJECTION OF JAMES C. YOUNG,** Case No. CV 07-0667 AG (RNBx)

a) Designated counsel did not properly educate or enable me in my role as lead plaintiff for the injured class of consumers, thus conducting litigation and negotiations substantially without any oversight by an active and able lead plaintiff;

b) Designated counsel disregarded and misrepresented to this court my own statements regarding the facts and allegations of the case and either ignored or failed to study and disclose to this court ample evidence I had secured and made readily available;

c) Designated counsel pursued this litigation based on their own selfish agendas rather than stating a legal theory based on the true facts and the real evidence in this case;

d) Designated counsel had subsequently lost this case to summary judgment as a result of repeatedly failing to modify their case strategy to fully and honestly state the allegations based on my actual complaints of undelivered yields, despite the earlier dismissal of the *Baggett v HP* case, lost by the very same counsel in this same court;

e) Designated counsel failed to fully advise me of their final loss, and had proceeded with settlement negotiations under a cloud of their total failure to make legally sound claims, all dismissed by this court in favor of the defendant, effectively rendering these presently consolidated cases powerless in negotiation and utterly worthless;

f) The terms of stipulated settlement are unjust, insufficient, unreasonable and entirely worthless to myself or any typical consumer, because we can achieve greater savings than by using $7 HP e-coupons requiring a waste of much valuable time, by simply purchasing HP replacement cartridges on sale from the web-based retailers, or better yet switching to any number of honest brands of laser printers that can be purchased for less than a full set of HP replacement cartridges from the HP website;

g) The terms of the stipulated settlement are actually likely to cause substantial additional losses through purchases of replacement cartridges from HP that fail to deliver stated yields, rather than recover value previously lost by the members of the class, because settlement terms do not require HP to either fix the problem or to stop selling fraudulent replacement supplies that fail to deliver stated yields;

h) The settlement terms prevent a computer consultant like myself from educating

consumers, including my own clients, about the ongoing HP yield fraud;

i)  A viable *Sutherland v. HP* case is being litigated to address the same HP yield fraud, based on alternative legal theories and claims (i.e. proven failure to deliver advertised yields), which this and other courts have already indicated in their rulings and opinions as preferable to those dismissed in both the *Baggett* and *Young* cases;

j)  Both my designated counsel and HP failed to disclose, and deliberately concealed the *Sutherland v HP* case from this court and from myself, thus leading me to unknowingly sign off on an inadequate settlement, which creates a very strong appearance of collusion and betrayal of the interests of the class by its attorneys;

k)  This settlement releases claims entirely beyond the scope of the original lawsuits, and in doing so it extinguishes the apparently viable and highly valuable claims of *Sutherland v. HP* litigation, which would benefit me more, even if I am not a California resident, because while the $7 e-credits are entirely worthless, I could at least improve my reputation as a consultant by educating my clients and all other consumers about ways to avoid being defrauded by HP on the ongoing basis;

l)  Finally, I have just learned that *Sutherland v HP* is supported by a scientific yield delivery study, endorsed by a world-renowned Stanford University professor Dr. Phil Zimbardo, that provides empirical proof of the alleged HP yield frauds.  *Sutherland* yield fraud claims also appear to be validated by HP's own testimony in this court, as well as HP's published and stated admissions already placed into evidence.  While I am not an attorney, even from the layman's perspective, *Sutherland v. HP* litigation appears to be based on sound legal theories and strategies that will likely achieve both a substantially greater recovery for the injured consumers and, most importantly, might obtain comprehensive injunctive relief to end the yield fraud, which will otherwise be allowed to continue injuring consumers indefinitely;

m)  If *Sutherland v HP* case were to prevail, *Young v HP* designated counsel would receive no compensation for their entirely failed litigation efforts, while HP might have to pay out very substantial damages and, at the very least, HP's misconduct will

be fully exposed to the public by the hearings related to the scientific yield study.

Therefore, there are very good reasons to believe that, and there is a very strong

appearance of, designated counsel and HP in fact colluding to extinguish *Sutherland*

*v HP* litigation in order to maximize each other's economic outcomes, while

completely and totally sacrificing the interests of the injured consumers.

28.     I urge this court to protect consumers from this travesty, in which I had been

manipulated into becoming an ignorant accomplice, and not reward the failed attorneys for their

reckless disregard of fiduciary responsibilities as well as numerous and grievous breaches of

professional ethics.  Based on the facts revealed and arguments made in this brief, final approval to

the stipulated settlement should be denied entirely, and I hope that investigations will be undertaken

by appropriate authorities to expose those individuals who colluded and attempted to pull off this

double injustice against American individual consumers, businesses and offices of government.


Respectfully submitted,

DATED:  January 4, 2011


BY: _James C. Young_____
James C. Young
Lead Plaintiff for the injured classes of consumers
in *Young v HP*

# JAMES C. YOUNG

83 North 64th Street,  Harrisburg, Pennsylvania 17111

Telephone:  (717) 561-9742   Facsimile:  (717) 561-9742
E-mail: chris1217young@verizon.net

TO:

January 4, 2011

Counsel for Class
Richard L. Kellner
KABATECK BROWN KELLNER, LLP
644 S. Figueroa Street
Los Angeles, CA 90017
E-mail:  rlk@kbklawyers.com

Mr. Kellner,

Based on the information I discovered over the past few days, and based on my own experiences over the past two years that only now fall into context, I am shocked, dismayed and deeply disappointed with the manner in which the *Young v. HP* class action litigation was carried out and how the injured class of consumers was mislead and ill served by your representation.

I am hereby giving you notice that effective immediately, I am dismissing yourself and all the other members of the current designated counsel for the class from representing myself in the *Young v. HP* class action litigation and the *HP LaserJet Litigation*, consolidated for purposes of settlement, for reasons that you will find spelled out in detail in the declarations supporting my objection to settlement that will be served on you later today.  I am rescinding my signature from the settlement agreement effective immediately, and I will also be making a request that the court dismiss and replace the entire current designated class counsel for the same reasons.

I expect that you and the rest of the designated counsel team might experience strong emotions with regards to your dismissal and my vehement objection to the stipulated settlement. Therefore, I request that yourself and all the members of the current designated counsel team abstain from contacting, pressuring or threatening me in any manner or by any means.

I have presently secured only limited representation counsel and am in the process of securing full representation in all related matters, and my new counsel will contact you as soon as one is available.

James C. Young
Lead Plaintiff for the injured classes of consumers
in *Young v HP*

1

2

**PROOF OF SERVICE**

3

I declare that:

4

I reside and work in the state of Pennsylvania.  I am over the age of 18 years and my office address is  83 North 64th Street, Harrisburg, Pennsylvania 17111,

5

and my email address is:  chris1217young@verizon.net.

6

On January 4, 2010, I served the attached:  OBJECTION TO PROPOSED SETTLEMENT

7

 X   By electronic mail in that I e-mailed a PDF of this brief to the following parties, bolded below.

8

 X   By First-Class Registered Mail in that I caused such envelope(s) to be delivered via First-Class Mail to the addressee(s) bolded below, by first forwarding the PDF of this brief via e-mail to Michael Vlastone, who contracted to print and mail said documents.

9

10

11

| Settlement Administrator<br>In re: HP LaserJet Printer Litigation<br>Settlement Administrator<br>P.O. Box 5270<br>Portland, OR 97208-5270<br>Facsimile: (877) 341-4607<br>**Email:info@HPLaserJetPrinterSettlement.com** | Counsel for Class<br>Richard L. Kellner<br>KABATECK BROWN<br>KELLNER, LLP<br>644 S. Figueroa Street<br>Los Angeles, CA 90017<br>**E-mail:rlk@kbklawyers.com** |
| --- | --- |
| Counsel for HP<br>Kristofor T. Henning<br>Franco A. Corrado<br>MORGAN LEWIS & BOCKIUS, LLP<br>1701 Market Street<br>Philadelphia, PA 19103<br>**E-mail:Khenning@morganlewis.com**<br>**Fcorrado@morganlewis.com** | **Clerk of Court U.S. District Court,**<br>**Central District of California**<br>**411 West Fourth Street, Room 1053**<br>**Santa Ana, CA 92701-4516** |

12

13

14

15

16

17

18

19

20

21

I declare under penalty of perjury that the foregoing is true and correct.

22

Executed on January 4, 2011

23

24

25

BY: _James C. Young_

26

James C. Young

Lead Plaintiff for the injured classes of consumers

27

in *Young v HP*

28

**DECLARATION & OBJECTION OF JAMES C. YOUNG,** Case No. CV 07-0667 AG (RNBx)

14