1  KABATECK BROWN KELLNER LLP
   BRIAN S. KABATECK, SBN 152054
2  (bsk@kbklawyers.com)
   RICHARD L. KELLNER, SBN 1714146
3  (rlk@kbklawyers.com)
   644 South Figueroa Street
   Los Angeles, CA 90017
4  Tel: (213) 217-5000
   Fax: (213) 217-5010
5
   CHITWOOD HARLEY HARNES LLP
6  GREGORY E. KELLER (admitted *Pro Hac Vice*)
   (gkeller@chitwoodlaw.com)
7  DARREN T. KAPLAN (admitted *Pro Hac Vice*)
   (dtkaplan@chitwoodlaw.com)
8  2300 Promenade II
   1230 Peachtree Street, N.E.
9  Atlanta, GA 30309
   Tel: (404) 873-3900
10 Fax: (404) 876-4476

11 Attorneys for Plaintiffs and
   the Preliminarily Certified Class
12

13

14                 **UNITED STATES DISTRICT COURT**

15                 **CENTRAL DISTRICT OF CALIFORNIA**

16
   In re: HP LASER PRINTER          **CASE NO. SA CV 07-0667**
17 LITIGATION
                                    HON. ANDREW J. GUILFORD
18

19                                  **PLAINTIFF AND CLASS**
                                    **REPRESENTATIVE KELSEA**
20                                  **BAGGETT'S REPORT ON**
                                    **INVESTIGATION ON OBJECTOR**
21                                  **MICHAEL A. VLASTONE**

22

23                                  <u>Hearing</u>
                                    Date: February 14, 2011
24                                  Time: 10:00 a.m.
                                    Courtroom: 10D
25

26

27

28

                                  – 1 –
   **PLAINTIFF AND CLASS REPRESENTATIVE KELSEA BAGGETT'S REPORT ON INVESTIGATION ON**
                 **OBJECTOR MICHAEL A. VLASTONE (CASE NO. CV-07-0667 AG)**

## I.      Introduction

This report shall set forth the results of class counsel's investigation, including the deposition that class counsel took of Michael Vlastone on January 25, 2011 pursuant to this Court's order.

Class counsel has been able to determine the following:

- Vlastone is the architect of the *Martha Sutherland v. Hewlett-Packard* action.
- Vlastone lacks funding and has been evicted from business and personal residences, but expects that the continued prosecution the *Sutherland* action will result in a six-figure *cy pres* payment to him.
- Vlastone misrepresented to Mr. Young the status and strength of the *Sutherland* action.
- Vlastone admits that in his testing of HP Printers, the printers successfully meet the yield representations for 5% color coverage.
- Vlastone's representation that the *Sutherland* action is a "strong, viable class action case, based on the scientific proof" is false.
- Vlastone's statements to the Court concerning Mr. Baggett's condition are false.
- Vlastone, himself, prepared the Young declaration.
- Vlastone's representation that he has established a "working relationship" with the California Attorney General's office is false.
- Vlastone misrepresents that he is "founder and director of the Integrity Capitalism Network (ICN), an organization dedicated to developing systematic solutions to ending fraud" when in fact ICN does not exist and is not an entity at all.
- In September 2008, Vlastone asked class counsel to purchase a building so that his company, iShine Foundation, could be a tenant.
- iShine Foundation is not a 501(c)(3) charity.

PLAINTIFF AND CLASS REPRESENTATIVE KELSEA BAGGETT'S REPORT ON INVESTIGATION ON
OBJECTOR MICHAEL A. VLASTONE (CASE NO. CV-07-0667 AG)

1  • One month later, Vlastone and the iShine Foundation were evicted from the
2     building where they were leasing space.

3  **II.   Statement of Facts**

4       Class counsel has deposed Michael Vlastone in order to investigate the truth
5  behind each of the allegations made in his declaration.  On January 25, 2011, class
6  counsel, along with counsel for defendant Hewlett-Packard, conducted the deposition of
7  Michael Vlastone, pursuant to this Court's Order.  A copy of the transcript of the
8  deposition is attached hereto as Exhibit A.

9  ***A.    Vlastone is the architect of the Sutherland Action and hopes to receive***
10        ***a six-figure cy pres award from that case***

11      At his deposition, Vlastone left no doubt that he is the architect behind, and
12  primary mover of, the *Sutherland v. HP* action.

13  • Vlastone's investigation of HP printers led to the filing of the *Sutherland*
14     action.  [Vlastone Depo., 124:5-7.]

15  • Martha Sutherland, the lead plaintiff in the *Sutherland* action, is a client of
16     Vlastone's and his company, iShine Foundation.  [Vlastone Depo., 97:3-4;
17     *See* http://ishine.com/foundation/images/Experts.pdf (Exhibit B).]

18  • Vlastone has been in sole possession of Sutherland's printer since December
19     2009. [Vlastone Depo, 102:15-21.]

20  • Vlastone located Dan Berko, who was the attorney who initiated the
21     *Sutherland* action.  [*Id.* at 122:15-20.]

22  • Vlastone provided information to prepare the complaints in *Sutherland* and
23     even prepared some sections of the complaints himself. [Vlastone Depo.,
24     136:17-21.]

25      Significantly, Vlastone acknowledged at his deposition that his involvement in the
26  *Sutherland* case was not entirely altruistic – he perceived that the litigation would provide
27  him with a financial lifeline.

28

– 3 –

1    • Vlastone is expecting to receive a six-figure cy pres award for his work in

2       the *Sutherland* matter:

3       Q.       When you talk about cy pres money and the potentiality

4       that you may recover some cy pres money – you are not a

5       nonprofit – were you just expecting that you might get kind of a

6       grant from the court for your efforts?

7       A.       My expectation was that the Integrity Capitalism

8       Network would be properly registered as a nonprofit a long

9       time.  Unfortunately, the 2008 collapse, all the funding that I

10      was promised by a multitude of parties, none of it materialized.

11      I've been completely drained financially by the work that I've

12      been doing over the last two years…

13      […]

14      Q.       What amount of cy pres award were you thinking of?

15      A.       I have no idea.

16      Q.       Surely you have some idea.  Have you contemplated at

17      all?

18      A.       I have done some research about this, yes.

19      Q.       And? What's the amount?

20      A.       It varies dramatically.

21      Q.       Not the research.  I'm talking about you, yourself.  What

22      are you formulating in your mind?

23      A.       I was hoping that I would be compensated for the costs

24      that I have actually incurred in conducting the research and

25      then, you know, a reasonable hourly rate to be determined by

26      the court based on what I contributed.  My hourly rate as a

27      consultant is $150 an hour.

28      Q.       How many hours have you put into this so far?

– 4 –

**PLAINTIFF AND CLASS REPRESENTATIVE KELSEA BAGGETT'S REPORT ON INVESTIGATION ON
OBJECTOR MICHAEL A. VLASTONE (CASE NO. CV-07-0667 AG)**

1    A.    Thousands.

2    Q.    So potentially you could be looking at an award in the

3    neighborhood of a million dollars?

4    A.    I'm not sure that the amount would support that.

5    Q.    Well, thousands.  It could be 1,000, 2,000, 3,000,

6    10,000?

7    A.    I would just say that it's definitely in the six figures.  You

8    know, if I had been working on just conducting my normal

9    work, the amount of money that I had foregone by focusing on

10    this work is in the six figures for sure.

11    Q.    And it's true, sir, that your six-figure or multiple six-

12    figure cy pres award will all go away if the Baggett and the

13    Young case is approved?

14    A.    That is correct.

15    [Vlastone Depo., 154:20-155:6; 156:9-157:16.]

16    • Vlastone also admitted that he and his organization would be the ones to

17       contact the HP board of directors during the pendency of the litigation to

18       convince them that public disclosure of the "facts" he uncovered would be

19       bad for their business, and that they should settle the case with the attorneys.

20       [Vlastone Depo., 77:12 – 78:1.]

21    • In the past ten years, Vlastone has been evicted from business office space

22       and residences, and has failed to pay rent with respect to the business office

23       space.  [Vlastone Depo., 98:17 – 100:21.]

24    **B.    *Vlastone misrepresented the status and strength of the Sutherland***

25    ***action***

26    Vlastone's representation in his declaration and elsewhere that: "the Sutherland case

27    is very likely to prevail and to achieve a substantial recovery for consumers, estimated at

28

1    orders of magnitude greater than the Baggett and Young stipulated settlement…" is

2    false.

3         •   Vlastone failed to inform this Court that more than two years after the filing

4            of the Sutherland complaint, the case is still in the initial pleading stage.

5            [Vlastone Depo., 42:18-21.]

6         •   Vlastone is not a lawyer.  [Vlastone Depo. 92:11-12.]

7         •   Vlastone offered the *Sutherland* action to attorney Tom Girardi, who

8            declined the case.  [Vlastone Depo. 32:3-10.]

9         •   Vlastone offered the *Sutherland* action to Lieff Cabraser Heimann &

10            Bernstein, LLP, and the firm declined the case even after Vlastone explained

11            his research and legal theories and expressed his belief that the *Baggett*

12            litigation would fail.  [Vlastone Depo. 32:11-34:9.]

13         •   Instead, Lieff Cabraser joined with the Kabateck and Chitwood firms in

14            bringing the *Young* action--a development which came as a complete

15            surprise to Vlastone.  [Vlastone Depo. 34:10-12.]

16    **C.**     ***Vlastone failed to advise the Court that he conducted tests and found that***

17            ***the HP printers pass the ISO 5 percent coverage yield tests***

18         •   Vlastone admitted that HP's printer pass the 5% yield test, which this Court

19            found to be the problem in the *Baggett* and *Young* actions, ruling: "Plaintiff

20            was never assured that he would have the use of any toner beyond that

21            required to print 2,000 color pages.  HP did not commit an unfair business

22            practice by providing Plaintiff with exactly what he bargained for: a toner

23            cartridge that would print 2,000 color pages." (Order Granting Defendant's

24            Motion for Summary Judgment, Docket No. 194.). Vlastone admitted:

25         Q.    Is it accurate that the study you performed concluded that HP's

26    printers do pass the ISO 5 percent coverage yield test?

27         A.    That is absolutely correct.

28    [Vlastone Depo., 138:24-139:2.]

**D.      *Vlastone improperly contacted class counsel's clients with the intention of convincing them to withdraw their support of the settlement***

Vlastone secretly and improperly sought out the two class representatives in an attempt to convince them to withdraw their support of the settlement and instead, support the *Sutherland* action:

- Despite the active dialogue between Vlastone and class counsel, Vlastone did not tell class counsel that he intended to contact Mr. Young and Mr. Baggett. [Vlastone Depo., 54:15-17.]
- Vlastone wanted to have a private conversation with the class representatives in order to share his personal agenda and his *Sutherland* theory without being influenced by class counsel. [*Id.* at 54:18-22.]

Moreover, Vlastone's statements regarding Mr. Baggett's condition and ability to act as class representative are all false:

- Mr. Baggett did not suffer any heart attacks in 2010. [Baggett Decl., ¶ 4.]  In fact, Mr. Baggett has not suffered any heard attacks for the past 18 years. [*Id.*]
- While Mr. Baggett uses an implanted cardioverter defibrillator, he is not "attached to medical devices keeping him alive."  [Baggett Decl., ¶ 5.]
- Mr. Baggett did not say that he does not expect to live very much longer. [Baggett Decl., ¶ 6.]
- Mr. Baggett did not express to Mr. Vlasstone that he would not be able to execute his role as lead plaintiff in this case. [Baggett Decl., ¶ 7.]
- Mr. Baggett is willing and fully able to continue acting as class representative in this class action.  [Baggett Decl., ¶ 7.]
- Mr. Baggett fully and completely supports the settlement. [Baggett Decl., ¶ 8.]

**E.      *Vlastone's prepared James Young's objection***

PLAINTIFF AND CLASS REPRESENTATIVE KELSEA BAGGETT'S REPORT ON INVESTIGATION ON OBJECTOR MICHAEL A. VLASTONE (CASE NO. CV-07-0667 AG)

1    Vlastone single-handedly prepared the objection by James Young, and the
2    declaration that Vlastone drafted for Young contains many false and incorrect statements.

3    • Vlastone did not inform the Court that he actually prepared Mr. Young's
4      declaration and objection. [Vlastone Depo., 47:21-48:4.]

5    • When asked why he did not tell the Court that he prepared the declaration
6      for Mr. Young, Vlastone explains that he informed the Court in "a longer
7      letter that [he] wrote to the court."[1]  Vlastone further explained:

8      Q.    Okay.  Did you send privately a letter to the judge that

9      wasn't copied to the other parties disclosing the fact that you

10     were preparing Mr. Young's declaration for him? Yes or no?

11     A.    Not privately to the judge.  It was addressed to the Clerk

12     of the court.

13     Q.    Where is it?  Do you have it with you today?

14     A.    I do not have it with me today.  I figured that you guys

15     would have gotten it because I anticipated that would get posted

16     in the electronic record, and it would accessible.

17     Q.    So there is a letter out there that you sent to the clerk of

18     the court that clearly and unequivocally indicates that you

19     prepared Mr. Young's declaration for him?

20     A.    I believe so.  Without having it in front of me – I would

21     really like to have it in front of me.

22   [Vlastone Depo., 49:8-24.]

23   • Vlastone's drafting of the Young declaration is further evidenced by the fact
24     that he apparently used the Young declaration he drafted as a template for
25     his own declaration, because the footer on his declaration was initially stated

26

27   _____

[1]  Class counsel has not seen a copy of this letter allegedly sent to the Clerk of the
28   Court.

PLAINTIFF AND CLASS REPRESENTATIVE KELSEA BAGGETT'S REPORT ON INVESTIGATION ON
OBJECTOR MICHAEL A. VLASTONE (CASE NO. CV-07-0667 AG)

as "Declaration & Objection of James C. Young," and not that of Vlastone. [Vlastone Depo., Exhibit 4.]

- After realizing his mistake, Vlastone attempted to recall his previously submitted objection and submitted a "corrected PDF file" with his own name in the footer. [Vlastone Depo., Exhibit 5.]

- Vlastone confirmed that he drafted and prepared Mr. Young's objection:

    Q.    Okay.  At the very bottom of the next page, you see the footer there that says, "Declaration and Objection of James C. Young."  Now, this isn't the declaration of Mr. Young, is it?

    A.    That is correct.

    Q.    It's your declaration?

    A.    Yes.

    Q.    And you made that mistake because after you did and prepared Mr. Young's declaration, you prepared your own?

    A.    They were being prepared concurrently actually.  I neglected and used a wrong template file, and I notified the court of my mistake as soon as I became aware of it and sent correction to everybody.

    Q.    Well, in fact, large sections of your declaration are not just merely close to Mr. Young's, they are identical, correct?

    A.    That is correct.

    Q.    So you drafted both, then cut and pasted, and made your modifications?

    A.    That is correct.

[Vlastone Depo., 39:7-40:2.]

- Vlastone concedes that the objection of Mr. Young is "improper" and "measures need to be taken to verify it":

**PLAINTIFF AND CLASS REPRESENTATIVE KELSEA BAGGETT'S REPORT ON INVESTIGATION ON OBJECTOR MICHAEL A. VLASTONE (CASE NO. CV-07-0667 AG)**

1    Q.    The only person who has verified the authenticity of the
2    Young declaration and the Young letter is you?
3    A.    Yes.  Well to the extent of my knowledge.  I don't know.
4    Maybe others have verified it to my satisfaction.
5    Q.    Well, do you know of anybody else?  A name of another
6    person?
7    A.    No, I do not.
8    Q.    And you also know, because you wrote it, of a letter that
9    Mr. Young allegedly sent to his lawyers saying, "Don't talk to
10   me," right?
11   A.    Yes.
12   Q.    Okay.  So how does anyone know of the authenticity of
13   the Young declaration and the Young letter? Anyone?
14   A.    I see the problem that you are posing.
15   Q.    So you agree with me?
16   A.    I now agree with you that you would have potentially a
17   reasonable allegation that there is something improper about
18   that declaration that clearly measures need to be taken at this
19   point to verify it.
20   [Vlastone Depo., 94:4-95:13.]
21   • Vlastone admits that the heading and concept of "Statement of Integrity" is
22   one of his own creation. [Vlastone Depo., 8:3-5.]
23   **F.    *Vlastone's purported "non-profit" entities are not actual entities***
24   Vlastone repeatedly references his various entities, including the "Integrity
25   Capitalism Network" and "iShine Foundation," despite the fact that none of these entities
26   are actual business entities.
27   • Vlastone admits that Integrity Capitalism Network is his own made-up entity
28   and is not recognized as a business in the State of California at all:

– 10 –

1    Q.    Who is the Integrity Capitalism Network?

2    A.    Integrity Capitalism Network is myself.  It is Professor

3    Zimbardo.  It is Martin Hammill.  These would be the three

4    active individuals.  Then I seek advice and, you know, counsel

5    from anybody who is willing to help us with our cause.

6    Q.    You are not a 501(c)(3)?

7    A.    No.

8    Q.    You are not a legal entity of any kind?

9    A.    Not yet.

10   Q.    Why haven't you become a legal entity?

11   A.    Because I have not been able to raise funding that would

12   cover the management of this organization as a legal entity,

13   which would involved accounting, compliance, et cetera.  As

14   soon as we can raise money, there will be reason to become an

15   entity.  It will also enable me to pay for the expenses of

16   managing the entity.

17   Q.    You know, forgive me, but it doesn't seem like it exists.

18   It's just a name.  It's not even a dba, is it? A fictitious business

19   name?

20   A.    That is correct, but it hasn't received checks from

21   anybody that would need to be used that way.

22   […]

23   Q.    At the very bottom, the last full paragraph, you write

24   about "the long-term goal of Integrity Capitalism Network."

25   Then in the next paragraph, you talk about like you need an

26   outside organization.  So presumably you are referring to the

27   class lawyers in this case. "Why you need an outside

28   organization working on many simultaneous cases to enable

– 11 –

weekly episodic content in video and print that coordinates its
activities with the litigation process, allowing attorneys to do
what they do best in courtrooms while they allow the IC brand
and its media celebrities to entertain and engage the public
using the formula we call irresistible fun, impossible
challenges, noble causes."  Then you actually put the TM mark
there, trademark.

    A.    M-hm.

    Q.    So have you trademarked that slogan?

    A.    No.

[Vlastone Depo., 81:7-24.]

- On its website, Vlastone states: "The iShine Foundation is a non-profit think-and-do tank established in 2007 by Michael Vlastone." [*See* http://ishine.com/foundation/images/About_iShine_Foundation.pdf (Exhibit C).]

- Vlastone appeared at a meeting with class counsel with marketing materials for a particular building he wanted class counsel to purchase so that iShine Foundation could become one of the tenants in the building. [Vlastone Depo., 26:17-27:11.]

- One month following Vlastone's request for class counsel to purchase a building for iShine Foundation, in October 2008, Vlastone and iShine Foundation were evicted from the building where the so-called Foundation was leasing space. [Vlastone Depo., 100:18-21.]

- A public record search reveals that iShine Foundation is not a 503(c)(3) charity.

**G.**    ***Vlastone's representation that a "world-renowned" Stanford University professor conducted tests that corroborates his theory is entirely***

PLAINTIFF AND CLASS REPRESENTATIVE KELSEA BAGGETT'S REPORT ON INVESTIGATION ON
OBJECTOR MICHAEL A. VLASTONE (CASE NO. CV-07-0667 AG)

1   ***deceptive; the Stanford professor is Phil Zimbardo, a professor of***
2   ***psychology who has no background in printer technology***

3   Vlastone claims that the Sutherland action is supported by a "world-renowned
4   Stanford University professor Dr. Phil Zimbardo." This is a very deceptive statement
5   because, in reality, Dr. Zimbardo is a professor of social psychology and has no
6   background whatsoever in printer technology.

7   • Vlastone purposely omits the fact that "world-renowned Stanford University
8   professor," Dr. Zimbardo, is actually a professor of **psychology**. [*See*
9   http://www.zimbardo.com/zimbardo.html (Exhibit D).]

10   • Dr. Zimbardo has no background in printer technology:
11   Q.     And you told [Mr. Young] that Dr. Zimbardo had no
12   formal training in the science related to printers or laser
13   printers? [...]
14   A.     Okay. Mr. Zimbardo is trained in the scientific method
15   and in the conduct of experiments regardless of what field they
16   apply to. It's a general skill that you acquire by becoming a
17   scientist. He certainly does not have specialization in
18   mechanical engineering.
19   Q.     Well, he doesn't have specialization in any of the
20   sciences that relate to the printers that are the subject of this
21   litigation, does he?
22   [...]
23   A.     Oh, yes, he does.
24   Q.     What's that?
25   A.     It's how organizations become corrupted such that
26   engineers or lawyers or managers begin to engage themselves
27   in developing technologies and marketing materials that are
28   deceptive.

– 13 –

Q.     But that's not the science of the printer.  Let's make it very simple for you, Mr. Vlastone.  […]  This Dr. Zimbardo, he doesn't have any special training in the way of the printer operates, right?

A.     No, he does not.

[Vlastone Depo., 21:22-23:6.]

- According to the iShine Foundation's website, "Dr. Zimbardo has a keen understanding of the popular culture, having recently consulted on a TV soap-opera project in Italy to help fight the corrupting influence of the Sicilian Mafia." [*See* http://ishine.com/foundation/images/Experts.pdf (Exhibit B).]
- Dr. Zimbardo's credentials also include appearing "at a broad range of venues from C-SPAN2, to the Colbert Report and John Stewart's Daily Show." (*Id.*)

### H.     *Vlastone's statements regarding the Attorney General are false and exaggerated*

Vlastone's represented to the Court that the Attorney General is working with ICN in the investigation of the Sutherland case.  This is, again, a false statement.

- On January 21, 2011, Deputy Attorney General, Sheldon Jaffe, writing on behalf of Attorney General Kamala Harris, sent this Court correspondence which made clear that the Attorney General's office has not taken any position regarding this action or the proposed settlement. [Vlastone Depo., Exhibit 6.] That letter also expressly denies that the AG's office does not have a "working relationship" with Vlastone.  [*Id.*]

## III.   CONCLUSION

The proof adduced further demonstrates that Vlastone has no credibility, has directly attempted to mislead and deceive the Court, has an undisclosed financial interest

– 14 –

in the continuation of the Sutherland case, and has manipulated James Young and drafted
a declaration that contains many false statements.


Dated:  February 7, 2011                    KABATECK BROWN KELLNER, LLP


                                            By: _____/s/_____
                                                    Brian S. Kabateck

                                            CHITWOOD HARLEY HARNES LLP
                                            Darren T. Kaplan

                                            *Attorneys for Plaintiffs the*
                                            *Preliminarily Certified Class*

**PLAINTIFF AND CLASS REPRESENTATIVE KELSEA BAGGETT'S REPORT ON INVESTIGATION ON
OBJECTOR MICHAEL A. VLASTONE (CASE NO. CV-07-0667 AG)**