KABATECK BROWN KELLNER LLP
BRIAN S. KABATECK, SBN 152054
(bsk@kbklawyers.com)
RICHARD L. KELLNER, SBN 1714146
(rlk@kbklawyers.com)
644 South Figueroa Street
Los Angeles, CA 90017
Tel: (213) 217-5000
Fax: (213) 217-5010

CHITWOOD HARLEY HARNES LLP
GREGORY E. KELLER (admitted *Pro Hac Vice*)
(gkeller@chitwoodlaw.com)
DARREN T. KAPLAN (admitted *Pro Hac Vice*)
(dtkaplan@chitwoodlaw.com)
2300 Promenade II
1230 Peachtree Street, N.E.
Atlanta, GA 30309
Tel: (404) 873-3900
Fax: (404) 876-4476

Attorneys for Plaintiffs and
the Preliminarily Certified Class

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: HP LASER PRINTER LITIGATION | **CASE NO. SA CV 07-0667**<br><br>HON. ANDREW J. GUILFORD<br><br>**PLAINTIFF AND CLASS REPRESENTATIVE KELSEA BAGGETT'S STATEMENT OF RECENT DECISION – *IN RE INKJET PRINTER LITIGATION* ORDER GRANTING FINAL APPROVAL AND AWARDING FEES** |

– 1 –

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

Plaintiff Kelsea Baggett respectfully brings to this Court's attention the issuance of a decision by the United States District Court for the Northern District of California in *In re Inkjet Printer Litigation,* Case No. 5:05-cv-3580 JF, granting the class' motion for class certification and awarding a total of $2,096,990.70 in attorneys' fees and costs. Attached as Exhibit A is a true and correct copy of the opinion and judgment.

Class counsel notes that the grounds supporting the fee application in the *In re Inkjet Printer Litigation* case are different than those in this action. As the Court will recall, in this present case class counsel has continuously and consistently argued that the attorney fee award be based upon class counsel's lodestar, considered in the context of the substantial benefit conveyed by the injunctive relief and the changes in HP's business practices, and not the e-credits. Class counsel in the *In re Inkjet Printer Litigation* case unsuccessfully predicated their fee request upon the monetary value of the e-credits and the distinct injunctive relief sought in that matter.

Dated: March 31, 2011          KABATECK BROWN KELLNER, LLP

By: _____/s/_____
          Richard L. Kellner

CHITWOOD HARLEY HARNES LLP
Darren T. Kaplan

*Attorneys for Plaintiffs the*
*Preliminarily Certified Class*

**Exhibit A**

1   NIALL P. McCARTHY (SBN 160175)
    nmccarthy@cpmlegal.com
2   JUSTIN T. BERGER (SBN 250346)
    jberger@cpmlegal.com
3   COTCHETT, PITRE & McCARTHY
    San Francisco Airport Office Center
4   840 Malcolm Road, Suite 200
    Burlingame, California  94010
5   Telephone: (650) 697-6000
    Facsimile: (650) 692-3606
6
    [Other Counsel listed on signature page]
7   *Attorneys for Plaintiffs and the Class*

8   PETER SULLIVAN (SBN 101428)
    PSullivan@gibsondunn.com
9   SAMUEL G. LIVERSIDGE (SBN 180578)
    SLiversidge@gibsondunn.com
10  CHRISTOPHER CHORBA (SBN 216692)
    CChorba@gibsondunn.com
11  GIBSON, DUNN & CRUTCHER LLP
    333 South Grand Avenue
12  Los Angeles, California  90071
    Telephone: (213) 229-7000
13  Facsimile:  (213) 229-7520

14  Attorneys for Defendant,
    HEWLETT-PACKARD COMPANY
15

16              **UNITED STATES DISTRICT COURT**

17              **NORTHERN DISTRICT OF CALIFORNIA**

18                      **SAN JOSE DIVISION**

19
    **In Re: HP Inkjet Printer Litigation**          Master File No. C05-3580 JF
20
                                                      [PROPOSED] **ORDER GRANTING FINAL**
21                                                    **APPROVAL TO CLASS ACTION**
                                                      **SETTLEMENT; FINAL JUDGMENT**
22

23  This Document Relates To:
    All Actions
24

25

26

27

28

1    WHEREAS, by order dated October 1, 2010, this Court granted preliminary approval of the

2    proposed class action settlement between the parties and consolidated the following cases:  *In re:*

3    *HP Inkjet Printer Litigation*, Case No. C05-3580 JF; *Rich v. Hewlett-Packard Co.*, Case No. C06-

4    03361 JF; and *Blennis v. Hewlett-Packard Co.*, Case No. C07-00333 JF (collectively, the "Action").

5    WHEREAS, the Court also provisionally certified a nationwide Settlement Class for

6    settlement purposes only, approved the procedure for giving notice and forms of notice, and set a

7    final fairness hearing to take place on January 28, 2011.  On that date, the Court held a duly noticed

8    final fairness hearing to consider:  (1) whether the terms and conditions of the Stipulation of

9    Settlement are fair, reasonable and adequate; (2) whether a judgment should be entered dismissing

10   the named Plaintiffs' complaints on the merits and with prejudice in favor of Defendant Hewlett-

11   Packard Company ("HP") and against all persons or entities who are Settlement Class Members;

12   and (3) whether and in what amount to award attorney's fees and expenses to counsel for the

13   Settlement Class.

14   WHEREAS, the Court considered all matters submitted to it at the hearing and otherwise,

15   and it appears that notice substantially in the form approved by the Court was given in the manner

16   that the Court ordered.  Direct email notice was provided to 13,387,489 class members, with a

17   delivery rate of approximately 89%.  In addition, notices were published in USA WEEKEND,

18   PARADE, PEOPLE, and CIO MAGAZINE, and in banner advertisements on Yahoo.com and other

19   websites through 24/7 Real Media Network, and reached an estimated 74% of the class.

20   WHEREAS, the settlement class members have had a positive reaction to the settlement.

21   Despite the success of the notice program in reaching class members, very few individuals have

22   expressed displeasure with the settlement:

23   | | |
     |---|---|
     | Filed Objections | 3 |
24   | Non-filed comments/complaints | 458 |
25   | Opt-outs | 810 |

26   WHEREAS, the settlement was the result of extensive and intensive arm's-length

27   negotiations occurring over several years and multiple mediation sessions with several respected

28   mediators—the Honorable Daniel Weinstein of JAMS, the Honorable James L. Warren of JAMS,

1

[PROPOSED] ORDER GRANTING FINAL APPROVAL                    Master File No. C05-3580 JF
TO CLASS ACTION SETTLEMENT; FINAL JUDGMENT

1   and Alexander S. Polsky, Esq.—and Judge Warren has submitted a declaration explaining that the

2   settlement was negotiated by the parties at arm's length and in good faith.  Counsel for the parties

3   are highly experienced in this type of litigation, with full knowledge of the risks inherent in this

4   Action.  The extent of written discovery, depositions, document productions, and independent

5   investigations by counsel for the parties, and the factual record compiled, suffices to enable the

6   parties to make an informed decision as to the fairness and adequacy of the settlement.

7          WHEREAS, the Court has determined that the proposed settlement of the claims of the

8   Settlement Class Members against HP, as well as the release of HP and the Released Parties, the

9   significant relief provided to the Settlement Class Members—in the form of HP's agreement to

10   contribute up to $5,000,000 in e-credits to be distributed to Settlement Class Members, as well as its

11   agreement to discontinue the use of certain pop-up messaging and to make certain changes to the

12   disclosures on its website and the packaging, manuals and/or user interfaces for HP inkjet printers—

13   as described in the Stipulation of Settlement, and the award of attorney's fees and expenses

14   requested, are fair, reasonable and adequate.

15          NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

16          1.     The Stipulation of Settlement, including any attachments thereto, is expressly

17   incorporated by reference into this Final Order and Judgment and made a part hereof for all

18   purposes.  Except where otherwise noted, all capitalized terms used in this Final Order and

19   Judgment shall have the meanings set forth in the Stipulation of Settlement.

20          2.     The Court has personal jurisdiction over the Parties and all Settlement Class

21   Members, and has subject-matter jurisdiction over this Action, including, without limitation,

22   jurisdiction to approve the proposed settlement, to grant final certification of the Settlement Class,

23   to settle and release all claims arising out of the transactions alleged in Plaintiffs' complaints in the

24   Action, and to dismiss this Action on the merits and with prejudice.

25          3.     The Court finds, for settlement purposes only and conditioned upon the entry of this

26   Final Order and Judgment and upon the occurrence of the Effective Date, that the prerequisites for a

27   class action under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure have been satisfied

28   in that:  (a) the number of Settlement Class Members is so numerous that joinder of all members

2

thereof is impracticable; (b) there are questions of law and fact common to the Settlement Class;

(c) the claims of the Plaintiffs are typical of the claims of the Settlement Class they seek to represent

for purposes of settlement; (d) the Plaintiffs have fairly and adequately represented the interests of

the Settlement Class and will continue to do so, and the Plaintiffs have retained experienced counsel

to represent them; (e) for purposes of settlement, the questions of law and fact common to the

Settlement Class Members predominate over any questions affecting any individual Settlement

Class Member; and (f) for purposes of settlement, a class action is superior to the other available

methods for the fair and efficient adjudication of the controversy.  The Court also concludes that,

because this Action is being settled rather than litigated, the Court need not consider manageability

issues that might be presented by the trial of a nationwide class action involving the issues in this

case. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).  In making these findings, the

Court has considered, among other factors:  (i) the interests of Settlement Class Members in

individually controlling the prosecution or defense of separate actions; (ii) the impracticability or

inefficiency of prosecuting or defending separate actions; (iii) the extent and nature of any litigation

concerning these claims already commenced; and (iv) the desirability of concentrating the litigation

of the claims in a particular forum.  The Court takes guidance in its consideration of certification

and settlement issues from *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998).

4.      Pursuant to Rule 23 of the Federal Rules of Civil Procedure, this Court hereby finally

certifies this Action for settlement purposes as a nationwide class action on behalf of:  all individual

or entity end-users located in the United States who purchased or received as a gift an Affected

Model from September 6, 2001, to September 1, 2010 (the "Settlement Class").  As defined in the

Stipulation of Settlement, "Settlement Class Member(s)" means any member of the Settlement

Class who does not elect exclusion or opt out from the Settlement Class pursuant to the terms and

conditions for exclusion set out in the Stipulation of Settlement and the Long Form Notice.

Excluded from the Settlement Class are all persons who are employees, directors, officers, and

agents of HP or its subsidiaries and affiliated companies, as well as the Court and its immediate

family and staff.

3

1    5.    The Court appoints the law firms of Cotchett, Pitre & McCarthy; Kabateck Brown

2  Kellner, LLP; Berk Law PLLC; Chavez & Gertler LLP; Cuneo, Waldman & Gilbert, LLC; Edelson

3  & Associates, LLC; The Garcia Law Firm; Law Offices of Michael D. Liberty; Law Offices of Scott

4  E. Shapiro, P.C.; McNicholas & McNicholas, LLP; Pearson, Simon, Soter, Warshaw & Penny, LLP;

5  and Seeger Weiss, LLP as counsel for the Class ("Class Counsel").  The Court designates named

6  Plaintiffs Daniel Feder, Nicklos Ciolino, Carl K. Rich, David Duran, Jackie Blennis, and David

7  Brickner as the representatives of the Settlement Class.  The Court finds that these named Plaintiffs

8  and Class Counsel have fully and adequately represented the Settlement Class for purposes of

9  entering into and implementing the Stipulation of Settlement and have satisfied the requirements of

10  Rule 23(a)(4) of the Federal Rules of Civil Procedure.

11    6.    The Court finds that the email notice and publication notice in accordance with the

12  terms of the Stipulation of Settlement and this Court's Preliminary Approval Order, and as

13  explained in the declarations filed before the Fairness Hearing:

14        (a)    constituted the best practicable notice to Settlement Class Members under the

15  circumstances of this Action;

16        (b)    were reasonably calculated, under the circumstances, to apprise Settlement

17  Class Members of (i) the pendency of this class action, (ii) their right to exclude themselves from

18  the Settlement Class and the proposed settlement, (iii) their right to object to any aspect of the

19  proposed settlement (including final certification of the Settlement Class, the fairness,

20  reasonableness or adequacy of the proposed settlement, the adequacy of the Settlement Class's

21  representation by Plaintiffs or Class Counsel, and/or the award of attorneys' and representative

22  fees), (iv) their right to appear at the Fairness Hearing (either on their own or through counsel hired

23  at their own expense), and (v) the binding effect of the orders and Final Order and Judgment in this

24  Action, whether favorable or unfavorable, on all persons and entities who do not request exclusion

25  from the Settlement Class;

26        (c)    constituted reasonable, due, adequate, and sufficient notice to all persons and

27  entities entitled to be provided with notice; and

28

4

1         (d)      fully satisfied the requirements of the Federal Rules of Civil Procedure,

2 including Rule 23(c)(2) and (e) of the Federal Rules of Civil Procedure, the United States

3 Constitution (including the Due Process Clause), the Rules of this Court, and any other applicable

4 law.

5        7.     The Court finds that HP provided notice of the proposed settlement to the

6 appropriate state and federal government officials pursuant to 28 U.S.C. § 1715.  Furthermore, the

7 Court has given the appropriate state and federal government officials the requisite ninety (90) day

8 time period (pursuant to 28 U.S.C. § 1715) to comment or object to the proposed settlement before

9 entering its Final Order and Judgment and no such objections or comments were received.

10        8.     The terms and provisions of the Stipulation of Settlement, including any and all

11 amendments and exhibits, have been entered into in good faith and are hereby fully and finally

12 approved as fair, reasonable and adequate as to, and in the best interests of, the Plaintiffs and the

13 Settlement Class Members, and in full compliance with all applicable requirements of the Federal

14 Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), and

15 any other applicable law.  The Court finds that the Stipulation of Settlement is fair, adequate and

16 reasonable based on the following factors, among other things:

17        (a)     There is no fraud or collusion underlying this settlement, and it was reached

18 after good faith, arm's-length negotiations, warranting a presumption in favor of approval.  *Officers*

19 *for Justice v. Civil Serv. Comm'n.*, 688 F.2d 615, 625 (9th Cir. 1982).

20        (b)     The complexity, expense and likely duration of the litigation favor settlement

21 on behalf of the Settlement Class, which provides meaningful benefits on a much shorter time frame

22 than otherwise possible.  *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (the Ninth

23 Circuit has a "strong judicial policy that favors settlements, particularly where complex class action

24 litigation is concerned").  Based on the stage of the proceedings and the amount of investigation and

25 informal discovery completed, the parties had developed a sufficient factual record to evaluate their

26 chances of success at trial and the proposed settlement.  In addition, the parties negotiated the

27 benefits to the class *before* discussing Plaintiffs' claim to attorneys' fees.  *See In re Apple Deriv.*

28 *Litig.*, No. 06-4128, 2008 U.S. Dist. LEXIS 108195, at *11-12 (N.D. Cal. Nov. 5, 2008) (parties'

Case 8:07-cv-00667-AG-RNB   Document 252   Filed 03/31/11   Page 10 of 35   Page ID
Case5:05-cv-03580-JF   Document 6265   Filed03/29/11   Page7 of 16
#:6283

1   negotiations free of collusion because, among other things, the parties negotiated the benefits to the

2   class before discussing attorneys' fees).

3         (c)     The support of Class Counsel, who are highly skilled in class action litigation

4   such as this, and the Plaintiffs, who have participated in this litigation and evaluated the proposed

5   settlement, also favors final approval. *See Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal.

6   1979); *Class Plaintiffs*, 955 F.2d at 1291.

7         (d)     The settlement provides meaningful relief to the Settlement Class, including

8   the injunctive relief and e-credits described below, and certainly falls within the range of possible

9   recoveries by the Settlement Class.

10        (e)     The portion of the settlement class taking issue with the settlement (whether

11   by objection, comment/complaint, or opt-out) is miniscule by any measure—whether relative to the

12   size of the class (less than *four-thousandth* of 1%, conservatively assuming 40 million class

13   members, based on more than 100 million units shipped during the class period), or the number of

14   notices sent (less than *one-hundredth* of 1%). These low objection and opt-out numbers weigh in

15   favor of approval. *See Garner v. State Farm Mut. Auto. Ins. Co.*, No. 08-1365, 2010 WL 1687832,

16   at *14 (N.D. Cal. Apr. 22, 2010) ("Court 'may appropriately infer that a class settlement is fair,

17   adequate, and reasonable when few class members object to it'"; quoting *Create-A-Card, Inc. v.*

18   *Intuit, Inc.*, No. 07-6452, 2009 WL 3073920, at *15 (N.D. Cal. Sept. 22, 2009)); *In re Omnivision*

19   *Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) ("It is established that the absence of a

20   large number of objections to a proposed class action settlement raises a strong presumption that the

21   terms of a proposed class settlement action are favorable to the class members.").

22        The parties are directed to consummate the Stipulation of Settlement in accordance

23   with its terms and conditions. The Court hereby declares that the Stipulation of Settlement is

24   binding on all parties and Settlement Class Members, and it is to be preclusive in all pending and

25   future lawsuits or other proceedings.

26        9.     As described in the Stipulation of Settlement, HP has agreed to contribute up to

27   $5,000,000 in e-credits to be distributed to eligible Settlement Class Members, and, not later than

28   forty-five (45) days following the Effective Date, to provide for the following injunctive relief:

6

Case 8:07-cv-00667-AG-RNB   Document 252   Filed 03/31/11   Page 11 of 35   Page ID
#:2864
Case5:05-cv-03580-JF   Document 264   Filed03/29/11   Page8 of 16

(a)     _Ciolino_ Action.

(i)     HP will discontinue the use of Pop-Up LOI Messages (as that term is defined in the Stipulation of Settlement) that include the graphic image of an ink gauge, ruler, or container of ink;

(ii)    Where HP uses graphic images in the Toolbox to communicate ink level information, HP will include language indicating that the ink level information is an estimate only and that actual ink levels may vary;

(iii)   HP's Pop-Up LOI Messages at the low-on-ink trigger points will use language indicating that the cartridge is low on ink, without stating that a precise level of ink remains, and that HP recommends that the customer have a replacement cartridge available when print quality is no longer acceptable;

(iv)    HP will incorporate disclosures into its website explaining that HP's LOI Messages are based on estimated ink levels and that actual ink levels may vary.  HP will further explain that the user does not have to replace a print cartridge when a LOI Message is received, but rather may continue printing until the user is not satisfied with the print quality of the printed material or, if applicable, when the user reaches a "replace cartridge" message; and

(v)     Going forward for newly introduced HP color inkjet printer models that utilize LOI Messages, HP will incorporate disclosures into its user manuals explaining that HP's LOI Messages are based on estimated ink levels and that actual ink levels may vary.  HP will further explain that the user does not have to replace a print cartridge when a LOI Message is received, but rather may continue printing until the user is not satisfied with the print quality of the printed material or, if applicable, when the user reaches a "replace cartridge" message.

(b)     _Rich_ Action.

(i)     HP will incorporate on its website disclosures regarding Underprinting, including a description of what Underprinting (as that term is defined in the Stipulation of Settlement) is, why it is used, and some of the options for disabling or minimizing the use of Underprinting;

Case 8:07-cv-00667-AG-RNB   Document 252   Filed 03/31/11   Page 12 of 35   Page ID
#:2865
Case5:05-cv-03580-JF   Document 255   Filed03/29/11   Page9 of 16

1          (ii)      Going forward for newly introduced HP color inkjet printer models

2   that use Underprinting, HP will incorporate into its user manuals disclosures regarding

3   Underprinting and the available options to disable or minimize the use of the color inkjet cartridge,

4   including the "Print in Grayscale"/"Black print cartridge only" option and "Draft" mode;

5          (iii)     HP will incorporate on its website disclosures regarding Page Yields,

6   including a summary of HP's ISO testing for Page Yields and an explanation that actual yield varies

7   depending on the content of printed pages and other factors; and

8          (iv)      Going forward for newly introduced HP color inkjet printer models,

9   HP will incorporate into its user manuals disclosures regarding Page Yields, including a link to its

10  website regarding Page Yields.

11          (c)     *Blennis* Action.

12          (i)      HP will incorporate disclosures into its website regarding Ink

13  Expiration, the inkjet printers and cartridges that are subject to Ink Expiration, why HP employs Ink

14  Expiration dates for certain printer models, and how Ink Expiration works; and

15          (ii)      HP will include on the cartridge packaging for those inkjet cartridges

16  that utilize Ink Expiration dates without an override feature a disclosure indicating that there is an

17  Ink Expiration date and how that date is determined.

18       10.      The terms and requirements of the Injunctive Relief described in the preceding

19  paragraph shall expire the earliest of the following dates:  (a) three (3) years after the Effective Date;

20  or (b) the date upon which there are such changes in the technology that would render any of the

21  disclosures described in the preceding paragraph inaccurate; or (c) the date upon which there are

22  changes to any applicable statute, regulation, or other law that HP reasonably believes would require

23  a modification to any of the disclosures described in the preceding paragraph in order to comply

24  with the applicable statute, regulation, or law.  Nothing in this Final Order and Judgment shall

25  prevent HP from implementing disclosure changes prior to the Effective Date.  This Final Order and

26  Judgment does not preclude HP from making further disclosures or any changes to its disclosures:

27  (i) that HP reasonably believes are necessary to comply with any statute, regulation, or other law of

28  any kind; (ii) that are necessitated by product changes and/or to ensure that HP provides accurate

8

Case 8:07-cv-00667-AG-RNB   Document 252   Filed 03/31/11   Page 13 of 35   Page ID
#:2866
Case5:05-cv-03580-JF   Document266   Filed03/29/11   Page10 of 16

1  product descriptions; or (iii) that are more detailed than those required by the Stipulation of

2  Settlement and/or this Final Order and Judgment.  In addition, HP is not responsible for changes to

3  or removal of disclosures as a result of software changes implemented by third parties, including but

4  not limited to changes in print driver software controlled by the operating system manufacturer.

5       11.    Pursuant to Rule 23(h) of the Federal Rules of Civil Procedure, the Court hereby

6  awards Class Counsel attorney's fees and expenses in the amount of $2,096,990.70_____ and stipends of

7  $1,000.00____ to each of the class representatives.  The attorneys' fees are based on the amount of time class

8  counsel reasonably expended working on this action.  HP shall pay such attorney's fees and

9  expenses and class representative stipends within thirty (30) days of the Effective Date in the

10  manner described in the Stipulation of Settlement.  Such payment by HP will be in lieu of statutory

11  fees Plaintiffs and/or their attorneys might otherwise have been entitled to recover, and this amount

12  shall be inclusive of all fees and costs of Class Counsel in the Action.  In the event that any dispute

13  arises relating to the allocation of fees amongst Class Counsel and any other attorneys for Plaintiffs,

14  Class Counsel will hold HP harmless from any and all such liabilities, costs, and expenses of such

15  dispute.

16       12.    This Action is hereby dismissed with prejudice and without costs as against HP and

17  the Released Parties.  Specifically, the following matters are to be dismissed with prejudice:  (a) *In*

18  *re: HP Inkjet Printer Litigation*, Case No. C05-3580 JF; (b) *Rich v. Hewlett-Packard Company*,

19  Case No. C06-03361 JF; and (c) *Blennis v. Hewlett-Packard Company*, Case No. C07-00333 JF.

20       13.    Upon the Effective Date, the Releasing Parties (as that term is defined in the

21  Stipulation of Settlement) shall be deemed to have, and by operation of the Final Order and

22  Judgment shall have, fully, finally and forever released, relinquished, and discharged all Released

23  Claims against the Released Parties.  Released Claims means and includes any and all claims,

24  demands, rights, damages, obligations, suits, debts, liens, and causes of action of every nature and

25  description whatsoever, ascertained or unascertained, suspected or unsuspected, existing or claimed

26  to exist, including unknown claims (as described in Paragraph 14 below) as of the Effective Date by

27  all of the Plaintiffs and all Settlement Class Members (and Plaintiffs' and Settlement Class

28

9

Case 8:07-cv-00667-AG-RNB   Document 252   Filed 03/31/11   Page 14 of 35   Page ID
#:8867
Case5:05-cv-03580-JF   Document 867   Filed03/29/11   Page11 of 16

Members' respective heirs, executors, administrators, representatives, agents, attorneys, partners,

successors, predecessors-in-interest, and assigns) that:

(i)     were brought or that could have been brought against the Released Parties, or

any of them, and that arise out of or are related in any way to any or all of the acts, omissions, facts,

matters, transactions, or occurrences that were or could have been directly or indirectly alleged or

referred to in the Action (including, but not limited to alleged violations of state consumer

protection, unfair competition, and/or false or deceptive advertising statutes (including, but not

limited to, Cal. Bus. & Prof. Code § 17200 *et seq.*, Cal. Bus. & Prof. Code § 17500 *et seq.*, and Cal.

Civ. Code § 1750 *et seq.*); breach of contract; breach of express or implied warranty; fraud; unjust

enrichment, restitution, trespass, conversion, declaratory or injunctive relief, and other equitable

claims or claims sounding in contract and tort); and

(ii)     relate in any way to the quantity of output, amount of usable ink or value

received from the Affected Models and their corresponding inkjet cartridges, including but not

limited to all claims that relate in any way to:

(A)     the end-of-life or out-of-ink behavior or messages of the Affected
Models and their corresponding inkjet cartridges;

(B)     HP's use of smart chips or other devices that electronically store data
in connection with the Affected Models and their corresponding inkjet
cartridges;

(C)     HP's use of LOI Messages or any other representations concerning the
status of the ink remaining in an inkjet cartridge, including the amount
of ink or number or pages remaining, in connection with the Affected
Models and their corresponding inkjet cartridges;

(D)     HP's use of Ink Expiration dates in connection with the Affected
Models and their corresponding inkjet cartridges;

(E)     HP's use of Underprinting in connection with the Affected Models
and their corresponding inkjet cartridges;

(F)     HP's Page Yields for the Affected Models and their corresponding
inkjet cartridges;

(G)     the quantity and other characteristics of printed output from the
Affected Models and their corresponding inkjet cartridges;

10

Case 8:07-cv-00667-AG-RNB   Document 252   Filed 03/31/11   Page 15 of 35   Page ID
#:8668
Case5:05-cv-03580-JF   Document 268   Filed03/29/11   Page12 of 16

(H)     the amount of usable ink in the HP inkjet cartridges used with the
        Affected Models;

(I)     HP's SureSupply program as it relates to ink status graphics and
        messaging and related marketing materials; and

(J)     HP's specifications, marketing, disclosures, warranties, and
        representations (or lack thereof) regarding the quantity of output,
        amount of usable ink, or value of ink received from the Affected
        Models and their corresponding inkjet cartridges.

Released Claims do not include:  (i) claims for personal injury; or (ii) claims for repair or service of

Affected Models that, at the time of the Effective Date, are covered by any express product warranty

by HP.

14.     The Released Claims include known and unknown claims relating to the Action, and

the Stipulation of Settlement is expressly intended to cover and include all such injuries or damages,

including all rights of action thereunder.  Settlement Class Members have expressly, knowingly, and

voluntarily waived the provisions of Section 1542 of the California Civil Code, which provides as

follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE
> CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER
> FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN
> BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER
> SETTLEMENT WITH THE DEBTOR.

Settlement Class Members have expressly waived and relinquished any and all rights and benefits

that they may have under, or that may be conferred upon them by, the provisions of Section 1542 of

the California Civil Code, or any other law of any state or territory that is similar, comparable, or

equivalent to Section 1542, to the fullest extent that they may lawfully waive such rights or benefits

pertaining to the Released Claims.  In connection with such waiver and relinquishment, the

Settlement Class Members have acknowledged that they are aware that they or their attorneys may

hereafter discover claims or facts in addition to or different from those that they now know or

believe exist with respect to Released Claims, but that it is their intention to hereby fully, finally,

and forever settle and release all of the Released Claims known or unknown, suspected or

unsuspected, that they have against the Released Parties.  In furtherance of such intention, the

Case 8:07-cv-00667-AG-RNB   Document 252   Filed 03/31/11   Page 16 of 35   Page ID
#:8369
Case5:05-cv-03580-JF   Document 269   Filed03/29/11   Page13 of 16

1   release herein given by the Settlement Class Members to the Released Parties shall be and remain in

2   effect as a full and complete general release notwithstanding the discovery or existence of any such

3   additional different claims or facts.  Each of the parties expressly acknowledged that it has been

4   advised by its attorney of the contents and effect of Section 1542, and with knowledge, each of the

5   parties has expressly waived whatever benefits it may have had pursuant to such section.  Settlement

6   Class Members are not releasing any claims for personal injury or any claims for repair or service of

7   Affected Models (as defined by the Stipulation of Settlement) that are, at the time of the Effective

8   Date, covered by any express product warranty by HP.  Plaintiffs have acknowledged, and the

9   Settlement Class Members shall be deemed by operation of the Final Order and Judgment to have

10  acknowledged, that the foregoing waiver was separately bargained for and a material element of the

11  Settlement of which this release is a part.

12       15.     Members of the Settlement Class who have opted out of or sought exclusion from the

13  settlement by the date set by the Court do not release their claims and will not obtain any benefits of

14  the settlement.

15       16.     The Court orders that, upon the Effective Date, the Stipulation of Settlement shall be

16  the exclusive remedy for any and all Released Claims of Settlement Class Members.  The Court

17  thus hereby permanently bars and enjoins Plaintiffs, all Settlement Class Members, and all persons

18  acting on behalf of, or in concert or participation with such Plaintiffs or Settlement Class Members

19  (including but not limited to the Releasing Parties), from:  (a) filing, commencing, asserting,

20  prosecuting, maintaining, pursuing, continuing, intervening in, or participating in, or receiving any

21  benefits from, any lawsuit, arbitration, or administrative, regulatory or other proceeding or order in

22  any jurisdiction based upon or asserting any of the Released Claims; (b) bringing a class action on

23  behalf of Plaintiffs or Settlement Class Members, seeking to certify a class that includes Plaintiffs or

24  Settlement Class Members, or continuing to prosecute or participate in any previously filed and/or

25  certified class action, in any lawsuit based upon or asserting any of the Released Claims.

26       17.     Neither the Stipulation of Settlement, nor any of its terms and provisions, nor any of

27  the negotiations or proceedings connected with it, nor any of the documents or statements referred

28

---

12

Case 8:07-cv-00667-AG-RNB   Document 252   Filed 03/31/11   Page 17 of 35   Page ID
#:8870
Case5:05-cv-03580-JF   Document 367   Filed03/29/11   Page14 of 16

1    to therein, nor any of the documents or statements generated or received pursuant to the claims

2    administration process, shall be:

3           (a)    offered by any person or received against HP as evidence or construed as or

4    deemed to be evidence of any presumption, concession, or admission by HP of the truth of the facts

5    alleged by the Plaintiffs or any Settlement Class Member or the validity of any claim that has been

6    or could have been asserted in the Action or in any litigation, or other judicial or administrative

7    proceeding, or the deficiency of any defense that has been or could have been asserted in the Action

8    or in any litigation, or of any liability, negligence, fault or wrongdoing of HP;

9           (b)    offered by any person or received against HP as evidence of a presumption,

10   concession or admission of any fault, misrepresentation or omission with respect to any statement or

11   written document approved or made by HP or any other wrongdoing by HP;

12          (c)    offered by any person or received against HP or as evidence of a presumption,

13   concession, or admission with respect to any default, liability, negligence, fault, or wrongdoing, or

14   in any way interpreted, construed, deemed, invoked, offered, received in evidence, or referred to for

15   any other reason against any of the settling parties, in any civil, criminal, or administrative action or

16   proceeding; provided, however, that nothing contained in this paragraph shall prevent the

17   Stipulation of Settlement (or any agreement or order relating thereto) from being used, offered, or

18   received in evidence in any proceeding to approve, enforce, or otherwise effectuate the settlement

19   (or any agreement or order relating thereto) or the Final Order and Judgment, or in which the

20   reasonableness, fairness, or good faith of the parties in participating in the settlement (or any

21   agreement or order relating thereto) is an issue, or to enforce or effectuate provisions of the

22   settlement, the Final Order and Judgment, or the Proofs of Claim and Release as to HP, Plaintiffs, or

23   the Settlement Class Members; or

24          (d)    offered by any person or received against any Plaintiff or class representative

25   as evidence or construed as or deemed to be evidence that any of their claims in any of the cases

26   consolidated herein lack merit.

27          Notwithstanding the foregoing, HP may file the Stipulation of Settlement, this Final

28   Order and Judgment, and/or any of the documents or statements referred to therein in support of any

13

Case 8:07-cv-00667-AG-RNB   Document 252   Filed 03/31/11   Page 18 of 35   Page ID
#:8671
Case5:05-cv-03580-JF   Document 367   Filed03/29/11   Page15 of 16

1  defense or claim that is binding on and shall have *res judicata*, *collateral estoppel*, and/or preclusive

2  effect in all pending and future lawsuits or other proceedings maintained by or on behalf of

3  Plaintiffs and/or any other Settlement Class Members, and each of them, as well as their heirs,

4  executors, administrators, successors, assigns, and/or any other of the Releasing Parties.

5      18.    The Court has jurisdiction to enter this Final Order and Judgment.  Without in any

6  way affecting the finality of this Final Order and Judgment, this Court expressly retains exclusive

7  and continuing jurisdiction over the parties, including the Settlement Class, and all matters relating

8  to the administration, consummation, validity, enforcement and interpretation of the Stipulation of

9  Settlement and of this Final Order and Judgment, including, without limitation, for the purpose of:

10         (a)    enforcing the terms and conditions of the Stipulation of Settlement and

11  resolving any disputes, claims or causes of action that, in whole or in part, are related to or arise out

12  of the Stipulation of Settlement, and/or this Final Order and Judgment (including, without

13  limitation: whether a person or entity is or is not a Settlement Class Member; whether claims or

14  causes of action allegedly related to this Action are or are not barred or released by this Final Order

15  and Judgment; and whether persons or entities are enjoined from pursuing any claims against HP);

16         (b)    entering such additional orders, if any, as may be necessary or appropriate to

17  protect or effectuate this Final Order and Judgment and the Stipulation of Settlement (including,

18  without limitation, orders enjoining persons or entities from pursuing any claims against HP), or to

19  ensure the fair and orderly administration of the Settlement; and

20         (c)    entering any other necessary or appropriate orders to protect and effectuate

21  this Court's retention of continuing jurisdiction over the Stipulation of Settlement, the settling

22  parties, and the Settlement Class Members.

23      19.    Without further order of the Court, the settling parties may agree to reasonably

24  necessary extensions of time to carry out any of the provisions of the Stipulation of Settlement.

25

26

27

28  / / /

14

1        20.      In the event that the Effective Date does not occur, certification shall be

2   automatically vacated and this Final Order and Judgment, and all other orders entered and releases

3   delivered in connection herewith, shall be vacated and shall become null and void.

4        IT IS SO ORDERED, this __ day of _____, 20__.
                    29th         March        11

5

6                                    _____

7                                        THE HONORABLE JEREMY FOGEL
                                         UNITED STATES DISTRICT COURT JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

15

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**E-Filed 3/29/2011**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| IN RE HP INKJET PRINTER LITIGATION | Case No. 5:05-cv-3580 JF<br><br>ORDER[1] RE PLAINTIFFS' APPLICATION FOR ATTORNEYS' FEES, REIMBURSEMENT OF COSTS AND EXPENSES, AND APPROVAL OF CLASS REPRESENTATIVES' STIPENDS<br><br>[re: docket no. 261, 271] |

Plaintiffs in three consumer class actions against Defendant Hewlett-Packard ("HP") seek an order granting final approval of a joint settlement agreement. They also move for attorneys' fees and costs and for approval of stipends for class representatives. While it concludes that the settlement is reasonable in light of the value of the asserted claims and has signed the parties' stipulated order approving the settlement itself, Docket No. 286, the Court will reduce the proposed award of attorneys' fees award for the reasons explained below.

## I. BACKGROUND

**A.    The Claims**

The proposed settlement resolves three separate cases, all of which involve HP's popular inkjet printer cartridges:

---

[1] This disposition is not designated for publication in the official reports.

1

Case No.
ORDER RE APPLICATION FOR ATTORNEYS' FEES, ETC.
(JFLC3)

1.  **The *Ciolino* Action ("Low-on-Ink" Warnings)**

The *Ciolino* action was filed on September 6, 2005. It alleges that several lines of HP inkjet printers display "low-on-ink" warnings and graphics that indicate the need for a new ink cartridge when in fact the cartridge is not empty. On July 25, 2008, the Court denied HP's motion for summary judgment. While it described the evidence as "weak," the Court concluded that "a reasonable jury could find that [Plaintiffs] ha[ve] suffered a cognizable injury." In the same order, the Court denied Plaintiffs' request for certification of a nationwide class pursuant to Fed. R. Civ. Pro. 23(b)(2) because Plaintiffs' primary claim was for damages rather than injunctive relief. The Court also denied certification under Rule 23(b)(3) based on concerns about the manageability of a nationwide class in light of the differences in consumer protection laws among different states.

In the course of settlement negotiations, Plaintiffs accepted that not all "low-on-ink" messages were deceptive and claimed that the most confusing warnings were those with graphic images showing nearly empty cartridges. HP has agreed to eliminate those warnings.

**2. The *Rich* Action (Underprinting)**

The *Rich* Plaintiffs alleged that HP failed to disclose its practice of using color ink in addition to (considerably less expensive) black ink when printing black text and images (a practice called "underprinting"). On December 4, 2006, the Court granted HP's motion to dismiss Plaintiffs' First Amended Complaint. Plaintiffs' Second Amended Complaint deleted claims for breach of contract, breach of express and implied warranty, and breach of the implied covenant of good faith and fair dealing. Plaintiffs moved for certification of a damages class limited to California consumers and a nationwide class for purposes of injunctive relief. HP moved for summary judgment on the remaining claims. Neither motion was heard by the Court in light of the parties' settlement negotiations.

In the course of the negotiations, Plaintiffs acknowledged that underprinting is a legitimate technology that increases print quality; for its part, HP agreed to provide additional disclosures to consumers describing underprinting and measures that consumers can take to disable it.

2

3.     The *Blennis* Action (Expiration Mechanisms)

The *Blennis* Plaintiffs alleged that HP has designed certain inkjet printers and cartridges
to shut down on an undisclosed expiration date, preventing use of remaining ink.  On March 25,
2008, the Court dismissed Plaintiff's claims for express warranty, implied warranty, trespass to
chattels, and conversion.  Plaintiffs subsequently filed for certification of a class consisting of
"[a]ll persons or entities in the United States who owned one or more models of Hewlett-Packard
inkjet printers that use ink cartridges that have an expiration date."  Hearing on the motion was
deferred in light of the parties' settlement discussions.

B.     Settlement Terms

1.     Disclosure

HP has agreed to enhance disclosure to consumers in three areas:

a.     "Low-on-Ink" Warning

HP will discontinue the use of certain pop-up messages that include the graphic image of
an ink gauge, ruler, or container of ink.  It also has agreed to incorporate disclosures by means of
its website, user manuals, and user interface explaining that low-on-ink messages are based on
estimated ink levels and that users can continue to use an ink cartridge until they no longer are
satisfied with the print quality or receive a "replace cartridge" message.

b.     Underprinting

HP will include on its website and in its user manuals disclosures regarding
"underprinting," including a description of what underprinting is, why it is used, and various
options for disabling or minimizing its use.  HP also will include disclosures regarding page
yields, including a summary of its testing and an explanation that actual yield varies.

c.     Expiration Mechanisms

HP will add disclosures on its website and product packaging with respect to ink
cartridge expiration, including an explanation of the printers and cartridges that are subject to
expiration, why HP uses expiration dates, how such dates are determined, and how ink
expiration works.

Case No.
ORDER RE APPLICATION FOR ATTORNEYS' FEES, ETC.
(JFLC3)

## 2.  E-Credits

Members of the proposed Settlement Class will receive direct relief in the form of an electronic credit for HP printer products, subject to satisfying eligibility requirements. Class members must apply for these e-credits using an online claim form, and there is an overall cap of $5,000,000 for this aspect of the settlement. Each participating class member in the *Ciolino* action who meets the eligibility requirements may receive up to $5.00 in e-credits for each applicable printer. In order to be eligible, claimants must provide proof of ownership and declare that they (a) received a "low-on-ink" message, (b) believed that they were out of ink as a result of the message, and (c) removed the ink cartridge after receiving the message without using the remaining ink. Similarly, each participating member in the *Blennis* action who meets the eligibility requirements may receive up to $6.00 in e-credits for each applicable model. To be eligible, members must provide proof of ownership and declare that they purchased an inkjet cartridge that reached the ink expiration date before the cartridge was fully used. Participating members of the *Rich* class only need provide proof of ownership to be eligible for an e-credit of up to $2.00.

## C.  Other Costs and Attorneys' Fees

HP has agreed to pay for the class notice and costs of administration not to exceed $950,000. HP also has agreed, subject to court approval, to pay a stipend of not more than $1,000 to each named plaintiff in each case. It also has agreed to pay attorneys' fees and costs not to exceed $2,900,000. In exchange, HP will be released from all claims related to the *Ciolino*, *Rich*, and *Blennis* actions.

## D.  The Claims Process

The Court preliminarily approved the settlement on October 1, 2010. Notice was sent by email to more than thirteen million class members. In addition, notice was published in various magazines and on internet sites. Approximately eight hundred class members opted out of the proposed settlement, and only five have filed formal objections. The deadline to submit claims expired on February 15, 2011. As of March 10, 2011, the settlement administrator had received 122,410 claims for 202,176 printers. Based on these claims, the administrator has approved e-

4

1   credits as follows: (1) 53,147 e-credits for *Blennis* Affected Models with a total value of

2   $318,882.00; (2) 148,479 e-credits for *Ciolino* Affected Models with a total value of

3   $742,395.00; and (3) 202,176 e-credits for *Rich* Affected Models with a total value of

4   $404,352.00.  Settlement Administrator's Decl. ¶ 4.  In all, $1,465,629.00 in e-credits have been

5   approved. *Id.*

6                                    **II. LEGAL STANDARD**

7          Where "the parties reach a settlement agreement prior to class certification, courts must

8   peruse the proposed compromise to ratify both the propriety of the certification and the fairness

9   of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).

10  **A.     Class Certification**

11         In order to bring a class action, a plaintiff must demonstrate that (1) the class is so

12  numerous that joinder of all members is impracticable ("numerosity"), (2) there are questions of

13  law or fact common to the class ("commonality"), (3) the claims or defenses of the

14  representative parties are typical of the claims or defenses of the class ("typicality"), and (4) the

15  representative parties fairly and adequately will protect the interests of the class ("adequacy of

16  representation").

17         A class-action plaintiff also must satisfy one of the prongs of Rule 23(b).  Where, as here,

18  class certification is sought under Rule 23(b)(3), the plaintiff must prove that:

19             the questions of law or fact common to the members of the class predominate
              over any questions affecting only individual members, and that a class action is
20             superior to other available methods for the fair and efficient adjudication of the
              controversy.

21  Facts pertinent to these findings include: (1) the interest of members of the class in individually

22  controlling the prosecution or defense of separate actions; (2) the extent and nature of any

23  litigation concerning the controversy already commenced by or against members of the class;

24  and (3) the desirability or undesirability of concentrating the litigation of the claims in the

25  particular forum. Fed. R. Civ. P. 23(b)(3).   The fourth factor, "the difficulties likely to be

26  encountered in the management of a class action," need not be considered when class

27  certification is for settlement purposes only. Fed. R. Civ. P. 23(b)(3)(D); *Amchem Prods., Inc. v.*

28

                                              5

Case 8:07-cv-00667-AG-RNB   Document 252   Filed 03/31/11   Page 25 of 35   Page ID
#:6178
Case5:05-cv-03580-JF   Document287   Filed03/29/11   Page6 of 16

1    *Windsor*, 521 U.S. 591, 620 (1997).

2    **B.     Adequacy of the Settlement**

3         Before approving a settlement, the court must hold a hearing and find that "the settlement

4    . . . is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(1)(C).  Review of a proposed

5    settlement generally proceeds in two stages, a hearing on preliminary approval and a final

6    fairness hearing.  *See* Federal Judicial Center, Manual for Complex Litigation, § 21.632 (4th ed.

7    2004).

8         At the preliminary approval stage, the court determines whether a proposed settlement is

9    "within the range of possible approval" and whether or not notice should be sent to class

10   members.  *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 205 (5th Cir. 1981); *see*

11   *also* Manual for Complex Litigation § 21.632.  At the final approval stage, the court takes a

12   closer look at the proposed settlement, taking into consideration objections and any other further

13   developments in order to make a final fairness determination.  *True v. Am. Honda Motor Co.*,

14   No. EDCV 07-0287-VAP, 210 U.S. Dist. LEXIS 23545, at *16-*17 (C.D. Cal. February 26,

15   2010).

16        In determining whether a settlement is fair, reasonable, and adequate, a court must

17   balance several factors, including:

18       the strength of plaintiffs' case; the risk, expense, complexity, and likely duration
         of further litigation; the risk of maintaining class action status throughout the
19       trial; the amount offered in settlement; the extent of discovery completed, and the
         stage of the proceedings; the experience and views of counsel; the presence of a
20       governmental participant; and the reaction of the class members to the proposed
         settlement.
21

22   *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992) (citing *Officers for Justice*

23   *v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982)); *see also In re Heritage Bond Litig.*,

24   546 F.3d 667, 674 (9th Cir. 2008).  However, this is "by no means an exhaustive list of relevant

25   considerations," and "[t]he relative degree of importance to be attached to any particular factor

26   will depend on the unique circumstances of each case." *Officers for Justice*, 688 F.2d at 625.

27        In evaluating a proposed settlement, "[i]t is the settlement taken as a whole, rather than

28   the individual component parts, that must be examined for overall fairness." *Hanlon v. Chrysler*

6

Case No.
ORDER RE APPLICATION FOR ATTORNEYS' FEES, ETC.
(JFLC3)

Case 8:07-cv-00667-AG-RNB   Document 252   Filed 03/31/11   Page 26 of 35   Page ID
#:6179
Case5:05-cv-03580-JF   Document287   Filed03/29/11   Page7 of 16

1  *Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). The court "does not have the ability to delete,

2  modify, or substitute certain provisions," and "[t]he settlement must stand or fall in its entirety."

3  *Id.* The question is not whether the settlement "could be prettier, smarter, or snazzier," but

4  solely "whether it is fair, adequate, and free from collusion." *Id.* at 1027.

## III. DISCUSSION

6  **A.   Certification of the class**

7        In its order granting preliminary approval of the instant settlement, this Court found

8  conditionally that, for settlement purposes, the prerequisites for a class action under Rules 23(a)

9  and (b)(3) have been satisfied in that: (a) the number of settlement class members is so numerous

10  that joinder of all members thereof is impracticable; (b) there are questions of law and fact

11  common to the settlement class; (c) the claims of the Plaintiffs are typical of the claims of the

12  settlement class they seek to represent for purposes of settlement; (d) the Plaintiffs have fairly

13  and adequately represented the interests of the settlement class and will continue to do so, and

14  the Plaintiffs have retained experienced counsel to represent them; (e) for purposes of settlement,

15  the questions of law and fact common to the settlement class members predominate over any

16  questions affecting any individual settlement class member; and (f) for purposes of settlement, a

17  class action is superior to the other available methods for the fair and efficient adjudication of the

18  controversy.

19        As noted earlier, in addressing a motion for settlement-only class certification, a district

20  court need not inquire whether the case, if tried, would present intractable management

21  problems. *Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997). This Court's order denying

22  nationwide class certification for the *Ciolino* action was based primarily on issues of

23  manageability that are not present in the settlement context. While the order also reflected the

24  Court's concerns about the desirability of litigating the suit under California law in light of the

25  diverse state consumer protection laws implicated by Plaintiff's claims, "variations in state law

26  do not necessarily preclude a 23(b)(3) action" as long as the plaintiffs can "demonstrate the

27  commonality of substantive law applicable to all class members." *Hanlon v. Chrisler Corp.*, 150

28  F.3d 1011, 1022 (9th Cir. 1998). In this case, as in *Hanlon*, there is no indication that the

7

Case No.
ORDER RE APPLICATION FOR ATTORNEYS' FEES, ETC.
(JFLC3)

Case 8:07-cv-00667-AG-RNB   Document 252   Filed 03/31/11   Page 27 of 35   Page ID
#:6180
Case5:05-cv-03580-JF   Document287   Filed03/29/11   Page8 of 16

1    differences in state consumer protection laws outweigh the commonalities.  Moreover, because

2    the damages suffered by individual members of the settlement class are small, the expenses and

3    burdens of individual litigation would make it difficult for settlement class members to seek

4    redress individually.

5    **B.    Adequacy of Settlement**

6        **1.    Value of the settlement in light of the strength of Plaintiffs' case**

7        Each of the objectors to the proposed settlement contends that the settlement provides

8    insufficient relief for the class.  The objectors calculate that there are approximately a hundred

9    million members of the settlement class, making the true value of the $5 million in e-credits not

10   more than five cents per class member.  In addition, they observe that the e-credits effectively

11   are coupons worth much less than their cash value and that coupon settlements are inherently

12   problematic.

13       **a.    Proposed settlement as a coupon settlement**

14       The Class Action Fairness Action (CAFA) includes specific requirements with respect to

15   the approval of a "coupon settlement."  While the statute does not define the term "coupon

16   settlement," courts have identified such a settlement as one in which the relief consists of "a

17   discount on another product or service offered by the defendant in the lawsuit." *Fleury v.*

18   *Richemont N. Am., Inc.*, No. C-05-4525 EMC, 2008 U.S. Dist. LEXIS 112459, at *9 (N.D. Cal.

19   Aug. 6, 2008).  CAFA requires that before a district court may approve a "coupon settlement," it

20   must "determine whether, and mak[e] a written finding that, the settlement is fair, reasonable,

21   and adequate for class members." 28 U.S.C. § 1712(e).  Although the "fair, reasonable, and

22   adequate" language used in section 1712(e) is identical to the language relating to settlement

23   approval contained in Rule 23(e)(2), several courts have read § 1712(e) as imposing a

24   heightened level of scrutiny in reviewing such settlements. *See, e.g.*, *Synfuel Techs., Inc. v. DHL*

25   *Express (USA), Inc.*, 463 F.3d 646, 654 (7th Cir. 2006); *True v. Am. Honda Motor Co.*, No. EDC

26   07-0287-VAP, 2010 U.S. Dist. LEXIS 23545, at *35 (C.D. Cal. Feb. 26, 2010).

27       These courts have articulated three primary concerns with "coupon settlements": "they

28   often do not provide meaningful compensation to class members; they often fail to disgorge

8

Case 8:07-cv-00667-AG-RNB   Document 252   Filed 03/31/11   Page 28 of 35   Page ID
#:6181
Case5:05-cv-03580-JF   Document287   Filed03/29/11   Page9 of 16

1    ill-gotten gains from the defendant; and they often require class members to do future business

2    with the defendant in order to receive compensation." *True*, 2010 U.S. Dist. LEXIS 2345, at*36

3    (quoting *Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1292, 1302 (S.D. Fla. 2007)).

4    Nonetheless, such settlements have been approved as fair, adequate, and reasonable, after

5    consideration of the value of the relief offered in the settlement and the claims on which the

6    settlement is based. *Id.* at * 36; *see, e.g.*, *In re Mexico Money Transfer Litigation*, 267 F.3d 743,

7    748-49 (7th Cir. 2001) (Easterbrook, J.) (approving a coupon settlement, even though it found

8    the relief offered was "more in the nature of a PR gesture . . . than an exchange of money (or

9    coupons) for the release of valuable legal rights," because the underlying "claims had only

10   nuisance value").

11       **b.    Value of the e-credits**

12       While Plaintiffs attempt to distinguish e-credits from coupons, the credits plainly serve as

13   discounts on products offered by defendants.  Moreover, even if e-credits could be distinguished

14   from coupons under CAFA, the statutory provisions are instructive when the benefit to the class

15   is coupon-like. *Fleury*, 2008 U.S. Dist. LEXIS 112459, at *11.  The objectors contend that all of

16   the problems with coupon settlements are present in the instant case.  They claim that the e-

17   credits, which are non-transferable and cannot be used with other discounts or coupons, do not

18   provide meaningful compensation to class members.  In addition, they contend that rather than

19   requiring HP to disgorge ill-gotten gains, the credits act as a marketing technique to drive class

20   members to the company's website to purchase HP products directly.

21       The objectors' concerns about the e-credits are valid.  The fact that the credits are

22   nontransferable, redeemable only at HP.com, and cannot be used with other coupons or

23   discounts significantly reduces their cash value.  In many ways, the e-credits are

24   indistinguishable from a marketing technique HP might employ to attract consumers to its

25   commercial website.  While Plaintiffs observe correctly that class members using HP printers

26   continue to incur costs for ink and other products sold at HP.com, the nontransferable e-credits

27   are of value only to those class members who continue to use HP printers and who do not have

28

9

1   access to a less expensive supply of ink cartridges.[2]

2        **c.**    **Value of injunctive relief**

3        Plaintiffs contend that the primary benefit of the settlement is the injunctive relief

4   obtained. Indeed, their economist opines that the value of the injunctive relief falls within a

5   range of $16-41 million. Rosenfeld Report at 7. However, the objectors argue that the

6   injunctive relief in this case is "worthless as a matter of law." Frank Objection at 10. Objectors

7   make the obvious point that prospective relief provides no compensation for past harm. They

8   rely on *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 654 (7th Cir. 2006). In

9   that case, a shipping company was alleged to have overcharged customers on shipping

10  envelopes. The proposed settlement included operational changes that the plaintiffs claimed

11  would result in savings for class members. The court discounted the value of such relief because

12  it only would benefit future customers of the shipper rather than remedying the injuries to past

13  consumers. The court noted that "the fairness of the settlement must be evaluated primarily

14  based on how it compensates class members for . . . past injuries." *Id.*

15       Plaintiffs point out that the Ninth Circuit has expressly recognized the value of

16  prospective relief. In *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1997), the principal

17  case upon which they rely, the court found that the settlement was adequate because the primary

18  concern of the plaintiffs--the safety of Chrysler minivans–was addressed by injunctive relief.

19  Plaintiffs argue that the principal problem in this case–customer confusion caused by misleading

20  warnings–also is addressed by the proposed injunctive relief. It is true that for those customers

21  who have been confused by HP's warnings in the past the greater clarity provided by the

22  settlement may be useful, and it is reasonable to assume that there will be significant overlap

23  between class members who were confused by the warnings and those who will benefit from the

24  discontinuation of such warnings in new HP printers.

25       However, while injunctive relief is of *some* value to the class, Plaintiffs provide little

26

27       [2] Objectors point out that at least one major retailer provides discounts on ink cartridges when consumers recycle empty cartridges, and claim that these discounts are of greater monetary

28  value than the proposed e-credits.

10

1  support for their generous estimate of the economic value of such relief.  Plaintiffs' expert

2  admits that "the percentage of printer owners that had been discarding their ink cartridges

3  immediately when they as the [low-on-ink] message, but would be alerted successfully by the

4  web warnings mandated by the injunctive relief, is unknown."  Rosenfeld Report at 5.  While

5  Plaintiffs' expert proposes a range of twenty to eighty percent to model possible outcomes, in

6  fact the percentage just as easily could be much smaller.  It is doubtful that the consumers most

7  likely to have been confused by a "low-on-ink" warning would access the HP website each time

8  such a warning occurs.  In addition, while Plaintiffs acknowledge that the graphic low-on-ink

9  warnings are the most misleading, the settlement does not include any requirement that HP

10  provide additional clarification in graphic form.  Although elimination of the graphic warnings

11  on printers purchased after the implementation of the settlement may have a significant impact,

12  Plaintiffs acknowledge that the "extent to which former HP printer owners continue to purchase

13  HP printers is unknown."  Rosenfeld Report at 6.  Ultimately, Plaintiffs' expert report is not

14  particularly helpful to the Court in its determination of the value of the injunctive relief to the

15  Settlement Class.

16       **d.     Strength of Plaintiffs' case**

17       Despite these evident problems with the proposed settlement, the limited value of the

18  relief obtained must be considered in relation to the strength of Plaintiffs' claims in the first

19  instance.  The objectors uniformly fail to address this question.  As the Court has observed

20  repeatedly over the course of the litigation, even assuming that Plaintiffs could prove that HP's

21  "low-on-ink" warnings were inaccurate or misleading, the task of determining whether the

22  warnings actually confused consumers or resulted in the unwarranted disposal of a significant

23  amount of ink necessarily involves a great deal of speculation.  The underprinting at issue in

24  *Rich* and the expiration date at issue in *Blennis* involve similar challenges with respect to proof.

25  This Court denied nationwide class certification in *Ciolino*, and HP has indicated that it also

26  would contest certification of a California class were that case to proceed.  The parties have

27  engaged in intensive motion practice and extensive discovery, and there is no reason to believe

28  that the posture of any of the cases would improve through further litigation.

11

Case No.
ORDER RE APPLICATION FOR ATTORNEYS' FEES, ETC.
(JFLC3)

1    Moreover, even if the Plaintiffs could prove their claims at trial, the damages recoverable

2    by each individual class member still would be very modest.  According to Plaintiffs' own

3    analysis, only about two-percent of HP inkjet printer owners replace their ink cartridges

4    prematurely due to low-on-ink warnings.  McCarthy Decl. Ex 2 at 4 ("Rosenfeld Report").

5    Among those consumers, the amount of ink that otherwise would be used before print quality

6    was affected appears virtually impossible to determine.

7        **2.**     **The arm's-length negotiation of the settlement, the experience and views of**

8                 **counsel, and the reaction of class members.**

9        The Ninth Circuit has ruled that courts may "put a good deal of stock in [class

10   settlements that are] the product of arm's-length, non-collusive, negotiated resolution."

11   *Rodriguez v. West Pub. Corp.*, 563 F.3d 948, 965 (9th Cir. 2009).  Here, retired California

12   Superior Court Judge James L. Warren, who served as a mediator for the settlement discussions,

13   has provided a declaration stating that the settlement discussions were conducted in good faith

14   and at arm's-length.  Warren Declaration ¶ 5.

15       Where there is no evidence of fraud or collusion, courts give great weight to the

16   recommendation of counsel in light of their intimate acquaintance with the facts at issue. *Nat'l*

17   *Rural Telecomms.*, 221 F.R.D. at 528.  In this case, both Plaintiffs' counsel and counsel for HP

18   are experienced in class action litigation.  After vigorously litigating the case over several years,

19   counsel on both sides believe that the settlement is fair, adequate, and reasonable.

20       Finally, the Court considers the reaction of class members to the proposed settlement.

21   More than thirteen million class members received e-mail notice regarding the settlement.  As

22   may be expected in such a settlement, the overwhelming majority did not respond at all.

23   Approximately eight hundred people excluded themselves from the settlement, and only a

24   handful filed objections.  On the other hand, approximately 122,000 class members filed claims.

25   Danielson Decl ¶ 3.  This factor favors approval of the proposed settlement.

26       Because the settlement was arrived at as a result of arms-length, non-collusive

27   negotiations, and the value of the settlement is reasonable in light of the evident weakness of the

28   case and the modest value of Plaintiffs' claims, the Court will approve the settlement agreement.

12

Case No.
ORDER RE APPLICATION FOR ATTORNEYS' FEES, ETC.
(JFLC3)

## C.    Attorneys' Fees

Rule 23(h) provides that, "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties agreement." Fed.R.Civ.P. 23(h). Plaintiffs request attorneys' fees of $2,303,009.30 and costs of $596,990.70. HP has agreed to pay attorneys' fees and costs up to $2,900,000. In light of the settling parties' agreement, the principal question for the Court is what constitutes a reasonable attorneys' fee. *See Wing v. Asarco, Inc.*, 114 F.3d 986, 988 (9th Cir.1997) (noting that the parties' settlement agreement providing for an award of attorney's fees did not limit the district court's discretion in determining the fee).

In their brief in support of their motion for attorneys' fees, Plaintiffs quote this Court out of context for the proposition that "[a] court should refrain from substituting its own value for a properly bargained-for agreement." Pls. Br. in Supp. of Mot. Atty. Fees at 18:4-5 (quoting *In re Apple Computer, Inc. Derivative Litig.*, 2008 U.S. Dist. LEXIS 108195, at *12 (N.D. Ca. Nov. 5, 2008). While courts in this circuit regularly have afforded a presumption of fairness to non-collusive settlement, the same deference is not appropriate in considering the fairness of an award of attorneys' fees. *See Staton v. Boeing Co.*, 327 F.3d 938, 964 (9th Cir. 2003) ("That the defendant in form agrees to pay the fees independently of any monetary award or injunctive relief provided to the class in the agreement does not detract from the need to carefully scrutinize the fee award."); *Create-A-Card, Inc. v. Intuit, Inc.*, No. C 07-06452 WHA, 2009 WL 3073920, at *2 (N.D. Cal. Sept. 22, 2009) ("It is clearly within the Court's discretion to award less in fees than the amount sought by counsel, even absent defendant's objection to the requested amount."). The Court remains responsible for ensuring that any fee award is fair and reasonable. *Wing v. Asarco, Inc.*, 114 F.3d 986, 988 (9th Cir. 1997).

The Ninth Circuit "has affirmed the use of two separate methods for determining attorneys' fees, depending on the case": the percentage method and the lodestar method. *Hanlon*, 150 F.3d at 1029. Under CAFA, "[i]f a proposed settlement in a class action provides for a recovery of coupons to a class member, the portion of any attorney's fee award to class counsel that is attributable to the award of the coupons shall be based on the value to class

13

Case 8:07-cv-00667-AG-RNB   Document 252   Filed 03/31/11   Page 33 of 35   Page ID
#:6186
Case5:05-cv-03580-JF   Document287   Filed03/29/11   Page14 of 16

1    members of the coupons that are redeemed." 28 U.S.C. § 1712(a); *see also Fleury*, No. C-05-

2    4535 EMC, 2008 U.S. Dist. LEXIS 112459 (N.D. Cal. Aug. 9, 2008).  CAFA also provides that

3    "[i]f a proposed settlement in a class action provides for a recovery of coupons is *not* used to

4    determine the attorney's fees to be paid to class counsel, any attorney's fee shall be based upon

5    the amount of time class counsel reasonably expended working on the action." 28 U.S.C. §

6    1712(b)(1) (emphasis added).  Any fee approved under 28 U.S.C. § 1712(b) "shall be subject to

7    approval by the court and shall include an appropriate attorney's fee, if any, for obtaining

8    equitable relief." 28 U.S.C. § 1712(b)(2).

9         Plaintiffs assert that class counsel have incurred $7,109,247.09 in fees representing more

10   than 17,000 hours of time spent on litigation.  Counsel indicate that their work has included (1)

11   depositions of a dozen witnesses, (2) production of hundreds of thousands of documents, (3)

12   more than a hundred written discovery requests, (4) inspection of several of the printers at issue,

13   (5) consultations with industry personnel, (6) extensive work with experts, including the design

14   and implementation of independent testing; (7) numerous interviews of witnesses and putative

15   class members; (8) evaluation of information provided by current or former employees of HP

16   (including the HP engineers with primary responsibility for the design of some of the HP inkjet

17   printer models at issue); and (9) legal research as to the sufficiency of the claims.  McCarthy

18   Decl. ¶ 9.

19        Plaintiffs do not seek this entire amount.  Instead, they seek fees of approximately $2.3

20   million, or about thirty-two percent of the lodestar figure, along with about $600,000 in costs.

21   While this amount is acceptable to HP, this Court still must determine independently if it is fair.

22   A number of factors go into this determination, *see Kerr v. Screen Actors Guild, Inc.*, 526 F.2d

23   67, 70 (9th Cir. 1975) (listing factors), but the "key consideration in determining a fee award is

24   reasonableness in light of the benefit *actually conferred.*"  *Create-A-Card, Inc.*, 2009 WL

25   3073920, at *3.

26        Here, the settlement administrator indicates that approximately $1.5 million in e-credits

27   have been approved.  As discussed above, the actual cash value of these non-transferrable credits

28   is significantly less than $1.5 million.  At the same time, the discount in the cash value of the e-

14

1  credits is mitigated by value of the injunctive relief achieved by the settlement. While the

2  monetary value of such relief is uncertain, and the Court believes that Plaintiffs' assessment of

3  that value is significantly inflated, Plaintiffs were successful in persuading HP to discontinue, at

4  least for three years, a practice that allegedly misled a significant number of consumers. While

5  no precise value can be placed on the settlement in light of the many uncertainties involved, the

6  Court is satisfied that the ultimate value of the settlement to the class is roughly $1.5 million.

7      Plaintiffs' request for attorneys' fees exceeds that amount by more than half a million

8  dollars. While there is no question of collusion in this case, and the Court has no reason at all to

9  doubt that counsel put in the hours they claim, the extent to which an attorneys' fee award

10  exceeds the value of the settlement to the class is problematic, particularly given the "coupon"

11  nature of the settlement. As Judge Alsup noted under similar circumstances, "[t]o allow the

12  immediate parties to stipulate to pay class counsel a large sum whether or not a large benefit was

13  conferred on the class–and indeed even when it was not–would encourage collusive settlements.

14  . . . Tethering fees (in part) to benefit will help guard against collusion in the general run of

15  cases." *Create-a-Card*, 2009 WL 3073920, at *4. In addition, while this case was extensively

16  litigated over several years, the Court still has serious questions as to whether consumers

17  actually incurred significant injury from HP's actions. To allow an award of attorneys' fees to

18  outstrip the benefit to consumers in such cases would undermine the importance of focusing the

19  efforts of class-action counsel on issues that most affect consumers.

20      Accordingly, Plaintiffs will be awarded attorney's fees of $1,500,000, plus $596,990.70

21  in costs.

22  **D.    Class representative stipends**

23      In *Stanton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003), the Ninth Circuit recognized that

24  "named plaintiffs . . . are eligible for reasonable incentive payments." *Id.* at 977. The settlement

25  agreement provides for $1,000 incentive awards to the class representatives. These awards are

26  reasonable in light of the time and effort put in by the named Plaintiffs throughout the litigation.

27                                    **IV. ORDER**

28      Because it finds and concludes that the proposed settlement is fair and reasonable, the

15

Case No.
ORDER RE APPLICATION FOR ATTORNEYS' FEES, ETC.
(JFLC3)

Case 8:07-cv-00667-AG-RNB   Document 252   Filed 03/31/11   Page 35 of 35   Page ID
#:6188
Case5:05-cv-03580-JF   Document287   Filed03/29/11   Page16 of 16

1    Court will grant final approval and has been signed the parties' proposed settlement order, which

2    is filed concurrently herewith.  Pursuant to the foregoing discussion, Plaintiffs are awarded

3    attorneys' fees in the amount of $1,500,000, plus $596,990.70 in costs, and incentive payments

4    of $1,000 for each class representative.

5

6    DATED: March 29, 2011

7                                 JEREMY FOGEL
                                United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

16