THEODORE H. FRANK (SBN 196332)
　　tedfrank@gmail.com
1718 M Street NW
No. 236
Washington, DC 20036
(703) 203-3848

*In pro per*

FILED-SOUTHERN DIVISION
CLERK, U.S. DISTRICT COURT

AUG 22 2011

CENTRAL DISTRICT OF CALIFORNIA
BY　　　　　　　　　　DEPUTY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SANTA ANA DIVISION

| | |
|---|---|
| In re: HP LASERJET PRINTER LITIGATION | Case No. 8:07-cv-00667-AG-RNB<br><br>**CLASS ACTION**<br><br>**STATEMENT OF DECISIONS FROM OBJECTOR FRANK** |
| Theodore H. Frank,<br><br>　　　*Objector.* | Judge:　　Hon. Andrew J. Guilford<br>Date:　　February 14, 2011<br>Time:　　10:00 a.m.<br>Courtroom: 10D |

1　　　　Objector Theodore H. Frank respectfully brings to this Court's attention two recent
2　appellate court decisions.

3　　　　On August 19, 2011, the U.S. Court of Appeals for the Ninth Circuit decided *In re*
4　*Bluetooth Headset Prod. Liab. Litig.*, No. 09-56683 (attached as Exhibit 1). That opinion
5　contains several holdings relevant to this case.

6　　　　The Ninth Circuit, in vacating and remanding a district court's settlement approval,
7　held that where "a settlement agreement is negotiated *prior* to formal class certification,
8　consideration of [the] eight *Churchill* factors alone is not enough to survive appellate
9　review." Slip op. at 11115 (emphasis in original). Rather, courts "must be particularly
10　vigilant not only for explicit collusion, but also for more subtle signs that class counsel
11　have allowed pursuit of their own self-interests and that of certain class members to infect
12　the negotiations." *Id.* at 11115-16. Such signs include: "when counsel receive a
13　disproportionate distribution of the settlement, or when the class receives no monetary
14　distribution but class counsel are amply rewarded"; "when the parties negotiate a 'clear
15　sailing' arrangement providing for the payment of attorneys' fees separate and apart from
16　class funds"; and "when the parties arrange for fees not awarded to revert to defendants
17　rather than be added to the class fund." *Id.* at 11116. All three problematic "signs" are
18　present in this settlement. (Mr. Frank argued *Bluetooth*.)

19　　　　That class counsel negotiated a settlement that so disproportionately benefits class
20　counsel's interests at the expense of the class has other implications. As the U.S. Court of
21　Appeals for the Seventh Circuit decided August 18, 2011, in *In re Aqua Dots Prod. Liab.*
22　*Litig.*, No. 10-3847 (Easterbrook, J.) (attached as Exhibit 2), a class representative that
23　approves of a class action brought primarily for the benefit of class counsel without
24　"effectual relief for consumers" is not an adequate representative under Rule 23(a)(4).
25　Slip op. at 7-8. The adequacy of the class representatives are especially at issue here when
26　the original class representative is objecting to settlement approval.

27

28

1 | Dated: August 22, 2011

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

/s/ Theodore H. Frank
Theodore H. Frank
1718 M Street NW, No. 236
Washington, DC 20036
(703) 203-3848
*In pro per*

## CERTIFICATE OF SERVICE

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA, SANTA ANA DIVISION

| | |
|---|---|
| In re: HP LASERJET PRINTER LITIGATION CLASS ACTION | Case No. 8:07-cv-00667-AG-RNB |
| Theodore H. Frank, Objector (in pro se) | **STATEMENT OF DECISIONS FROM OBJECTOR FRANK** |

On this day, I caused a true and correct copy of the attached STATEMENT OF DECISIONS FROM OBJECTOR FRANK to be served via first-class mail upon addressees designated below.

| | |
|---|---|
| Counsel for the Class:<br>Richard L. Kellner<br>KABATECK BROWN KELLNER, LLP<br>644 S. Figueroa Street<br>Los Angeles, CA 90017<br>E-mail: rlk@kbklawyers.com<br><br>Chitwood, Harley Harnes LLP<br>Gregory E. Keller<br>Darren T. Kaplan<br>2300 Promenade II<br>1230 Peachtree Street, N.E.<br>Atlanta, GA 30309<br>Telephone: (404) 873-3900<br>Facsimile: (404) 876-4476 | McNicholas & McNicholas<br>Patrick McNicholas<br>10866 Wilshire Blvd., Suite 1400<br>Los Angeles, CA 90024<br>Telephone: (310) 474-1582<br>Facsimile: (310) 475-7871<br><br>Counsel for HP:<br>Kristofor T. Henning<br>Franco A. Corrado<br>MORGAN LEWIS & BOCKIUS LLP<br>1701 Market Street<br>Philadelphia, PA 19103<br>E-mail: Khenning@morganlewis.com<br>Fcorrado@morganlewis.com |

I declare under penalty of perjury that the foregoing is true and correct.

DATED this 22nd day of August, 2011.

(s) Adam Schulman   _Adam Schulman /s/_
Adam Schulman

FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

In re: BLUETOOTH HEADSET
PRODUCTS LIABILITY LITIGATION.

MICHAEL JONES; AMY KARLE; LORI
RAINES; KIMBERLY RYAN; BETTY
DUMAS; BETSEE FINLEE; EVAN
NASS; ALEKSANDRA SPEVACEK,
              *Plaintiffs-Appellees,*

and

WILLIAM J. BRENNAN; BILL
CLENDINENG; WILLIAM E. GERKEN;
BENJAMIN T. RITTGERS; HENRY
TOWSNER; SCOTT M. UNIVER;
AARON J. WALKER,
              *Objectors-Appellants,*

v.

GN NETCOM, INC.; MOTOROLA,
INC.; PLANTRONICS, INC.,
              *Defendants-Appellees.*

No. 09-56683

D.C. No.
2:07-ml-01822-
DSF-E

OPINION

Appeal from the United States District Court
for the Central District of California
Dale S. Fischer, District Judge, Presiding

Argued and Submitted
February 7, 2011—Pasadena, California

Filed August 19, 2011

11095

Case 8:07-cv-00667-AG-RNB   Document 258   Filed 08/22/11   Page 6 of 25   Page ID #:6295
Case: 09-56683   08/19/2011   ID: 7863831   DktEn. ,. 66-1   Page: 2 of 25

Before: Michael Daly Hawkins and Raymond C. Fisher,
Circuit Judges, and Jack Zouhary,* District Judge.

Opinion by Judge Hawkins

---

*The Honorable Jack Zouhary, United States District Judge for the
Northern District of Ohio, sitting by designation.

---

## COUNSEL

Theodore H. Frank, Center for Class Action Fairness, Washington, D.C., for the objectors-appellants.

Daniel L. Warshaw, Pearson, Simon Warshaw & Penny, Sherman Oaks, California, for the plaintiffs-appellees.

Terrence J. Dee, Kirkland & Ellis, Chicago, Illinois, for the defendants-appellees.

---

## OPINION

HAWKINS, Senior Circuit Judge:

   The settlement agreement approved in this products liability class action provides the class $100,000 in *cy pres* awards

and zero dollars for economic injury, while setting aside up
to $800,000 for class counsel and $12,000 for the class repre-
sentatives—amounts which the court subsequently awarded in
full in a separate order. William Brennan and other class
members (collectively "Objectors") challenge the fairness and
reasonableness of the settlement and appeal both the approval
and fee orders, arguing the district court abused its discretion
in failing to consider whether the gross disproportion between
the class award and the negotiated fee award was reasonable.
We agree that the disparity between the value of the class
recovery and class counsel's compensation raises at least an
inference of unfairness, and that the current record does not
adequately dispel the possibility that class counsel bargained
away a benefit to the class in exchange for their own interests.
We therefore vacate both orders and remand so that the dis-
trict court may conduct a more searching inquiry into the fair-
ness of the negotiated distribution of funds, as well as
consider the substantive reasonableness of the attorneys' fee
request in light of the degree of success attained.

## FACTS AND PROCEEDINGS

### I.  Background

Plaintiffs filed twenty-six putative class actions in courts
around the country against Motorola, Inc., Plantronics, Inc.,
and GN Netcom, Inc. (collectively "defendants"), alleging
defendants knowingly failed to disclose the potential risk of
noise-induced hearing loss[1] associated with extended use of
their wireless Bluetooth headsets at high volumes, in violation
of state consumer fraud protection and unfair business prac-
tice laws.[2] The Judicial Panel on Multidistrict Litigation coor-

---

[1] Plaintiffs define noise-induced hearing loss as the gradual and perma-
nent loss of hearing over time caused by unsafe levels of noise.

[2] Plaintiffs allege that defendants violated California's Consumers Legal
Remedies Act, Cal. Civ. Code § 1750 *et seq.*, False Advertising Law, Cal.
Bus. & Prof. Code § 17500 *et seq.*, and Unfair Competition Law, Cal. Bus.
& Prof. Code § 17200 *et seq.*, as well as Illinois' Deceptive Trade Prac-
tices Act, 815 ILCS 510, and Consumer Fraud and Deceptive Business
Practices Act, 815 ILCS 505.

dinated these cases in *In re Bluetooth Headset Products Liability Litigation* in the Central District of California.[3]

Plaintiffs' Second Amended Consolidated Complaint sought money damages on behalf of millions of individuals who had purchased Bluetooth headsets since June 30, 2002,[4] purportedly in reliance on allegedly misleading representations about the safety and usability of the product. Plaintiffs alleged that defendants advertised "talk times" of three hours or longer, while in reality, consumers could not safely use the headsets for more than a few minutes each day without exposing themselves to the risk of noise-induced hearing loss—a risk that defendants failed to disclose in any of their marketing materials. The complaint did not state a claim for personal injury but asserted economic injury, alleging plaintiffs would not have purchased their Bluetooth headsets but for defendants' willful false advertising. Plaintiffs sought actual damages in the amount paid for the product, which they claimed to be between $70 and $150 per headset, along with injunctive relief, restitution, punitive damages, attorneys' fees and costs.

Class counsel spent considerable time researching legal and industry standards on acceptable noise levels, surveying warnings on other audio devices, obtaining acoustic test results and other documents from defendants, and working with experts to review this data and evaluate the risk of noise-induced hearing loss. The parties voluntarily exchanged discovery and held at least three in-person meetings to discuss the merits of the litigation and discovery issues before participating in a

---

[3]Another lawsuit raising similar questions of law and fact, *Kirkpatrick v. Motorola*, No. 07-5570 (DSF), was subsequently filed and also consolidated with the multi-district litigation.

[4]The district court ultimately certified a class comprised of all persons and entities in the United States who between June 30, 2002 and February 19, 2009 purchased a Bluetooth headset manufactured by one of the defendants. More than 100 million Bluetooth headsets were sold during that period.

formal mediation session, overseen by a retired California Court of Appeal Justice.

Unable to reach a settlement at that time, defendants shortly thereafter filed a joint motion to dismiss on various grounds, insisting their products are safe and denying any wrongdoing on their part. The motion to dismiss was fully briefed by both sides, but before the court heard argument, and before any motion was made to certify a class for merits purposes, the parties successfully participated in another mediation session and filed a proposed class action settlement agreement purporting to resolve all claims.

## II.  The Terms of the Settlement Agreement

In exchange for plaintiffs' general release and waiver of all asserted claims defendants agreed to: (1) post acoustic safety information on their respective websites and in their product manuals and/or packaging for new Bluetooth headsets; (2) pay a total of $100,000 in *cy près* awards to be distributed among four non-profit organizations dedicated to the prevention of hearing loss;[5] (3) pay notice costs up to $1.2 million; (4) pay documented costs to class counsel up to $38,000, or if notice costs fell below $1.2 million, no more than $50,000; (5) pay attorneys' fees in an amount set by the district court, not to exceed $800,000; and (6) pay an incentive award in an amount set by the district court, not to exceed $12,000, to be divided among the nine class representatives.[6] Approval of the settlement was not conditioned on any minimum attorneys'

---

[5]The recipient organizations are the Center for Independent Living Research at the University of Tennessee College of Medicine, the National Hearing Conservation Association, the American Speech and Hearing Association, and the Greater Los Angeles Agency on Deafness.

[6]These negotiated attorneys' fee and incentive awards were provided under what is known as a "clear sailing agreement," wherein the defendant agrees not to oppose a petition for a fee award up to a specified maximum value.

fee award, minimum costs award, or the payment of any incentive award to any plaintiff.

## III.   Approval of the Settlement Agreement

Pursuant to the district court's preliminary approval order directing the provision of notice, the parties implemented a comprehensive notice plan comprised of direct mailings, magazine advertisements, and a dedicated Internet website, reaching about 80% of potential class members an average of more than 2.5 times each. Of the millions of potential class members, 715 people validly elected to opt out of the settlement. Fifty people, including the seven Appellants before us now, sent in objections to the settlement and were given an opportunity to be heard at the fairness hearing. After considering the objections, the district court entered an Order ("Approval Order") and Final Judgment certifying the class for settlement purposes only, pursuant to Federal Rule of Civil Procedure 23(b)(3), and approving the settlement agreement as fair, reasonable, and adequate.

## IV.   Award of Fees and Costs

After ordering class counsel to produce additional unredacted billing records and reviewing the files submitted, the district court later entered a separate order ("Fee Order") awarding $850,000 to class counsel for fees and costs, based on a lodestar method calculation, and $12,000 to be distributed among the nine representative plaintiffs.

Objectors timely appealed both the Approval and Fee Orders.

## STANDARDS OF REVIEW

We review a district court's approval of a class action settlement for clear abuse of discretion. *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 963 (9th Cir. 2009). Such review is "ex-

tremely limited," and we "will affirm if the district judge
applies the proper legal standard and his findings of fact are
not clearly erroneous." *In re Mego Fin. Corp. Sec. Litig.*, 213
F.3d 454, 458 (9th Cir. 2000).

We also review for abuse of discretion a district court's
award of fees and costs to class counsel, as well as its method
of calculation. *Lobatz v. U.S. W. Cellular of Cal., Inc.*, 222
F.3d 1142, 1148-49 (9th Cir. 2000). Findings of fact underly-
ing an award of fees are reviewed for clear error. *Id.* at 1148.

## DISCUSSION

[1] Objectors contest both the fee award and the approval
order, but their objections are motivated by the same issue:
what they claim are excessive attorneys' fees, negotiated
unfairly by class counsel and ultimately awarded unreason-
ably by the court. Objectors argue that the district court
should not have approved as fair and reasonable a settlement
agreement that, on its face, so disproportionately advances the
interests of class counsel over those of the class itself. They
further contend that, even if the approval order can be upheld,
class counsel should not have been awarded eight times the
amount of the class recovery. Rather, they argue, the two
negotiated sums should have been viewed as a "constructive
common fund" and fees limited to an appropriate percentage
thereof.

We would ordinarily begin our review with the Approval
Order, whose vacatur would render moot the challenge to the
Fee Order. However, because Objectors' challenge to the fair-
ness of the settlement agreement relies, in large part, on a
determination that the requested fees were substantively
unreasonable, we instead begin by temporarily assuming the
Approval Order to be valid and proceed to examine the rea-
sonableness of the fee award first, before then returning to
review the Approval Order itself.

### I.  Attorneys' Fee Award

#### A.  Applicable Legal Standards

[2] While attorneys' fees and costs may be awarded in a certified class action where so authorized by law or the parties' agreement, Fed. R. Civ. P. 23(h), courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount. *See Staton v. Boeing Co.*, 327 F.3d 938, 963-64 (9th Cir. 2003); *Knisley v. Network Assoc.*, 312 F.3d 1123, 1125 (9th Cir. 2002); *Zucker v. Occidental Petroleum Corp.*, 192 F.3d 1323, 1328-29 & n.20 (9th Cir. 1999). The reasonableness of any fee award must be considered against the backdrop of the "American Rule," which provides that courts generally are without discretion to award attorneys' fees to a prevailing plaintiff unless (1) fee-shifting is expressly authorized by the governing statute; (2) the opponents acted in bad faith or willfully violated a court order; or (3) "the successful litigants have created a common fund for recovery or extended a substantial benefit to a class." *Alyeska Pipeline Serv. Co. v. Wilderness Soc.*, 421 U.S. 240, 275 (1975) (Brennan, J., dissenting); *accord Zambrano v. City of Tustin*, 885 F.2d 1473, 1481 & n.25 (9th Cir. 1989).

The award of attorneys' fees in a class action settlement is often justified by the common fund or statutory fee-shifting exceptions to the American Rule, and sometimes by both. *See Staton*, 327 F.3d at 972; *see also Court Awarded Attorney Fees, Third Circuit Task Force*, 108 F.R.D. 237, 250 (1985) (purpose of common-fund exception is to "avoid the unjust enrichment of those who benefit from the fund that is created, protected, or increased by the litigation and who otherwise would bear none of the litigation costs"). We have approved two different methods for calculating a reasonable attorneys' fee depending on the circumstances.

The "lodestar method" is appropriate in class actions brought under fee-shifting statutes (such as federal civil

rights, securities, antitrust, copyright, and patent acts), where the relief sought—and obtained—is often primarily injunctive in nature and thus not easily monetized, but where the legislature has authorized the award of fees to ensure compensation for counsel undertaking socially beneficial litigation. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998); *In re General Motors Corp. Pick-up Truck Fuel Tank Prods. Liability Litig.*, 55 F.3d 768, 821 (3d Cir. 1995).

The lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer. *Staton*, 327 F.3d at 965. Though the lodestar figure is "presumptively reasonable," *Cunningham v. Cnty. of Los Angeles*, 879 F.2d 481, 488 (9th Cir. 1988), the court may adjust it upward or downward by an appropriate positive or negative multiplier reflecting a host of "reasonableness" factors, "including the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment," *Hanlon*, 150 F.3d at 1029 (citing *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975)[7]). Foremost among these consider-

---

[7]*Kerr* identifies twelve factors relevant to a determination of reasonable attorneys' fees:

> (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and the ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

526 F.2d at 70. Many of these factors are "subsumed within the initial calculation of hours reasonably expended at a reasonable rate." *Hensley v. Eckerhart*, 461 U.S. 424, 434 n.9 (1983), and the *Kerr* factors only war-

ations, however, is the benefit obtained for the class. *See Hensley v. Eckerhart*, 461 U.S. 424, 434-36 (1983); *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009) (ultimate reasonableness of the fee "is determined primarily by reference to the level of success achieved by the plaintiff"). Thus, where the plaintiff has achieved "only limited success," counting *all* hours expended on the litigation—even those reasonably spent—may produce an "excessive amount," and the Supreme Court has instructed district courts to instead "award only that amount of fees that is reasonable in relation to the results obtained." *Hensley*, 461 U.S. at 436, 440.

[3] Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method. *In re Mercury Interactive Corp.*, 618 F.3d 988, 992 (9th Cir. 2010) (citing *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000)). Because the benefit to the class is easily quantified in common-fund settlements, we have allowed courts to award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar. Applying this calculation method, courts typically calculate 25% of the fund as the "benchmark" for a reasonable fee award, providing adequate explanation in the record of any "special circumstances" justifying a departure. *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990); *accord Powers*, 229 F.3d at 1256-57; *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989).

[4] Though courts have discretion to choose which calculation method they use, their discretion must be exercised so as

---

rant a departure from the lodestar figure in "rare and exceptional cases," *Fischer v. SJB-P.D., Inc.*, 214 F.3d 1115, 1119 n.4 (9th Cir. 2000) (quoting *Penn. v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986) (quotation marks omitted). At least one factor is no longer valid—whether the fee was fixed or contingent. *See Davis v. City and Cnty. of S.F.*, 976 F.2d 1536, 1546 (9th Cir. 1992).

to achieve a reasonable result. *See In re Coordinated Pretrial Proceedings*, 109 F.3d at 607 (citing *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1294-95 n.2 (9th Cir. 1994)). Thus, for example, where awarding 25% of a "mega-fund" would yield windfall profits for class counsel in light of the hours spent on the case, courts should adjust the benchmark percentage or employ the lodestar method instead. *Six Mexican Workers*, 904 F.2d at 1311; *see In re Prudential Ins. Co. America Sales Practice Litig. Agent Actions*, 148 F.3d 283, 339 (3d Cir. 1998) (explaining that basis for inverse relationship between size of fund and percentage awarded for fees is that "in many instances the increase in recovery is merely a factor of the size of the class and has no direct relationship to the efforts of counsel" (internal quotation marks omitted)).

## B. Approval of the Attorneys' Fee Award in the Present Case

The district court here applied the lodestar method, although it never announced a lodestar figure. After finding numerous defects in class counsel's proposed computation of its $1.6 million lodestar, including duplicative entries, excessive charges for most categories of services, a substantial amount of block billing, and use of an inflated hourly rate, the court announced that its own analysis revealed the lodestar still "substantially exceeds" the $800,000 defendants agreed to pay.

Citing our previous observation that a "defendant is interested only in disposing of the total claim asserted against it," *Staton*, 327 F.3d at 964, Objectors argue the district court should have treated this settlement as producing a "constructive common fund" and employed a percentage-of-recovery method to assess the reasonableness of the $800,000 fee award, rather than relying exclusively on a lodestar calculation. Several courts have embraced the constructive common fund approach, warning that "private agreements to structure artificially separate fee and settlement arrangements" should

not enable parties to circumvent the 25% benchmark require-
ment on "what is in economic reality a common fund situa-
tion." *In re Gen. Motors*, 55 F.3d at 821; *see Johnston v.
Comerica Mortg. Corp.*, 83 F.3d 241, 246 (8th Cir. 1996)
("[I]n essence the entire settlement amount comes from the
same source. The award to the class and the agreement on
attorney fees represent a package deal."); *cf. Manual for Com-
plex Litig.* § 21.75 (4th ed. 2008) ("If an agreement is reached
on the amount of a settlement fund and a separate amount for
attorney fees . . . the sum of the two amounts ordinarily
should be treated as a settlement fund for the benefit of the
class."). Plaintiffs insist this is not a common-fund case
because the relief obtained was primarily injunctive in nature
and because, as prevailing parties under California Civil Code
§ 1750's fee-shifting provision, they are entitled to attorneys'
fees calculated under the lodestar method.

[5] Whether or not we view this as a common-fund case,
we agree with Objectors that the district court needed to do
more to assure itself—and us—that the amount awarded was
not unreasonably excessive in light of the results achieved.
Notably, the district court made (1) no explicit calculation of
a reasonable lodestar amount; (2) no comparison between the
settlement's attorneys' fees award and the benefit to the class
or degree of success in the litigation; and (3) no comparison
between the lodestar amount and a reasonable percentage
award. On this record, we lack a sufficient basis for determin-
ing the reasonableness of the award.

First, our discomfort is not with the choice of the lodestar
method as a primary basis for calculation, but rather the
absence of explicit calculation or explanation of the district
court's result. The district court "s[aw] no need" to calculate
a precise lodestar amount in light of defendants' willingness
to pay and because reducing the award below $800,000 would
in no way benefit the class or enhance the *cy pres* award. But
a defendant's advance agreement not to object cannot relieve
the district court of its duty to assess fully the reasonableness

of the fee request. *See Staton*, 327 F.3d at 963-64; *Knisley*, 312 F.3d at 1125. Under the lodestar method, the district court must calculate the lodestar figure based on the number of hours *reasonably* expended on the litigation, adjusting the figure to account for the degree of success class counsel attained, along with other factors. From the face of the Fee Order, however, we do not have sufficient information from which to conclude that the district court included a reasonable number of hours in its lodestar "calculation" or that it "considered the relationship between the amount of the fee awarded and the results obtained." *Hensley*, 461 U.S. at 437 ("It [is] important . . . for the district court to provide a concise but clear explanation of its reasons for the fee award."); *accord McCown*, 565 F.3d at 1102 ("Once the district court completes its analysis of the final lodestar amount, it must explain how it arrived at its determination with sufficient specificity to permit an appellate court to determine whether the district court abused its discretion in the way the analysis was undertaken."). Instead, we know only that the district court believed the lodestar figure to be less than $1.6 million but greater than $800,000.

Second, the district court declined to reduce the award because the injunctive relief and *cy pres* payment provided "at least minimal benefit," even while acknowledging that "the settlement did not achieve all the goals of the suit." The district court appears to have conflated the Rule 23(e) standard for approval of a settlement agreement (which requires consideration of whether the settlement agreement offers plaintiffs more than they are likely to achieve at trial) with the requirement that the fee award be "reasonable in relation to the results obtained." *Hensley*, 461 U.S. at 440. Although the court stated that the "substantial reduction" below the lodestar accounted for the fact that "there were a number of claims for which class counsel achieved no relief," we remain in the dark both as to how substantial a reduction it was and what level of success plaintiffs in fact achieved. The district court made no findings in its Approval Order with regard to the

value *vel non* of the injunctive relief, noting only that the *cy pres* award was an appropriate form of relief given the large class size. Nor did it discuss in the Fee Order the value of the injunctive relief or whether it in fact was "socially beneficial" as would justify a fee award under California Civil Code § 1750's fee-shifting provision. *Cf.* Fed. R. Civ. P. 23(h), 2003 Advisory Cmte. Notes ("Settlements involving non-monetary provisions for class members also deserve careful scrutiny to ensure that these provisions have actual value to the class."); *In re TD Ameritrade Accountholder Litig.*, 266 F.R.D. 418, 423 (N.D. Cal. 2009) ("[T]he standard [under Rule 23(e)] is not how much money a company spends on purported benefits, but the value of those benefits to the class." (citing *O'Keefe v. Mercedes-Benz United States, LLC*, 214 F.R.D. 266, 304 (M.D. Pa. 2003))). With neither a lode-star figure nor a sense of what degree of success this settle-ment agreement achieved, we have no basis for affirming the fee award as reasonable under the lodestar approach.

Third, even though a district court has discretion to choose how it calculates fees, we have said many times that it "abuses that 'discretion when it uses a mechanical or formu-laic approach that results in an unreasonable reward.' " *In re Mercury Interactive Corp.*, 618 F.3d at 992 (quoting *Powers*, 229 F.3d at 1256). Thus, even though the lodestar method may be a perfectly appropriate method of fee calculation, we have also encouraged courts to guard against an unreasonable result by cross-checking their calculations against a second method. *See, e.g., Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050-51 (9th Cir. 2002); *see also In re Gen. Motors*, 55 F.3d at 820. Just as the lodestar method can "confirm that a percentage of recovery amount does not award counsel an exorbitant hourly rate," the percentage-of-recovery method can likewise "be used to assure that counsel's fee does not dwarf class recovery." *In re Gen. Motors*, 55 F.3d at 821 n.40. "If the lodestar amount overcompensates the attorneys according to the 25% benchmark standard, then a second look to evaluate the reasonableness of the hours worked and rates

claimed is appropriate." *In re Coordinated Pretrial Proceedings*, 109 F.3d at 607.

[6] If the district court here took that second look, the record does not reflect it. Absent any explanation from the district court, we are concerned that the amount awarded was 83.2% of the total amount defendants were willing to spend to settle the case, viewing the $800,000 allotment for attorneys' fees, the $12,000 allotment for an incentive award, the $100,000 *cy pres* award, and the $50,000 allotment for fees as a "constructive common fund." Twenty-five percent of this $962,000 fund, by contrast, would have yielded only $240,500 in attorneys' fees. Even if we included the $1.2 million notice costs in the constructive fund (and accordingly reduced the fees to $38,000), the attorneys' fees awarded would constitute 37.2% of this $2.15 million fund, in contrast to a 25% benchmark figure of $537,500. Plaintiffs urge us to find that the fee award is justified because the injunctive relief confers a valuable benefit and was the primary objective of the lawsuit, but the district court did not make findings on the value of the injunctive relief, so we cannot evaluate whether it justifies an otherwise disproportionate award.[8]

[7] While we cannot say the disproportion between the fee award and the benefit obtained for the class was *per se* unreasonable, in the absence of an adequate explanation of the award, "we have no choice but to remand the case to the district court to permit it to make the necessary calculations and provide the necessary explanations." *McCown*, 565 F.3d at 1102 (citing *Tutor-Saliba Corp. v. City of Hailey*, 452 F.3d 1055, 1065 (9th Cir. 2006)).

---

[8]We note, however, that the value of the injunctive relief is not apparent to us from the face of the complaint, which seeks to recover significant monetary damages for alleged economic injury, nor from the progression of the settlement talks, the last of which occurred after defendants had already voluntarily added new warnings to their websites and product manuals.

On remand, the district court should (1) decide whether to treat the settlement as a common fund; (2) choose the lodestar or percentage method for calculating a reasonable fee and make explicit calculations; (3) ensure that the fee award is reasonable considering, *inter alia*, the degree of success in the litigation and benefit to the class; and (4) if standard calculations yield an unjustifiably disproportionate award, adjust the lodestar or percentage accordingly.

## II.   Approval of the Settlement Agreement

### A.   Applicable Legal Standards

[8] Approval of the settlement agreement was not conditioned on the award of attorneys' fees and costs or an incentive award, and therefore our vacatur of the fee award does not necessitate invalidation of the approval order. *See, e.g., Rodriguez*, 563 F.3d at 969 (affirming approval of the settlement but reversing and remanding the award of attorneys' fees). Nonetheless, because the parties expressly negotiated a possibly unreasonable amount of fees, and because the district court did not take this possibility into account in reviewing the settlement's fairness the first time around, we must vacate and remand the Approval Order as well, so that the court may appropriately factor this into its Rule 23(e) analysis. On remand, the district court should reconsider its approval of the settlement after recalculating a reasonable amount of fees for class counsel.

[9] Courts have long recognized that "settlement class actions present unique due process concerns for absent class members." *Hanlon*, 150 F.3d at 1026. One inherent risk is that class counsel may collude with the defendants, "tacitly reducing the overall settlement in return for a higher attorney's fee." *Knisley*, 312 F.3d at 1125; *see Evans v. Jeff D.*, 475 U.S. 717, 733 (1986) (recognizing that "the possibility of a tradeoff between merits relief and attorneys' fees" is often implicit in

class action settlement negotiations); *In re Gen. Motors*, 55 F.3d at 805.

[10] To guard against this potential for class action abuse, Rule 23(e) of the Federal Rules of Civil Procedure requires court approval of all class action settlements, which may be granted only after a fairness hearing and a determination that the settlement taken as a whole is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2); *see Staton*, 327 F.3d at 972 n.22 (court's role is to police the "inherent tensions among class representation, defendant's interests in minimizing the cost of the total settlement package, and class counsel's interest in fees"); *Hanlon*, 150 F.3d at 1026.

The factors in a court's fairness assessment will naturally vary from case to case, but courts generally must weigh:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.

*Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993).

The district court considered each of these factors and found that several of them favored settlement approval: (1) plaintiffs' case was not particularly strong in light of defendants' significant defenses; (2) further litigation would be time-consuming, complex, and expensive for both sides; (3) the settlement provided injunctive and *cy pres* awards, which did not do the class any harm and which was more than plain-

tiffs might achieve at trial given the litigation risks; (4) the parties had already consulted experts and exchanged significant discovery permitting an informed decision about settlement; and (5) the settlement was negotiated over an extended period of time by experienced counsel on both sides, and was mediated and approved by a retired judge.

But where, as here, a settlement agreement is negotiated *prior* to formal class certification, consideration of these eight *Churchill* factors alone is not enough to survive appellate review.

[11] Prior to formal class certification, there is an even greater potential for a breach of fiduciary duty owed the class during settlement. Accordingly, such agreements must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair. *Hanlon*, 150 F.3d at 1026; *accord In re Gen. Motors*, 55 F.3d at 805 (courts must be "even more scrupulous than usual in approving settlements where no class has yet been formally certified"); *Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust Co. of Chicago*, 834 F.2d 677, 681 (7th Cir. 1987) (Posner, J.) ("[W]hen class certification is deferred, a more careful scrutiny of the fairness of the settlement is required."); *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982) (Friendly, J.) (reviewing courts must employ "even more than the usual care"); *see also Manual for Complex Litig.* § 21.612 (4th ed. 2004). The district court's approval order must show not only that "it has explored [the *Churchill*] factors comprehensively," but also that the settlement is "not [ ] the product of collusion among the negotiating parties." *In re Mego Fin. Corp.*, 213 F.3d at 458.

[12] Collusion may not always be evident on the face of a settlement, and courts therefore must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-

interests and that of certain class members to infect the negotiations. *Staton*, 327 F.3d at 960; *see also Third Circuit Task Force*, 108 F.R.D. at 266. A few such signs are:

> (1) "when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded," *Hanlon*, 150 F.3d at 1021; *see Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 952 (7th Cir. 2006); *Crawford v. Equifax Payment Servs., Inc.*, 201 F.3d 877, 882 (7th Cir. 2000);

> (2) when the parties negotiate a "clear sailing" arrangement providing for the payment of attorneys' fees separate and apart from class funds, which carries "the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class," *Lobatz*, 222 F.3d at 1148; *see Weinberger v. Great N. Nekoosa Corp.*, 925 F.2d 518, 524 (1st Cir. 1991) ("[L]awyers might urge a class settlement at a low figure or on a less-than-optimal basis in exchange for red-carpet treatment on fees."); and

> (3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund, *see Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781, 785 (7th Cir. 2004) (Posner, J.).

## B. Approval of the Settlement Agreement in the Present Case

[13] Here, the pre-certification settlement agreement included all three of these warning signs. As discussed earlier, the settlement's provision for attorneys' fees is apparently disproportionate to the class reward, which includes no monetary distribution. The settlement included a "clear sailing agreement" in which defendants agreed not to object to an award

of attorneys' fees up to eight times the monetary *cy pres* relief afforded the class. Moreover, the settlement also contained a "kicker": all fees not awarded would revert to defendants rather than be added to the *cy pres* fund or otherwise benefit the class. Confronted with these multiple indicia of possible implicit collusion, the district court had a special "obligat[ion] to assure itself that the fees awarded in the agreement were not unreasonably high," *Staton*, 327 F.3d at 965, for if they were, "the likelihood is that the defendant obtained an economically beneficial concession with regard to the merits provisions, in the form of lower monetary payments to class members or less injunctive relief for the class than could otherwise have been obtained," *id.* at 964.

[14] The Approval Order, however, does not provide adequate assurance. Rather than inquire further into why the parties had negotiated such a disproportionate distribution between fees and relief, the district court did not scrutinize the clear sailing attorneys' fee provision because (1) the parties claimed to negotiate the "core terms" of the settlement agreement with a neutral mediator before turning to fees, (2) the attorneys' fee provision was severable from the agreement, and (3) the fees were to come from a separate fund and thus would have no bearing on the amount of class recovery.

But these factors did not obviate the need to examine the fee provision in light of the rest of the agreement. First, the mere presence of a neutral mediator, though a factor weighing in favor of a finding of non-collusiveness, is not on its own dispositive of whether the end product is a fair, adequate, and reasonable settlement agreement. While the Rule 23(a) adequacy of representation inquiry is designed to foreclose class certification in the face of "*actual* fraud, overreaching or collusion," the Rule 23(e) reasonableness inquiry is designed precisely to capture instances of unfairness not apparent on the face of the negotiations. *Staton*, 327 F.3d at 960 (emphasis in original). In a Third Circuit class action settlement where class counsel provided verbal assurances that "attorneys' fees