O

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| In re: HP LASER PRINTER LITIGATION | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | CASE NO. SACV 07-0667 AG (RNBx) <br><br> ORDER GRANTING FINAL APPROVAL OF CLASS SETTLEMENT AND GRANTING APPLICATION FOR ATTORNEY FEES AND COSTS AND INCENTIVE AWARDS |

Plaintiff Kelsea Baggett ("Plaintiff Baggett") filed a Motion for Final Approval of Settlement ("Motion").  Plaintiff James Young ("Plaintiff Young") and Plaintiff Baggett also filed a Motion for Attorneys' Fees and Reimbursement of Litigation Expenses ("Application").  After oral argument and after reviewing all papers and arguments submitted, including some very recent submissions and cases, the Court GRANTS the Motion and GRANTS the Application.

## BACKGROUND

This case challenges Hewlett-Packard's practice of including a "hardstop" on its color laser jet printers that shuts down all printing operations when a toner cartridge reaches "empty," even though some toner remains in the cartridge. Plaintiff Baggett and Plaintiff Young each filed a class action case against Defendant based on cartridge issues with some Hewlett Packard color LaserJet printers. Plaintiffs alleged that the toner cartridges would shut down even though some toner was left. Plaintiff Baggett alleged that the shutdown could not be overriden. Plaintiff Young alleged that later models would also shut down with toner remaining but the process could be overridden by the user.

Plaintiff Baggett asserted claims for violation of the California Unfair Competition Law, unjust enrichment, conversion, trespass to chattels, and fraudulent concealment. The Court dismissed the claim for unjust enrichment but denied Defendant's motion to dismiss the other claims. The Court later granted summary judgment against Plaintiff Baggett and denied as moot the motion for class certification. Plaintiff Baggett appealed to the Ninth Circuit.

Plaintiff Young asserted claims for violation of the California Unfair Competition Law, the California Consumers Legal Remedies Act, unjust enrichment, conversion, trespass to chattels, and fraudulent concealment. Defendant moved to dismiss, which this Court granted. Plaintiff Young appealed to the Ninth Circuit.

Both Plaintiffs are dismissing their appeals based on this settlement. Class counsel contends that settlement was reached largely because Defendant admitted it changed its practices in response to this litigation, and has agreed to related injunctive relief. The parties have now reached a settlement and ask the Court to grant final approval.

The Court held a final fairness hearing on the Motion and Application. The Court then took the matter under submission for further review, and has now reviewed recent cases that might affect its ruling, including cases submitted along the way by the parties and objectors. In particular, the Court has considered the very recent ruling in *In re Bluetooth Headset Liability*

1  *Litigation*, — F.3d —, 2011 WL 3632604 (9th Cir. Aug. 19, 2011).  The Court has now

2  completed its review and thus issues this Order.

3

4  **ANALYSIS**

5

6  **1.       CLASS CERTIFICATION FOR PURPOSES OF SETTLEMENT**

7

8          Plaintiffs seek class certification for purposes of settlement.  As set forth previously,

9  Plaintiffs move for final certification of "a class (the 'Settlement Class') of all individual or

10  entity end-users who purchased, leased, received as a gift or otherwise acquired in the United

11  States an Affected Model (as defined in the Stipulation of Settlement). Excluded from the

12  Settlement Class are all persons who are employees, directors, officers, and/or agents of HP or

13  its subsidiaries and affiliated companies, as well as the Court and its immediate family and

14  staff."

15          As mentioned, the Court previously granted Plaintiffs' request to certify a class for

16  purposes of settlement on a preliminary basis.  (Dkt. # 219.)  The Court previously considered

17  the four prerequisites set forth in Federal Rule of Civil Procedure 23(a) and determined that this

18  class preliminarily met those requirements.  At that stage, the Court carefully reviewed the

19  proposed terms and gave substantial guidance to the parties on issues such as the proposed

20  release of claims by class members.

21          Nothing has changed since the Court granted preliminary approval that would warrant a

22  deviation from the Court's previous ruling.  Accordingly, the Court certifies the class for

23  purposes of class settlement for the reasons specified in more detail in the preliminary approval

24  order.

25

26

27

28

## 2.       APPROVAL OF CLASS SETTLEMENT

### 2.1       Settlement Terms

The primary relief here is injunctive relief, with Defendant disclosing the existence and effect of the mechanism in the printer cartridges that stops printing after a certain number of pages.  Defendant will also cease using that mechanism in future printers.

There is also a nominal monetary benefit to class members, for a total potential pay-out of $5 million.  Each member of the *Baggett* class (covering printer models with cartridges whose shutdown cannot be overridden) will receive a $13 e-credit per qualifying printer if the class member shows proof of ownership of a class printer.  Members of the *Young* class (covering printer models with cartridges whose shutdown can be overridden) will receive $7 e-credit per qualifying printer if they provide proof of ownership of a class printer and submit a declaration that they received a message the cartridge was empty, believed they were out of toner due to the message, and removed the cartridge without using the available override function.  (Motion 1:22-27, Motion 11:21-12:10.)

The e-credits "will be redeemable for printers and printer supplies offered at www.shopping.hp.com."  (Stipulation of Settlement ¶ 43.)  There are some products available for less than the amount of the $13 e-credit.  Therefore, since some class members can get something for free, "coupon settlement" concerns are alleviated.

In exchange for the relief provided, class members "shall be deemed to have, and by operation of the Final Order and Judgment shall have, fully, finally and forever released, relinquished, and discharged all Released Claims against the Released Parties."  (Stipulation of Settlement ¶ 45.)

The parties appeared before the Honorable James L. Warren (Retired) to mediate settlement.  As set forth in *In re Bluetooth*, "the mere presence of a neutral mediator, though a factor weighing in favor of a finding of non-collusiveness, is not on its own dispositive of whether the end product is a fair, adequate, and reasonable settlement agreement." *In re*

4

*Bluetooth*, 2011 WL 3632604, at *10.  With this limitation in mind, the Court notes this factor when concluding that the Court should approve the settlement and award fees.

### 2.2    Injunction

The Stipulation of Settlement (Dkt. # 213, Ex. A) sets forth the injunction at paragraphs 31-33.  The Court now GRANTS an injunction consistent with those terms.

### 2.3    Objectors and Opt-Outs

There are several objectors in this case.  Plaintiff Young is now one of the objectors. The objectors who filed their objections properly before the deadline of January 4, 2011, raise unconvincing arguments that the compensation to the class should be greater.  Several additional objectors filed untimely objections.  Even though those objectors missed the deadline, the Court nonetheless considered their objections.  Besides the formal objectors, approximately 40 other class members sent letters to the class administrator expressing some dissatisfaction with the settlement.

The objections are not sufficiently meritorious to justify changing the terms of the proposed settlement.  Further, the credibility of at least one objector was called into question based on misstatements or mischaracterizations of evidence in his submissions to this Court.

### 2.4    Notice to Class

"Adequate notice is critical to court approval of a class settlement."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998).  Since Plaintiffs seek certification under Rule 23(b)(3), notice must comply with the requirements of Rule 23(c)(2)(B):

> For any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

The parties have provided proper notice consistent with the preliminary settlement approval. The Court directed that notice be provided by: (1) emailing the "long form" notice to the last known email address of those members of the Settlement Class who have a valid email address in Defendant's registration database and have not withheld their consent to be contacted via email; (2) publishing the "summary notice" in USA Weekend, Parade, People, and CIO Magazine as well as placing banner advertisements on Yahoo.com and other websites; and (3) providing a link on both notice forms to a settlement website.

The number of claim forms submitted, the number of opt-outs, and the number of objectors all indicate that notice was sufficient. The Court finds that class notice was appropriate in form and substance.

## 2.5    Settlement Factors

"Although Rule 23(e) is silent respecting the standard by which a proposed settlement is to be evaluated, the universally applied standard is whether the settlement is fundamentally fair, adequate and reasonable." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). The settlement as a whole, rather than the component parts, is the proper subject of inquiry. *Hanlon*, 150 F.3d at 1026. "Settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Id.* at 1027.

1    In assessing a settlement proposal, the Court must consider various factors, including (1)

2    the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further

3    litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount

4    offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6)

5    the experience and views of counsel; (7) the presence of a governmental participant; and (8) the

6    reaction of the class members to the proposed settlement. *Staton v. Boeing Co.*, 327 F.3d 938,

7    959 (9th Cir. 2003); *Churchill Vill. LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004). But

8    "[t]his is by no means an exhaustive list of relevant considerations." *Officers for Justice*, 688

9    F.2d at 625.

10    Considering all the factors set forth in *Staton* and *Churchill*, the Court concludes that the

11    proposed settlement is fundamentally fair, adequate, and reasonable. Particularly significant

12    under Factor (1) is that this Court previously ruled against Plaintiffs' theory of recovery, which

13    highlights the risk involved under Factors (2) and (3). Factor (5) also supports the settlement, as

14    the *Baggett* case had proceeded all the way through summary judgment. Further, under

15    Factor (6), the Court gives some weight to the fact that Plaintiffs' counsel is experienced in class

16    action litigation and views this settlement as providing "virtually all of the injunctive relief

17    sought . . . that directly address[es] the gravamen of the complaints." (Motion at 14:27-28, 15:3-

18    4.)

19    But as noted in *In re Bluetooth*, where a settlement is negotiated before formal class

20    certification, it's important to consider whether there is evidence of collusion or other conflicts

21    of interest. *In re Bluetooth*, 2011 WL 3632604, at *9. Courts must be "particularly vigilant not

22    only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit

23    of their own self interests and that of certain class members to infect the negotiations." *Id*. The

24    *In re Bluetooth* court set forth several such signs. One sign is when class counsel receive a

25    disproportionate share of the monetary settlement. *Id*. Another sign is when the parties

26    negotiate a "clear sailing" provision for attorney fees, in that defendant will not object to fees up

27    to a certain level. *Id*. And a final sign identified by *In re Bluetooth* is when the parties arrange

28    for fees to revert to the defendant instead of to the class fund or a cy pres fund. *Id*. These signs

1   are all present here, as they were in *In re Bluetooth*, so the Court must "examine the negotiation

2   process with even greater scrutiny than is ordinarily demanded." *Id*. at *12. The Court has

3   closely examined the evidence and argument presented regarding the negotiation of the

4   settlement agreement. As noted previously, the parties appeared before a neutral third party

5   mediator. While not dispositive, this fact supports a finding of non-collusion. *Id*. at *10.

6   Retired Judge Warren, the mediator in this settlement, states in his Declaration that the

7   settlement process was "long and arduous" over a period of several years, which suggests that

8   neither side was willing to collude for a quick resolution. (Warren Declaration, ¶ 3.) Further, he

9   states that "[a]ll counsel vigorously asserted their positions and negotiated in good-faith and at

10   arms-length to reach an appropriate compromise for the class." (*Id*. ¶ 5.) According to Retired

11   Judge Warren, class counsel "insist[ed] that the settlement terms for the benefit of the class be

12   finally resolved before compensation of counsel was addressed." (*Id*.) The Court finds that this

13   and other evidence supports a finding that there was no collusion between the parties in reaching

14   this settlement, despite the presence of the warning signs identified by *In re Bluetooth*.

15

16       **2.6    Incentive Award**

17

18       The parties agreed to a $2,500 stipend to Plaintiff Baggett and a $1,000 stipend to

19   Plaintiff Young. "Incentive awards are fairly typical in class action cases." *Rodriguez v. West*

20   *Publishing Corp*., 563 F.3d 948, 958 (9th Cir. 2009) (emphasis omitted). Incentive awards "are

21   intended to compensate class representatives for work done on behalf of the class, to make up

22   for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize

23   their willingness to act as a private attorney general." *Id*. at 958-59. Incentive awards are within

24   the Court's discretion. *In re Mego Financial Corp. Securities Litigation*, 213 F.3d 454, 463 (9th

25   Cir. 2000).

26       Plaintiff Young has objected to this settlement and the Court finds that such objectors to a

27   settlement are helpful in reviewing settlements and should not be discouraged. Thus, the Court

28

1  finds it appropriate to award him an incentive fee.  The Court finds that the incentive awards are

2  reasonable as to Plaintiff Baggett and Plaintiff Young.

3

4  **2.7      Attorney Fees and Costs**

5

6       Class counsel spent over 11,000 hours on this litigation, for a lodestar of $4,776,464.25 in

7  fees plus nearly $200,000 in costs.  Hourly rates range from $800 for a partner to $75 for a

8  paralegal, with a range of rates for dozens of other associates and partners.  (Plaintiffs'

9  Supplement in Support of Plaintiffs' Motion for Preliminary Approval of Class Action

10  Settlement, Dkt. # 217.)  Counsel acknowledges that the monetary benefit to the class is minimal

11  but contends that the injunctive relief is substantial.  (Application at 2:24-3:2.)  Plaintiffs request

12  attorney fees and costs of $2.75 million.  Thus, the requested fees are a little over 50% of the

13  lodestar.

14       The Court has a duty to determine whether the attorney fees sought are fair and

15  reasonable.  *In re Bluetooth*, 2011 WL 3632604, at *3; see also *Staton*, 327 F.3d at 963 (the

16  "district court must carefully assess the reasonableness of a fee amount spelled out in a class

17  action settlement agreement.").  "In employment, civil rights and other injunctive relief class

18  actions, courts often use a lodestar calculation because there is no way to gauge the net value of

19  the settlement or any percentage thereof."  *In re Bluetooth*, 2011 WL 3632604, at *4, citing

20  *Hanlon*, 150 F.3d at 1029.  The resulting lodestar may then be adjusted upwards or downwards.

21  *Id*.  Here, because the primary benefit to the class is injunctive relief, the Court finds it

22  appropriate to base the attorney fees on a lodestar calculation rather than any sort of common

23  fund calculation.  The Court finds it unnecessary to attempt to quantify the value of the

24  injunctive relief where a lodestar calculation provides a reasonable way to determine attorney

25  fees.

26       "The essential goal in shifting fees (to either party) is to do rough justice, not to achieve

27  auditing perfection.  So trial courts may take into account their overall sense of a suit, and may

28  use estimates in calculating and allocating an attorney's time."  *Fox v. Vice*, 131 S.Ct. 2205,

1    2210 (2011).  But the Court must be sure that "the amount awarded [is] not unreasonably

2    excessive in light of the results achieved."  *In re Bluetooth*, 2011 WL 3632604 at *6.  The Court

3    looks to the *Kerr* factors in determining any adjustment to the lodestar.  *Kerr v. Screen Extras*

4    *Guild, Inc.*, 526 F.2d 67 (9th Cir. 1975).  *Kerr* sets forth the following twelve factors: (1) the

5    time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill

6    requisite to perform the legal service properly, (4) the preclusion of other employment by the

7    attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or

8    contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount

9    involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10)

10   the "undesirability" of the case, (11) the nature and length of the professional relationship with

11   the client, and (12) awards in similar cases.  *Id*. at 70.  The Court has reviewed each of the

12   factors.  One of the key factors here is the amount involved and the results obtained.  As noted,

13   the primary benefit here is injunctive in nature, and the injunctive relief provided under the

14   Stipulation of Settlement is equivalent to what Plaintiffs were seeking in filing this lawsuit.

15   Another key factor is the time and labor required.  Counsel for Plaintiffs devoted an enormous

16   number of hours to this litigation.  The supporting documentation provides a break-down of

17   hours into general categories, which is appropriate for a case like this.

18          Considering the years spent on this case, the numerous motions filed, the adverse results

19   followed by appeals, and the successfully negotiated settlement, it is reasonable to award

20   substantial fees to Plaintiffs' counsel.  Further, collusion appears not to be involved here here,

21   particularly considering that Defendant had prevailed both in the *Baggett* action after summary

22   judgment and in the *Young* action after dismissal.  The Court also finds that the costs identified

23   by Plaintiffs were reasonably incurred.

24          With appropriate reductions to the thousands of hours billed, adjustments to the hourly

25   rates of dozens of attorneys, and reduction of the multiplier, and heeding Justice Kagan's

26   exhortation not to become "green-eyeshade accountants," *Fox*, 131 S.Ct. at 2216, the Court finds

27   that the hours and rates are reasonable with a total award, including costs, of $2 million, which

28   makes the fees a little less than 40% of the lodestar.  This Court has discretion to determine

1  appropriate fees and the Supreme Court noted that "[w]e can hardly think of a sphere of judicial

2  decisionmaking in which appellate micromanagement has less to recommend it."  *Id*.

3      The attorney fee award is reasonable compared to the degree of success, particularly

4  regarding the injunctive relief obtained.  The "foremost" consideration is "the benefit obtained

5  for the class" and the degree of success.  *In re Bluetooth*, 2011 WL 3632604, at *4.  The

6  injunctive relief accepted by Defendant provides substantial benefit.  The Court has considered

7  the disproportion between the monetary value for the class in the form of e-credits and the multi-

8  million dollar fee award and concludes that the fees are justified due to the lodestar calculation

9  and the benefit of the injunctive relief.  Because this is not a common-fund case, the Court need

10  not compare the lodestar to a 25% benchmark, and the Court finds that this is not an

11  inappropriate approach designed to avoid the 25% benchmark.  *See In re Bluetooth*, 2011 WL

12  3632604, at *6 (requiring the district court to compare the lodestar to a percentage award where

13  it was unclear whether the district court employed a lodestar or percentage award calculation).

14

15  **3.    CONCLUSION**

16

17      The Court finds that the settlement is fair, reasonable, and adequate, that notice complies

18  with the requirements of due process, that few class members have objected or opted out, and

19  that there have been requisite showings for the incentive awards.  The Court further finds that an

20  award of $2 million for attorney fees and costs is appropriate here.

21

22

23

24

25

26

27

28

**DISPOSITION**

The Court GRANTS final approval and GRANTS the injunction as set forth in the Stipulation of Settlement.  After fully reviewing the proposed order on the Motion and the Application, the Court has signed it with modifications consistent with this Order.

IT IS SO ORDERED.

DATED: August 31, 2011

_____
Andrew J. Guilford
United States District Judge